In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.** | Civil Action No. |
| Plaintiffs, | Verified Complaint for Declaratory Judgment and Injunctive Relief; Designation of Place of Trial; Verification; Exhibits A-C. |
| v. | |
| **City of Salina, Kansas.** | |
| Defendant. | |

**Verified Complaint for Declaratory Judgment and Injunctive Relief**

Stephen Howard and his business Cozy Inn, Incorporated, d/b/a The Cozy Inn, bring this civil rights lawsuit for non-monetary, prospective relief against the City of Salina, Kansas.

**Introduction**

1. This is a civil rights lawsuit challenging the City of Salina's mural-sign code regime—both the written code and as it's enforced—that prevents Steve Howard from completing and displaying a mural on the side of the iconic business he owns, The Cozy Inn.

2. In November 2023, Mr. Howard hired a local artist to paint a whimsical mural on The Cozy's wall that reflected The Cozy and Mr. Howard's personality. Three days later, the City told Mr. Howard he couldn't finish painting the mural. It remains unfinished.

3. Beautiful murals adorn buildings throughout the City. But the City picks and chooses which murals it allows and which murals it doesn't based solely on the murals' content and the identity of the speaker—and that's plainly unconstitutional. There's more on this later, but as one city official put it in a November 2023, City Commission meeting, a hypothetical coffee shop is free to paint its entire outside wall with a dove and an olive branch because the City considers that an unregulated mural, not a regulated sign; but the same

hypothetical coffee shop can't paint its entire wall with a steaming cup of coffee because the City considers that a regulated sign, not an unregulated mural.

4.     The City's mural-sign code regime—both the written code and the unwritten policy and practice—violate the free speech clause of the First Amendment and the void for vagueness doctrine under the Fourteenth Amendment.

5.     Mr. Howard and The Cozy aren't suing the City for money. Instead, this case seeks to vindicate their free speech rights.

## Parties

6.     Stephen Howard ("Steve Howard") is a citizen of Kansas and the United States. He is a resident of Saline County. Mr. Howard owns, operates, and is President of Cozy Inn, Incorporated, d/b/a The Cozy Inn. Mr. Howard files this suit in his capacity as the President of Cozy Inn, Incorporated, d/b/a/ The Cozy Inn, and in his individual capacity.

7.     Cozy Inn, Incorporated, d/b/a The Cozy Inn ("The Cozy" or "The Cozy Inn") is a Kansas for profit corporation. The Cozy is located at 108 N. 7th Street in Salina, Kansas.

8.     Defendant City of Salina, Kansas ("City") is a municipal corporation organized under the laws of the State of Kansas, is sued for non-monetary, prospective relief, and is capable of being sued as such. KSA § 12-101.

9.     The City may be served with process by serving the city clerk or the mayor. KSA§ 60-304(d)(3).

10.     The Attorney General will be served with a copy of the proceedings.

## Jurisdiction and Venue

11.     The Plaintiffs bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, the Declaratory Judgments Act, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and under 42 U.S.C. § 1988 to award attorney fees.

12.     The Plaintiffs seek temporary, preliminary, and/or permanent prospective relief, and a declaratory judgment, all arising from the City's mural-sign code regime—which includes the City's written sign code, the City's unwritten policies, the City's Sign Permit

requirement, the City's Downtown Salina Business Improvement District review process, the Certificate of Compatibility requirement, and it's concomitant enforcement penalties ("mural-sign code regime")—as described throughout the lawsuit, that constitute violations of the First and Fourteenth Amendments to the United States Constitution. As more fully developed throughout and below, the Plaintiffs seek 1) a judgment declaring the City's mural-sign code regime unconstitutional on its face and as applied; and 2) permanent prospective injunctive relief prohibiting enforcement of the City's mural-sign code regime.

13.    This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

14.    Venue lies in this Court under 28 U.S.C. § 1391 because, among other things, the events giving rise to the Plaintiffs' claims occurred in this district.

**Facts**
<u>Steve Howard, The Cozy Inn, and an unfinished mural</u>

15.    The Cozy Inn is an institution. Located in downtown Salina, it has proudly served sliders for more than 100 years.

16.    Described as a "global treasure," "landmark," "destination," and "anchor," The Cozy serves around 45,000 customers a year.[1]

17.    The Cozy's owner, Steve Howard, was raised in Saline County. After spending years as a maintenance worker at the local school district, he bought the iconic business in 2007.

18.    Mr. Howard has been "blessed with a sense of homespun marketing and imagination, intense worth ethic, and a sincere passion for the fare."[2]

19.    Since he bought The Cozy, it has been featured on Travel Channel's "101 Tastiest Places to Chown Down," and "America's Top Ten Hamburgers." USA Today has picked it as the "Best Burger Joint in Kansas."

