IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Cozy Inn, Incorporated,** | ) |
| **d/b/a The Cozy Inn; Stephen Howard,** | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) CASE NO.   6:24-cv-01027-TC-ADM |
| v. | ) |
| | ) |
| **City of Salina, Kansas,** | ) |
| | ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant, City of Salina, Kansas ("City"), respectfully requests Plaintiffs' Complaint be Dismissed pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), and in support thereof states as follows:

## I.   NATURE OF THE CASE

This First Amendment action arises from Plaintiffs' desire to construct a wall sign that is about nine times the allowable size. "Article 12, section 5 of the constitution of Kansas empowers cities to determine their local affairs and government by ordinance . . ." K.S.A. § 12-101, and like "tens of thousands" of other jurisdictions across the United States, the City regulates signs. *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 66 (2022). The City has done so for about 58 years. Its regulations are codified at Salina Code of Ordinances ("Salina Code") Chapter 42, Article X ("Sign Code"). The City has also adopted a design review process for new construction, building alterations, demolitions, and exterior aesthetic changes to buildings in its downtown Business Improvement District No. 1 ("BID"). That process is codified at Chapter 2, Article X, Salina Code ("BID Code"). Where it applies, BID Code review is integrated into other permit reviews. A Design Review Board ("DRB") conducts BID Code reviews. BID Code § 2-208.

This dispute turns on what is—and what is not—a "sign." Signs are subject to reasonable, content neutral regulation under the Sign Code. This is not a case about a mural. This is also not a case about the City disfavoring a particular sign or speaker. In fact, the Complaint's Exhibit C supports an argument that the City actually likes this speaker and this sign, and there are no factual allegations in the Complaint to the contrary. Ex C[1] at 30:9-10 ("I think it's a beautiful sign . . . ."); 32:2-4 (the sign is "high energy" and "it pops").

In urging this Court to strike down the City's reasonable, content neutral sign regulations, the Complaint sidesteps an essential ingredient of what constitutes a sign. Under the Sign Code, to be a sign, a display *must* be "used to announce, direct attention to, or advertise." Sign Code § 42-764(2).[2] This is not a content based distinction. It is just a line that must be drawn between what constitutes a sign and what does not—in the interest of drawing content neutral boundaries around what is regulated.[3] By definition, Plaintiffs' display is a sign because no matter how artistic and whimsical it is, it is "used to announce, direct attention to, or advertise." Compl. at ¶¶ 18, 22-24, 28. The factual allegations of the Complaint (including photos and renderings) are decisive on this point, and the Complaint fails to assert any factual allegations to the contrary. *Id*.

There are no "unwritten policies" governing the applicability of the Sign Code to murals. The Sign Code's permit requirement applies only to signs. The murals that Plaintiffs compare their sign to ("murals" that Plaintiffs admit are "beautiful" and "vibrant," "a reflection of the charm and character of the people of Salina," and a source of "pride" that has contributed to "more than $250

---

[1] All citations to "Ex." herein refer to the Complaint's exhibits, which are lettered A, B, and C.
[2] Complaint Ex. A contains the relevant portions of the Sign Code and BID Code, which will be cited herein as "Sign Code" or "BID Code," respectively, as appropriate.
[3] The City's definition is also consistent with common understandings about what a "sign" is. Merriam-Webster defines "sign" as "a. a display (such as a lettered board or a configuration of neon tubing) used to identify or advertise a place of business or a product" or "b. a posted command, warning, or direction." https://www.merriam-webster.com/dictionary/signs

million in public and private investment . . . in less than 10 years") do not announce, direct attention to, or advertise. Compl. at ¶¶ 40, 42-44, 46, 48-49, 51-53; Ex. B at 4. Accordingly, they are not signs. *Id*. at ¶ 132. The Complaint includes no factual allegations to the contrary.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Yet the Complaint includes no factual allegations about whether the "announce, direct attention to, or advertise" element of the City's definition of sign (Sign Code § 42-764(2), a central—and dispositive—issue in this case) is content based on its face or as applied. Instead, relying on an incomplete definition of sign, the Complaint incorrectly declares that all murals are signs. Compl. at ¶ 36. With a false premise for a foundation, the Complaint constructs a case that cannot survive *Iqbal's* plausibility standard.

