In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.**<br><br>Plaintiffs,<br><br>v.<br><br>**City of Salina, Kansas.**<br><br>Defendant. | Civil Action No. 6:24-cv-01027-TC-ADM<br><br>Verified Amended Complaint for Declaratory Judgment and Injunctive Relief; Designation of Place of Trial; Verification; Exhibits A-D. |

## Verified Amended Complaint for Declaratory Judgment and Injunctive Relief

Stephen Howard and his business Cozy Inn, Incorporated, d/b/a The Cozy Inn, bring this civil rights lawsuit for non-monetary, prospective relief against the City of Salina, Kansas.[1]

## Introduction

1. This is a civil rights lawsuit challenging the City of Salina's mural-sign code regime—both the written code and as it's enforced—that prevents Steve Howard from completing and displaying an artistic, whimsical mural on the side of the iconic business he owns, The Cozy Inn.

2. In November 2023, Mr. Howard hired a local artist to paint a whimsical mural on The Cozy's wall that reflected The Cozy and Mr. Howard's personality. Three days later, Salina told Mr. Howard he couldn't finish painting the mural. It remains unfinished.

3. Beautiful murals adorn buildings throughout Salina. But Salina picks and chooses which murals it allows and which murals it doesn't based solely on the murals' content and the identity of the speaker—and that's plainly unconstitutional. There's more on this later, but as one city official put it in a November 2023, City Commission meeting, a

[1] This Verified Amended Complaint is filed as a matter of course under Fed. R. Civ. P. 15(a)(1)(B).

hypothetical coffee shop is free to paint its entire outside wall with a dove and an olive branch because Salina considers that an unregulated mural, not a regulated sign; but the same hypothetical coffee shop can't paint its entire wall with a steaming cup of coffee because Salina considers that a regulated sign, not an unregulated mural.

4. Salina's mural-sign code regime—both the written code and the unwritten policy and practice—violate the free speech clause of the First Amendment and the void for vagueness doctrine under the Fourteenth Amendment.

5. Mr. Howard and The Cozy aren't suing Salina for money. Instead, this case seeks to vindicate their constitutional rights.

## Parties

6. Stephen Howard ("Steve Howard") is a citizen of Kansas and the United States. He is a resident of Saline County. Mr. Howard owns, operates, and is President of Cozy Inn, Incorporated, d/b/a The Cozy Inn. Mr. Howard files this suit in his capacity as the President of Cozy Inn, Incorporated, d/b/a/ The Cozy Inn, and in his individual capacity.

7. Cozy Inn, Incorporated, d/b/a The Cozy Inn ("The Cozy" or "The Cozy Inn") is a Kansas for profit corporation. The Cozy is located at 108 N. 7th Street in Salina, Kansas.

8. Defendant City of Salina, Kansas ("City" or "Salina" or "government") is a municipal corporation organized under the laws of the State of Kansas, is sued for non-monetary, prospective relief, and is capable of being sued as such. KSA § 12-101.

9. Salina may be served with process by serving the city clerk or the mayor. KSA§ 60-304(d)(3).

10. The Attorney General will be served with a copy of the proceedings.

## Jurisdiction and Venue

11. The Plaintiffs bring this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, the Declaratory Judgments Act, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and under 42 U.S.C. § 1988 to award attorney fees.

12. The Plaintiffs seek temporary, preliminary, and/or permanent prospective relief, and a declaratory judgment, all arising from Salina's mural-sign code regime—which includes the Salina's written sign code, Salina's unwritten policies and practices, Salina's Sign Permit requirement, Salina's Downtown Salina Business Improvement District review process, the Certificate of Compatibility requirement, and it's concomitant enforcement penalties ("mural-sign code regime")—as described throughout the lawsuit, that constitute violations of the First and Fourteenth Amendments to the United States Constitution. As more fully developed throughout and below, the Plaintiffs seek 1) a judgment declaring Salina's mural-sign code regime unconstitutional on its face and as applied; and 2) permanent prospective injunctive relief prohibiting enforcement of Salina's mural-sign code regime.

13. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

14. Venue lies in this Court under 28 U.S.C. § 1391 because, among other things, the events giving rise to the Plaintiffs' claims occurred in this district.

## Facts

### Steve Howard, The Cozy Inn, and Their Unfinished Mural

15. The Cozy Inn is an institution. Located in downtown Salina, it has proudly served sliders for more than 100 years.

16. Described as a "global treasure," "landmark," "destination," and "anchor," The Cozy serves around 45,000 customers a year.[2]

17. The Cozy's owner, Steve Howard, was raised in Saline County. After spending years as a maintenance worker at the local school district, he bought the iconic business in 2007.

18. Mr. Howard has been "blessed with a sense of homespun marketing and imagination, intense work ethic, and a sincere passion for the fare."[3]

---

[2] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7

[3] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7

19. Since he bought The Cozy, it has been featured on Travel Channel's "101 Tastiest Places to Chown Down," and "America's Top Ten Hamburgers." USA Today has picked it as the "Best Burger Joint in Kansas."

20. For decades—at least since Mr. Howard bought it—The Cozy's walls were white, as depicted below.



21. In November 2023, Mr. Howard decided the bare walls didn't reflect his or The Cozy's personality, so he hired local artist Colin Benson to paint a mural.

22. The Cozy is small—the dining area is around 192 square feet—and every burger is famously served with onions. The Cozy's distinctive "pungent onion-esque aroma" "evokes thoughts of home and tradition, a special charm[.]"[4]

23. With that in mind, Mr. Howard decided the mural should include the phrase "Don't fear the smell! The fun is inside!!"

24. The whimsical mural would depict burger-esque flying saucers piloted by aliens attacking The Cozy with blasts of ketchup and mustard.

25. With a handshake and a promise to pay, Mr. Benson started the mural almost immediately, on Friday, November 3, 2023.

[4] Tim Unruh, *Cozy Inn a global treasure in downtown Salina*, Salina Post (March 7, 2022), available at https://salinapost.com/posts/0ba8fc2d-d1f7-4605-a9b4-e5d50a63efe7

26. By Monday, November 6, 2023, a Salina representative ordered Mr. Howard to stop or pause painting the mural—because it perceived the mural as a regulated sign, rather than an unregulated mural.

27. This is the unfinished mural:




28. Below is a rendition of what the mural would look like, once completed:




29. Mr. Howard does not want to change, alter, or deviate from the rendition directly above ("completed rendition"). As stated in a news article, "[I]t's artwork[.] It's my expression. It's my character going on my wall. I want to paint my wall." Nate King, *Cozy Inn Hamburgers 'sign' put on hold pending city approval*, Salina Post (Nov. 14, 2023).[5]

[5] Available at https://salinapost.com/posts/343e570a-c5e2-4f10-af08-9fc6537d086c

30. Salina's position is that the mural violates the law because it pertains to The Cozy's business—selling hamburgers.

Salina's Mural-Sign Code Regime
Overview

31. Salina regulates signs—and their sizes—through its written sign code, its permitting process, its Downtown Salina Business Improvement District review process, its Certificate of Compatibility requirement, and its concomitant enforcement penalties.

