IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Cozy Inn, Incorporated,** | ) |
| **d/b/a The Cozy Inn; Stephen Howard,** | ) |
| | ) |
| **Plaintiffs,** | ) **CIVIL ACTION** |
| | ) **CASE NO.  6:24-cv-01027-TC-ADM** |
| **v.** | ) |
| | ) |
| **City of Salina, Kansas,** | ) |
| | ) |
| **Defendant.** | ) |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant, City of Salina, Kansas ("City"), respectfully requests that Plaintiffs' Verified Amended Complaint for Declaratory Judgment and Injunctive Relief ("Complaint") be dismissed pursuant to F.R.C.P. 12(b)(1) and 12(b)(6), and in support thereof states as follows:

### I.  NATURE OF THE CASE

This First Amendment Action arises from Plaintiffs' desire to construct a wall sign that is about nine times the allowable size. K.S.A. § 12-101 empowers the City to regulate its local affairs, and like "tens of thousands" of other jurisdictions across the United States, the City regulates signs. *Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 66 (2022). The City has regulated signs for about 58 years, and its regulations are currently codified at Salina Code of Ordinances ("Salina Code"), Chapter 42, Article X ("Sign Code"). The City has also adopted a design review process for new construction, building alterations, demolition, and exterior aesthetic changes to buildings in its downtown Business Improvement District No. 1 ("BID"). That process is codified at Chapter 2, Article X, Salina Code ("BID Code"). When it applies, BID Code review is integrated into other permit review procedures. A Design Review Board conducts BID Code reviews. BID Code § 2-208.

The Sign Code and the definition of "sign" that is the central issue of this case are content-neutral on their face and as-applied. Despite the Complaint's allegations to the contrary, not all displays (including the "murals" that are shown for comparative purposes) are signs. To this end, the Complaint misconstrues the Sign Code. Consequently, its claims are constructed upon logical fallacies. Specifically, displays (writing, graphics, etc.) located outside of a building that "attract attention of the public" in order to "announce, direct attention to, or advertise" are defined as "signs" that are regulated by the Sign Code. Sign Code § 42-764(2)[1]. Such displays (including Plaintiffs' display) require sign permits. Displays that do not meet the content neutral criteria of this definition are, by definition, not signs.

The Sign Code easily passes First Amendment scrutiny. Plaintiffs' display is obviously a "sign," and the City appropriately applied the content neutral size restrictions of the Sign Code to it. Since a sign permit plainly could not be issued for Plaintiffs' sign, there was no need for additional review for a Certificate of Compatibility ("COC"). As such, the Complaint and its attached Exhibits[2] fail to state plausible claims regarding First Amendment violations (Claim One) and vagueness (Claim Two). It follows that this Court should dismiss the Complaint.

## II.    STATEMENT OF FACTS

The face of the Sign Code and BID Code neither regulate based on the topic discussed or the idea or message expressed, nor target speech based on its communicative content. Compl. at ¶¶ 36, 41, 60 (BID Code §§ 2-207, 2-208; Sign Code §§ 42-764, 42-781). To be a sign, a display must, *inter alia*, be "used to announce, direct attention to, or advertise." *Id*. at ¶ 36. Plaintiffs' display is a sign as defined by the Sign Code. *Id*. at ¶¶ 27-28, 36. Signs are subject to size limits

---

[1] Complaint Ex. B contains the Sign Code and BID Code excerpts and will be cited herein as "Sign Code" or "BID Code" as appropriate, unless otherwise noted.

[2] All citations to "Ex." refer to the Complaint's exhibits, which are lettered A, B, C, and D.

and permit requirements. *Id*. at ¶ 31, 55. Plaintiffs' sign is too big to qualify for a permit. *Id*. at ¶¶ 122-26. Plaintiffs began work on their sign prior to obtaining a permit. *Id*. at ¶¶ 25, 155. The City requested that Plaintiffs stop work on the sign because they perceived it as a sign that exceeded the size limit set out in the Sign Code. *Id*. at ¶¶ 26, 153. The City did not apply the BID Code to Plaintiffs' sign. *Id*. at ¶¶ 155-59. Application of the BID Code to a sign that cannot be permitted under the Sign Code would be futile. *Id*. at ¶¶ 153-54, 160; BID Code § 2-207(c).

