In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.** | Civil Action No. 6:24-cv-01027-TC-ADM |
| Plaintiffs, | Plaintiffs' Opposition to Defendant's Motion to Dismiss. |
| v. | Oral Argument Requested. |
| **City of Salina, Kansas.** | |
| Defendant. | |

## Plaintiffs' Opposition to Defendant's Motion to Dismiss

Steve Howard wants to finish painting a whimsical mural on the side of the iconic business he owns, The Cozy Inn, but can't. That's because Salina considers The Cozy's artwork a regulated sign instead of an unregulated mural. The difference between the two turns on the artwork's content: if it "pertains" to a business, Salina considers it a regulated sign subject to size limitations, not an unregulated mural which doesn't. That distinction isn't specified in the written code. Since The Cozy sells sliders, Salina insists Mr. Howard can't finish his mural because it depicts burger-esque UFOs blasting the wall with ketchup and mustard. But if it depicted flying pizza slices, Mr. Howard could. The First Amendment protects against these types of content-based, speaker-based, regulations of speech. So, the Plaintiffs filed a civil rights lawsuit challenging Salina's mural-sign code regime so they can finish what they started. Doc. 16.

At this stage, the *only* question is whether the Plaintiffs' amended complaint adequately gives Salina notice of their claims, not whether they will ultimately succeed. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). Based upon the facts as alleged, taken as true and considered in the Plaintiffs' favor, the Plaintiffs have stated plausible constitutional claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also NRA v. Vullo*, 602 U.S. ___ (2024) (decided May 30, 2024). After all, Salina picks and chooses which murals it allows and which murals it doesn't based on their content, and that's plainly unconstitutional.

It's precisely *because* the Plaintiffs have stated plausible claims that Salina tries to argue the merits—that its archaic mural-sign code regime, greatly unchanged since 1966, survives constitutional scrutiny. *See* Doc. 27. But that's a fact-dependent inquiry that requires Salina to produce *actual evidence* justifying its restrictions, which could almost never be resolved at this stage. For that reason, "courts typically do not reach the merits of a First Amendment challenge at the motion-to-dismiss stage." *Brown v. District of Columbia*, 390 F. Supp. 3d 114, 123 (D.D.C. 2019).

<u>Summary of the Facts</u>

The Cozy is a Salina landmark that's served sliders for more than 100 years. Doc. 16 ¶¶ 15, 16.[1] The dining area is small, about 192 square feet, and every slider is served with onions. ¶ 22. The Cozy's famous for its distinctive "pungent onion-esque aroma." ¶ 22.

Mr. Howard hired a local artist to paint a mural that reflected his and The Cozy's personality. ¶¶ 20-21. Once completed, the mural will read "Don't Fear the Smell!! The Fun is Inside!!" and will include whimsical hamburger-esque flying saucers piloted by aliens attacking The Cozy with blasts of ketchup and mustard, ¶¶ 23-24, 28:



The mural is "artwork," "[i]t's my expression. It's my character going on my wall," Mr. Howard says. ¶ 29. Days later, Salina told Mr. Howard he couldn't finish the mural. ¶ 26. Mr. Howard wants to finish what he started. ¶¶ 118, 151, 170, 190. "I want to paint my wall." ¶ 29.

On paper, Salina regulates signs—including their sizes—through its written sign code, its permit process, its design review process, its certificate of compatibility requirement, and its enforcement penalties. ¶¶ 12, 31, 50, 312. The written sign code treats *all* outdoor murals as wall signs, and *every* wall sign is supposed to be subjected to the same size restrictions. ¶¶ 36-38, 42-46. But that's not how it works in practice. If artwork "pertains" to a business, or if it's "part of a

---

[1] The factual assertions come from Verified First Amended Complaint, Doc. 16, which is fully incorporated here. Unless noted, all paragraph citations refer to Doc. 16.

commercial transaction," Salina considers it a regulated sign subject to its restrictive size limitations. ¶¶ 26, 30, 32-34, 52-54, 128, 132. But if it doesn't pertain to the business, Salina considers it an unregulated mural that can take up an entire wall, ¶¶ 31, 39, 55-58, or in one instance, an entire grain elevator, ¶¶ 104-105. The difference between an unregulated mural and a regulated sign turns on the artwork's content. ¶¶ 3, 32, 34, 52-54, 62-65, 113-15, 127-37, 199-210, 216-22.

