### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Cozy Inn, Incorporated,** ) | |
| **d/b/a The Cozy Inn; Stephen Howard,** ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | CASE NO.   6:24-cv-01027-TC-ADM |
| v. ) | |
| ) | |
| **City of Salina, Kansas,** ) | |
| Defendant. ) | |

### REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

In a First Amendment case, the "plaintiff bears certain burdens to demonstrate an infringement of his rights . . . ." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022). Only after the Plaintiffs carry these burdens does the evidentiary burden shift. *Id*. Moreover, First Amendment claims, including challenges to sign regulations, are routinely resolved at the pleading stage for failure to state a claim. *See, e.g., StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1247 (10th Cir. 2023); *Wag More Dogs, Ltd. Liability Corp. v. Cozart*, 680 F.3d 359, 374 (4th Cir. 2012); *Contest Promotions, LLC v. San Francisco*, 874 F.3d 597, 604 (9th Cir. 2017). This Court does not need additional evidence to resolve the issues.  The legal standards are clear.  Plaintiffs have failed to state a plausible First or Fourteenth Amendment claim, and Plaintiffs' Complaint should be dismissed.

### I.      Plaintiffs Lack Standing and the As-Applied BID Code Challenge Is Not Ripe

As to standing, the Complaint alleges "*any* outdoor mural is a wall sign," which if taken as true, makes the Plaintiffs alleged "mural" a "sign." The Sign Code's size limitations are what prohibit Plaintiffs' sign, causing the "particular injury" the Complaint alleges. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974); Compl. at ¶ 153 ("Plaintiffs cannot complete the mural . . . because Salina believes it's larger than allowed . . . ."). Yet the Complaint does not challenge the size limits. Other displays are not germane to Plaintiffs' alleged

injuries. When an "unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision" a plaintiff fails to establish redressability. *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014). The Sign Code's size limits are a distinct regulation from the BID Code (which does not have size limits). Compl. at ¶¶ 122-26, 153. No decision on a COC was ever reached, so the BID Code challenge is neither ripe nor redressable. Compl. at ¶¶ 152-53, 159.

## II.     The Sign Code and BID Code Are Content Neutral

The Complaint manufactures an absurd construction of the definition of "sign" to conflate Plaintiffs' sign with "dozens" of displays that are not signs. Compl. at ¶¶ 36-39. Nevertheless, the Response neither refutes the City's legal argument regarding the construction of the term "sign" in § 42-764(1)-(3), nor provides legal authority to support Plaintiffs' illogical construction. Courts may consider the failure to address an argument in response to a Motion to Dismiss to concede the unanswered argument. *See Cincinnati Ins. Co. v. Eastern Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001). And despite the Response's reliance on *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020), it is not pertinent here. *Aptive* dealt with "oral speech." Signs "pose distinctive problems" from oral speech, and "take up space and may obstruct views . . . and pose other problems . . . ." *Ladue v. Gilleo*, 512 U.S. 43, 48 (1994).

In evaluating facial content neutrality, courts review challenged text to determine if it is content neutral.  *See Harmon v. Norman*, 981 F.3d 1141, 1148 (10th Cir. 2020) (citing *Reed v. Gilbert*, 576 U.S. 155, 163-64 (2015)). The text of the Sign Code and the BID Code are not concerned with the things that are "announced," with the things that a sign "directs attention to," or the things that a sign "advertises." *See Austin v. Reagan*, 596 U.S. 61, 69 (2022). It is a far cry from the level of detail that could discriminate among "topics," "ideas," or "viewpoints." *See id*. at 74. Further, the aesthetic and traffic safety justification for the Sign Code (found in the purpose

statement at § 42-500 and Compl. at ¶ 137) is unrelated to the content of the regulated speech. *Stockinger*, 79 F.4th at 1251 (recognizing aesthetic and traffic safety justification as unrelated to content). Moreover, there are no allegations that the City adopted its Sign Code because it disagrees with Plaintiffs' message. The Complaint alleges only that the City has "antipathy toward content related to a business and commercial speech," and surmises that the City has a "preference for content unrelated to a business and noncommercial speech." Compl. at ¶ 210. These allegations are not legally meaningful because it is axiomatic that commercial speech may be subordinated to noncommercial speech. *See Metromedia v. San Diego*, 453 U.S. 490 (1981); *Outdoor Systems, Inc. v. Lenexa*, 67 F. Supp. 2d 1231, 1236-39 (D. Kan. 1999) (recognizing that under the intermediate scrutiny commercial speech test, government may establish elements with common sense and/or legal precedent).

