**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Cozy Inn, Incorporated,** ) | |
| **d/b/a The Cozy Inn; Stephen Howard,** ) | |
|  ) | |
| Plaintiffs, ) | CIVIL ACTION |
|  ) | CASE NO.  6:24-cv-01027-TC-ADM |
|  ) | |
| **v.** ) | |
|  ) | |
| **City of Salina, Kansas,** ) | |
|  ) | |
| Defendant. ) | |

### DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' REBUTTAL EXPERT PURSUANT TO F.R.E. 702

Defendant City of Salina, Kansas ("City"), by and through its attorneys Fairfield and Woods, P.C. and Clark, Mize & Linville, Chartered, hereby submits the following Motion to Exclude Plaintiffs' Rebuttal Expert Pursuant to F.R.E. 702.  In support thereof, the City states as follows:

### Specific Relief Sought

The City seeks to exclude the testimony of Plaintiffs' rebuttal expert Charles Taylor pursuant to F.R.E. 702 as he is not qualified to render the expert opinions set forth in his report, his testimony is not based on sufficient facts or data, his testimony is not a product of reliable principles and methods, his testimony does not reflect a reliable application of the principles and methods to the facts of the case, and his testimony is not helpful to the trier of fact.

## Nature of the Matter and Statement of Facts

The central issues of this First Amendment case are (1) whether the text of Salina Code Chapter 42 Article X ("Sign Code") is content-neutral, specifically as it relates to the definition of "sign" (codified at Salina Code § 42-764) upon which the applicability of the Sign Code relies, and (2) whether the Sign Code passes intermediate scrutiny, which involves the question of whether it advances the City's substantial government interests in aesthetics, traffic and pedestrian safety, and property values. The Court decides whether the Sign Code is content neutral as a matter of law. *Austin v. Reagan*, 596 U.S. 61, 64, 76 (2022); *Harmon v. Norman*, 981 F.3d 1141, 1148 (10th Cir. 2020). The City submits that the Sign Code, and specifically the definition of "sign"--a definition that is substantially similar to the definition of sign upheld in *Austin*--is content-neutral.

The Court also decides as a matter of law whether the content-neutral Sign Code passes intermediate scrutiny. *Harmon*, 981 F.3d at 1148-49. One of the factors courts consider in making such a determination is whether the regulations at issue serve the City's substantial government interests. *Harmon*, 981 F.3d at 1148-49. Salina Code § 42-500 enumerates the City's government interests, which include aesthetics, traffic and pedestrian safety, and property values. Under Tenth Circuit precedent, community aesthetics and traffic safety are substantial government interests that are content neutral as a matter of law. *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1251. Under Supreme Court precedent, property values (and again, community aesthetics) are substantial and legitimate government interests. *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 795, 805-06 (1984). The City submits that as a matter of law the Sign

Code advances the City's substantial government interests in community aesthetics, traffic and pedestrian safety, and property values.

Supreme Court and Tenth Circuit precedent do not require the City to set forth evidence to support a finding that the Sign Code advances its stated, substantial government interest. *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 509-10 (1981); *Taxpayers for Vincent,* 466 U.S. at 805-808; *Harmon*, 981 F.3d at 1148-49; *Stockinger*, 79 F.4th at 1252. Nonetheless, Plaintiffs have alleged that under a case related to oral speech, *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020), the City is required to set forth such evidence and the City has no evidence to show its Sign Code advances its substantial government purposes. *Aptive* is not pertinent here as it dealt with "oral speech." *Aptive*, 959 F.3d at 966. Signs "pose distinctive problems" compared to oral speech, because they "take up space and may obstruct views . . . and pose other problems . . . ." *Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). The City does not concede that any evidence is necessary for the Court to find that the Sign Code is content-neutral and passes the intermediate scrutiny test by, among other things, advancing the City's substantial government interests in in community aesthetics, traffic and pedestrian safety, and property values. However, in an abundance of caution and in the unlikely event that this Court determines evidence is necessary, the City wanted to show that it can support such a finding with evidence.