---

[1] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7
[2] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7

20.     For decades—at least since Mr. Howard bought it—The Cozy's walls were white, as depicted below.



21.     In November 2023, Mr. Howard decided the bare walls didn't reflect his or The Cozy's personality, so he hired local artist Colin Benson to paint a mural.

22.     The Cozy is small—the dining area is around 192 square feet—and every burger is famously served with onions. The Cozy's distinctive "pungent onion-esque aroma" "evokes thoughts of home and tradition, a special charm[.]"[3]

23.     With that in mind, Mr. Howard decided the mural should include the phrase "Don't fear the smell! The fun is inside!!"

24.     The whimsical mural would depict burger-esque flying saucers piloted by aliens attacking The Cozy with blasts of ketchup and mustard.

25.     With a handshake and a promise to pay, Mr. Benson started the mural almost immediately, on Friday, November 3, 2023.

26.     By Monday, November 6, 2023, a representative from the City ordered Mr. Howard to stop or pause painting the mural—because it perceived the mural as a regulated sign,                rather                than                an                unregulated                mural.

---

[3] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7

27.     This is the unfinished mural:



28.     Below is a rendition of what the mural would look like, once completed:



29.     Mr. Howard does not want to change, alter, or deviate from the rendition directly above ("completed rendition"). As stated in a news article, "[I]t's artwork[.] It's my

expression. It's my character going on my wall. I want to paint my wall." Nate King, *Cozy Inn Hamburgers 'sign' put on hold pending city approval*, Salina Post (Nov. 14, 2023).[4]

30.     The City's position is that the mural violates the law because it pertains to The Cozy's business—selling hamburgers.

<u>The City's Mural-Sign Code Regime</u>

31.     The City contends that under its mural-sign code regime that if the content of a mural "includes a message that pertains to the goods or services for sale," then the mural is a regulated sign; but if the artwork conveys *any other* content or message, then it's unregulated. Asia Cymone Smith, *City puts pause on Salina mural, restaurant owner says, 'I believe we'll work through this,'* KSN (Nov. 13, 2023).[5]

32.     The word "mural" is not used in the city code.

33.     The City regulates signs through Article X of the city's zoning code, Salina City Code § 42-500 *et seq*. Relevant portions of the City Code are attached as Exhibit A.

34.     Under Section 42-764 of the City Code, a "sign" is broadly defined as:

> Sec. 42-764. - Sign.
>
> *Sign* is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:
>
> > (1)   Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground;
> >
> > (2)   Is used to announce, direct attention to, or advertise; and
> >
> > (3)   Is not located inside a building.
>
> (Code 1966, § 36-1301(145))

35.     Under Section 42-781 of the City Code, a "wall sign" is:

---

[4] Available at https://salinapost.com/posts/343e570a-c5e2-4f10-af08-9fc6537d086c
[5]   Available   at   https://www.ksn.com/news/state-regional/city-puts-pause-on-salina-mural-restaurant-owner-says-i-believe-well-work-through-this/

Sec. 42-781. - Sign, wall. 

> *Wall sign* is a sign fastened to or painted on a wall of a building or structure in such a manner that the wall becomes merely the supporting structure or forms the background surface, and which does not project more than twelve (12) inches from such building.

(Code 1966, § 36-1301(162))

36.     Based on the City's definitions, the City Code categorizes *any* outdoor mural as a wall sign. After all, murals are a pictorial representation, emblem, or writing painted on an outside structure, which is calculated to attract the attention of the public.

37.     Wall signs are permitted in every zoning district in the city. Salina City Code §§ 42-516 through 42-524.

38.     Each zoning district has different size-restrictions. *Id.*

39.     The sign code—as written—doesn't distinguish between signs that contain messages pertaining to the goods or services sold, and signs that contain messages that are unrelated to any goods or services sold, when determining size restrictions.

40.     Salina is home to a thriving and dynamic mural scene. Many of the murals are supported with public resources.[6] Photographs of many of these publicly supported murals are attached. Exhibit B.

41.     On good faith belief, the murals depicted in Exhibit B do not comply with the size restrictions for wall signs in the sign code.

42.     Plaintiffs don't want the City to remove or otherwise restrict the beautiful murals throughout the City, even though, on good faith belief, the murals are not compliant.

43.     For example, the Defendant owns and operates Fire Station # 2, located at 1110 S. Santa Fe Avenue, which features a mural which "honors the services and allegiance of those firefighters who diligently serve Salina."[7]

---

[6] https://www.salinaarts.com/public_art/artwork-alley/
[7] https://www.salinaarts.com/public_art/fire-station-2/

44.     This is a depiction of the mural at Fire Station # 2.



45.     On good faith belief, Fire Station # 2's mural doesn't comply with the City's sign code.

46.     Salina is host to the Boom! Salina Street Art and Mural Festival,[8] and the Salina Kanvas Project,[9] where the murals are showcased.