The Plaintiffs' (and City's) struggle is that the City cannot arbitrarily give the Cozy's advertisement preferential treatment. Ex. C at 33:16-24. Under the plain text of the Sign Code, Plaintiffs' sign is too big to qualify for a permit. Compl. at ¶¶ 74-78, 92; Ex. C at 7:9-10. Because Plaintiffs' sign cannot qualify for a permit, issuance of a Certificate of Compatibility ("COC") under the permissive standards of the BID Code would make no difference. But even if it could make a difference, the Complaint includes no factual allegations that a COC would not be issued for Plaintiffs' sign, and therefore, does not allege sufficient facts to establish Plaintiffs' standing to challenge the BID Code.

## II.   STATEMENT OF FACTS

The face of the Sign Code and BID Code do not regulate based on the topic discussed or the idea or message expressed, or target speech based on its communicative content. Compl. at ¶¶ 34, 35, 63; BID Code §§ 2-207, 2-208; Sign Code §§ 42-764, 42-781. To be a sign, a display must

be "used to announce, direct attention to, or advertise." *Id*. at ¶ 34. Plaintiffs' display is a sign as defined by the Sign Code. *Id*. at ¶¶ 18, 22-24, 28. Signs are subject to size limitations. *Id*. at ¶ 58. Persons or entities wishing to display a sign must first obtain a sign permit. *Id*. at ¶ 58. Plaintiffs began work on their sign prior to obtaining a permit. *Id*. at ¶¶ 25, 93. Plaintiffs' sign is too big to qualify for a permit. ¶¶ 74-78, 92. The City requested Plaintiffs stop work on the sign because it exceeded the size limit that is set out in the Sign Code. *Id*. at ¶¶ 26, 78, 92.

### III.   STANDARD OF REVIEW

In reviewing a Motion to Dismiss, Courts may "consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Federal court jurisdiction is limited to cases and controversies. *Altas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022). Plaintiffs "bear[] the burden of establishing" standing and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Id*. "If a plaintiff lacks standing, the court lacks subject-matter jurisdiction." *Ceska Zbrojovka Defence SE v. Vista Outdoor, Inc.*, 79 F.4th 1255, 1259 (10th Cir. 2023). In considering a motion under F.R.C.P. 12(b)(6), courts "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Id.* at 1201-02. The evaluation of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

F.R.C.P. 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. In other words, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d

4

1106, 1110 (10th Cir. 1991). "Dismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocs.*, 680 F.3d at 1202.

## IV.     ARGUMENT

### A. The Complaint Must be Dismissed Because Plaintiffs Lack Standing.

Plaintiffs have not alleged facts to show that a favorable decision respecting the challenged provisions of the Sign Code and BID Code would redress their injuries. Standing requires "injury in fact," that is not "'conjectural' or 'hypothetical,'" a causal link "between the injury and the conduct complained of," and a likelihood that "the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When a plaintiff cannot "put up its sign even if it achieved total victory," the plaintiff lacks standing to challenge a sign or zoning code. *Harp Advert. Illinois, Inc. v. Vill. of Chicago Ridge, Ill.*, 9 F.3d 1290 (7th Cir. 1993).

Here, Plaintiffs lack standing to challenge the BID Code. Even if the City issued a COC, Plaintiffs' sign would continue to exceed the Sign Code's size limit. As such, it does not qualify for a sign permit and thus Plaintiffs would still be unable to display it. Compl. at ¶¶ 74-78. Accordingly, Plaintiffs cannot satisfy the redressability element of standing. Further, the BID Code was not applied to Plaintiffs. A City representative asked Plaintiffs to pause work on the sign because the representative perceived it as a regulated sign that exceeded Sign Code size limits. *Id.* at ¶ 26.  The City did not address whether the sign qualified for a COC. *Id.* at ¶¶ 63, 74-78.