32. Under its unwritten policy and practice though, Salina *doesn't* regulate what it considers to be murals. Put differently, Salina's written sign code doesn't mention "murals" at all, but in practice, Salina allows them—unregulated—based solely on the murals' content or the speaker. Salina takes the position that if the content of a mural "includes a message that pertains to the goods or services for sale" the mural is not a mural but "a sign and makes it subject to the sign code." Asia Cymone Smith, *City puts pause on Salina mural, restaurant owner says, 'I believe we'll work through this,'* KSN (Nov. 13, 2023).

33. Salina's Director of Community and Development Services verbalized Salina's unwritten policy and practice of differentiating between unregulated murals and regulated signs when she explained at a Salina City Council meeting that "[i]f the coffee house has a dove with an olive branch and it says the word 'peace' on the side of it, that – that's not a sign," but is instead an unregulated mural. Exhibit A, pg. 23, ln. 13-15. By contrast, "if we had a steaming cup of coffee and a coffee pot on the side," that would be a regulated wall sign. Exhibit A, pg. 23, ln. 24-25 – pg. 24, ln. 1-4. What's more, this very same mural of "a steaming cup of coffee" would be considered an unregulated mural if it was painted a building "on the other side of town unrelated to anything" at that location. Exhibit A pg. 26, ln. 17-22.

34. Salina's distinction between murals and signs—based solely on the artwork's content or the speaker—is not found anywhere in its written codes.

Salina's Written Sign Code and Unwritten Policies and Practices

35. Salina regulates signs through Article X of its zoning code. Salina City Code § 42-500 *et seq*. Relevant portions of the City Code are attached as Exhibit B.

36. Under Section 42-764 of the City Code, a "sign" is broadly defined as:

Sec. 42-764. - Sign.

*Sign* is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:

(1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground;

(2) Is used to announce, direct attention to, or advertise; and

(3) Is not located inside a building.

(Code 1966, § 36-1301(145))

37. Under the Code's text, "any writing," "pictorial representation," "emblem," "flag," "banner," "streamer," "pennant," "string of lights," or "display that is calculated to attract the attention of the public" is considered a regulated "sign."

38. Under the Code's text, a catch-all provision exists for "any other figure of similar character" to the above types of signs, which (1) is a part of or attached to a structure, (2) is used to announce, direct attention to, or advertise, and (3) is not located inside a building."

39. Under the Code's text, the catch-all provision doesn't apply to "any writing," "pictorial representation," "emblem," "flag," "banner," "streamer," "pennant," "string of lights," or "display that is calculated to attract the attention of the public." Instead, it is a stand-alone definition of what constitutes a "sign."

40. Among many other exemptions, the Code's text exempts the following types of signs from the code's requirements: "[n]oncommercial flags displayed on private property," "[s]coreboards in athletic stadiums," and "[w]indow signs affixed to the interior that do not display an advertising message or cover more than thirty-three (33) percent of the total window area on a single wall." Section 42-504(1),(8),(9).

41. Under Section 42-781 of the Code, a "wall sign" is:

Sec. 42-781. - Sign, wall.

*Wall sign* is a sign fastened to or painted on a wall of a building or structure in such a manner that the wall becomes merely the supporting structure or forms the background surface, and which does not project more than twelve (12) inches from such building.

(Code 1966, § 36-1301(162))

42. Wall signs are permitted in every zoning district in the city. Salina City Code §§ 42-516 through 42-524.

43. Each zoning district has different size-restrictions. *Id.*

44. When determining size restrictions, Salina's written sign code doesn't distinguish between signs that contain messages pertaining to the goods or services sold, and signs that contain messages that are unrelated to any goods or services sold.

45. When determining size restrictions, Salina's written sign code doesn't distinguish between signs that "announce, direct attention to, or advertise" and those that do *not* "announce, direct attention to, or advertise."

46. Under the written sign code's text, every wall sign is supposed to be subjected to the same size limitations, within the corresponding district.

47. The written sign code does not define the following: "display," "pictorial representation," "calculated to attract the attention of the public," "figure or similar character," "announce," "direct attention to," "advertise," "pertains to," "goods or services sold," "art," "commercial speech," or "noncommercial speech."

48. Salina's written code doesn't mention, define, or describe "mural" either.

49. Under its ordinary definition, a "mural" is a "painting executed directly on to a wall or ceiling as part of a scheme of decoration,"[6] or "a large picture that has been painted on the wall of a room or building."[7]

50. Based on the Code's text, *any* outdoor mural is a wall sign. A mural is a "pictorial representation," "emblem," or "display that is calculated to attract the attention of the

[6] The Oxford English Dictionary, available at https://www.oed.com/search/dictionary/?scope=Entries&q=mural

[7] The Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/mural

public," after all. Alternatively, every outdoor mural would fall within the catch-all provision since it is painted on a building or structure and directs attention to the mural or the building on which it is located.

51. Salina, however, has created an unwritten policy and practice which exempts what it deems to be "murals" from the regulation of the sign code, even though they fit the definition of a wall sign under its written code.

52. Under Salina's unwritten policy and practice, if a mural's content doesn't pertain to the business on which it sits, it's an exempt "mural."

53. On the other hand, under Salina's unwritten policy and practice, if the mural's content *does* pertain to the business, it's a regulated sign, not an unregulated mural.

54. Under Salina's unwritten policy and practice, if the content of a mural "includes a message that pertains to the goods or services for sale," then the mural is a regulated sign; but if the artwork conveys any other content or message, then it's unregulated. Asia Cymone Smith, *City puts pause on Salina mural, restaurant owner says, 'I believe we'll work through this,'* KSN (Nov. 13, 2023).

55. In addition to the size limitations found in the sign code, no regulated sign may be created without first obtaining a sign permit from the city. Salina City Code §§ 42-501 & 42-502.

56. Salina must issue or refuse a sign permit within 10 days after receipt of the application. Salina City Code § 42-502(b).

57. On good faith belief, Salina does not require murals exempted by Salina's unwritten policy and practice to obtain a sign permit.

58. Salina has also created the Downtown Salina Business Improvement District Number 1, which Salina alleges includes The Cozy.

59. Salina requires property owners in the Downtown Salina Business Improvement District Number 1 to submit applications to a Design Review Board (DRB) for a Certificate of Compatibility before they "change the existing exterior design, material, color, texture, finish, or appearance of any building" or "[i]ntroduce, change, substitute, or remove any physical feature affecting the appearance of real property." Salina City Code § 2-207(a).

60. Per Salina City Code § 2-208, the DRB may only approve a Certificate of Compatibility if it finds one of the following:

> (1) The general design, material and color of the proposed construction or change present an aesthetically pleasing overall image.
>
> (2) Environmentally harmful effects caused by the clash of contemporary materials with those of older origin, are avoided.
>
> (3) The distinguishing original qualities or character of a building, structure or site and its environment are not to be destroyed and the removal or alteration of any historical material or distinctive architectural features is avoided where possible.
>
> (4) The proposed use of banners, awnings, or canopies incorporates the use of appropriate materials, colors and graphics, and is compatible with the overall building design.
>
> (5) Any proposed demolition includes appropriate grading and landscaping of the building site in a manner compatible with the adjoining buildings and streetscape.

61. On information and good faith belief, numerous murals exist within the Downtown Salina Business Improvement District Number 1.

62. On information and good faith belief, it is the policy and practice of Salina to exempt murals in the Downtown Salina Business Improvement District Number 1 that it considers "art" from the requirement of obtaining a Certificate of Compatibility from the Design Review Board, while it requires that murals it considers "signs" to obtain a Certificate of Compatibility from the Design Review Board.