### III.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. F.R.C.P. 8(a)(2) requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Courts may "consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Federal court jurisdiction is limited to cases and controversies. *Altas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022). Plaintiffs "bear[] the burden of establishing" standing. *Id*.

### IV.   ARGUMENT

#### A.   The Complaint Must be Dismissed Because Plaintiffs Lack Standing.

Plaintiffs have not alleged facts to show that a favorable decision respecting the challenged provisions of the Sign Code and BID Code would redress their injuries. Standing requires "injury

3

in fact," that is not "'conjectural' or 'hypothetical,'" a causal link "between the injury and the conduct complained of," and a likelihood that "the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). When a plaintiff cannot "put up its sign even if it achieved total victory," the plaintiff lacks standing to challenge a sign or zoning code. *Harp Advert. Illinois, Inc. v. Chicago Ridge*, 9 F.3d 1290 (7th Cir. 1993).

Here, Plaintiffs lack standing to challenge the BID Code. Even if the City issued an approval under the BID Code (a "COC"), Plaintiffs' sign still exceeds the Sign Code's size limit, thus the sign would not qualify for a permit and Plaintiffs would still be unable to display it. Compl. at ¶¶ 122-26. The Complaint includes no factual allegations that Plaintiffs could not obtain a COC under the BID Code. The BID Code directs that a COC be reviewed along with a sign permit. *See* BID Code § 2-207(c) ("If the work requiring a [COC] requires any other type of permit, the permit shall not be issued unless [COC] has been issued for work") and § 2-208 (requiring COC review in conjunction with the standard building permit review process). The Complaint fails to allege that the sign could not meet one of the permissive requirements of BID Code § 2-208(1)-(5), or that the City made such a determination. Finally, Plaintiffs' as-applied challenge to the BID Code is not ripe because the BID Code was not applied to Plaintiffs. A City representative asked Plaintiffs to pause work on the sign because the representative perceived it as a regulated sign that exceeded Sign Code size limits. *Id*. at ¶¶ 26, 126, 153. The City did not address whether the sign qualified for a COC. *Id*. at ¶¶ 122-26, 158-59.

Moreover, Plaintiffs lack standing to challenge definition provisions in the Sign Code. The Complaint alleges that the definition of "sign" must also include all "murals," but it specifically does not seek to "remove or otherwise restrict" murals. Compl. at ¶¶ 50, 72. As such, even if Plaintiffs prevail on this point, they are without a remedy because the unchallenged size limits are

4

what precludes their sign. The Complaint does not challenge the constitutionality of the size limit. *See generally*, Compl. Even if Plaintiffs successfully persuade this Court that all murals must be considered "signs," Plaintiffs will not be able to put up their sign.

### B. The Complaint Fails to State a Plausible Claim that the Sign Code or BID Code is Content-Based or Constitutes an Impermissible Prior Restraint.

1. *The Sign Code is Content-Neutral on its Face.*

"To find a provision facially unconstitutional, [courts] must conclude that any attempt to enforce such legislation would create an unacceptable risk of the suppression of ideas." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1246–47 (10th Cir. 2000) (quotations omitted). Under *Reed v. Town of Gilbert*, a regulation is content based if: (1) its text draws distinctions among signs based on "the topic discussed or the idea or message expressed"; or (2) if the regulations "cannot be 'justified without reference to the content of the regulated speech,' or . . . were adopted by the government 'because of disagreement with the message [the speech] conveys.'" 576 U.S. 155, 163-64 (2015) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). A regulation is not content based and subject to heightened scrutiny merely because it requires a reading of the sign to determine who is speaking and what they are saying to apply the regulation. *Austin*, 596 U.S. at 69. Rather, a regulation remains "agnostic as to content" when a "reading of the sign" is only necessary to draw a content neutral line. *Id*.

The text of the challenged definition of "sign" does not refer to content at all. It simply defines "sign" in a way that is consistent with common understandings, recognizing that unlike architectural features, gazebos, trellises, statuary, and other displays that provide visual interest, signs are "used to announce, direct attention to, or advertise." Compl. at ¶¶ 36, 41; Sign Code § 42-764. The text makes no reference to topics, ideas, messages, or viewpoints regarding what is announced, the objects or locations to which attention may be directed, or the contents of any

5

advertisement. *See Austin*, 596 U.S. at 71. As such, the Sign Code is "justified without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791 (citations omitted).