Salina's Director of Community and Development explained the unwritten policy to the City Council, saying that "[i]f a coffee house has a dove with an olive branch and it says the word 'peace' on the side of it, that – that's not a sign;" instead, the government treats it as an unregulated mural. ¶¶ 33, 129. But, the Director continued, "if we had a steaming cup of coffee and a coffee pot on the side," Salina would consider it a regulated wall sign. ¶¶ 33, 130. If that same "steaming cup of coffee" happened to be painted "on the other side of town unrelated to anything" there, the government confirmed that it would be unregulated. ¶¶ 33, 131.

Salina either applies the written code or doesn't on the "basis of a commercial message," ¶ 114. Salina doesn't apply its size restrictions and permit or certificate requirements to things it considers "art." ¶¶ 62-65, 135, 203-207, 215-216, 218.

In The Cozy's circumstance, the City Manager explained that The Cozy's mural "includes a message that pertains to the goods or services for sale, and that makes it a sign and makes it subject to the sign code." ¶¶ 32, 54, 128.

The phrase "pertains to the goods or services for sale" is not contained anywhere in the city code. ¶¶ 44, 47, 128, 264, 284. Neither is "art," "commercial speech," or "mural." ¶¶ 47, 264, 284. Salina's unwritten distinction between murals and signs—based on the artwork's content—is not found in any written code or regulation. ¶¶ 1, 3, 31-34, 51-54, 57, 64-65, 120-35.

Salina's content-based discrimination is seen throughout the city. Even though the following murals are "signs" under the code, Salina exempts them from their size restrictions, and the permit and certificate regulations as well, because of their content, ¶ 113: Fire Station #2, ¶¶ 73-80; The Yard, ¶¶ 84-89; KU's School of Medicine, ¶¶ 90-95; Salina Art Center, ¶¶ 96-103; Mural at the Mill, ¶¶ 104-10. There are dozens more. *See* Doc. 16-4.

## I.    The Plaintiffs have standing to challenge the mural-sign code regime.

The Plaintiffs want to finish their whimsical mural but can't. ¶¶ 118, 151, 190. Salina's mural-sign code regime[2] stands in the way. ¶¶ 1-3, 26, 30-34, 150-158, 164-176. Nonetheless, Salina's standing argument appears to focus on "redressability," and seems to suggest that even if the Plaintiffs secured a favorable judgment, they couldn't finish painting their full-sized mural. *See* Doc. 27 at 4.[3] Redressability only requires that "a favorable judgment would meaningfully redress the alleged injury." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006). The Plaintiffs clear that low hurdle. The Plaintiffs have requested a judgment declaring the *entire* mural-sign code regime unconstitutional and seek its permanent enjoinment, including the size, permit, and certificate regulations. ¶¶ 1, 12, 173-174, 182, 214, 300, 303, 305, 307-313. A successful outcome would allow the Plaintiffs to finish their mural. ¶¶ 164-176. The Plaintiffs *will* finish the mural "the same day Salina's mural-sign code regime is enjoined and/or declared unconstitutional[.]" ¶ 170. The requested relief would redress the Plaintiffs' constitutional injuries. *Aptive Envtl., LLC v. Town of Castle Rock, Colorado,* 959 F.3d 961, 978 (10th Cir. 2020) (enjoining enforcement of ordinance establishes redressability); *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005) (plaintiffs' injury" "would be redressed by a judicial conclusion that the Ordinance is unconstitutional.")

Salina also passingly suggests the Plaintiffs can't challenge the written and unwritten definitions used to prohibit The Cozy's artwork. Doc. 27 at 4-5. But the Plaintiffs "have standing to challenge those portions of the Code which provide the basic definitional structure for the terms used," "and which more generally define the scope of signs allowed." *Bee's Auto, Inc. v. City of Clermont*, 8 F. Supp. 3d 1369, 1379 (M.D. Fla. 2014). The Plaintiffs have standing to challenge Salina's unwritten definitions and policies that prevent them from finishing their mural as well. *See*

---

[2] Salina's mural-sign code regime includes the written sign code, the unwritten policies and practices, the permit requirement, the business improvement district review process, the certificate of compatibility requirement, and the concomitant enforcement penalties. ¶¶ 12, 31-32, 312.

[3] For context, the Plaintiffs recited Salina's unsupported allegations that the mural is too big. Salina hasn't cited *any* evidence about the accuracy of its measurements or even *what* it's measuring. Discovery will sort that out.