Based on legal precedent and common sense, the Sign Code and the BID Code pass intermediate scrutiny, whether cast as "time, place, and manner," or "commercial speech" review.[1] Legal precedent says that the aesthetic harm, identified in the Sign Code's purpose statement, is real and a substantial government interest as a matter of law. *See Austin*, 596 U.S. at 65; *Stockinger*, 79 F.4th at 1255 (recognizing "reducing visual clutter" as a legitimate interest)*; Metromedia,* 453 U.S. at 510 ("It is not speculative to recognize that billboards . . . wherever located and however constructed, can be perceived as an 'esthetic harm.'"); *Members of City Council of Los Angeles v.*

---

[1]The Response argues that the Sign Code and BID Code are content based using unauthoritative, unpersuasive, and distinguishable pre-*Austin* cases. *See Complete Angler, LLC v. Clearwater*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009) (taking issue with examining the contents of the display to determine whether regulation applied, inconsistent with *Austin*); *Morris v. New Orleans*, 399 F. Supp. 3d 624, 635-37 (E.D. La. 2019) (rejecting reasoning of *Austin* trial court that found reading a sign to determine if rules apply does not make a regulation content based, said reasoning ultimately affirmed by Supreme Court, and finding City failed to indicate any substantial government interest—such as traffic safety or aesthetics); *Kersten v. Mandan*, 389 F. Supp. 3d 640, 646 (D.N.D. 2019) (addressing only an *ex parte* motion for temporary restraining order).

*Taxpayers for Vincent*, 466 U.S. 789, 806, 808 (1984). Moreover, the Sign Code and BID Code are narrowly tailored to further the City's interest in aesthetics as the "size and location restrictions 'd[o] no more than eliminate the exact source of the evil it sought to remedy,'" and anything short of a total ban is narrowly tailored to "directly advance" the City's interest in aesthetics. *Wag More Dogs,* 680 F.3d at 369 (citing *Taxpayers*, 466 U.S. at 808)[2]; *Ladue*, 512 U.S. at 48; *Metromedia*, 453 U.S. at 502.

An as-applied challenge "consists of a challenge to the statute's application only as-applied to the party before the court." *Minn. Majority v. Mansky*, 708 F.3d 1051, 1059 (8th Cir. 2013). Here, the City applied the content neutral Sign Code as written when it asked Plaintiffs to stop the installation of their sign and told Plaintiffs they cannot complete the sign because it is too big. Compl. at ¶ 152-53; Ex. A at 15:2-25 ("And these are calculated to attract the attention of the public . . . two, used to announce, direct attention to or advertise . . . It's [Cozy sign] welcoming you to come into the building--that's part of the sign--and is not located inside the building," "from that pure definition, this [Cozy sign] starts to tick all the boxes that make it a sign, before we even get into the discussion of commercial speech, noncommercial speech."), 16:1-25 ("this particular property is in C4 . . . So how big can the sign be . . . We also do a collective surface area . . . you can have 3 square feet of signage for every foot of frontage."), 17:1-18 ("In Cozy's situation . . . it's approximately 528 square feet, which is significantly greater than the allotted amount . . . .").

### III. The Sign Code and BID Code are not impermissibly vague and do not constitute an impermissible prior restraint

"[P]erfect clarity and precise guidance have never been required even of regulations that

---

[2] *Wag More Dogs* is still good law, the Fourth Circuit continues to cite it, and the reasoning--that a regulation is not content based when "officials must superficially evaluate a sign's content to determine the extent of applicable restrictions" (680 F.3d at 368)--is right on par with *Austin*, which held that the City can read a sign to determine if the regulation applies. 596 U.S. at 69.

restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). It is reasonable to infer Plaintiffs understand the Sign Code and BID Code, as Plaintiffs already have signs taking up 83.9% of the available sign area. Compl. at ¶¶ 124-25. The Complaint demonstrates the Sign Code and BID Code properly bridle the discretion of the City and the City had clear standards to identify and apply to the sign. Compl. at ¶¶ 121-126; Ex. A at 15:2-25, 16:1-25, 17:1-18. Indeed, the City's definition of "sign," is not materially different from the definition approved in *Austin*, which includes the phrases "directing attention to . . ." and "commercial message[s]" (phrases that are strikingly similar to "direct attention to, or advertise"). *Austin*, 596 U.S. at 85 n.3 (concurring in part). Moreover, the City informed Plaintiffs that they could not finish the sign due to its size--three days after Mr. Howard hired the sign painter, and on the same day Mr. Howard submitted the sign and COC permit. Compl. at ¶¶ 2, 120-21, 153, 155.

Dated this 12th day of June, 2024.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin | Todd G. Messenger, | Amanda C. Jokerst |
| Bar Number 24170 | CO Bar Number 38783 | CO Bar Number 47241 |
| Attorney for Defendant City of Salina, Kansas | Pro Hac Vice Attorney for Defendant City of Salina, Kansas | Pro Hac Vice Attorney for Defendant City of Salina, Kansas |
| CLARK, MIZE & LINVILLE, CHARTERED | Fairfield and Woods, P.C. | Fairfield and Woods, P.C. |
| P.O. Box 380 | 1801 California St., Ste. 2600 | 1801 California St., Ste. 2600 |
| Salina, KS 67402-0380 | Denver, CO 80202 | Denver, CO 80202 |
| Tel. (785) 823-6325 | Tel. (303) 830-2400 | Tel. (303) 830-2400 |
| Fax: (785) 823-1868 | Fax: (303) 830-1033 | Fax: (303) 830-1033 |
| Email: aomartin@cml-law.com | Email: tmessenger@fwlaw.com | Email: ajokerst@fwlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of June, 2024, I caused the foregoing **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including to: Jeffrey Shaw and Samuel G. MacRoberts.

    s/ Aaron O. Martin