As part of that effort, the City retained Mark White, an urban planning expert, to opine on its Sign Code and certain substantial government interests that are advanced by the Sign Code. *See* Exhibit A. Mr. White is an expert in urban and regional planning, zoning, form-based zoning and New Urbanism, and land use. *Id*. Mr. White is a member of the American Institute of Certified

Planners ("AICP") and the American Planning Association. *See* Exhibit B at p. 39. As part of a practice with national reach, Mr. White writes land use codes, including sign codes. Ex. B at pp. 3, 42-45. As part of his report, Mr. White evaluated the text of the Sign Code and the sign on the North wall of the Cozy Inn that is the subject of the lawsuit ("Cozy Sign"). Ex. B. Then, he applied urban planning principles and methodologies to find that the Sign Code is content neutral, advances the City's substantial interests, and follows standard industry practice in the fields of urban planning and land use. Ex. B at pp. 3, 4, 7, 12.

Plaintiffs served their Rebuttal Expert Disclosures identifying Charles Taylor, a marketing and advertising professional, as an expert in "signage." *See* Exhibit C. Dr. Taylor's experience and education is actually in marketing and advertising. *See* Exhibit C, Exhibit D. His report is focused on business marketing and advertising. Ex. D. His report generally addresses the value of signs to a business, and the few opinions that relate to urban planning matters are conclusory. Ex. D. His testimony includes opinions outside his area of expertise (marketing and advertising) such as the Sign Code does not advance the City's stated interests, "on-premise signs do not represent 'clutter,'" and "the City of Salina's content based restriction on on-premise signs does not advance an aesthetic interest." *See* Exhibit D at pp. 8, 18.

F.R.E. 702 provides that an expert must be qualified, an expert's testimony must assist the trier of fact, the testimony must be "based on sufficient facts or data," the testimony must be "the product of reliable principles and methods," and the expert's opinions must reflect "a reliable application of such principles and methods." Fed. R. Evid. 702. Plaintiffs "bear[] the burden of showing that" Dr. Taylor's testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241

(10th Cir. 2009).  Plaintiffs cannot meet that burden.  Dr. Taylor admits he is not qualified to testify in urban planning or any other field that is pertinent to whether the City's articulated interests are advanced.  Ex. E at 42:13-15, 68:12-19.  Further, his testimony regarding sign clutter, advancing government interests through sign regulations, and whether the sign code is content-based is unreliable as it is not based on sufficient facts or data, he does not employ reliable principles and methods, and he does not reliably apply any principles and methods to the facts of the case.  Indeed, Dr. Taylor does not even understand the mechanics of how the Sign Code works.  Ex. E at 83:7-11.  Rather, his testimony presents mere conclusory opinions in an effort to "rebut" Mr. White's testimony.  Without any reliable principles or methods, he cannot and did not reliably apply any principles and methods to the facts of the case.  And his opinions regarding the marketing and advertising value of signs, which are not at issue in this case, are not helpful to the trier of fact. Accordingly, Dr. Taylor's testimony is properly excluded under F.R.E. 702.

## Argument

### A. *Charles Taylor is Not Qualified to Testify as an Expert.*

Dr. Taylor lacks the requisite knowledge, skill, experience, training, or education to testify regarding urban planning concepts such as time, place, and manner sign regulations, sign clutter, substantial government interests in regulating signs (including but not limited to aesthetics, traffic and pedestrian safety, and property values), and the content neutrality of sign regulations.  Ex. C, Ex. D at pp. 1-3.  "Federal Rule of Evidence 702 requires the district court to ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (quotations omitted).

"Under Rule 702, the court must first decide whether the proffered expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *Id*. (citing Fed. R. Evid. 702). Where a witness relies "solely or primarily on experience" the witness must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003).