47.     On good faith belief, the murals from the Boom! Festival and the Salina Kanvas Project do not comply with the size restrictions for wall signs in the sign code.

48.     Again, Plaintiffs don't want the City to remove or otherwise restrict the beautiful murals throughout Salina, even though, on good faith belief, the murals are not compliant.

---

[8] https://www.boomsalina.art/
[9] https://www.kanvasproject.com/

49.    One iconic mural is the Mural at the Mill, by world-renowned Australian artist Guido Van Helten, depicted below.[10]



50.    On good faith belief, the City has never enforced its mural-sign code regime against any of these existing murals.

---

[10] https://www.kanvasproject.com/projects/mural-at-the-mill

51.     The large number of vibrant murals within Salina are a reflection of the charm and character of the people of Salina.

52.     Plaintiffs, like most residents, take pride in the beauty and creativity of the murals throughout Salina.

53.     Again, Plaintiffs don't want the City to remove or otherwise restrict the beautiful murals throughout Salina.

54.     Instead, Plaintiffs want to participate in this thriving part of Salina culture through a mural on the side of The Cozy.

55.     To justify its support of some murals and its prohibition of other murals, the City created an unwritten policy and practice which exempts what it deems to be "murals" from the regulation of the sign code, even though they fit the definition of a wall sign under its written Code.

56.     Under the City's unwritten policy and practice, if a mural's content doesn't pertain to the business on which it sits, it's an exempt "mural."

57.     On the other hand, under the City's unwritten policy and practice, if the mural's content *does* pertain to the business, it's a regulated sign, not an unregulated mural.

58.     In addition to the size limitations found in the zoning code, no regulated sign may be created without first obtaining a sign permit from the City. Salina City Code §§ 42-501 & 42-502.

59.     The City must issue or refuse a sign permit within 10 days after receipt of the application. Salina City Code § 42-502(b).

60.     On good faith belief, the City does not require murals exempted by the City's unwritten policy and practice to obtain a sign permit.

61.     The City has also created the Downtown Salina Business Improvement District Number 1, which the City alleges includes The Cozy.

62.     The City requires property owners in the Downtown Salina Business Improvement District Number 1 to submit applications to a Design Review Board (DRB) for a Certificate of Compatibility before they "change the existing exterior design, material, color,

texture, finish, or appearance of any building" or "[i]ntroduce, change, substitute, or remove any physical feature affecting the appearance of real property." Salina City Code § 2-207(a).

63.     Per Salina City Code § 2-208, the DRB may only approve a Certificate of Compatibility if it finds one of the following:

(1)  The general design, material and color of the proposed construction or change present an aesthetically pleasing overall image.

(2)  Environmentally harmful effects caused by the clash of contemporary materials with those of older origin, are avoided.

(3)  The distinguishing original qualities or character of a building, structure or site and its environment are not to be destroyed and the removal or alteration of any historical material or distinctive architectural features is avoided where possible.

(4)  The proposed use of banners, awnings, or canopies incorporates the use of appropriate materials, colors and graphics, and is compatible with the overall building design.

(5)  Any proposed demolition includes appropriate grading and landscaping of the building site in a manner compatible with the adjoining buildings and streetscape.

64.     On information and good faith belief, numerous murals exist within the Downtown Salina Business Improvement District Number 1.

65.     On information and good faith belief, it is the police and practice of the City to exempt murals in the Downtown Salina Business Improvement District Number 1 that it considers "art" from the requirement of obtaining a Certificate of Compatibility from the Design Review Board, while it requires that murals it considers "signs" to obtain a Certificate of Compatibility from the Design Review Board.

66.     On information and good faith belief, under the City's unwritten policy and practice, if a mural's content doesn't pertain to the business on which it sits, it's a "mural" and doesn't need a Certificate of Compatibility.

67.     On the other hand, on information and good faith belief, under the City's unwritten policy and practice, if the mural's content *does* pertain to the business, it's a regulated sign, not an unregulated mural, and requires a Certificate of Compatibility.

68.     Violations of the zoning code, of which the sign code is a part, are a misdemeanor, punishable by a fine of between $50 and $500, with each day being considered a new offense. Salina City Code § 42-599.

69.     Section 2-200, *et seq.*, relating to the requirement to obtain a Certificate of Compatibility from the Downtown Salina Business Improvement District Number 1, contains

no specific penalty for violations. As a result, the general penalty for violations of the City Code, § 1-10, applies.