Finally, the Complaint fails to allege any factual allegations that Plaintiffs could not obtain a COC under the BID Code.  The BID Code directs that a COC be reviewed along with a sign permit. Compl. at ¶ 63; BID Code § 2-207(c) ("If the work requiring a [COC] requires any other type of permit, the permit shall not be issued unless [COC] has been issued for work") and § 2-208 (requiring COC review in conjunction with the standard building permit review process). The

BID Code requires the DRB to grant a COC if they find that any one of five criteria set forth in BID Code § 2-208(1)-(5) is met. Compl. at ¶ 63. Absent from the Complaint are any allegations that Plaintiffs' sign could not meet even one of these permissive requirements, or that the City made such a determination.

Moreover, Plaintiffs lack standing to challenge the definition provisions of the Sign Code as the unchallenged size limits are what precludes Plaintiffs from displaying their sign. Plaintiffs' display announces, directs attention to, and advertises, and as such it is subject to size limits of the Sign Code. Compl. at ¶¶ 18, 22-24, 37-38; Sign Code § 42-764. Plaintiffs' sign is located in the C-4 commercial zoning district, which allows three square feet of sign for each lineal foot of building frontage. *Id.* at ¶¶ 74-75. The Cozy has a maximum sign allowance of 63 square feet under Sign Code § 42-521(b), its existing signs occupy 52.88 square feet, so it has 10.12 square feet left for additional signage. *Id.* at ¶¶ 75-77. Plaintiffs' sign exceeds the size limit in the C-4 district, as the sign is approximately 528 square feet. *Id.* at ¶ 78. The Complaint does not challenge the constitutionality of the size limit set forth in the Sign Code. *See generally*, Compl. Even if Plaintiffs were successful in convincing this Court to strike down the Sign Code's allegedly content based classification or "vague" standards, Plaintiffs are left without a remedy because their sign is too large to qualify for a permit. *See, e.g.*, *Harp Advert. Illinois, Inc.*, 9 F.3d at 1290; *Get Outdoors II, LLC v. City of San Diego*, 381 F. Supp. 2d 1250, 1259-60 (S.D. Cal. 2005).

### B. The Complaint Fails to State a Plausible Claim that the Sign Code or BID Code is Content-Based or Constitutes an Impermissible Prior Restraint, Thus Plaintiffs' First Claim for Relief Must be Dismissed.

*1. The Sign Code is Content-Neutral on its Face.*

"To find a provision facially unconstitutional, [courts] must conclude that any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas*." Am. Target*

6

*Advert., Inc. v. Giani*, 199 F.3d 1241, 1246–47 (10th Cir. 2000) (quotations omitted). Under *Reed v. Town of Gilbert, Arizona*, a regulation is content based if: (1) its text draws distinctions among signs based on "the topic discussed or the idea or message expressed"; or (2) if the regulation "cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" 576 U.S. 155, 164 (2015) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

A regulation is not content based and subject to heightened scrutiny merely because it requires a reading of the sign to determine who is speaking and what they are saying to apply the regulation. *Austin*, 596 U.S. at 69. Indeed, the *Austin* court expressly rejected that proposition. *Id.* Instead, it found that an examination used to inform whether the regulation applies "only in service" of applying a time, place or manner restriction is "agnostic to content." *Id.* at 69, 71-72.

Here, the Complaint fails to allege sufficient facts to state a plausible claim that the Sign Code and the BID Code are content based. In fact, it confesses the text of the Sign Code is content neutral with regard to the distinctions it complains about: "The sign code—as written—doesn't distinguish between signs that contain messages pertaining to the goods or services sold, and signs that contain messages that are unrelated to any goods or services sold, when determining size restrictions." Compl. at ¶ 39. While there are plenty of unsupported and conclusory allegations to the contrary, the Complaint contains no factual allegations that the face of the Sign Code and the BID Code regulate based on "topic discussed or the idea or message expressed" or target speech "based on its communicative content." *Austin*, 596 U.S. at 69, 73-74. Further, the City can read a sign to determine whether a regulation applies while remaining agnostic as to content.