63. For instance, in 2015, when the Salina Arts Center installed a ceramic tile mural on its exterior façade, Salina took the position that "an art installation does not fall within the scope of authority of the DRB." Exhibit C, Design Review Board 04-23-2015 Agenda and Packet.

64. On information and good faith belief, under Salina's unwritten policy and practice, if a mural's content doesn't pertain to the business on which it sits, it's a "mural" or "art installation" and doesn't need a permit or Certificate of Compatibility.

65. On the other hand, on information and good faith belief, under Salina's unwritten policy and practice, if Salina thinks the mural's content *does* pertain to the business, it's a regulated sign, not an unregulated "mural" or "art installation," and requires a permit and Certificate of Compatibility.

Salina's Civil and Criminal Enforcement Penalties

66. Violations of the zoning code, of which the sign code is a part, are a misdemeanor, punishable by a fine of between $50 and $500, with each day being considered a new offense. Salina City Code § 42-599.

67. Section 2-200, *et seq.*, relating to the requirement to obtain a Certificate of Compatibility from the Downtown Salina Business Improvement District Number 1, contains no specific penalty for violations. As a result, the general penalty for violations of the City Code, § 1-10, applies. Under § 1-10, any violation is a misdemeanor punishable by a fine of not more than $500 and/or a period of imprisonment not exceeding six months, with each day being considered a new offense.

Salina Encourages Murals—Just Not The Cozy's: Salina Unconstitutionally Discriminates through its Mural-Sign Code Regime.

68. Salina is home to a thriving and dynamic mural scene.

69. Indeed, the proliferation of murals throughout Salina is now used to attract visitors to Salina:




70. Many of the murals are supported with public resources.[8] Photographs of many of these publicly supported murals are attached. Exhibit D. On good faith belief, the murals depicted in Exhibit D do not comply with the size restrictions for wall signs in the sign code.

[8] https://www.salinaarts.com/public_art/artwork-alley/

71. On good faith belief, Salina did not require a sign permit or Certificate of Compatibility for the murals in Exhibit D.

72. Plaintiffs don't want Salina to remove or otherwise restrict the beautiful murals throughout Salina, even though, on good faith belief, the murals are not compliant with the size restrictions of the Sign Code and were painted without permits or Certificates of Compatibility.

73. For example, Salina owns and operates Fire Station # 2, located at 1110 S. Santa Fe Avenue, which features a mural that "honors the services and allegiance of those firefighters who diligently serve Salina."[9]

74. This is a depiction of the mural at Fire Station # 2:



75. On good faith belief, Fire Station # 2's mural doesn't comply with Salina's sign code size restrictions.

76. On good faith belief, Fire Station # 2's mural was painted without a sign permit or Certificate of Compatibility.

77. The mural at Fire Station # 2 is a "pictorial representation" or "display calculated to attract the attention of the public" and it's "painted on" a structure.

[9] https://www.salinaarts.com/public_art/fire-station-2/

78. The mural at Fire Station # 2 "directs attention to" Fire Station # 2.

79. Based on a plain reading of the Sign Code, the mural at Fire Station # 2 is considered a sign.

80. Based on the ordinary dictionary meaning of "mural" and Salina's definition of a "sign" and "wall sign," the mural at Fire Station #2 is classified as a sign.

81. Salina is host to the Boom! Salina Street Art and Mural Festival,[10] and the Salina Kanvas Project,[11] where many of the murals are showcased.

82. On good faith belief, the murals from the Boom! Festival and the Salina Kanvas Project do not comply with the size restrictions for wall signs in the sign code.

83. On good faith belief, the murals of the Boom! Festival and the Salina Kanvas Project were painted without a sign permit or Certificate of Compatibility.

84. For example, one mural showcased by the Salina Kanvas Project is found at The Yard,[12] a private "first class training facility for baseball and softball players of all ages":[13]




85. On good faith belief, the mural at The Yard doesn't comply with Salina's sign code size restrictions.

86. On good faith belief, the mural at The Yard wasn't painted with a sign permit or Certificate of Compatibility.

[10] https://www.boomsalina.art/
[11] https://www.kanvasproject.com/
[12] https://www.kanvasproject.com/projects/the-yard
[13] https://sikestyle.myportfolio.com/the-yard-murals

87. The mural at The Yard is a "pictorial representation" or "display calculated to attract the attention of the public" and it's "painted on" a structure.

88. The mural at The Yard "directs attention to" The Yard.

89. Based on a plain reading of the Sign Code, the mural at The Yard is considered a sign.

90. The University of Kansas School of Medicine and School of Nursing have a mural at the Salina Campus:[14]




91. On good faith belief, the mural at the KU Salina Campus doesn't comply with Salina's sign code size restrictions.

92. On good faith belief, the mural at KU Salina Campus wasn't painted with a sign permit or Certificate of Compatibility.

93. The mural at KU Salina Campus is a "pictorial representation" or "display calculated to attract the attention of the public" and it's "painted on" a structure.

94. The mural at KU Salina Campus "directs attention to" the KU Salina Campus.

95. Based on a plain reading of the Sign Code, the mural at KU Salina Campus is considered a sign.

96. The Salina Art Center has a ceramic tile mural:

[14] https://www.facebook.com/photo/?fbid=816942050219919&set=a.559319332648860&locale=ms_MY




97. Salina considers this ceramic tile mural "similar in function to a sign or logogram that will direct the public to the gallery and educational activities within the Art Center building." Exhibit C.

98. On good faith belief, the mural at the Salina Art Center doesn't comply with Salina's sign code size restrictions.

99. On good faith belief, the mural at Salina Art Center wasn't created with a sign permit.

100. Salina exempted the mural at Salina Art Center from the Certificate of Compatibility requirement because it considered the mural to be "art." Exhibit C.

101. The mural at Salina Art Center is a is a "pictorial representation" or "display calculated to attract the attention of the public" and it is "attached to" a structure.

102. The mural at the Art Center "directs attention to" the Art Center.

103. Based on a plain reading of the Sign Code, the mural at Salina Art Center is considered a sign.

104. One iconic mural is the Mural at the Mill, by world-renowned Australian artist Guido Van Helten, depicted below.[15]

[15] https://www.kanvasproject.com/projects/mural-at-the-mill



105. The Mural at the Mill towers over Salina. Described by some as the "intersection of art and commerce," the hope was the roughly 100-foot tall mural would cause outsiders to spend more time in Salina, and in turn, spend their money there.[16]

106. On good faith belief, the Mural at the Mill doesn't comply with Salina's sign code size restrictions.

107. On good faith belief, the Mural at the Mill wasn't painted with a sign permit or Certificate of Compatibility.

108. The Mural at the Mill is a "pictorial representation" or "display calculated to attract the attention of the public" and it's "painted on" a structure.

109. The Mural at the Mill "directs attention to" the mill.

110. Based on a plain reading of the Sign Code, the Mural at the Mill is considered a sign.

[16] Charles Rankin, *'Mural at the Mill' celebrates completion with ribbon-cutting in downtown Salina*, Salina Journal (Oct. 21, 2021); 'Mural at the Mill', Salina, Kansas, Atlas Obscura, available at https://www.atlasobscura.com/places/mural-at-the-mill-salina-kansas (last viewed April 2, 2024); https://www.kanvasproject.com/projects/mural-at-the-mill

111. On good faith belief, Salina has never enforced its mural-sign code regime against the murals at Fire Station # 2, The Yard, KU Salina Campus, Salina Art Center, or the Mural at the Mill.