The Complaint's argument that the Sign Code is unconstitutional merely because a person must read a display to determine whether the regulation applies is "too extreme." Compl. at ¶ 197; *Austin*, 596 U.S. at 69. While there are many unsupported conclusory allegations to the contrary, the Complaint fails to allege any factual allegations that the face of the Sign Code and the BID Code regulate based on "topic discussed or the idea or message expressed" or target speech "based on its communicative content." *Austin*, 596 U.S. at 69, 73-74. In fact, the Complaint confesses that the Sign Code text is content neutral regarding the distinctions it complains about: "Salina's written sign code doesn't distinguish between signs that contain messages pertaining to the goods or services sold, and signs that contain messages that are unrelated to any goods or services sold, when determining size restrictions." Compl. at ¶ 44.

Further, the purpose statements in the Sign Code and BID Code are content neutral. *See* Sign Code § 42-500, BID Code § 2-206. As to the Sign Code, if the display fits the definition of sign, then it requires a permit and must satisfy the time, place, or manner restrictions of sections 42-501, 42-502, 42-503, and 42-521(4)b. The BID Code is a set of architectural design standards that do not reference content at all. BID Code § 2-200, *et seq*. Generally, the BID Code is implicated when permits are requested for construction, alteration, demolition, or exterior aesthetic changes of buildings. *See* BID Code §§ 2-207 and 2-208. Since the Sign Code addresses only the "time, place, and manner" of speech, and the BID Code only incidentally affects speech in a content neutral manner, and because neither the Sign Code nor the BID Code cross any threshold into content based territory, they are both content neutral. *See Ward*, 491 U.S. at 791.

Moreover, the Complaint's "speaker based" contentions misstate the applicable law.

6

Compl. at ¶¶ 192, 198. Characterizing a regulation as speaker based is "the beginning—not the end—of the inquiry." *Reed*, 576 U.S. at 170. A speaker based regulation demands strict scrutiny only when the "speaker preference reflects a content preference." *Id*. Regulations that merely target advertising do not "target speech based on its communicative content." *Id*. at 163.

2. *The Sign Code is Content-Neutral As-Applied.*

The Complaint fails to state a plausible as-applied claim because the City applied the facially content neutral Sign Code, as written, to Plaintiffs' sign. Compl. at ¶¶ 122-26, 153. It is "an uncontroversial principle . . . that a plaintiff generally cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014).

Here, Plaintiffs state conclusory allegations that, "as applied," the Sign Code violates the First Amendment. Compl. at ¶¶ 12, 276, 307-12. The BID Code was not applied to Plaintiffs. *Id*. at ¶¶ 155-59. Because Plaintiffs' sign is too big to qualify for a sign permit under the Sign Code, it makes no difference whether Plaintiffs obtain a COC for their sign. *Id*. ¶¶ 29, 122-26, 151, 153. Plaintiffs have not alleged that their sign would not qualify for a COC, but instead provide evidence suggesting that a COC could be issued—several City Commissioners consider the sign to be aesthetically pleasing. *See* Ex. A at 30:9-10, 32:4; BID Code § 2-208.

Even if this Court finds the City applied the BID Code to Plaintiffs' sign, the crux of Plaintiffs' as-applied challenge is that, since Plaintiffs' display "advertises," it is a sign that is subject to regulation. The Complaint fails to allege facts that the City's determination that Plaintiffs' sign is an advertisement (and therefore regulated under the Sign Code) is incorrect or discriminatory based on the actual content of Plaintiffs' sign. *See generally,* Compl. None of the allegations in the Complaint provide any facts to support a claim that the City discriminated against

7

the specific contents of Plaintiffs' advertisement. Indeed, the Complaint suggests that the City likes the Plaintiffs and their sign, and would have liked Plaintiffs to "stay and join the conversation" to work out "what would it take for [Mr. Howard] to turn this into a mural rather than a sign." Ex. A at 27:24-25 and 28:1-8. The Complaint shows the City works diligently to advance its legitimate interests in a way that is content neutral, fundamentally fair, and standards-based across the board. *See, e.g.*, Ex. A at 4:8-24, 5:8-6:11, 7:4-9:16, 9:23-10:10.