*id*; *Aptive*, 959 F.3d at 979 (First Amendment applies to "city policies."); *NAACP v. City of Philadelphia*, 39 F. Supp. 3d 611, 616 (E.D. Pa. 2014) (standing exists to challenge "unwritten policy" that prevented speech), aff'd sub nom. *NAACP v. City of Philadelphia*, 834 F.3d 435 (3d Cir. 2016).

Salina's suggestion that "the BID Code was not applied to Plaintiffs," Doc. 27 at 4, and therefore that issue isn't ripe, is demonstrably false. Salina told Plaintiffs that they couldn't complete the mural without a certificate of compatibility, told Mr. Howard to file for it, and then sent him a letter saying it wouldn't give him one, *even though it's required*. ¶¶ 154-155, 157-160, 164. Salina's refusal to hold a certificate of compatibility hearing, as required by § 2-209(2), further shows that Plaintiffs have suffered a justiciable constitutional injury. Salina can't game ripeness by ignoring its own code. ¶¶ 266-281.

In sum, the Plaintiffs have standing. They've suffered a redressable constitutional injury caused by the defendant. *Aptive,* 959 F.3d at 978; ¶¶ 150-176, 178-80, 277-281, 299-305.

## II.   The Plaintiffs have stated a plausible First Amendment claim.

### A.  The mural-sign code regime is a content- and speaker-based restriction on speech.

Salina's entire mural-sign code regime is a content-based restriction on speech because it "target[s] speech based on its communicative content," it "applies to particular speech because of the topic discussed or the idea or message expressed," and because it's "targeted at specific subject matter." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 169 (2015). The regime "draws distinctions based on the message," "cannot be justified without reference to the content of the regulated speech," and because Salina "disagree[s] with [certain] messages." *Id.* at 163, 164 (cleaned up). After all, the difference between an unregulated mural and a regulated sign turns on the whether the artwork "pertains" to the business or if it's "part of a commercial transaction." ¶¶ 3, 32-34, 52-54, 64-65, 113-115, 127-137, 199-210, 216-217, 219-222.

Likewise, in Salina's *own words*, the mural-sign code regime is content based because it applies its written regulations—or doesn't—based entirely on whether Salina believes artwork contains "a commercial message," ¶ 114, or if it believes it's just "art," ¶¶ 115, 62-65, 135, 203-207,

215-216, 218. Indeed, Salina only applied the code's size restrictions to The Cozy because of its perceived "message." ¶¶ 32, 54, 128.[4] That's plainly content based. Consider *Aptive,* where the Tenth Circuit soundly rejected the argument that a commercial door-to-door solicitors' curfew was content neutral. 959 F.3d at 966, 970, 999. The curfew "*is* content-based," the Tenth Circuit held, because it "applies by distinguishing between the commercial and noncommercial content of the solicitors' speech," a "conclusion dictated by the Supreme Court's decision in *Discovery Network.* There, the Court struck down a law that banned commercial but not noncommercial newsracks. In so doing, the Court concluded that the regulation was not content-neutral because the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech." *Id.* at 982 (internal quotes cleaned up, italics in original).

Separately, the regime is content based because—as the Director of Community Development said herself—Salina has to "read the sign," or in this case, review the mural and its content to determine whether its restrictions apply. *See* ¶¶ 33, 129-132; *Reed*, 576 U.S. at 162; *Clark v. City of Williamsburg, Kan.*, 388 F. Supp. 3d 1346, 1358 (D. Kan. 2019), *aff'd,* 844 F. App'x 4 (10th Cir. 2021); *Quinly v. City of Prairie Vill., Kan.*, 446 F. Supp. 2d 1233, 1239 (D. Kan. 2006); *Norton v. City of Springfield, Ill.*, 806 F.3d 411, 412 (7th Cir. 2015); *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 736 (8th Cir. 2011).[5]

Based on Salina's own words and litigation positions, Plaintiffs' allegations that the mural-sign code regime is content based are plausible. *See also,* ¶¶ 31-34, 51-54, 57, 62-65, 120-135. Further consider three analogous mural cases, all of which have rebuked the virtually identical arguments Salina makes here.