Where, as here, a proposed expert witness fails to conduct any case specific testing and admits they are not an expert in the field in which they seek to testify, they are not qualified to testify. *See generally Taylor v. Cooker Tire & Rubber Co.*, 130 F.3d 1395 (10th Cir. 1997). In *Taylor*, the District Court found, and the Tenth Circuit affirmed, that the proposed witness was not "sufficiently qualified to testify on the critical issue of the case." *Id*. at 1397. The *Taylor* case involved the cause of a tire failure. *Id*. The proposed expert in *Taylor* did not conduct any testing of the tire, and admitted that he was not an expert in tire manufacturing. *Id*. The proposed expert also admitted that although he expressed an opinion on the cause of the tire failure, his only evaluation was looking at the tire and taking photographs. *Id*.

Here, Dr. Taylor's education and experience is limited to marketing and advertising. Ex. C, Ex. D at pp. 1-3. His Ph.D. is in marketing. Ex. D at p. 1. He admitted he is not an urban planning expert, and that his educational background did not include any classes in urban planning, regional planning, urban design, landscape architecture, traffic engineering, land use, zoning, or architecture. Ex. E at 12: 23-25, 14:1-15, 17:8-10, 21:10-12, 31:12-13, 32:12-14, 42:13-15, 68:12-19, 69:5-12. The majority of his work experience is in academia, where he teaches marketing and

advertising, and researches issues related to marketing and advertising. Ex. E at 24:19-25, 25: 1-8, 27:4-6, 31-5-25, 32:1-25. His work experience outside of academia, specifically at General Motors, was focused on market analysis respecting buyer behavior. Ex. E at 18:12-20. While he has published in advertising journals, he has never published in a planning journal, such as The Journal of the American Planning Association. Ex. E at 19:24-25, 20:1-2. Like the excluded expert in *Taylor*, Dr. Taylor did not conduct any testing, or in this case any holistic analysis respecting the Sign Code, how the Sign Code's regulations control the size and proliferation of signs City-wide, or how the Sign Code relates to the Cozy Sign. Ex. E at 68:12-25, 69:1-20, 83:7-11, 83:19-23, 92:8-11, 128:4-12. He has never administered a sign code and he does not understand the mechanics of how the Salina sign code works on a particular site. Ex. E 83:5-11.

While Dr. Taylor may have the education and experience to testify regarding "signage" as it relates to advertising and marketing principles that are not at issue in the case, like buyer behavior, effective advertising, or business profits, he does not have the requisite qualifications to testify regarding urban planning principles. Put another way, Dr. Taylor may be an expert in informing a business if their sign effectively advertises to increase profits, but he is not an expert in determining whether a city's sign code's setback requirements, size and number limitations, illumination standards, or proportionality metrics are content-neutral and advance government interests in community aesthetics, traffic and pedestrian safety, or property values. Dr. Taylor could not answer questions as to why a sign code would allocate signage based on the frontage of a building--a regulatory technique that Mr. White describes as "state of the art" in the industry. Ex. B at p. 4, 19; Ex. E at 68:12-25, 69:1-20. Accordingly, Dr. Taylor is not qualified to testify as

7

an expert respecting the relevant issues of content-neutrality in sign regulations and whether the Sign Code advances the City's substantial interests in community aesthetics, traffic and pedestrian safety, and property values. Consequently, his testimony is properly excluded.

### B. *Dr. Taylor's Testimony is Unreliable*

Dr. Taylor's testimony that the Sign Code is content based and does not advance the City's interests in community aesthetics, traffic safety or pedestrian safety, is unreliable.  The second step of the F.R.E. 702 analysis determines if the expert's opinions are reliable.  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180-81 (10th Cir. 2022).  Under the reliability inquiry, courts assess whether the expert testimony is "based on sufficient data, sound methods, and the facts of the case." *Id*. at 1181. A "failure to consider industry standards" is "relevant to a reliability determination under Rule 702."  *Heer v. Costco Wholesale Corp.*, 589 Fed.Appx. 854, 862 (10th Cir. 2014).   Expert testimony is also unreliable where there is a "complete absence of data supporting" the testimony. *See U.S. v. Medina-Copete*, 757 F.3d 1092, 1103-04 (10th Cir. 2014).