70.     Under § 1-10, any violation is a misdemeanor punishable by a fine of not more than $500 and/or a period of imprisonment not exceeding six months, with each day being considered a new offense.

71.     Following intense media coverage of the City's decision to enforce the mural-sign code regime against Steve's mural at The Cozy, the City Commission held a hearing to discuss the application of the mural-sign code regime.[11]

72.     On November 13, 2023, City officials appeared before a meeting of the Salina City Commission to discuss the City's unwritten policy and practice exempting murals from the sign code and how they applied to The Cozy.

73.     A transcript of the relevant portion of the City Commission meeting is attached as "Exhibit C."

74.     The Cozy is located in the C-4 commercial zoning district.

75.     In the C-4 commercial zoning district, the maximum sign area allowed is 3 square feet of sign for each lineal food of building frontage. Salina City Code § 42-521(b).

76.     The City contends that The Cozy has 21 lineal feet of building frontage, resulting in a maximum sign area of 63 square feet. Ex. C pg. 16, ln. 24 – pg. 17, ln. 3.

77.     The City contends that The Cozy's existing signs already constitute 52.88 square feet of sign area, leaving 10.12 square feet of remaining square footage for an additional sign. Ex. C pg. 17, ln. 4-11.

78.     The City contends that The Cozy's mural is approximately 528 square feet and violates the mural-sign code regime. Ex. C pg. 17, ln. 12-18.

79.     Under the City's unwritten policy and practice, it is not relevant to the distinction between wall signs and murals whether the painting is purely images or if text is

---

[11]     See    generally    https://salinapost.com/posts/343e570a-c5e2-4f10-af08-9fc6537d086c; https://www.kwch.com/2023/11/10/art-or-an-ad-city-salina-pauses-project-historic-cozy-inn-restaurant/; https://www.ksn.com/news/state-regional/city-puts-pause-on-salina-mural-restaurant-owner-says-i-believe-well-work-through-this/; https://www.ksal.com/art-or-advertising/.

used. A mural could be purely text and a wall sign could be purely imagery. Ex. C pg. 26, ln. 23 – pg. 27, ln. 6; *id.* at pg. 28, ln. 16-21.

80.     According to the City Manager, under the City's unwritten policy and practice, if the content of a mural "includes a message that pertains to the goods or services for sale" the mural is not a mural but "a sign and makes it subject to the sign code." Asia Cymone Smith, *City puts pause on Salina mural, restaurant owner says, 'I believe we'll work through this,'* KSN (Nov. 13, 2023).[12]

81.     To illustrate this distinction, the Director of Community and Development Services discussed a mural on the outside of a hypothetical coffee house. She explained that "[i]f the coffee house has a dove with an olive branch and it says the word 'peace' on the side of it, that – that's not a sign," but is instead an unregulated mural. Ex. C pg. 23, ln. 13-15.

82.     By contrast, "if we had a steaming cup of coffee and a coffee pot on the side," that would be a regulated wall sign. Ex. C pg. 23, ln. 24-25 – pg. 24, ln. 1-4.

83.     What's more, this very same mural of "a steaming cup of coffee" would be considered an unregulated mural if it was painted "on the other side of town unrelated to anything" at that location. Ex. C pg. 26, ln. 17-22.

84.     In other words, whenever someone paints any text, image, or emblem on an outside wall, City officials must evaluate the contents of the mural to determine if they are sufficiently related to any business activity taking place at the location.

85.     If the City official believes that the content of the mural is related to business activity, then it's classified as a wall sign and is subject to the size limitations in the sign code.

86.     Conversely, if the City official believes that the content of the mural is unrelated to business activity, then it is classified as a mural and is exempt from the size limitations in the sign code.

87.     The City justifies its unwritten policy and practice of discriminating against the content of murals related to a business because it fears that "sign wars" will harm "the

_____

[12]Available at https://www.ksn.com/news/state-regional/city-puts-pause-on-salina-mural-restaurant-owner-says-i-believe-well-work-through-this/

aesthetic character of your community." Olivia Bergmeier, *Blacksmith Coffee continues conversation on small building signs in town*, Salina Post (Jan. 25, 2024).[13]

**The City's Mural-Sign Code Regime and its Enforcement Injures the Plaintiffs**

88.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

89.    The City's mural-sign code regime, and the City's policies and practices regarding the enforcement of its mural-sign code regime, violate the Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution and are void for vagueness.

90.    The Plaintiffs want to complete and display the mural as shown in the rendition above, without any changes.

91.    The City has ordered Plaintiffs to halt work on the mural.

92.    The City has explained that the Plaintiffs cannot complete the mural as it is reflected in the rendition because it's larger than allowed by the City Code. Ex. C pg. 17, ln. 12-18.