The purpose statements in the Sign Code and BID Code are content neutral. Sign Code § 42-500, BID Code § 2-206. The Sign Code is not concerned with what the sign announces, directs

7

attention to, or advertises. If the display fits the definition of sign, then it requires a permit and must satisfy the time, place, or manner restrictions of sections 42-501, 42-502, 42-503, and 42-521(4)b. Compl. at ¶¶ 37-38, 58. The BID Code is a set of architectural design standards that do not reference content at all. BID Code § 2-200, *et seq*. In general, regulation under the BID Code is implicated when permits are requested for construction, alteration, demolition, or exterior aesthetic changes of buildings. BID Code §§ 2-207 and 2-208. Since the Sign Code addresses only the "time, place, and manner" of speech, and the BID Code only incidentally affects speech in a content neutral manner, and because neither the Sign Code nor the BID Code cross any threshold into content based territory, they are both content neutral. *Ward*, 491 U.S. at 791.

The Complaint's contention that the Sign Code and BID Code are unconstitutional because they are allegedly "speaker based" misstates the applicable law. Compl. at ¶¶ 123, 128. Whether a regulation is speaker based is "the beginning of the inquiry, not the end." *Reed*, 576 U.S. at 170. A speaker based regulation demands strict scrutiny only when the "speaker preference reflects a content preference." *Id*. at 170; *see also Timilsina v. West Valley City*, 121 F. Supp. 3d 1205, 1218 (D. Utah 2015). As a matter of law, regulations that simply target advertising do not "target speech based on its communicative content." *Reed*, 576 U.S. at 163.

    2.  *The Sign Code is Content-Neutral As-Applied.*

The Complaint fails to state a plausible as-applied claim because the City applied the facially content neutral Sign Code, as written, to Plaintiffs' sign.  Compl. at ¶¶ 74-78, 92. It is "an uncontroversial principle . . . that a plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014).

Here, Plaintiffs state merely conclusory allegations that, "as applied," the Sign Code

8

violates the First Amendment. Compl. at ¶¶ 174, 198-99. The BID Code was not applied to Plaintiffs. *Id*. at ¶¶ 26, 74-78, 92. Because Plaintiffs' sign is too big to qualify for a sign permit under the Sign Code, it makes no difference whether Plaintiffs obtain a COC for their sign. *Id*. ¶¶ 29, 74-78, 90, 92, 120. Plaintiffs have not alleged that their sign would not qualify for a COC, but instead provide evidence suggesting that a COC could be issued—several City Commissioners consider the sign to be aesthetically pleasing. *See* Ex. C. at 30:9-10, 32:4; BID Code § 2-208.

Even if this Court finds the City applied the BID Code to Plaintiffs' sign, the crux of Plaintiffs' as-applied challenge is that, since Plaintiffs' display "advertises," it is a sign that is subject to regulation. The Complaint fails to allege facts that the City's determination that Plaintiffs' sign is an advertisement (and therefore regulated under the Sign Code) is incorrect or discriminatory based on the actual content of Plaintiffs' sign. *See* Compl. at ¶¶ 30-35, 39, 55-57, 65-67, 72, 80-87, 92, 118, 122-123, 128-142, 149-152, and 166-167. None of the allegations in the Complaint provide any facts to support a claim that the City discriminated against the specific contents of Plaintiffs' advertisement. Indeed, the Complaint suggests that the City likes the Plaintiffs and their sign, and would have liked Plaintiffs to "stay and join the conversation" to work out "what would it take for [Mr. Howard] to turn this into a mural rather than a sign." Ex. C at 27:24-25 and 28:1-8. The Complaint shows the City works diligently to advance its legitimate interests in a way that is content neutral, fundamentally fair, and standards-based across the board. *See, e.g.*, Ex. C at 4:8-24, 5:8-6:11, 7:4-9:16, 9:23-10:10.

3. *The Sign Code Satisfies the Intermediate Scrutiny Test.*

As a content neutral regulation, the Sign Code is subject to the relaxed "intermediate scrutiny" test set out in *Ward v. Rock Against Racism. See* 491 U.S. at 797. This is germane because not only is the Sign Code content neutral, but also the Complaint asks this Court to find that "[e]ven

if the City's discrimination of messages related to a business" (that is, commercial speech) "were somehow not content based or speaker based, the City's enforcement of its mural-sign code regime against Plaintiffs still violates the First Amendment." Compl. at ¶ 149. Under the applicable test, the regulation must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791 (quotation omitted). The narrowly tailored requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id*. at 799. As a matter of law, the City's interests in aesthetics and property values are "substantial" and "legitimate." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 795 (1984); *see also Metromedia*, *Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (traffic safety and aesthetics are substantial interests).