112. On good faith belief, Salina has never enforced its mural-sign code regime against any of the murals showcased in the Salina Kanvas Project or Boom! Festival.

113. Even though the murals at Fire Station # 2, The Yard, KU Salina Campus, Salina Art Center, and The Mural at the Mill, all meet the definition of a too-large wall signs, and even though each of the above murals are "pictorial representation[s]," "display[s] calculated to attract the attention of the public," and "direct attention"—and thus regulated signs—Salina treats them differently because Salina doesn't perceive them to "pertain" to goods or services for sale. Salina thus treats unregulated murals and regulated wall signs differently based on their content.

114. Salina officials make these determinations "all on the basis of a commercial message." Exhibit A pg. 10, ln. 4-5.

115. Salina believes that it is a "misunderstanding" for businesses such as The Cozy to believe that "signs and commercial speech" qualify as "art." Exhibit A pg. 5, ln 23-25. According to Salina, "[t]he important distinction here relates to commercial speech and our ability to regulate commercial speech or signs," Exhibit A pg. 5, ln. 2-4, "[a]nd I would reiterate, it's all on the basis of a commercial message," Id. at pg. 10, ln. 4-5.

116. Plaintiffs, like most residents, take pride in the beauty and creativity of the murals throughout Salina.

117. Again, Plaintiffs don't want Salina to remove or otherwise restrict the beautiful murals throughout Salina.

118. Instead, Plaintiffs want to participate in this thriving part of Salina culture through a mural on the side of The Cozy.

<u>The Cozy, Mr. Howard, and Salina's Mural-Sign Code Regime</u>

119. Following intense media coverage of Salina's decision to enforce the mural-sign code regime against Steve's mural at The Cozy, the City Commission held a hearing to discuss the application of the mural-sign code regime.[17]

120. On November 13, 2023, Salina officials appeared before a meeting of the Salina City Commission to discuss Salina's unwritten policy and practice exempting murals from the sign code and how they applied to The Cozy.

121. A transcript of the relevant portion of the City Commission meeting is attached as "Exhibit A."

122. The Cozy is located in the C-4 commercial zoning district.

123. In the C-4 commercial zoning district, the maximum sign area allowed is 3 square feet of sign for each lineal food of building frontage. Salina City Code § 42-521(b).

124. Salina contends that The Cozy has 21 lineal feet of building frontage, resulting in a maximum sign area of 63 square feet. Exhibit A pg. 16, ln. 24 – pg. 17, ln. 3.

125. Salina contends that The Cozy's existing signs already constitute 52.88 square feet of sign area, leaving 10.12 square feet of remaining square footage for an additional sign. Exhibit A pg. 17, ln. 4-11.

126. Salina contends that The Cozy's mural is approximately 528 square feet and violates the mural-sign code regime. Exhibit A pg. 17, ln. 12-18.

127. Under Salina's unwritten policy and practice, it is not relevant to the distinction between wall signs and murals whether the painting is purely images or if text is used. A mural could be purely text and a wall sign could be purely imagery. "[I]f the wording's not commercial in any way or does not have an attachment to a commercial operation," then text does not transform an unregulated mural into a regulated sign. Exhibit A pg. 27, ln 3-5; pg. 26, ln. 23 – pg. 27, ln. 6; *id.* at pg. 28, ln. 16-21.

[17] See generally https://salinapost.com/posts/343e570a-c5e2-4f10-af08-9fc6537d086c; https://www.kwch.com/2023/11/10/art-or-an-ad-city-salina-pauses-project-historic-cozy-inn-restaurant/; https://www.ksn.com/news/state-regional/city-puts-pause-on-salina-mural-restaurant-owner-says-i-believe-well-work-through-this/; https://www.ksal.com/art-or-advertising/.

128. According to the City Manager, under Salina's unwritten policy and practice, if the content of a mural "includes a message that pertains to the goods or services for sale" the mural is not a mural but "a sign and makes it subject to the sign code." Asia Cymone Smith, *City puts pause on Salina mural, restaurant owner says, 'I believe we'll work through this,'* KSN (Nov. 13, 2023).[18]

129. To illustrate this distinction, the Director of Community and Development Services discussed a mural on the outside of a hypothetical coffee house. She explained that "[i]f the coffee house has a dove with an olive branch and it says the word 'peace' on the side of it, that – that's not a sign," but is instead an unregulated mural. Exhibit A pg. 23, ln. 13-15.

130. By contrast, "if we had a steaming cup of coffee and a coffee pot on the side," that would be a regulated wall sign. Exhibit A pg. 23, ln. 24-25 – pg. 24, ln. 1-4.

131. What's more, this very same mural of "a steaming cup of coffee" would be considered an unregulated mural if it was painted "on the other side of town unrelated to anything" at that location. Exhibit A pg. 26, ln. 17-22.

132. The supposed justification for this distinction is that "the dove, the olive branch, the peace are not a part of a commercial transaction that would take place in that building or draw you to that building for a commercial transaction. Where if we had a steaming cup of coffee and a coffee pot on the side, those are things that draw you in to the use of that building. Even without a word, that illustration can suggest that commercial transaction." Exhibit A pg. 23, ln. 19 – pg. 24, ln. 4.

133. In other words, whenever someone paints any text, image, or emblem on an outside wall, Salina officials must evaluate the contents of the mural to determine if they sufficiently pertain to any business activity taking place at the location.

134. Under Salina's mural-sign code regime, if Salina officials perceive a mural's content to pertain to the goods or services for sale at the location where the mural sits, it's

[18]Available at https://www.ksn.com/news/state-regional/city-puts-pause-on-salina-mural-restaurant-owner-says-i-believe-well-work-through-this/

classified as a wall sign, and is subject to the code's size limitations, requires a sign permit, and Certificate of Compatibility.

135. Conversely, under Salina's mural-sign code regime, if Salina officials perceive a mural's content does *not* pertain to the goods or services for sale, then it's classified as a mural, is exempt from the code's size limitations, and does not require a sign permit or Certificate of Compatibility.

136. Members of the City Commission discussed how Plaintiffs could "turn this into a mural rather than a sign" by changing its content. Exhibit A pg. 27, ln 25 – pg. 28, ln. 8.

137. Salina tries justifying its unwritten policy and practice of discriminating against the content of murals it perceives pertain to a business because it allegedly fears that "sign wars" will harm "the aesthetic character of your community." Olivia Bergmeier, *Blacksmith Coffee continues conversation on small building signs in town*, Salina Post (Jan. 25, 2024).[19]

138. Salina has never defined a "sign war."

139. Salina has never explained how allowing Plaintiffs to paint a mural would trigger a "sign war."

140. Salina has never explained how a "sign war" would cause any harm to the aesthetic character of the community.

141. On good faith belief, Salina does not possess any evidence that The Cozy's mural would trigger a "sign war."

142. On good faith belief, Salina does not possess any evidence that The Cozy's mural would harm the aesthetic character of the community. On the contrary. Ex. A pg. 30, ln. 10; pg. 32, ln. 3-4 (describing mural as "beautiful," and artist's work as "high energy," and "it pops.").