   3.   *The Sign Code Satisfies the Intermediate Scrutiny Test.*

Because the Sign Code is content neutral, the applicable test is "intermediate scrutiny." *Ward,* 491 U.S. at 797.[3] Under this test, a regulation must be "narrowly tailored to serve a significant governmental interest" and "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791 (quotation omitted). The narrowly tailored requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id*. at 799. As to "ample alternatives," "[t]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). An alternative mode of communication is constitutionally adequate if the speaker's ability to "communicate effectively" is not "threatened." *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984).

   As a matter of law, the City's interests in aesthetics and property values are "substantial" and "legitimate." *Taxpayers for Vincent*, 466 U.S. at 795. Sign clutter is akin to a "visual assault,"

---

[3] This is germane because the Complaint asks this Court to find that "[e]ven if [the City's] discrimination of messages related to a business" (that is, commercial speech) "were somehow not content based or speaker based, [the City's] enforcement of its mural-sign code regime against Plaintiffs still violates the First Amendment." Compl. at ¶ 230.

and is therefore a "significant substantive evil within the City's power to prohibit." *Id.* at 807-08; Compl. at ¶¶ 137-141. Yet both the Complaint and the law recognize that public art is a different animal—and one that provides significant public benefits. *See, e.g.,* Compl. at ¶¶ 3, 69, 72, and 116-17 (noncommercial murals—that is, public art displays—in the City are "beautiful," "attract visitors," and contribute to "pride"); Ex. D at 4 (public art helped create a climate for more than $250 million in investment in less than 10 years); *Bldg. Ind. Ass'n-Bay Area v. Oakland*, 289 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) ("It is reasonable to believe that . . . public art . . . will both improve the city's aesthetics and increase property values.").

The Complaint shows that the Sign Code is effective. The sign wars that degrade community character have been avoided, and the murals that are not signs are a beautiful and vibrant part of the community. Compl. at ¶¶ 3, 72, 116-17; Ex. D at 4. The Complaint shows Plaintiffs have ample alternative channels to communicate. Without this sign, the Cozy has generated local, national, and international media attention. *Id.* at ¶¶ 16, 16 n. 2, 19, 20-21, 25, 29, 29 n. 5. Moreover, Plaintiffs could simply reduce the size of their sign. *Id.* at ¶ 125. The Complaint provides no factual allegations that create any doubt whether the Sign Code passes intermediate scrutiny. Rather, it offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action," which "will not do." *Iqbal*, 556 U.S. at 678.

    4.  *The Complaint Misconstrues the Definition of Sign.*

Statutory construction begins with "the plain language of the law." *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991). Indeed, "absent ambiguity or irrational result, the literal language of a statute controls." *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir.1986). Words must be construed in their "ordinary, everyday sense." *Crane v. Commissioner*, 331 U.S. 1, 6 (1947). "In ascertaining the plain meaning," the court "must look to the particular . . . language

9

at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The Court must "choose the reasonable result over the 'absurd' one." *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006).

Here, the plain language of the definition of sign is limited in application to only those displays (and "any other figure[s] of similar character") that are "a structure or any part thereof, or a portable display, or [are] attached to, painted on, or in any other manner represented on a building or other structure or on the ground," are "used to announce, direct attention to, or advertise," and are "not located inside a building." Compl. at ¶ 36. The Complaint's argument that the three subparagraphs of § 42-764(1)-(3) apply only to "any other figure of similar character" is a fundamentally incorrect take on the plain text, and one that robs it of common sense. *Id.* at ¶¶ 38-9. For example, the Complaint's construction of the definition of sign would result in sign permit requirements for displays *inside of buildings*. *Id.*[4]

The Complaint's alternative construction is also misplaced. Compl. ¶¶ 50, 219. This one departs from the plain language by suggesting that the phrase "attract attention" is redundant to the phrase "direct attention to." Compl. at ¶¶ 50, 78, 94, 102, 109. The phrase "attract attention" is synonymous with "stand out," "be conspicuous," and "be noticeable." *See Attract Attention*, CAMBRIDGE DICTIONARY (https://dictionary.cambridge.org/us/thesaurus/attract-attention). By contrast, the phrase "direct attention to" is synonymous with "indicate," "point to," "point out," and "specify." *Direct Attention*, CAMBRIDGE DICTIONARY

---

[4] The Complaint's reference to The Yard is an example of this mistake. The "mural" shown at Compl. ¶ 84 is located inside a building. *See* Salina Code § 42-637 ("*Building* is any covered structure built for the support, shelter or enclosure of persons, animals, chattels or moveable property of any kind, and which is permanently affixed to the land.") (https://library.municode.com/ks/salina/codes/code_of_ordinances?nodeId=CH42ZORE_ARTXIVDE_S42-637BU). *See North Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1221 n.3 (10th Cir. 2021) (federal courts can take judicial notice of provisions in municipal ordinances).