In *Kerston v. City of Mandan,* owners of a western bar painted a mural depicting mountains, cowboys, and the bar's name, which the city claimed was a regulated sign, not an unregulated

---

[4] *See also* Doc. 27 at 7, where Salina admits it's "target[ing]" The Cozy's mural because it perceives it to be an advertisement, misquoting *Reed*, *supra*, in the process.
[5] The longstanding "read the sign" analysis wasn't obviated in *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 73-74 (2022). Besides, *Austin* is limited to off-premises, "location-based," regulations for billboards, *id.* at 69, which have almost always been treated differently by courts.

mural. 389 F. Supp. 3d 640, 642, 644 (D.N.D. 2019). "Cleary," the court wrote, the "regulation is based on the content of the speech," and "is not content neutral," *Id.* at 646.

In *Complete Angler, LLC v. City of Clearwater, Fla.*, the owners of a bait and tackle shop painted a fish mural. 607 F. Supp. 2d 1326, 1329 (M.D. Fla. 2009). The city argued that murals displayed "in conjunction with" a business were not "art work," but "commercial signage" subject to size regulations. *Id.* at 1331. But murals of "kids playing in the park" or of "first responders" were unregulated art. *Id.* at 1333-34. That wasn't content neutral, the court held. The city "necessarily examined [the mural's] content" to determine whether it was "subject to the permit requirement or spatial constraints." *Id.* at 1333. Further, the city's "statements by its own representatives" and its "condoning of" the other murals showed the regime was "not content-neutral." *Id.* at 1334.

In *Morris v. City of New Orleans*, a painting with "a non-commercial message," was considered a mural; but if it had "a commercial message, it was considered a 'sign,'" and subjected to different regulations. 399 F. Supp. 3d 624, 635 (E.D. La. 2019). That was "undeniably" "content-based" because it "separates out commercial and non-commercial speech." *Id.* at 636.

With that, it's no wonder Salina struggles to justify why it allows the Mural at the Mill but not the mural at The Cozy, arguing the latter prohibition isn't content based, it's merely a definitional issue. *See* Doc. 27 at 2. A "sign," it argues, is defined narrowly and only covers a commercial thing that is "used to announce, direct attention to, or advertise." *See* Doc. 27 at 2. But that contortion renders the other "sign" definitional verbiage meaningless. ¶¶ 36-40, 50. Besides, Salina's unnatural reading *still* "turn[s] on whether the speech is commercial or not," and is therefore a "content-based" regulation. *Aptive*, 959 F.3d at 982; *see also id.* at 983.

Under *Reed*, *Aptive*, *Discovery Network*, *Kerston*, *Complete Angler*, and *Morris*, Salina's mural-sign code regime is content based.[6] Because Salina applies the mural-sign code regime to

---

[6] It's irrelevant even if Salina treats all murals pertaining to businesses the same—it's still a "content-based" regulation because it's a "regulation targeted at specific subject matter" "even if it does not discriminate among viewpoints within that subject matter." *Reed*, 576 U.S. at 169.

artwork that "references a product or service," but "exempt[s] works of art" from its code "that in no way identify or specifically relate to a product or service," it's a content-based regulation. *Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 633 (4th Cir. 2016) (cleaned up).[7] It's a speaker-based regulation too. Whether a business can paint a "steaming cup of coffee" mural turns on the nature of the business. ¶¶ 3, 33, 129-132.

In sum, "[b]oth on its face and in its practical operation," Salina's entire mural-sign code regime "imposes a burden based on the content of speech and the identity of the speaker," *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011), and is "a paradigmatic example of content-based discrimination." *Reed*, 576 U.S. at 169.

### 1. Salina's content-based regulations trigger strict scrutiny.

Content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 163. That requires Salina to prove—*with evidence*—its restrictions actually advance its stated interests, that its restrictions are not over- or under-inclusive, and that it used the least restrictive means possible. *See generally id.* at 171–72 (underinclusive); *United States v. Williams*, 553 U.S. 285, 292-97 (2008) (overbroad); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 827 (2000) (least restrictive means required to address a real problem).