In addition to assessing reliability based on sufficient facts and data, "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*)).  When a court is unable to "assess the reasoning and methodology underlying the expert's opinion" the testimony fails to meet the reliability requirement. *U.S. v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citation omitted). Expert testimony is properly excluded when "there

is simply too great an analytical gap between the data and the opinion offered." *Heer v. Costco Wholesale Corp.*, 589 Fed.Appx. 854, 861 (10th Cir. 2014).

Here, Dr. Taylor's proposed testimony that the Sign Code is content-based is not based on any facts or data. Dr. Taylor makes one conclusory opinion regarding content-neutrality, opining "the City of Salina's content based restriction on on-premise signs does not advance an aesthetic interest." Ex. D at 18. Not only is Dr. Taylor's report devoid of any facts or data to support such an opinion, but it does not even address what "content based" means, let alone what constitutes a content-based regulation. *See generally* Ex. D.

Further, Dr. Taylor's proposed testimony that the Sign Code does not advance the City's substantial interests is not based on sufficient facts or data. His opinions that the Sign Code does not advance the City's interests in community aesthetics, traffic safety, or pedestrian safety are also devoid of sufficient facts or data. Ex. D at pp. 10-20. Indeed, his report does not address the metrics of the Sign Code (setbacks, proportionality allocations, size and number limitations, placement, design) *See generally* Ex. D; Ex. E at 69: 5-20, 83:7-11, 83:19-23. That is because, as he admitted at his deposition, he does not independently evaluate sign codes to determine if they advance a government interest like aesthetics, he does not understand how the Sign Code works, he is not an urban planner, he is not qualified to address urban planning issues, and he does not know how the various approaches to sign regulation (like addressing sign area in proportion to the width of building walls) relate to community design and community aesthetics. *See* Exhibit E at 68:12-25; 69:1-20, 83:7-11, 92:8-11; 93:2-12.

Not only does Dr. Taylor not understand how the Sign Code works, he also does not understand how the Sign Code was developed as he admits he did not review the legislative history of the Sign Code. Ex. E at 79:23, 80:1-2, 86:20-25. Ironically, Dr. Taylor admits that he does not evaluate the metrics of the Sign Code, understand the mechanics of the Sign Code or understand the legislative history, but he opines the Sign Code does not advance the City's interests in aesthetics, traffic safety, and pedestrian safety. Ex. E at 83:7-11, 83:12-23. This is rank speculation and is too great of an analytical gap to satisfy the reliability requirements of F.R.E. 702.

While Dr. Taylor's report addresses some studies regarding signs and traffic safety, he does not reliably apply these principles and methods to the facts of this case. Ex. E at 83:7-11, 83:19-23, 121:25, 122:1-5. He cannot do so because he does not understand how the mechanics of the Sign Code operate, and he does not analyze the metrics of the Sign Code. Ex. E at 83:7-11, 83:19-23. Instead, he makes conclusory opinions such as "properly regulated signage does not pose a threat to traffic safety." Ex. D at pp. 10-11. He does not explain what properly regulated signage means, or whether the Sign Code contains the necessary metrics and mechanics to be a "proper" regulation. He also does not examine the Cozy Sign and evaluate whether the Cozy Sign is such a "properly regulated" sign, or is "readable and conspicuous." Ex. D, Ex. E at 128:4-12. He admitted he did not study how tall the letters were on the Cozy Sign, he did not evaluate how much signage the Cozy Inn could have under the Sign Code, he did not know the speed limit in the area by the Cozy Inn, and he was not "offering an opinion on the conspicuity . . . of the Cozy's signs." Ex. E at 83:7-21, 121:25, 122:1-5, 128:4-12, 162:3-7. When Dr. Taylor actually cited a study with

data regarding signs and traffic accidents, his conclusion that the study "concluded that signs are not significant distractions that lead to highway accidents" directly contradicts the study's findings that signs are in "one of the highest categories" of distractions. Ex. D at p. 12, Ex. E 105:3-19. The Tenth Circuit has affirmed the exclusion of expert testimony on reliability grounds where "the peer-reviewed literature suggests the opposite" of the expert's opinions. *Ho v. Michelin North America, Inc.*, 520 Fed.Appx 658, 664-65 (10th Cir. 2013).