93.    On November 13, 2023, at the request of the City, Plaintiffs submitted an application for a sign permit and for a Certificate of Compatibility to complete the mural as shown in the rendition above.

94.    Rather than issue or deny the permit and Certificate of Compatibility, the City waited until February 8, 2024, to send Mr. Howard a letter which neither granted nor denied a permit, and neither granted nor denied a Certificate of Compatibility, to complete the mural as shown in the rendition above.

95.    Instead, the City placed his application "on-hold until our review of the sign regulations is complete."

96.    If or when the City chooses to amend the sign code, "Staff will then be able to facilitate a Certificate of Compatibility application to be considered by the DRB, as well as review your sign permit application."

---

[13] Available at https://salinapost.com/posts/06567217-4e0d-49be-9a97-b05ef4b7ec7d

97.     According to a news report, the City enforces the mural-sign code regime against other business murals based on the content of those murals. Oliver Bergmeier, *Blacksmith Coffee continues conversation on small building signs in town*, Salina Post (Jan. 25, 2024).[14]

98.     The City's publicly available statements, its order to halt work on the mural, and its placement of the permit application on-hold presents a clear and continual threat of enforcement of the City's mural-sign code regime against the Plaintiffs if they renew work on the mural.

99.     The City's enforcement of the City's mural-sign code regime against the Plaintiffs means they cannot finish the mural.

100.    The Plaintiffs would be able to complete the mural if it expressed a different message not pertaining to the Plaintiffs' business.

101.    The Plaintiffs' speech is being chilled by the City's enforcement of its mural-sign code regime against the Plaintiffs' mural.

102.    The Plaintiffs stopped completion of the mural because of the City's enforcement of its mural-sign code regime.

103.    But for the City's mural-sign code regime and its enforcement, the Plaintiffs' First Amendment rights would not be violated.

104.    The same day the City's mural-sign code regime is enjoined and/or declared unconstitutional, or as soon as reasonably possible thereafter, the painting of the mural will continue; the Plaintiffs will not be subjected to First and Fourteenth Amendment violations.

105.    But for the City's mural-sign code regime and its enforcement, the Plaintiffs would have suffered none of these harms or injures in the past and would suffer none of them in the future.

106.    The City's mural-sign code regime is ongoing, continuous, and repetitive, as are the violations of federal law, and is an ongoing, continuous, and repetitive violation of the Plaintiffs' rights under the United States Constitution.

---

[14] Available at https://salinapost.com/posts/06567217-4e0d-49be-9a97-b05ef4b7ec7d

107.    Absent a judgment declaring the City's mural-sign code regime unconstitutional, and absent issuing injunctive relief enjoining its enforcement, the Plaintiffs will continue to be subjected to an abridgement of their free speech.

108.    There is no administrative remedy available that would provide Plaintiffs with the relief they seek.

109.    The Plaintiffs have no other adequate remedy at law, other than to file this lawsuit for prospective, non-monetary relief.

### Declaratory Judgment and Injunctive Relief

110.    Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

111.    An actual controversy has arisen and now exists between the Plaintiffs and Defendant concerning the Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time.

112.    The Plaintiffs' injuries result from the City's mural-sign code regime and its enforcement.

113.    The Plaintiffs' injuries are concrete, particularized, and cognizable.

114.    The Plaintiffs require a judicial determination of their rights against the City as it pertains to the City's mural-sign code regime.

115.    It's appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring unconstitutional all relevant portions of the City's mural-sign code regime at issue in this case.

116.    Pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Fed. R. Civ. P. 65, it's appropriate and requested that this Court issue temporary, preliminary, and permanent relief prohibiting enforcement of the City's mural-sign code regime at issue in this case.

### Constitutional Violations
### Claim One: First Amendment Violation
### (Free Speech)

117.    The Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

118.     The Free Speech Clause of the First Amendment protects the rights of individuals, entrepreneurs, and businesses to express themselves through murals with content that pertains to their business in some way.

119.     The Plaintiffs' mural is speech that is protected by the Free Speech Clause of the First Amendment, incorporated *via* the Fourteenth Amendment.

120.     The Plaintiffs want to complete and display their mural as reflected in the rendition above, without threat of criminal charges or fines hanging over their heads.

<u>The City's mural-sign code regime is a content-based and speaker-based regulation of speech</u>

121.     Murals are speech protected by the First Amendment.

122.     The City's mural-sign code regime is a content-based regulation of speech under *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), subject to strict scrutiny, because it regulates murals differently based solely on their communicative content.