The Sign Code survives intermediate scrutiny. The Complaint shows that the Sign Code is effective. The "sign wars" that degrade community character have been avoided, and the murals that are not signs are a "beautiful" and "vibrant" part of the community that contributes to a climate that supported about $250 million in reinvestment over a relatively short period of time. Compl. at ¶¶ 87, 3, 42, 48, 51, 53; Ex. B at 4. The Complaint further shows that Plaintiffs have ample alternative channels to communicate the information. Specifically, *without the sign that is at issue in this suit*: (1) the Cozy has been in business for more than a century, and (2) under Mr. Howard's ownership, it has generated local, national, and international media attention, has been described as "a global treasure," and is busy serving "around 45,000 customers a year." *Id*. at ¶¶ 16, 19, 21, and 31. Moreover, Plaintiffs could simply reduce the size of the sign. *Id*. at ¶ 77.

The Complaint provides no factual allegations that create any doubt regarding whether the Sign Code passes intermediate scrutiny review. Indeed, all of the allegations that are offered to

support the Plaintiffs' claim in this regard (¶¶ 149 to 163) are "no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'"—allegations that "the [Supreme] Court stated 'will not do.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

*4. Neither the Sign Code Nor the BID Code Are an Impermissible Prior Restraint.*

Prior restraints "are not unconstitutional per se." *Se. Promotions, LTD v. Conrad*, 420 U.S. 546, 558 (1975). They are permissible provided that the permitting system includes "procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Id*. at 559. One of those procedural safeguards is "standards limiting the licensor's discretion." *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 758 (1988).

The Complaint urges this Court to hold that a determination of whether a display "pertains to the goods or services for sale" is "unbridled" because there are no further "guidelines or criteria for judging whether or not a mural pertains to the goods or services for sale." Compl. at ¶¶ 165-66. The standard in the Sign Code is actually whether the display (among other possible things) "advertises." That standard is ubiquitous. *See Austin,* 596 U.S. at 64-65. It is also constitutionally sufficient. It is particularly clear when the advertisements pertain to "goods or services for sale." Consider the strikingly similar case of *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359 (4th Cir. 2012).

In *Wag More Dogs*, a doggy day care facility painted a "mural" on an exterior wall that faced a municipally owned dog park. *Id*. at 363. The "mural" depicted "happy cartoon dogs, bones, and paw prints," and incorporated some of the cartoon dogs from the logo. *Id*. Wag More Dogs argued, *inter alia*, that the display was not an "advertisement," but instead "noncommercial speech." *Id*. at 369. The Fourth Circuit was not persuaded. It held that the display was commercial

11

speech because it "was meant to attract customers," it included dogs from the company's logo (which, it held, was "analogous to referencing a specific product"), and it sought to create goodwill with potential customers. *Id*. at 370 (emphasis added).

The BID Code does not relate to advertisements. Under the BID Code, a COC is issued if any one of five criteria set out in BID Code § 2-208 are met. BID Code § 2-208(1)-(5). These criteria are clear, *very permissive*, and constitutionally sufficient in their own right. The Sign Code and BID Code both include sufficient standards to bridle the discretion of the decision-maker and are therefore constitutionally permissible.

### C. In the Alternative, Plaintiffs' Content Based Claim Must be Dismissed Because the Sign Code Passes the Commercial Speech Test.

Assuming *arguendo* this Court finds the Sign Code distinguishes between "signs" and "murals" based on whether the display is commercial speech or noncommercial speech, the commercial-noncommercial distinction is not a classification of speech that renders a sign code content based. Commercial speech is an advertisement that refers to a particular product, whose speaker has an economic motivation. *See Bolger v. Youngs Drug Prod. Corp*., 463 U.S. 60, 66-67 (1983); *see also, Wag More Dogs*, 680 F.3d at 363, 370.