143. On good faith belief, Salina does not possess any evidence that The Cozy's mural would harm property values.

144. On good faith belief, Salina does not possess any evidence that The Cozy's mural causes any safety concerns.

---

[19] Available at https://salinapost.com/posts/06567217-4e0d-49be-9a97-b05ef4b7ec7d

145. On good faith belief, Salina does not possess any evidence that murals that include a message that pertains to the goods or services for sale are more likely to trigger a "sign war" than murals that do not include a message that pertains to the goods or services for sale.

146. On good faith belief, Salina does not possess any evidence that murals that include a message that pertains to the goods or services for sale are more likely to harm the aesthetic character of the community than murals that do not include a message that pertains to the goods or services for sale.

147. On good faith belief, Salina does not possess any evidence that murals that include a message that pertains to the goods or services for sale are more likely to harm property values than murals that do not include a message that pertains to the goods or services for sale.

148. On good faith belief, Salina does not possess any evidence that murals that include a message that pertains to the goods or services for sale are more likely to cause safety concerns than murals that do not include a message that pertains to the goods or services for sale.

**Salina's Mural-Sign Code Regime and its Enforcement Injures the Plaintiffs**

149. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

150. Salina's mural-sign code regime, and Salina's policies and practices regarding the enforcement of its mural-sign code regime, violate the Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution and are void for vagueness.

151. The Plaintiffs want to complete and display the mural as shown in the rendition above, without any changes.

152. Salina has ordered Plaintiffs to halt work on the mural.

153. Salina has explained that the Plaintiffs cannot complete the mural as it is reflected in the rendition because Salina believes it's larger than allowed by the City Code. Exhibit A pg. 17, ln. 12-18.

154. Salina also informed Plaintiffs that it cannot complete the mural without first obtaining a sign permit and a Certificate of Compatibility.

155. On or about November 13, 2023, at the request of Salina, Plaintiffs submitted an application for a sign permit and for a Certificate of Compatibility to complete the mural as shown in the rendition above.

156. Salina was required to issue or deny the sign permit application within ten days. Salina City Code 42-502.

157. Salina was required to hold a public hearing of the Design Review Board to consider the Certificate of Compatibility application within 23 calendar days, Salina City Code § 2-209(2)(a), and to either approve or deny the application at the hearing, Salina City Code § 2-209(2)(d).

158. Rather than issue or deny the permit and Certificate of Compatibility in a timely manner—as required by law—Salina waited until February 8, 2024, to send Mr. Howard a letter which neither granted nor expressly denied a permit, and neither granted nor expressly denied a Certificate of Compatibility, to complete the mural as shown in the rendition above.

159. Instead, Salina acknowledged "receipt of [the Plaintiffs'] Certificate of Compatibility application" and "sign permit application." After explaining in the letter a "Certificate of Compatibility" was required, Salina placed the application "requesting approval of an existing painted wall sign/mural" "on-hold until our review of the sign regulations is complete."

160. If or when Salina chooses to amend the sign code, "Staff will then be able to facilitate a Certificate of Compatibility application to be considered by the DRB, as well as review your sign permit application."

161. According to a news report, the City Manager has indicated that in light of this lawsuit, Salina intends to pause conversations about code amendments. Jeff Garretson, *Commissioners Briefed on Cozy Legal Response*, KSAL (April 9, 2024).[20]

[20] Available at https://www.ksal.com/commissioners-briefed-on-cozy-legal-response/

162. According to a news report, Salina enforces the mural-sign code regime against other businesses, based on their content. Oliver Bergmeier, *Blacksmith Coffee continues conversation on small building signs in town*, Salina Post (Jan. 25, 2024).[21]

163. Other businesses, such as The Yard, appear to have been exempted from Salina's mural-sign code regime, even though the content of that mural appears to pertain to the goods or services sold by the business.

164. Salina's publicly available statements, its order to halt work on the mural, and its placement of the permit and Certificate of Compatibility application on-hold, presents a clear and continual threat of enforcement of Salina's mural-sign code regime against the Plaintiffs if they renew work on the mural.

165. Salina's enforcement of its mural-sign code regime against the Plaintiffs means they cannot finish the mural.

166. The Plaintiffs would be able to complete the mural if it expressed a different message Salina perceives as not pertaining to the Plaintiffs' business.

167. The Plaintiffs' speech is being chilled by Salina's enforcement of its mural-sign code regime against the Plaintiffs' mural.

168. The Plaintiffs stopped completion of the mural because of Salina's enforcement of its mural-sign code regime.

169. But for Salina's mural-sign code regime and its enforcement, the Plaintiffs' First and Fourteenth Amendment rights would not be violated.

170. The same day Salina's mural-sign code regime is enjoined and/or declared unconstitutional, or as soon as reasonably possible thereafter, the painting of the mural will continue; the Plaintiffs will not be subjected to First and Fourteenth Amendment violations.

171. But for Salina's mural-sign code regime and its enforcement, the Plaintiffs would have suffered none of these harms or injuries in the past and would suffer none of them in the future.

[21] Available at https://salinapost.com/posts/06567217-4e0d-49be-9a97-b05ef4b7ec7d

172. Salina's mural-sign code regime is ongoing, continuous, and repetitive, as are the violations of federal law, and is an ongoing, continuous, and repetitive violation of the Plaintiffs' rights under the United States Constitution.

173. Absent a judgment declaring Salina's mural-sign code regime unconstitutional, and absent issuing injunctive relief enjoining its enforcement, the Plaintiffs will continue to be subjected to an abridgement of their First and Fourteenth Amendment rights.

174. A judgment declaring Salina's mural-sign code regime unconstitutional, as described above and throughout, and an injunction prohibiting its enforcement, would allow the Plaintiffs to freely complete the mural at The Cozy.

175. There is no administrative remedy available that would provide Plaintiffs with the relief they seek.

176. The Plaintiffs have no other adequate remedy at law, other than to file this lawsuit for prospective, non-monetary relief.

**Declaratory Judgment and Injunctive Relief**

177. Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

178. An actual controversy has arisen and now exists between the Plaintiffs and Defendant concerning the Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time.

179. The Plaintiffs' injuries result from Salina's mural-sign code regime and its enforcement.

180. The Plaintiffs' injuries are concrete, particularized, and cognizable.

181. The Plaintiffs require a judicial determination of their rights against Salina as it pertains to Salina's mural-sign code regime.

182. It's appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring unconstitutional all relevant portions of Salina's mural-sign code regime at issue in this case, including Salina's written sign code, Salina's unwritten policies and practices, Salina's sign permit requirements, Salina's Downtown Salina Business Improvement District review process, the Certificate of

Compatibility requirement, and it's concomitant enforcement penalties, as described throughout.

183. Pursuant to 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Fed. R. Civ. P. 65, it's appropriate and requested that this Court issue temporary, preliminary, and permanent relief prohibiting enforcement of Salina's mural-sign code regime at issue in this case.

**Constitutional Violations**
**Claim One: First Amendment Violations**

184. The Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

185. The First Amendment provides, in part, that that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions," and "applies not only to legislative enactments, but also to less formal governmental acts, including city policies." *Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 979 (10th Cir. 2020) (cleaned up).

186. Murals and signs are protected by the First Amendment. *Morris v. City of New Orleans*, 399 F. Supp. 3d 624, 633 (E.D. La. 2019).

187. The First Amendment protects the rights of individuals, entrepreneurs, and businesses to express themselves through murals with content that a government perceives to pertain their business in some way.