10

(https://dictionary.cambridge.org/us/thesaurus/direct-attention-to). Plaintiffs' display "stands out" and "points to" to the door to the Cozy. It also "advertises" and "announces." By contrast, the "murals" identified in the Complaint (except The Yard (*see* note 4, *supra*)) simply "attract attention" to themselves. They do not "indicate," "point to," "point out," or "specify" anything else. Likewise, these "mural" comparators do not "advertise" or "announce." The City's reasonable construction of the definition of the term "sign," which was applied to Plaintiffs' sign in a content neutral way, is both constitutionally sound and supported by common understandings and long experience.[5]

     5. *Neither the Sign Code Nor the BID Code Are an Impermissible Prior Restraint.*

Prior restraints "are not unconstitutional per se." *Se. Promotions, LTD v. Conrad*, 420 U.S. 546, 558 (1975). They are permissible if the permitting system includes "procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Id*. at 559. Procedural safeguards regarding timing "are not required for content-neutral time, place, and manner permit schemes" like the Sign Code. *Epona v. Ventura*, 876 F.3d 1214, 1225 (9th Cir. 2017) (citing *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322-23 (2002)). Still, there must be "standards limiting the licensor's discretion." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988).

Here, the standard in the Sign Code is whether the display (among other possible things) advertises. That standard is ubiquitous in sign regulations. *See Austin,* 596 U.S. at 64-65. It is also constitutionally sufficient. It is particularly clear when the advertisements pertain to "goods or services for sale." Consider the strikingly similar case of *Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359 (4th Cir. 2012). In *Wag More Dogs*, a doggy day care facility painted a "mural" on an exterior wall that faced a municipally owned dog park. *Id*. at 363. The "mural"

---

[5] *Sign*, MERRIAM-WEBSTER DICTIONARY (https://www.merriam-webster.com/dictionary/signs)

depicted "happy cartoon dogs, bones, and paw prints," and incorporated some of the cartoon dogs from the logo. *Id*. Wag More Dogs argued, *inter alia*, that the display was not an "advertisement," but instead "noncommercial speech." *Id*. at 369. The Fourth Circuit was not persuaded. It held that the display was commercial speech because it "was meant to attract customers," it included dogs from the company's logo (which, it held, was "analogous to referencing a specific product"), and it sought to create goodwill with potential customers. *Id*. at 370 (emphasis added).

The Complaint is misguided in using The Yard as an example of "the extent of [the City's] discretion." Compl. ¶ 265. That display is "located inside a building," thus, not a sign. *Id*. at ¶¶ 36, 84. The BID Code does not relate to advertisements. Under the BID Code, a COC is issued if any one of five criteria set out in BID Code § 2-208(1)-(5) are met. These criteria are clear, *permissive*, and constitutionally sufficient in their own right. The Sign Code and BID Code both include sufficient standards to bridle the discretion of the decision-maker.

**C. In the Alternative, Plaintiffs' Content Based Claim Must be Dismissed Because the Sign Code Passes the Commercial Speech Test.**

Assuming *arguendo* this Court finds the Sign Code distinguishes between "signs" and public art based on whether the display is commercial speech or noncommercial speech, the commercial-noncommercial distinction is not a classification of speech that implicates strict scrutiny. Commercial speech is an advertisement that refers to a particular product, whose speaker has an economic motivation. *See Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983); *Wag More Dogs*, 680 F.3d at 363, 370. As shown by the depictions and factual allegations in the Complaint, the sign displays commercial speech. Compl. ¶¶ 22-24, 27-28.