Salina can't clear its initial First Amendment hurdle. Its only stated interests, "aesthetics and property values," Doc. 27 at 8, aren't compelling ones. *Ficker v. Talbot Cnty., Maryland*, 553 F.Supp.3d 278, 283 (D. Md. 2021) (aesthetics not a compelling interest); *Int'l Outdoor, Inc. v. City of Troy*, No. 17-10335, 2021 WL 2275977, at *3 (E.D. Mich. Apr. 6, 2021) (maintaining property values not a compelling interest). But even if they were, given Salina's substantive evidentiary burdens, its 12(b)(6) motion "cannot be" granted. *See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 30 (D.D.C. 2019) (strict-scrutiny claim "cannot be resolved" on a motion to dismiss given

---

[7] *See also Ficker v. Talbot Cnty., Maryland*, 553 F. Supp. 3d 278, 285 (D. Md. 2021) (size limit based on subject is content based); *Morris,* 399 F. Supp. 3d at 636 (code that turns on message is "undeniably" content based); *Neighborhood Enterprises*, 644 F.3d at 736; *Clark*, 388 F.Supp. 3d at 1359; *Quinly*, 446 F.Supp. 2d at 1239.

government's burden of proof). Besides, Salina can't satisfy a less-rigorous burden, *see* Section I.B. below, which necessarily means it can't satisfy the heavier one.

> ### a. The Cozy's mural isn't "commercial speech." But even if it were, strict scrutiny still applies.

Salina incorrectly argues that The Cozy's mural is "commercial speech," and intermediate scrutiny applies. Doc. 27 at 12-13 (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm' of New York*, 447 U.S. 557 (1980)). On this record, the Cozy's mural depicting ketchup-blasting, burger-esque flying saucers piloted by aliens isn't "commercial speech." ¶¶ 23-24, 28, 239-240, 241, 257. "Commercial speech" is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). If a mural is "not limited to merely proposing commercial transactions," it's not "commercial speech," even *if* the mural "may occasionally inspire" commercial transactions. *Complete Angler*, 607 F. Supp. 2d at 1332. Just as in *Complete Angler*, The Cozy's mural doesn't propose a commercial transaction and isn't commercial speech. It doesn't say, for example, "five burgers for a dollar." Instead, it's "artwork," "express[ive]," and conveys Mr. Howard and The Cozy's "character." ¶¶ 2, 21-24, 27-29. A mural is still a mural—and properly considered artwork, not "commercial speech"—even *if* it somehow pertains to a business. *Id.* at 1332. Indeed, Salina hasn't articulated *why* it thinks the mural is "commercial speech" either, it just says that it *is*. But Salina "may not skirt First Amendment protections by applying a definition of commercial speech that better suits its tastes." *Id.*

Similarly, Salina hasn't explained how it concludes—for the first time—that "Plaintiffs' sign is an advertisement (and therefore regulated under the sign code)" or that such a label would even matter. Doc. 27 at 7. The Plaintiffs' lawsuit didn't allege that the mural was commercial speech, ¶¶ 241, 257, or an advertisement, and the terms "commercial speech" and "advertisement" aren't defined in the code either, ¶¶ 47, 264, 284, 292. In short, Salina hasn't satisfied its burden of proving The Cozy's mural is *in fact* "commercial speech" or an advertisement. *Aptive,* 959 F.3d at 987–88 (describing government's burdens).

Finally, because the "commercial speech" doctrine is inconsistent with the First Amendment's original public meaning, susceptible to arbitrary application, and made-up, *see* Alex Kozinski and Stuart Banner, *Who's Afraid of Commercial Speech?*, 76 Va. L. Rev. 627 (1990), *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 518 (1996) (Thomas, J., concurring), *id.* at 517 (Scalia, J., concurring), Deborah J. La Fetra, *Kick It Up A Notch: First Amendment Protection for Commercial Speech*, 54 Case W. Res. L. Rev. 1205 (2004), it should only apply to the narrow circumstances involving consumer protection from false or misleading advertising, its underlying policy justification, which don't exist here.

Even *if* the mural is "commercial speech" though,[8] intermediate scrutiny doesn't apply, strict scrutiny does. ¶ 257. The "regulation of commercial speech that is not content-neutral is still subject to strict scrutiny under *Reed*." *Int'l Outdoor*, 974 F.3d at 703; *see also*, *Norton*, 806 F.3d at 412 (After *Reed*, "[a]ny law distinguishing one kind of speech from another by reference to its meaning now requires a compelling justification"); *cf. City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-31 (1993) (applying strict scrutiny); *cf. Sorrell*, 564 U.S. at 565-66 (heighted scrutiny of commercial speech regulation). In *Aptive*, the Tenth Circuit only applied *Central Hudson*'s test because the plaintiffs requested it, both on appeal and in the district court.[9] Not so here. ¶ 257.

Based upon a collective reading of *Reed*, *Discovery Network, Sorrell, Int'l Outdoor*, and *Norton*, content-based restrictions on commercial speech trigger strict scrutiny.