### C. Dr. Taylor's Opinions Regarding Marketing and Advertising are Not Relevant and Will Not Assist the Trier of Fact

F.R.E. 702(a) requires the expert's testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This factor "goes primarily to relevance." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). "Expert testimony which does not relate to any issue in the case is not relevant and . . . non-helpful." *Id*. (quotations omitted).

Here, the issues relevant to this First Amendment inquiry are whether the Sign Code is content-neutral and whether the Sign Code passes the intermediate scrutiny test; that is, whether the Sign Code advances the City's substantial government interests in community aesthetics, traffic and pedestrian safety, and property values. Marketing, advertising, and the value of signs to a particular business are not germane. Nevertheless, Dr. Taylor's opinions focus on the value of individual signs from a marketing perspective, as illustrated by his contention that "Signage plays an important role in . . . performing marketing functions that enhance a business' chance of being profitable and thriving." Ex. D at p. 10. Even Dr. Taylor's conclusory statements regarding "sign clutter" (an urban planning principle Mr. White evaluates when addressing the City's

interests in community aesthetics, and traffic and pedestrian safety) are linked back to advertising and marketing.  He states that referring to signs as "clutter" is "indicative of a willingness to inhibit businesses based on a subjective view of aesthetics," and, without any review or understanding of the legislative history of the Sign Code, suggests that the "marketing functions of signage should not simply be dismissed." Ex. D at pp. 7, 10.  Dr. Taylor's report goes on about plainly irrelevant topics at length, under the headings "communicating the location of the business," "branding the site," "enhancing the image of a store or business," and "integrated marketing communications." Ex. D at pp. 6-10.  In objecting to the City's discovery request for Cozy Inn profit and loss statements, Plaintiffs argued that such a request was not relevant to any party's claim or defense. Exhibit F at Resp. to RFP No. 13.

Accordingly, Dr. Taylor's opinions regarding marketing, advertising, and the value of signs to a business are not germane to the issues in this case, and therefore, not helpful to the trier of fact.

## Conclusion

Dr. Taylor is not qualified to provide expert opinion testimony regarding matters related to urban planning.  Further, Dr. Taylor's testimony is not reliable or relevant, and is properly excluded pursuant to F.R.E. 702.

Respectfully submitted this 20th day of December 2024.

s/ Aaron O. Martin
Aaron O. Martin
Bar Number 24170
Attorney for Defendant City of Salina, Kansas
CLARK, MIZE & LINVILLE, CHARTERED
P.O. Box 380
Salina, KS 67402-0380
Tel. (785) 823-6325
Fax: (785) 823-1868
Email: aomartin@cml-law.com

s/ Todd G. Messenger
Todd G. Messenger,
CO Bar Number 38783
Pro Hac Vice Attorney for Defendant City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel. (303) 830-2400
Fax: (303) 830-1033
Email: tmessenger@fwlaw.com

s/ Amanda C. Jokerst
Amanda C. Jokerst
CO Bar Number 47241
Pro Hac Vice Attorney for Defendant City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel. (303) 830-2400
Fax: (303) 830-1033
Email: ajokerst@fwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2024, I caused the foregoing **DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' REBUTTAL EXPERT PURSUANT TO F.R.E. 702** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Jeffrey Shaw.
Samuel G. MacRoberts
Kansas Justice Institute
12980 Metcalf Avenue, Suite 130
Overland Park, KS 66213
Telephone: 913-213-5121; 913-213-5018
E-mail: jeff@kansasjusticeinstitute.org; sam.macroberts@kansasjusticeinstitute.org

*Attorneys for Plaintiffs*

                                        */s/ Aaron O. Martin*
                                          Aaron O. Martin