123.     The City's mural-sign code regime is also a speaker-based restriction on speech, subject to strict scrutiny, because it "favor[s] some speakers over others" and this "speaker preference reflects a content preference." *Id.* at 170.

124.     Under *Reed*'s "commonsense" test, laws are content based if they "target speech based on its communicative content," if the "law applies to particular speech because of the topic discussed or the idea or message expressed," *id.* at 163 (relying in part on *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011)), or if it's "targeted at specific subject matter," *id.* at 169. If the law "draws distinctions based on the message a speaker conveys," it's a content-based regulation. *Id.* at 163.

125.     It doesn't matter, for example, whether the content-based regulations were adopted for "benign" reasons, "content-neutral" justifications, or even "a lack of animus" toward the ideas expressed, they're still content based. *Reed*, 576 U.S at 165.

126.     Second, laws are content-based regulations of speech if they "cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys." *Id.* at 164 (cleaned up).

127.     Outside the context of off-premises, "location-based," regulations, *see City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69, (2022), if a code enforcement officer must "read the sign"—or in this case, look at the mural—to determine whether the artwork is allowed or not, it's a content-based regulation. *Reed*, 576 U.S. at 162.

128.     Under *Reed,* the City's mural-sign code regime is a content-based, speaker-based regulation of speech.

129.     Even though all murals meet the definition of "sign" under §§ 42-764 and 42-781, the City chooses to exempt some murals from regulation, depending on the content of the mural and the identity of the speaker.

130.     Even though all murals "change the existing exterior design, material, color, texture, finish or appearance of any building" and "affect the appearance of real property" under § 2-207(a), the City chooses to exempt some murals from regulation, depending on the content of the mural and the identity of the speaker.

131.     The mural-sign code regime as written and enforced permits murals that don't pertain to goods or services sold.

132.     That is because the City doesn't consider murals as "signs."

133.     Under the City's mural-sign code regime, both the written code and the unwritten policy and practice, individuals or businesses can display a mural if the City perceives the mural's subject matter as not pertaining to goods or services being sold.

134.     Under the City's mural-sign code regime, both the written code and the unwritten policy and practice, the City allows murals which the City does not believe pertain to goods or services sold without requiring a permit, Certificate of Compatibility, fee, or size limitations, and without demanding they be taken down.

135.     Under the City's mural-sign code regime, both the written code and the unwritten policy and practice, whether City officials deem a mural to pertain to goods or services sold, or to be artistic based on its subject matter or message, is a content-based distinction on speech.

Case 6:24-cv-01027-TC-ADM   Document 1   Filed 02/19/24   Page 19 of 26

136.    If Plaintiffs were to change the content of the mural such that it makes no reference to hamburgers or their smell, the City would not consider it to be a regulated sign but an unregulated mural.

137.    When City officials deem that a mural pertains or does not pertain to goods or services sold that is also a speaker-based restriction on free speech, as it turns on the identity of who is displaying that mural.

138.    Plaintiffs are prohibited from displaying the mural depicted above because Plaintiffs sell hamburgers, while a different individual who does not sell hamburgers, or an individual who gives hamburgers away for free, could display the exact same mural.

139.    Imposing different burdens on speech depending on who is speaking and what is being said is content-based and speaker-based restriction on free speech.

140.    Additionally, murals within the Downtown Salina Business Improvement District Number 1 are subjected to additional content-based review by the Design Review Board.

141.    The Design Review Board determines whether a mural "presents an aesthetically pleasing overall image," "clash[es]" with older materials or harms the "distinguishing original qualities or character of a building."

142.    These determinations by the Design Review Board are based on the content of the mural under review.

143.    Content-based and speaker-based restrictions on speech are subject to strict scrutiny. *Reed*, 576 U.S. at 164, 170.

144.    Content-based regulations of speech "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) (when government restricts speech, it "bears the burden of proving the constitutionality of its actions"). It's "rare that a regulation restricting speech because of its content will ever be permissible." *Playboy Ent. Grp., Inc.*, 529 U.S. at 818.

145.    The City cannot meet this burden.

146.    The City has no evidence that the City's mural-sign code regime is narrowly tailored to further a compelling government interest.

147.    The City also has no evidence that its discrimination against messages that are related to a business is narrowly tailored to further a compelling government interest.

148.    Thus, the different treatment of speech based on speakers and content under the City's mural-sign code regime, is an unconstitutional content-based and speaker-based restriction on speech under the First Amendment.

<u>Even if the City's mural-sign code regime is content- and speaker-neutral, it is still unconstitutional.</u>

149.    Even if the City's discrimination against messages related to a business were somehow not content based or speaker based, the City's enforcement of its mural-sign code regime against the Plaintiffs still violates the First Amendment.