Commercial speech enjoys "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Bd. of Tr. of State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989). Regulations that differentiate between commercial and noncommercial speech, without more, are not considered content based. *See Metromedia,* 453 U.S. at 504-06. Commercial speech is subject to intermediate standard of review, that is, commercial speech regulations "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)). "[T]he

city's interest in attempting to preserve [or improve] the quality of urban life is one that must be accorded high respect." *Taxpayers for Vincent*, 466 U.S. at 807 (quotation omitted). A City may constitutionally prevent "the visual assault . . . presented by an accumulation of signs . . . ." *Id*.

The Salina Code is content neutral on its face. However, nothing in *Reed* (which dealt only with content based classifications of noncommercial speech) or *Austin* prohibits the City from regulating commercial speech differently from noncommercial speech. The longstanding rule is simply that commercial speech cannot be favored over noncommercial speech. *Metromedia*, 453 U.S. at 504-06. Because an essential ingredient of Plaintiffs' display is "advertisement," Plaintiffs' display is a "sign." The Complaint alleges that Plaintiffs' sign is commercial in nature. Compl. at ¶¶ 131, 133-136, and 138.

The Complaint provides allegations of fact that, indeed, the City's sign regulations are working to advance the City's substantial interests and are narrowly-tailored. *See Supra* at Section B(3). The Sign Code allows for a generous amount of commercial signage. Prior to Plaintiffs' decision to paint its sign, the Cozy had not fully utilized its sign allowance. Compl. at ¶ 77.

**D. Plaintiffs' Second Claim for Relief Must be Dismissed as the Sign Code and the BID Code Are Not Unconstitutionally Vague, and Plaintiffs Cannot Be Heard to Challenge the Sign Code on a "Void for Vagueness" Theory.**

An ordinance is "unconstitutionally vague for one of two reasons: it either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or it 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The Complaint's void-for-vagueness allegations closely mirror its prior restraint allegations. *Compare* Compl. ¶¶ 166-68 *to* 181-83; 169-171 *to* 184-186. Essentially, the Complaint urges this Court to find that the City is not equipped to identify a display that "announces, directs

13

attention to, or advertises," and further, that the standards in BID Code § 2-208 are similarly unintelligible. But the task of identifying business advertising, particularly when it is performed in the way that is framed by the Complaint, is a "very basic test" that is "not unconstitutionally standardless or vague . . . ." *Wag More Dogs, LLC*, 795 F. Supp. 2d at 390.

Ordinarily, "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *U.S. v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 494–495, and n. 6 and 7 (1982)). However, the Supreme Court has "relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Id*. Yet as a matter of law, Plaintiffs cannot avail themselves to that relaxed standard because their display is commercial speech, and "the overbreadth doctrine does not apply to commercial speech." *Hoffman Estates*, 455 U.S. at 497. Put simply, Plaintiffs' speech is clearly within the scope of the City's regulation, and therefore Plaintiffs cannot be heard on the Complaint's vagueness claim against the Sign Code.

As to the BID Code (and in the alternative as to the Sign Code), "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. The BID Code and the Sign Code provide clear standards that ordinary people can understand, and therefore do not encourage arbitrary enforcement.

## V. CONCLUSION

For the above stated reasons, Plaintiffs lack standing to bring the Complaint. Further, the Complaint falls short of stating a plausible claim on all counts. As such, it should be dismissed.

Dated this 27th day of March, 2024.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin<br>Bar Number 24170<br>Attorney for Defendant City of Salina, Kansas<br>CLARK, MIZE & LINVILLE, CHARTERED<br>P.O. Box 380<br>Salina, KS 67402-0380<br>Tel. (785) 823-6325<br>Fax: (785) 823-1868<br>Email: aomartin@cml-law.com | Todd G. Messenger,<br>CO Bar Number 38783<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: tmessenger@fwlaw.com | Amanda C. Jokerst<br>CO Bar Number 47241<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: ajokerst@fwlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of March, 2024, I caused the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Jeffrey Shaw and Samuel G. MacRoberts
Kansas Justice Institute
12980 Metcalf Avenue, Suite 130
Overland Park, KS 66213
Telephone: 913-213-5121; 913-213-5018
E-mail: jeff@kansasjusticeinstitute.org; sam.macroberts@kansasjusticeinstitute.org

*Attorneys for Plaintiffs*

s/ Aaron O. Martin
Aaron O. Martin