188. The First Amendment also protects the rights of rights of individuals, entrepreneurs, and businesses to express themselves through murals with content that actually pertains to their business in some way.

189. The Plaintiffs' artistic mural is protected by the First Amendment, incorporated *via* the Fourteenth Amendment.

190. The Plaintiffs want to complete and display their artistic mural as reflected in the rendition above, without threat of criminal charges or fines hanging over their heads.

Salina's mural-sign code regime is a content-based and speaker-based regulation of speech

191. Salina's mural-sign code regime is a content-based regulation of speech under *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), subject to strict scrutiny, because it regulates murals differently based solely on their communicative content.

192. Salina's mural-sign code regime is also a speaker-based restriction on speech, subject to strict scrutiny, because it "favor[s] some speakers over others" and this "speaker preference reflects a content preference." *Id.* at 170.

193. Under *Reed*'s "commonsense" test, laws are content based if they "target speech based on its communicative content," if the "law applies to particular speech because of the topic discussed or the idea or message expressed," *id.* at 163 (relying in part on *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011)), or if it's "targeted at specific subject matter," *id.* at 169. If the law "draws distinctions based on the message a speaker conveys," it's a content-based regulation. *Id.* at 163.

194. It doesn't matter, for example, whether the content-based regulations were adopted for "benign" reasons, "content-neutral" justifications, or even "a lack of animus" toward the ideas expressed, they're still content based. *Reed*, 576 U.S at 165.

195. Second, laws are content-based regulations of speech if they "cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys." *Id.* at 164 (cleaned up).

196. Third, if the application of an ordinance "turn[s] on whether the speech is commercial or not, the law is content-based" as well. *Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 982 (10th Cir. 2020).

197. Outside the context of off-premises, "location-based," regulations, *see City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69, (2022), if a code enforcement officer must "read the sign"—or in this case, look at the mural—to determine whether the artwork is allowed or not, it's a content-based regulation. *Reed*, 576 U.S. at 162.

198. Under *Reed,* Salina's mural-sign code regime is a content-based, speaker-based regulation of speech.

199. Even though all murals meet the definition of a "sign" under §§ 42-764 and 42-781, Salina exempts some murals from regulation, depending on the content of the mural and the identity of the speaker.

200. Even though all murals exceed the size restrictions of the written sign code, Salina exempts some murals from the size restrictions, depending on the content of the mural and the identify of the speaker.

201. Even though the mural at The Cozy meets the regular dictionary definition of a mural, Salina insists that it is not a mural, all because Salina officials are opposed to its allegedly commercial content.

202. Even though all murals meet the definition of "sign" under §§ 42-764 and 42-781, Salina exempts some murals from regulation, depending on the content of the mural and the identity of the speaker.

203. Even though all murals "change the existing exterior design, material, color, texture, finish or appearance of any building" and "affect the appearance of real property" under § 2-207(a), Salina exempts some murals from regulation, depending on the content of the mural and the identity of the speaker.

204. The mural-sign code regime as written and enforced permits murals that don't pertain to goods or services sold.

205. That is because Salina doesn't consider murals as "signs," so long as the content of the mural doesn't pertain to goods or services sold.

206. Under Salina's mural-sign code regime, both the written code and the unwritten policy and practice, individuals or businesses can display a mural if Salina perceives the mural's subject matter as not pertaining to goods or services being sold.

207. Under Salina's mural-sign code regime, both the written code and the unwritten policy and practice, Salina allows murals which Salina does not believe pertain to goods or services sold without requiring a permit, Certificate of Compatibility, fee, or size limitations, and without demanding they be taken down.

208. Under Salina's mural-sign code regime, both the written code and the unwritten policy and practice, whether City officials deem a mural to pertain to goods or services sold, or to be artistic based on its subject matter or message, is a content-based distinction on speech.

209. If Plaintiffs were to change the content of the mural such that Salina does not consider its message to pertain to the goods sold at The Cozy—perhaps by removing any reference to hamburgers or their smell—Salina would not consider it to be a regulated sign but an unregulated mural.

210. This demonstrates Salina's antipathy toward content related to a business and commercial speech. This also demonstrates Salina's preference for content unrelated to a business and noncommercial speech.

211. When City officials deem that a mural pertains or does not pertain to goods or services sold that is also a speaker-based restriction on free speech, as it turns on the identity of who is displaying that mural.

212. Plaintiffs are prohibited from displaying the mural depicted above because Salina alleges that mural contains a message that pertains to goods sold at The Cozy—presumably because Plaintiffs sell hamburgers and the mural depicts burger-esque flying saucers—while a different individual who does not sell hamburgers, or an individual who gives hamburgers away for free, could display the exact same mural.

213. Imposing different burdens on speech depending on who is speaking and what is being said is content-based and speaker-based restriction on free speech.

214. Imposing different size restrictions on murals depending on the content of the mural and the person displaying the mural is a content-based and speaker-based restriction on free speech.

215. Additionally, murals within the Downtown Salina Business Improvement District Number 1 are subjected to additional content-based review by the Design Review Board.

216. First, murals with contents that Salina considers "art" are completely exempt from the Design Review Board process, while murals with contents that Salina does not consider "art" are subjected to the Design Review Board process.

217. Then the Design Review Board determines whether a mural "presents an aesthetically pleasing overall image," "clash[es]" with older materials or harms the "distinguishing original qualities or character of a building."

218. These determinations by the Design Review Board are based on the content of the mural under review.

219. In the alternative, if Salina believes that the sign code only applies to a "display" which is "used to announce, direct attention to, or advertise," then this too would be a content-based restriction on speech.[22]

220. If Salina officials determine that the content of a mural somehow "announces," "directs attention to," or "advertises" something, then they enforce the mural-sign code regime.

221. Conversely, if Salina officials determine that the content of a mural does not "announce," "direct attention to," or "advertise" anything, then they do not enforce the mural-sign code regime.

222. The only way Salina officials can make such a distinction is by analyzing the content of murals and applying different rules based on the content of the mural.

223. Content-based and speaker-based restrictions on speech are subject to strict scrutiny. *Reed*, 576 U.S. at 164, 170.

224. Content-based regulations of speech "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) (when government restricts speech, it "bears the burden of proving the constitutionality of its actions"). It's "rare that a regulation restricting speech because of its content will ever be permissible." *Playboy Ent. Grp., Inc.*, 529 U.S. at 818.

225. Salina cannot meet this burden.

[22] As explained above, the Plaintiffs do not believe that the language of Salina City Code § 42-764(2) is a requirement of all signs, rather, this is a catch-all provision intended to cover items that were not already covered by § 42-764.

226. Salina has no evidence that Salina's mural-sign code regime is narrowly tailored to further a compelling government interest.

227. Salina also has no evidence that its discrimination against messages that pertain to the goods or services for sale is narrowly tailored to further a compelling government interest.

228. Nor does Salina have evidence that its discrimination against messages that it does not consider to be "art" is narrowly tailored to further a compelling government interest.

229. Thus, the different treatment of speech based on speakers and content under Salina's mural-sign code regime, is an unconstitutional content-based and speaker-based restriction on speech under the First Amendment.

Even if Salina's mural-sign code regime is content- and speaker-neutral, it is still unconstitutional.

230. Even if Salina's discrimination against messages related to a business were somehow not content based or speaker based, Salina's enforcement of its mural-sign code regime against the Plaintiffs still violates the First Amendment.