Commercial speech enjoys "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Bd. of Tr. of State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989). Regulations that differentiate between commercial and

12

noncommercial speech, without more, are not content based. *See Metromedia v. San Diego,* 453 U.S. 490, 504-06 (1981). Commercial speech is subject to an intermediate standard of review, that is, such regulations "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)). The test is similar to the intermediate scrutiny applied to content neutral regulations. *See Brewer v. Albuquerque*, 18 F.4th 1205, 1252 (10th Cir. 2021). As-applied commercial speech challenges are not justiciable. *See U.S. v. Edge Broad. Co.*, 509 U.S. 418, 431 (1993).

Nothing in *Reed* (which dealt only with content based classifications of noncommercial speech) or *Austin* prohibits the City from regulating commercial speech differently from noncommercial speech. The constitutional command is simply that commercial speech cannot be favored over noncommercial speech. *See Metromedia*, 453 U.S. at 504-06. The Complaint goes so far as to allege that "Plaintiffs preserve the right to argue that the commercial speech doctrine . . . must be overturned." Compl. ¶ 258.[6] But arguably, the "commercial speech doctrine," is the only protection commercial speech has. *See generally, Valentine v. Chrestensen* 316 U.S. 52 (1942).

The City's asserted aesthetic interests are substantial. *Taxpayers for Vincent*, 466 U.S. at 807. The Complaint provides allegations of fact that the City's sign regulations are working to advance the City's substantial interests and that they are narrowly-tailored. *See* Section B(3), *supra* at 9. The Sign Code allows for a generous amount of commercial signage. Prior to Plaintiffs' decision to paint the sign, the Cozy had not fully utilized its sign allowance. Compl. at ¶ 125.

---

[6] Indeed, the Supreme Court has stated multiple times that to "require a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (citations omitted).

13

### D. Plaintiffs' Second Claim for Relief Must be Dismissed as the Sign Code and the BID Code Are Not Unconstitutionally Vague.

An ordinance is "unconstitutionally vague for one of two reasons: it either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or it 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Dr. John's, Inc. v. Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) (quotation omitted). Essentially, the Complaint argues the City is not equipped to identify a display that "announces, directs attention to, or advertises," and the standards in BID Code § 2-208 are similarly unintelligible. But the task of identifying business advertising, is a "very basic test" that is "not unconstitutionally standardless or vague . . . ." *Wag More Dogs, LLC*, 795 F. Supp. 2d at 390.

Ordinarily, "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *U.S. v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–495, n. 6 and 7 (1982)). However, the Supreme Court has "relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Id*. As a matter of law, Plaintiffs cannot avail themselves to that relaxed standard because their display is commercial speech, and "the overbreadth doctrine does not apply to commercial speech." *Hoffman Estates*, 455 U.S. at 497. As Plaintiffs' speech is clearly within the scope of the City's regulation, Plaintiffs cannot be heard on their vagueness claim against the Sign Code.

As to the BID Code (and alternatively the Sign Code), "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. "What renders a statute vague is not the possibility that it will sometimes be difficult to

determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. The BID Code and the Sign Code provide clear standards that ordinary people can understand and, therefore, do not encourage arbitrary enforcement.

## V.   CONCLUSION

For the above stated reasons, Plaintiffs' Complaint fails to establish standing and state plausible claims, and therefore the Complaint should be dismissed in its entirety.

Dated this 9th day of May, 2024.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin<br>Bar Number 24170<br>Attorney for Defendant City of Salina, Kansas<br>CLARK, MIZE & LINVILLE, CHARTERED<br>P.O. Box 380<br>Salina, KS 67402-0380<br>Tel. (785) 823-6325<br>Fax: (785) 823-1868<br>Email: aomartin@cml-law.com | Todd G. Messenger,<br>CO Bar Number 38783<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: tmessenger@fwlaw.com | Amanda C. Jokerst<br>CO Bar Number 47241<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: ajokerst@fwlaw.com |

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2024, I caused the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Jeffrey Shaw and Samuel G. MacRoberts
Kansas Justice Institute
12980 Metcalf Avenue, Suite 130, Overland Park, KS 66213
Telephone: 913-213-5121; 913-213-5018
E-mail: jeff@kansasjusticeinstitute.org; sam.macroberts@kansasjusticeinstitute.org

*Attorneys for Plaintiffs*

s/ Aaron O. Martin
Aaron O. Martin

15