**B.  Even under Central Hudson, the mural-sign code regime is unconstitutional.**

Even *if Central Hudson*'s test applies, Salina's 12(b)(6) motion should *still* be denied.[10] Salina has the burden of proving 1) its interests in restricting speech are "substantial;" 2) the restriction "advances those interests in a direct and material way;" and 3) the restriction "is in

---

[8] Plaintiffs reserve the right to challenge the doctrine in its entirety, should it apply to their case. ¶ 258.
[9] *See, Brief of Appellee*, 18-1166 at page 26; *Aptive*, 1:17-cv-01545-MSK-MJW (D. Colo.), Doc. 23 at 11-12, Doc. 93 at 1, Doc. 105 at 2.
[10] The test for a content-neutral time, place, and manner restriction is similar to *Central Hudson*'s. *See Aptive*, 959 F.3d at 987. As shown in this section, Salina can't satisfy its evidentiary burdens under either one.

reasonable proportion to the interests served," meaning it must be "narrowly tailored." *Aptive*, 959 F.3d at 987–88; *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1252–53 (10th Cir. 2021) (same); *see also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1072 (10th Cir. 2001). All three factors must be proven with actual evidence. *Aptive*, 959 F.3d at 996 ("[c]onjectural harms and suppositions" are insufficient); *id*. at 995 ("asserted interests" in "the abstract" not enough); *id*. at 998 ("harms" must be "real and that its restrictions will *in fact* alleviate them to a material degree") (cleaned up) (emphasis added); *id*. at 990 (record requires "a concrete, nonspeculative harm"); *Morris*, 399 F. Supp. 3d at 637 ("[b]lindly intoning" theoretical civic interests not enough); *Complete Angler*, 607 F. Supp. 2d at 1334 ("abstract notions will not suffice").

On this record, Salina's justifications are *nothing but* speculation and conjecture, *see* Doc. 27 at 8, 9-13. There is *no evidence*, for example, that a mural pertaining to a business is not aesthetically pleasing, or that it decreases property values, or that would initiate some theoretical, undefined sign war. ¶¶ 138-148, 230-238, 242-245, 253. If anything, Salina's litigation position that "sign wars" "degrade community character," Doc. 27 at 9, further proves that it unconstitutionally prohibits speech based on its content. After all, a "sign war" is little more than "friendly one-upmanship" between organizations using "witt[y]" messages. Wikipedia, *Sign War*.[11] Salina's argument that its regulations "are working," Doc. 27 at 13, is just as flawed and is nearly verbatim to the one rejected by the Tenth Circuit in *Aptive*, 959 F. 3d at 990-991 (rejecting argument that the "Curfew is working" as "unadorned assertion" and "self defeating" given its evidentiary burdens).

Salina's "visual assault" on aesthetics argument and its reliance on *Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) is equally misplaced. *See* Doc. 27 at 8-9. That ordinance banned all signs on the government's *own* property to prevent the accumulation of temporary signs. *Id*. at 807. It didn't try to regulate the aesthetics of speech on private property, an important distinction Salina misses. *Id*. at 811. Indeed, regulating speech for "purely esthetic" reasons raises "serious First Amendment concerns." *Ward v. Rock Against Racism*, 491 U.S. 781, 793 (1989).

---

[11] Permanently available at https://en.wikipedia.org/w/index.php?title=Sign_war&oldid=1175609932

Because there "is nothing in the record" to credibly "suggest that commercial messages in artwork are more unsightly than non-commercial messages in artwork," Salina's mural-sign code regime is "unconstitutional insofar as it distinguishes between commercial and non-commercial artwork." *Morris*, 399 F. Supp. 3d at 637; *see also*, *Discovery Network*, 507 U.S. at 425 (commercial newsracks "no greater eyesore" than noncommercial newsracks); *Neighborhood Enterprises*, 644 F.3d at 737-38 (aesthetics not narrowly tailored when exemptions are content-based); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993) (city may not "promot[e] aesthetics" "by restricting speech depending upon the message expressed"); *Ficker* 553 F. Supp. 3d at 284-85 (sign code not narrowly tailored); *Reed,* 576 U.S. at 172 (same); *Bee's Auto,* 8 F. Supp. 3d at 1380.