150.    The City does not have sufficient justification for either its regulation of Plaintiffs' mural specifically, or its regulation of messages related to business generally.

151.    The City's regulation of Plaintiffs' mural does not directly advance a substantial, important, or compelling government interest.

152.    The City's general regulation of messages related to business does not directly advance a substantial, important, or compelling government interest.

153.    The Plaintiffs' mural does not present a safety hazard.

154.    The Plaintiffs' mural does not present a health hazard.

155.    The Plaintiffs' mural does not have a negative impact on the public welfare.

156.    The Plaintiffs' mural does not present a traffic control hazard.

157.    The Plaintiffs' mural does not harm the aesthetics of the neighborhood.

158.    The City's mural-sign code regime practice and/or policy does not serve the City's interests in public safety, public health, or public welfare.

159.    The City's mural-sign code regime, and its enforcement of its mural-sign code regime against The Cozy's mural, is not narrowly tailored to serve any substantial, important, or compelling government interest.

160.    The City's mural-sign code regime, and its enforcement of its mural-sign code regime against The Cozy's mural, is not substantially related to any substantial, important, or compelling government interest.

161.    The City's mural-sign code regime, and its enforcement of its mural-sign code regime against The Cozy's mural, is more extensive than necessary to serve any substantial, important, or compelling government interest.

162.    The City's mural-sign code regime, and its enforcement of its mural-sign code regime against The Cozy's mural, does not leave open alternative channels of communication.

163.    The City's mural-sign code regime, and its enforcement of its mural-sign code regime against The Cozy's mural, is not rationally related to any legitimate government interest.

<u>Requiring The Cozy to Obtain a Sign Permit and Certificate of Compatibility Before Painting a Mural is an Unconstitutional Prior Restraint on Speech</u>

164.    The City's requirement that property owners first obtain a Sign Permit and Certificate of Compatibility before painting a mural on a wall is an unconstitutional prior restraint on speech.

165.    In the area of free expression, a licensing law placing unbridled discretion in the hands of a government official or agency is an unconstitutional prior restraint because it may result in censorship.

166.    The City's unwritten policy and practice of distinguishing between unregulated murals and regulated signs places complete discretion in City officials to analyze the content of the proposed mural and determine if it pertains to the goods or services for sale.

167.    Nothing in either the written sign code or the City's unwritten policy and practice provide City officials with any guidelines or criteria for judging whether or not a mural pertains to the goods or services for sale.

168.    The absence of express standards makes it difficult to distinguish between a legitimate denial of a permit and an illegitimate abuse of censorial power.

169.    Similarly, the Downtown Salina Business Improvement District Number 1 Design Review Board lacks any established neutral criteria to ensure that its decision to grant or deny a Certificate of Compatibility is not based on the content or viewpoint of the speech being considered in the mural.

170.    Indeed, its written criteria for granting or denying a Certificate, such as whether or not the mural "present[s] an aesthetically pleasing overall image," "clash[es]" with older materials or preserves the "distinguishing original qualities and character of a building" are inherently subjective, arbitrary, and capricious. Salina City Code § 2-208.

171.    The mural-sign code regime lacks any established neutral criteria to ensure that the licensing decision is not based on the content or viewpoint of the speech being considered.

172.    The First Amendment does not allow the government to possess unbridled discretion in determining when to impose a prior restraint on speech.

173.    The City's enforcement of its mural-sign code regime is an unconstitutional restriction of speech under the First Amendment.

174.    On its face and as applied, the City's mural-sign code regime violates the First Amendment.

175.    The Plaintiffs' First Amendment rights have been and will continue to be violated by the City's mural-sign code regime.

176.    The City oversees, implements, and enforces the mural-sign code regime violating Plaintiffs' First Amendment rights and causing Plaintiffs' First Amendment injuries.

177.    As a consequence of the City's actions or inactions in the implementation and enforcement of the mural-sign code regime, Plaintiffs have been and will continue to be injured, and are therefore entitled to, among other things, declaratory judgment and prospective injunctive relief, and any other equitable or other legal relief as the court deems just or appropriate.

178.    Plaintiffs have no other legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights, other than to file this lawsuit for non-monetary, prospective relief.

179.    Unless the mural-sign code regime's unconstitutional ordinances, regulations, rules, and policies are declared unconstitutional and their enforcement permanently enjoined, Plaintiffs and others who are similarly situated will continue to suffer great and irreparable harm. Plaintiffs therefore seek such declaratory and injunctive relief.

### Claim Two: Fourteenth Amendment Due Process Clause Violation
### (Void for Vagueness)

180.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

181.    An enactment is void for vagueness if it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Welch v. United States*, 578 U.S. 120 (2016).