231. Salina does not have sufficient justification for either its regulation of Plaintiffs' mural specifically, or its regulation of messages it perceives are related to business generally.

232. Salina's regulation of Plaintiffs' mural does not directly or materially advance a substantial, important, or compelling government interest.

233. Salina's general regulation of messages related to business does not directly or materially advance a substantial, important, or compelling government interest.

234. The Plaintiffs' mural does not present a safety hazard.

235. The Plaintiffs' mural does not present a health hazard.

236. The Plaintiffs' mural does not have a negative impact on the public welfare.

237. The Plaintiffs' mural does not present a traffic control hazard.

238. The Plaintiffs' mural does not harm the aesthetics of the surrounding area.

239. The Plaintiffs' mural does not propose a commercial transaction.

240. The Plaintiffs' mural is not related solely to the economic interests of Plaintiffs or their customers.

241. The Plaintiffs' mural is not commercial speech. *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1332 (M.D. Fla. 2009).

242. The Plaintiffs' mural is not false.

243. The Plaintiffs' mural is not deceptive.

244. The Plaintiffs' mural does not pose any risk of misleading the public.

245. Salina's mural-sign code regime does not serve Salina's interests in public safety, public health, or public welfare.

246. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, is not narrowly tailored to serve any substantial, important, or compelling government interest.

247. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, does not directly or materially advance any substantial, important, or compelling government interest.

248. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, is not substantially related to any substantial, important, or compelling government interest.

249. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, is more extensive than necessary to serve any substantial, important, or compelling government interest.

250. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, does not leave open alternative channels of communication.

251. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, is not rationally related to any legitimate government interest.

252. Salina's mural-sign code regime, and its enforcement of its mural-sign code regime against the Plaintiffs, is not narrowly tailored, and cannot survive a less-restrictive-means analysis.

253. On information or good faith belief, Salina does not have actual evidence justifying any of its First Amendment restrictions.

254. On information or good faith belief, Salina does not have any evidence justifying any of its First Amendment restrictions.

255. On information or good faith belief, Salina cannot prove that any of the alleged harms it seeks to remediate are real, or that its First Amendment restrictions will alleviate them to a material degree.

256. Salina cannot satisfy its heavy First Amendment burdens.

257. The Plaintiffs' mural is not commercial speech. But even if it were, strict scrutiny still applies. The "regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*." *Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690, 703 (6th Cir. 2020).[23] But even if *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) applies to this case, Salina's mural-sign code regime is still unconstitutional, for at least all of the reasons set forth above and throughout.

258. To the extent that Salina's mural-sign code regime is held to be a valid restriction on commercial speech, Plaintiffs preserve the right to argue that the commercial speech doctrine is incompatible with the text, history, tradition, and original public meaning of the First Amendment and must be overturned.

Unconstitutional Prior Restraint on Speech

259. The Plaintiffs reallege and incorporate by reference all the preceding paragraphs.

260. Salina's requirement that property owners first obtain a sign permit and Certificate of Compatibility before painting a mural on a wall is an unconstitutional prior restraint on speech.

261. In the area of free expression, a licensing law placing unbridled discretion in the hands of a government official or agency is an unconstitutional prior restraint because it may result in censorship.

[23] On this point—whether *Reed* applies to content-based restrictions of commercial speech—*Aptive* doesn't control. In *Aptive*, unlike here, the plaintiffs didn't challenge the application of *Central Hudson* to their case. Instead, the plaintiffs specifically *requested* its application in its motion for preliminary injunction, 1:17-cv-01545-MSK-MJW (Doc. 23) (pages 11-12), in its motion for summary judgment (Doc. 93) (page 1), and before trial, stipulated the test applied there too (Doc. 105 page 2).

262. Salina's unwritten policy and practice of distinguishing between unregulated murals and regulated signs places complete and unbridled discretion in Salina officials to analyze the content of the proposed mural and determine if it pertains to the goods or services for sale.

263. Nothing in either the written sign code or Salina's unwritten policy and practice provide Salina officials with any guidelines or criteria for judging whether or not a mural pertains to the goods or services for sale.

264. The mural-sign code regime constitutes unconstitutional prior restraint in that it doesn't contain narrow, objective, and definite standards to guide Salina, for at least all of the following reasons, whether considered individually or collectively:

a. "Mural" is not defined.
b. "Pictorial representation" is not defined.
c. "Display," is not defined.
d. "Calculated to attract the attention of the public," is not defined.
e. "Figure or similar character," is not defined.
f. "Announce," is not defined.
g. "Direct attention to," is not defined.
h. "Advertise," is not defined.
i. "Pertains to," is not defined.
j. "Goods or services sold," is not defined.
k. "Art," is not defined.
l. "Commercial speech," is not defined.
m. "Noncommercial speech," is not defined.

265. The fact that Salina appears to believe that burger-esque flying saucers painted on The Cozy pertain to the hamburgers sold at The Cozy, while the baseball themed mural at The Yard does not pertain to the baseball training services sold at The Yard exemplifies the extent of Salina's discretion.

266. The absence of express standards makes it virtually impossible to distinguish between a legitimate denial of a permit and an illegitimate abuse of censorial power.

267. Similarly, there are no established guidelines or criteria for judging whether or not a mural is "art" and exempt from the Design Review Board process.

268. Salina's determination that the mural at the Salina Art Center was "art" and exempt from the Design Review Board process, while the Plaintiffs' mural is not "art" but a regulated sign lacks any neutral standards to distinguish between legitimate regulation and illegitimated and discriminatory censorship.

269. The Downtown Salina Business Improvement District Number 1 Design Review Board lacks any established neutral criteria to ensure that its decision to grant or deny a Certificate of Compatibility is not based on the content or viewpoint of the speech being considered in the mural.

270. Indeed, its written criteria for granting or denying a Certificate, such as whether or not the mural "present[s] an aesthetically pleasing overall image," "clash[es]" with older materials or preserves the "distinguishing original qualities and character of a building" are inherently subjective, arbitrary, and capricious. Salina City Code § 2-208.

271. Additionally, Salina's decision to ignore the written deadlines for either granting or denying Plaintiffs' application for a sign permit and Certificate of Compatibility, and instead placing the application "on-hold" indefinitely, shows that Salina views its authority to issue or deny permits to be entirely unconstrained even by the terms of the written city code.

272. This total disregard for the one clear constraint on Salina's discretion – a hard deadline – concerning the Plaintiffs' application would render this prior restraint on speech to be unconstitutional even if it were otherwise completely content-neutral, speaker-neutral, and constrained by clear, neutral criteria.

273. The mural-sign code regime lacks any established neutral criteria to ensure that the licensing decision is not based on the content or viewpoint of the speech being considered.

274. The First Amendment does not allow the government to possess unbridled discretion in determining when to impose a prior restraint on speech.

275. Salina's enforcement of its mural-sign code regime is an unconstitutional restriction of speech under the First Amendment.

276. On its face and as applied, Salina's mural-sign code regime violates the First Amendment.

277. The Plaintiffs' First Amendment rights have been and will continue to be violated by Salina's mural-sign code regime.

278. Salina oversees, implements, and enforces the mural-sign code regime violating Plaintiffs' First Amendment rights and causing Plaintiffs' First Amendment injuries.

279. As a consequence of Salina's actions or inactions in the implementation and enforcement of the mural-sign code regime, Plaintiffs have been and will continue to be injured, and are therefore entitled to, among other things, declaratory judgment and prospective injunctive relief, and any other equitable or other legal relief as the court deems just or appropriate.