Salina's speculative musings about aesthetics and property values lack any evidentiary support *at all*, are plainly insufficient, and unquestionably *not* narrowly tailored. In *Aptive*, that the Town of Castle Rock couldn't produce enough evidence justifying its speech regulations, *after a bench trial,* means it's virtually impossible Salina could meet its burden at the 12(b)(6) stage. 959 F.3d at 966, 970. Instead of proving its case with *evidence*, Salina tries justifying its restrictions *just because* it's perceived to be commercial speech. *See* Doc. 27 at 13 ("Nothing" "prohibits the City from regulating commercial speech differently from noncommercial speech"). But a regulation is unconstitutional when there is "no justification for [a] particular regulation other than the city's naked assertion that commercial speech has low value." *Discovery Network* at 429-430 (cleaned up); *see Aptive*, 959 F.3d at 980-81. Salina hasn't even tried justifying its content-based exemptions from the size, permit, and certificate regulations either. ¶¶ 62-65, 135, 203-207, 215-216, 218.

At bottom, because Salina hasn't satisfied its evidentiary burdens for treating the Mural at the Mill—and the dozens of other murals—differently from the mural at The Cozy, and vice versa, the motion to dismiss should be denied.

## III.    The Plaintiffs have stated a plausible prior restraint claim.

Salina's mural-sign code regime is an unconstitutional prior restraint because it lacks "narrow, objective, and definite standards," and because it requires the "appraisal of facts, the exercise of judgment, and the formation of an opinion." *Forsyth Cnty., Ga. v. Nationalist Movement*,

505 U.S. 123, 131 (1992) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)).[12] Salina unconstitutionally wields "unbridled discretion" in deciding which murals to allow; and it ignores the deadlines in its code. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (plurality opinion).

Salina's distinctions between murals and signs are not found in the written code or regulations. ¶¶ 31-34, 51-54, 57, 64-65, 120-135. Neither are "pertains to the goods or services for sale," "art," "commercial speech," and "mural." ¶¶ 44, 47, 48, 128, 264, 284. Nearly every word Salina relies on is undefined, leaving officials free to pick and choose which murals to allow and which to regulate, ¶¶ 264(a-m), 284(a-m), which is reflected throughout the city, ¶¶ 73-80, 84-89, 90-95, 96-103, 104-110, *see also* Doc. 16-4. Salina's design review board process is even worse. It makes decisions based purely on subjective matters such as whether a mural "presents an aesthetically pleasing overall image," "clash[es]" with older materials, or harms the "distinguishing original qualities or character of a building," Code § 2-208; ¶¶ 60, 217, 270, none of which is defined. The unbridled discretion is exemplified in Salina's disregard for its own deadlines found in Salina City Code §§ 2-209(2) and 42-502(b). Salina placed Plaintiffs' application "on-hold" indefinitely rather than follow its code. ¶¶ 154-161, 271-272. Salina hasn't attempted to justify ignoring its deadlines or challenged Plaintiffs' allegations that constitutes an unconstitutional prior restraint, *FW/PBS*, 493 U.S. at 227, which precludes a piecemeal motion to dismiss, *Fed. Trade Comm'n v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019).

Salina insists that "signs and commercial speech" do not qualify as unregulated "art," ¶ 115, it doesn't apply its size, permit, and certificate regulations to "art," ¶¶ 62-65, 135, 203-207, 215-218, and it claims that "public art is a different animal." Doc. 27 at 9. But the question, "What is art?" has been described as "one of the most elusive of the traditional problems of human culture," Richard Wollheim, *Art and Its Objects* 1 (1980), and courts have found the term "works of

---

[12] *See also*, *Saia v. New York*, 334 U.S. 558, 560 (1948) (invalidating city's standardless discretion to permit loud speakers); *Lovell v. City of Griffin*, 303 U.S. 444, 450–51 (1938) (same; leaflets); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969) (same; parades); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 769–70 (1988).

art" inherently vague. *E.g., Household Goods Carriers' Bureau v. ICC*, 584 F.2d 437, 440 (D.C. Cir. 1978). Salina has not given any explanation of how it limits its discretion or avoids content-based discrimination when it distinguishes "public art" from "signs."