182.    The mural-sign code regime, and the City's unwritten policy and practice of distinguishing between unregulated murals and regulated signs, do not define or otherwise establish sufficient standards necessary to prohibit or discourage seriously discriminatory enforcement.

183.    Instead, before issuing a Sign Permit or Certificate of Compatibility, City officials are required to examine the content of artwork and determine if they believe the artwork somehow pertains to the goods or services sold in the vicinity.

184.    For the reasons stated in Claim One above, the criteria utilized by the Downtown Salina Business Improvement District Number 1 Design Review Board to grant or deny Certificates of Compatibility are so standardless that it authorize or encourage seriously discriminatory enforcement.

185.    The City lacks any standards for making these determinations, risking serious discriminatory enforcement.

186.    As a consequence of the City's standardless, unwritten policy and practice, Plaintiffs cannot know what murals may permissibly be painted on the side of The Cozy, and are injured by the City's arbitrary enforcement, and are therefore entitled to, among other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

187.    The City's enforcement of its mural-sign code regime is unconstitutionally vague under the Fourteenth Amendment

188.    On its face and as applied, the City's mural-sign code regime violates the void for vagueness doctrine of the Fourteenth Amendment.

189.    The Plaintiffs' Fourteenth Amendment rights have been and will continue to be violated by the City's mural-sign code regime.

190.    The City oversees, implements, and enforces the mural-sign code regime violating Plaintiffs' Fourteenth Amendment rights and causing Plaintiffs' Fourteenth Amendment injuries.

191.    As a consequence of the City's actions or inactions in the implementation and enforcement of the mural-sign code regime, Plaintiffs have been and will continue to be injured, and are therefore entitled to, among other things, declaratory judgment and prospective injunctive relief, and any other equitable or other legal relief as the court deems just or appropriate.

192.    Plaintiffs have a liberty interest in their speech and a property interest in the wall of The Cozy that is protected by the Fourteenth Amendment.

193.    Plaintiffs have no other legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their Fourteenth Amendment rights, other than to file this lawsuit for non-monetary, prospective relief.

194.    Unless the mural-sign code regime's unconstitutional ordinances, regulations, rules, and policies are declared unconstitutional and their enforcement permanently enjoined, Plaintiffs and others who are similarly situated will continue to suffer great and irreparable harm. Plaintiffs therefore seek such declaratory and injunctive relief.

195.    Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights, other than to file this lawsuit for non-monetary, prospective relief.

196.    Unless the mural-sign code regime and unwritten policy and practices are declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

## Request for Relief

Plaintiffs respectfully request the Court grant the following relief:

197. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

198. Declaratory judgment that the City's mural-sign code regime, as written and enforced, is an unconstitutional content-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated.

199. Declaratory judgment that the City's mural-sign code regime, as written and enforced, is an unconstitutional speaker-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated.

200. Alternatively, if the City's mural-sign code regime is ruled to be content-neutral and speaker-neutral, a declaratory judgment that the City's mural-sign code regime, as written and enforced, fails to satisfy intermediate scrutiny, on its face and as applied to Plaintiffs and others similarly situated.

201. Declaratory judgment that the City's mural-sign code regime, as written and enforced, is an unconstitutional prior restraint on speech, on its face and as applied to Plaintiffs and others similarly situated.

202. Declaratory judgment that the City's mural-sign code regime, as written and enforced, is void for vagueness, on its face and as applied to Plaintiffs and others similarly situated.

203. For entry of temporary, preliminary, and/or permanent prospective injunctive relief, enjoining Defendant, Defendant's officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the City's Sign Code, Salina City Code § 42-500, *et seq.*, its unwritten policy and practice distinguishing unregulated murals from regulated wall signs, and the Design Review Board process and Certificate of Compatibility requirement of Salina City Code § 2-200, *et seq.*, that, as described above, constitute violations of the First and Fourteenth Amendments, on their face and as applied to Plaintiffs and other similarly situated.

204.   A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on The Cozy Inn, or for completing the mural on The Cozy Inn.

205.   Reasonable costs and attorney fees under 42 U.S.C. § 1988; and

206.   Such other legal or equitable relief as this Court deems appropriate and just.

**Jury Demand and Designation of Place of Trial**

207.   Plaintiffs request a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure. Plaintiffs request the trial be held in Wichita, Kansas, due to the proximity of the parties.

Kansas Justice Institute

Dated: February 19, 2024

/s/ Samuel G. MacRoberts
Samuel G. MacRoberts, 22781

/s/ Jeffrey Shaw
Jeffrey Shaw, 29767
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
Sam@KansasJusticeInstitute.org
Jeff@KansasJusticeInstitute.org
(913) 213-5018
Attorney for Plaintiffs