280. Plaintiffs have no other legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their First Amendment rights, other than to file this lawsuit for non-monetary, prospective relief.

281. Unless the mural-sign code regime's unconstitutional ordinances, regulations, rules, and policies are declared unconstitutional and their enforcement permanently enjoined, Plaintiffs and others who are similarly situated will continue to suffer great and irreparable harm. Plaintiffs therefore seek such declaratory and injunctive relief.

**Claim Two: Fourteenth Amendment Due Process Clause Violation**
**(Void for Vagueness)**

282. Plaintiff realleges and incorporates by reference all preceding paragraphs.

283. An enactment is void for vagueness if it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Welch v. United States*, 578 U.S. 120 (2016).

284. The mural-sign code regime is unconstitutionally vague in that it doesn't provide fair notice as to the conduct proscribed and because it doesn't provide explicit standards for enforcement to protect against arbitrary enforcement, for at least all of the following reasons, whether considered individually or collectively:

a. "Mural" is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.

b. "Pictorial representation" is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
c. "Display," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
d. "Calculated to attract the attention of the public," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
e. "Figure or similar character," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
f. "Announce," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
g. "Direct attention to," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
h. "Advertise," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
i. "Pertains to," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
j. "Goods or services sold," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
k. "Art," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
l. "Commercial speech," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.
m. "Noncommercial speech," is not defined, doesn't provide fair notice, and is susceptible to arbitrary enforcement.

285. The mural-sign code regime, and Salina's unwritten policy and practice of distinguishing between unregulated murals and regulated signs, do not define or otherwise establish sufficient standards necessary to prohibit or discourage seriously discriminatory enforcement.

286. Instead, Salina officials are required to examine the content of murals and determine if they believe the artwork somehow pertains to the goods or services sold in the vicinity.

287. If they believe the mural pertains to the goods or services sold then officials enforce the sign code.

288. Salina officials are also required to examine the content of murals and determine if they believe the mural is "art."

289. If they believe the mural is not "art" then officials enforce the Design Review Board process.

290. For the reasons stated in Claim One above, the criteria utilized by the Downtown Salina Business Improvement District Number 1 Design Review Board to grant or deny Certificates of Compatibility are so standardless that it authorizes or encourages seriously discriminatory enforcement.

291. In the alternative, if Salina believes that the sign code only applies to a "display" which is "used to announce, direct attention to, or advertise," then this too would be void for vagueness.[24]

292. The terms "display," "announce," "direct attention to," and "advertise," are all undefined.

293. This alternative interpretation requires City officials to examine the content of every mural and determine if it is a "display" that "announces," "directs attention to," or "advertises" something.

294. Salina lacks any standards for making these determinations, risking serious discriminatory enforcement.

295. As a consequence of Salina's standardless, unwritten policy and practice, Plaintiffs cannot know what murals may permissibly be painted on the side of The Cozy, and are injured by Salina's arbitrary enforcement, and are therefore entitled to, among other things, entry of a temporary restraining order, prospective injunctive relief, and any other equitable or legal relief as the court deems appropriate.

296. Salina's enforcement of its mural-sign code regime is unconstitutionally vague under the Fourteenth Amendment

297. On its face and as applied, Salina's mural-sign code regime violates the void for vagueness doctrine of the Fourteenth Amendment.

---

[24] As explained above, the Plaintiffs do not believe that the language of Salina City Code § 42-764(2) is a requirement of all signs, rather, this is a catch-all provision intended to cover items that were not already covered by § 42-764.

298. The Plaintiffs' Fourteenth Amendment rights have been and will continue to be violated by Salina's mural-sign code regime.

299. Salina oversees, implements, and enforces the mural-sign code regime violating Plaintiffs' Fourteenth Amendment rights and causing Plaintiffs' Fourteenth Amendment injuries.

300. As a consequence of Salina's actions or inactions in the implementation and enforcement of the mural-sign code regime, Plaintiffs have been and will continue to be injured, and are therefore entitled to, among other things, declaratory judgment and prospective injunctive relief, and any other equitable or other legal relief as the court deems just or appropriate.

301. Plaintiffs have a liberty interest in their speech and a property interest in the wall of The Cozy that is protected by the Fourteenth Amendment.

302. Plaintiffs have no other legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to their Fourteenth Amendment rights, other than to file this lawsuit for non-monetary, prospective relief.

303. Unless the mural-sign code regime's unconstitutional ordinances, regulations, rules, and policies are declared unconstitutional and their enforcement permanently enjoined, Plaintiffs and others who are similarly situated will continue to suffer great and irreparable harm. Plaintiffs therefore seek such declaratory and injunctive relief.

304. Plaintiffs have no other remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights, other than to file this lawsuit for non-monetary, prospective relief.

305. Unless the mural-sign code regime and unwritten policy and practices are declared unconstitutional and permanently enjoined, Plaintiffs will continue to suffer great and irreparable harm.

## Request for Relief

Plaintiffs respectfully request the Court grant the following relief:

306. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

307. Declaratory judgment that Salina's mural-sign code regime, as written and enforced, is an unconstitutional content-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated.

308. Declaratory judgment that Salina's mural-sign code regime, as written and enforced, is an unconstitutional speaker-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated.

309. Alternatively, if Salina's mural-sign code regime is ruled to be content-neutral and speaker-neutral, a declaratory judgment that Salina's mural-sign code regime, as written and enforced, fails to satisfy intermediate scrutiny, on its face and as applied to Plaintiffs and others similarly situated.

310. Declaratory judgment that Salina's mural-sign code regime, as written and enforced, is an unconstitutional prior restraint on speech, on its face and as applied to Plaintiffs and others similarly situated.

311. Declaratory judgment that Salina's mural-sign code regime, as written and enforced, is void for vagueness, on its face and as applied to Plaintiffs and others similarly situated.

312. For entry of temporary, preliminary, and/or permanent prospective injunctive relief, enjoining Defendant, Defendant's officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of Salina's mural-sign code regime—which includes the Salina's written sign code, Salina's unwritten policies and practices, Salina's Sign Permit requirement, Salina's Downtown Salina Business Improvement District review process, the Certificate of Compatibility requirement, and it's concomitant enforcement penalties ("mural-sign code regime")—as described throughout the lawsuit, that constitute violations of the First and Fourteenth Amendments to the United States Constitution, on their face and as applied to Plaintiffs and other similarly situated.

313. A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on The Cozy Inn, or for completing the mural on The Cozy Inn.

314. Reasonable costs and attorney fees under 42 U.S.C. § 1988; and

315. Such other legal or equitable relief as this Court deems appropriate and just.

**Jury Demand and Designation of Place of Trial**

316. Plaintiffs request a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure. Plaintiffs request the trial be held in Wichita, Kansas, due to the proximity of the parties.

Kansas Justice Institute

Dated: April 10, 2024.

/s/ Samuel G. MacRoberts
Samuel G. MacRoberts, 22781
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
Sam@KansasJusticeInstitute.org
(913) 213-5018
Attorney for Plaintiffs

Dated: April 10, 2024.

/s/ Jeffrey Shaw
Jeffrey Shaw, 29767
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
Jeff@KansasJusticeInstitute.org
(913) 213-5018
Attorney for Plaintiffs