Salina relies on *Wag More Dogs, LLC., v. Cozart*, 680 F.3d 359 (4th Cir. 2012), to show that the regime isn't prior restraint. But *Wag More Dogs* isn't controlling or persuasive: it pre-dated *Reed* and the Fourth Circuit has abandoned it. *Cent. Radio Co. Inc. v. City of Norfolk, Va.* is instructive. There, the Fourth Circuit initially relied heavily on *Wag More Dogs* to uphold a sign code, 776 F.3d 229 (4th Cir. 2015), but the case was vacated and remanded after *Reed*. On remand, the Fourth Circuit declared the sign code unconstitutional without mentioning *Wag More Dogs*. 811 F.3d 625 (4th Cir. 2016). Besides, *Wag More Dogs* was poorly reasoned, lacked limiting principles, and was contrary to the First Amendment—as the Fourth Circuit eventually recognized by abandoning it.

The Yard's artwork exemplifies Salina's unconstitutional discretion. It's a baseball-themed mural at a commercial baseball training facility, after all, but Salina doesn't regulate it. ¶¶ 84, 84 n.12, 84 n.13, 85-89, 111, 113, 163, 265. Salina's position that the mural is located "inside a building," Doc. 27 at 12, is demonstrably false. It's plainly *not* inside. It's painted on the exterior of an outside wall that is adjacent to a covered baseball field. ¶ 84, n.12 (the mural "livens up the outdoor portion of their facility by adding a pop of color and interest"), n.13 (last two images demonstrating space between wall and covering).[13]

Salina's ever-shifting position on when and how it applies its mural-sign code regime demonstrates the extent of its unbridled, unconstitutional discretion. The Yard is free to add a baseball mural, but The Cozy can't paint burger-esque UFOs.

## IV.   The Plaintiffs have stated a plausible void for vagueness claim.

Salina's mural-sign code regime "is so standardless that it authorizes or encourages seriously discriminatory enforcement," in violation of the Due Process Clause. *F.C.C. v. Fox*

---

[13] Salina again misreads its code to justify its actions. Doc. 27 at 2, 12 (sign code applies only to outdoor signs). That's incorrect, the code also regulates *indoor* signs. Doc. 16-3, *see* § 42-504(9) (regulation of indoor signs).

*Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Welch v. United States*, 578 U.S. 120 (2016). The mural-sign code regime is so vague "that regulated parties [do not] know what is required of them," and fails to provide the "precision and guidance" required to guarantee "that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox Television Stations, Inc.*, 567 U.S. at 253–54 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–109 (1972)). Vague speech laws are particularly disfavored and "rigorous adherence" to the vagueness doctrine is required. *Id*.

The fact that "mural," "art," "pertains to," "commercial speech," "advertise," and most other key terms of the mural-sign code regime are undefined—and manipulated by Salina to serve its whims—proves the regime doesn't provide constitutionally adequate guidance. ¶¶ 31-34, 44, 47-48, 51-54, 57, 62-65, 120-135, 264, 284. It's so vague, Salina even tried changing the mural's content to "turn this into a mural rather than a sign." ¶ 136. This vagueness is on display throughout Salina, with dozens of murals being considered unregulated "art," but the mural at The Cozy somehow being classified as a regulated "sign." ¶¶ 73-80, 84-89, 90-95, 96-103, 104-10; *see also* Doc. 16-4.

### Conclusion

The Plaintiffs have plausibly alleged Salina's mural-sign code regime is unconstitutional. They've put Salina on notice of their claims, their legal theories, and the factual bases for them, and that's all that is required at this stage of the proceedings. This Court should deny Salina's motion.[14]

### Statement Regarding Oral Argument

Given the importance of these constitutional issues, the Plaintiffs request oral argument pursuant to Local Rule 7.2.

---

[14] If the Court is inclined to grant Salina's motion, the Plaintiffs request the opportunity to move for leave to amend; or in the alternative, dismissal without prejudice so the Plaintiffs can re-file.

<u>Dated: May 30, 2024.</u>                    Kansas Justice Institute

                                            <u>/s/ Samuel G. MacRoberts</u>
                                            Samuel G. MacRoberts, 22781
                                            Jeffrey Shaw, 29767
                                            12980 Metcalf Avenue, Suite 130
                                            Overland Park, Kansas 66213
                                            Sam.MacRoberts@KansasJusticeInstitute.org
                                            Jeff@KansasJusticeInstitute.org
                                            (913) 213-5018
                                            Attorneys for Plaintiffs

**Certificate of Service**

The undersigned certifies that on May 30, 2024, the above document(s) were filed using the CM/ECF system, which will send notification of such filing to all participants, including to: Aaron O. Martin, Todd G. Messenger, and Amanda C. Jokerst.

                                            <u>/s/ Samuel G. MacRoberts</u>
                                            Samuel G. MacRoberts