Page 1

1  .
2       IN THE UNITED STATES DISTRICT COURT
3            FOR THE DISTRICT OF KANSAS
4  .
5  .
6  COZY INN, INCORPORATED, d/b/a
7  THE COZY INN; STEPHEN HOWARD,
8        Plaintiffs,
9  .
10     vs.    Civil Action No. 6:24-cv-01027-TC-ADM
11 .
12 CITY OF SALINA, KANSAS,
13        Defendant.
14 .
15 .
16          DEPOSITION OF
17          MARK WHITE,
18 taken on behalf of the Plaintiffs, pursuant to
19 Notice to Take Deposition, beginning at 9:07 a.m.
20 on the 31st day of October, 2024, at Kansas
21 Justice Institute, 12980 Metcalf Avenue, Suite
22 130, in the City of Overland Park, County of
23 Johnson, and State of Kansas, before Sandra S.
24 Biggs, Kansas CCR No. 0716.
25 .

Page 2

1           APPEARANCES
2  .
3  .
4  ON BEHALF OF THE PLAINTIFFS:
5  .
6      Mr. Samuel G. MacRoberts
7      Mr. Jeffrey Shaw
8      Kansas Justice Institute
9      12980 Metcalf Avenue, Suite 130
10     Overland Park, KS  66213
11     913-213-5018
12     sam.macroberts@kansasjusticeinstitute.org
13     jeff@kansasjusticeinstitute.org
14 .
15 .
16 .
17 .
18 .
19 .
20 .
21 .
22 .
23 .
24 .
25 .

Page 3

1  ON BEHALF OF THE DEFENDANT:
2  .
3      Mr. Aaron O. Martin  (via Zoom)
4      Clarke Mize & Linville
5      129 S. 8th Street
6      Salina, KS  67402
7      785-823-6325
8      aomartin@cml-law.com
9  .
10     Ms. Amanda C. Jokerst  (via Zoom)
11     Fairfield and Woods
12     1801 California Street, Suite 2600
13     Denver, CO  80202
14     303-830-2400
15     ajokerst@fwlaw.com
16 .
17 .
18 ALSO PRESENT:
19 .
20     Mr. Tim Faulhaber, Zoom technician
21 .
22 .
23 .
24 .
25 .

Page 4

1             INDEX
2  .
3  .
4  Certificate------------------------------ 204
5  .
6  .
7             WITNESS
8  ON BEHALF OF THE PLAINTIFFS:            PAGE
9  MARK WHITE
10 Direct-Examination by Mr. MacRoberts      5
11 Cross-Examination by Ms. Jokerst        192
12 Redirect-Examination by Mr. MacRoberts  198
13 .
14 .
15            EXHIBITS
16 WHITE DEPO EX. NO:                    MARKED
17 No 1  Defendant's Expert Disclosure      5
18 No 2  Expert Report                      5
19 No 3  Content-Neutral Sign Codes After
20       Reed and Austin article by White   5
21 No 4  Sign Permit Application           94
22 No 5  Photo of Mural at the Mill        94
23 No 6  Conclusion/Next Steps
24       Bloomberg article                188
25 .

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

Page 45

1  A. Because I'm testifying as an urban
2 planner and a zoning expert and not as an
3 attorney. The legal principals I assume you will
4 argue through with the counsel in this case.
5  Q. Do you think a reasonable person could
6 disagree with the opinions expressed in your
7 report?
8  MS. JOKERST: Object to form.
9  A. I believe it -- I believe in another
10 expert could object to the opinions in this
11 report.
12  BY MR. MACROBERTS:
13  Q. But what about a reasonable person?
14  MS. JOKERST: Object to form.
15  A. I'm not familiar with this reasonable
16 person standard you're talking about.
17  BY MR. MACROBERTS:
18  Q. Have you included references or materials
19 that can undermine your opinions?
20  MS. JOKERST: Object to form.
21  A. I believe there are things in the
22 documents cited that somebody could cite in a way
23 that disputes some of my conclusions and
24 discussion in the report.
25  BY MR. MACROBERTS:

Page 46

1  Q. What about legal cases? Did you cite
2 legal cases that have the tendency to -- that
3 could have the tendency to undermine your
4 opinions?
5  MS. JOKERST: Object to form.
6  A. Not that I'm aware of, but there could be
7 statements in those cases that somebody could use
8 as an argument against things that are in the
9 report, I suppose.
10  BY MR. MACROBERTS:
11  Q. Did you include any disputed facts or any
12 facts that could undermine your opinion?
13  MS. JOKERST: Object --
14  BY MR. MACROBERTS:
15  Q. -- in your report?
16  MS. JOKERST: Object to form.
17  A. Not that I recall.
18  MR. MACROBERTS: Can we take a five-
19 minute break?
20  THE WITNESS: Yes. I was going to ask
21 the same thing.
22  MR. MACROBERTS: Yeah.
23  (THEREUPON, a recess was taken.)
24  BY MR. MACROBERTS:
25  Q. All right. Mark, do you know whether the

Page 47

1 City of Salina commissioned or conducted any
2 studies before drafting any version of their sign
3 code?
4  MS. JOKERST: Object to form.
5  A. I am not aware of any.
6  BY MR. MACROBERTS:
7  Q. Do you have any knowledge about why the
8 sign code had been amended at any point?
9  MS. JOKERST: Object to form.
10  A. No.
11  BY MR. MACROBERTS:
12  Q. Are you aware of any peer reviewed
13 studies that have analyzed the efficacy of
14 Salina's sign code in promoting the goals,
15 objectives and policies of the comprehensive plan?
16  MS. JOKERST: Object to form.
17  A. I'm not aware of any peer reviewed
18 studies specifically to -- specific to Salina's
19 own sign code.
20  BY MR. MACROBERTS:
21  Q. So then I was going go through each one.
22 I appreciate you saying that. How about any
23 studies at all. My previous question was peer
24 reviewed studies. Are you aware of any studies
25 that have analyzed the efficacy of Salina's sign

Page 48

1 code?
2  MS. JOKERST: Object to form.
3  A. I am not aware that there were or were
4 not studies specific to Salina's sign code.
5  BY MR. MACROBERTS:
6  Q. So one way or the another, you're not
7 aware?
8  A. Correct.
9  MS. JOKERST: Object to form.
10  THE WITNESS: Sorry, Amanda. Go ahead.
11 Amanda objected.
12  MR. MACROBERTS: It is noted. I am
13 certain of that.
14  BY MR. MACROBERTS:
15  Q. All right. So for purposes of your
16 report, you used the word mural to mean, quote, an
17 outdoor exhibit painted on a wall that does not
18 fall with the sign code's parameters and that may
19 include art but does not announce, direct
20 attention to or advertise. You meant within. Is
21 that right? Does not fall within the sign code's
22 parameters?
23  MS. JOKERST: Object to form.
24  BY MR. MACROBERTS:
25  Q. And for reference --


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

Page 81

1  BY MR. MACROBERTS:
2  Q. Yes. You did look at the permit
3  application in this case?
4  A. Yes.
5  Q. You're aware that the display contains
6  UFOs, burger-esque UFOs. Is that right?
7  MS. JOKERST: Object to form.
8  A. No.
9  BY MR. MACROBERTS:
10  Q. Why do you say that?
11  A. What I saw in the application were
12  hamburgers and condiments.
13  Q. Did you look at the color rendition of
14  the to-be-completed mural?
15  MS. JOKERST: Object to form.
16  A. I believe so, but I can't recall
17  specifically that. I know -- I think there was a
18  color rendition and a black and white in the
19  record.
20  BY MR. MACROBERTS:
21  Q. In the complaint that you reviewed in
22  preparation for the report, there was a color
23  rendition of the to-be-completed display? We'll
24  call it a display.
25  A. Not specifically to my recollection, but

Page 82

1  it wouldn't surprise me if that's in the
2  complaint.
3  Q. Well, if you -- I'm not trying to be
4  difficult. But why are you -- if you don't
5  recall, why are you saying you thought it was just
6  hamburgers and not hamburger-esque UFOs?
7  A. Well, the pictures I saw in the
8  application and, again, whether they were color or
9  whether they were black and white to me looked
10  like hamburgers.
11  Q. Is that your opinion with respect to the
12  picture that is contained in the Verified Amended
13  Complaint?
14  A. I can't recall specifically where I
15  called it. I did review the picture that was in
16  the application, and I can't recall if that was
17  black and white or color. But so I don't -- and
18  I don't even know whether that makes a difference
19  or not.
20  Q. Would it help you for this line of
21  questioning if we printed off the picture?
22  A. Certainly.
23  MR. MACROBERTS: Okay. Can we go off the
24  record just for a second?
25  THE REPORTER: Um-hum.

Page 83

1  (THEREUPON, a short recess was taken.)
2  BY MR. MACROBERTS:
3  Q. Do you have any empirical evidence in
4  your report that I have missed that supports an
5  opinion that the sign code is content neutral?
6  MS. JOKERST: Object to form.
7  A. Define empirical.
8  BY MR. MACROBERTS:
9  Q. Do you have any -- we'll break it down a
10  little bit. Do you have any studies that you have
11  cited in your report that support the opinion that
12  the sign code is content neutral?
13  A. There are documents in the report that I
14  believe would support that conclusion.
15  Q. My question is specific to studies, and
16  then we're going to break it down to other things.
17  A. Okay.
18  Q. So are you -- have you cited any studies
19  in your report that will support the contention
20  that the sign code is content neutral?
21  MS. JOKERST: Object to form.
22  A. I'm not aware of any studies related to
23  the sign code, Salina's sign code at all.
24  BY MR. MACROBERTS:
25  Q. What about any studies that would help

Page 84

1  support the contention that the Salina sign code
2  is content neutral?
3  A. I'm not aware of any like statistical
4  studies that speak to that.
5  Q. Are you aware of any studies, statistical
6  or otherwise, that would support the contention
7  that the Salina sign code is content neutral in
8  your report?
9  A. I'm not aware of any studies that
10  speak to the existence or absence of content
11  neutrality --
12  Q. Have you --
13  A. -- in this context.
14  Q. I did not mean to interrupt. I'm sorry.
15  A. That's okay.
16  Q. Did you cite any cases in your report
17  that would support the contention that the Salina
18  sign code is content neutral?
19  MS. JOKERST: Object to form.
20  A. I think so, but I didn't look at the case
21  law for that specific issue.
22  BY MR. MACROBERTS:
23  Q. What legal citations in your report would
24  support the contention that the Salina sign code
25  is content neutral?

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street  6420 W. 95th Street  800 E. 1st Street
Topeka, KS 66604  Suite 101  Suite 305
785-273-3063  Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com  913-383-1131  316-201-1612

Page 165

1  up.
2      A.  Not to my knowledge.
3      BY MR. MACROBERTS:
4      Q.  Did the City of Salina ever make that
5  finding when they drafted their sign code?
6          MS. JOKERST:  Object to form.
7      A.  What finding?
8      BY MR. MACROBERTS:
9      Q.  That artistic murals promote the public
10 safety objectives, thereby justifying their
11 exclusion from the sign code?
12         MS. JOKERST:  Same objection.
13     A.  Not to my knowledge.
14     BY MR. MACROBERTS:
15     Q.  On page 21 of your report, you stated
16 that the sign code does not extend its reach to
17 artistic murals.  Are you familiar with that
18 statement?
19     A.  On page 21?
20     Q.  Yes.
21     A.  That's not all it says.
22     Q.  What's that?
23     A.  That is not all it says.
24     Q.  Oh, sure, yeah, got it.  How about this.
25 The sign code does not extend it's reach to

Page 166

1  decorative and artistic building elements such as
2  artistic murals as that is not the sign code's
3  mission.  Do you see that?
4      A.  Yes.
5      Q.  Where in the text of the sign code does
6  it mention artistic murals anywhere?
7      A.  To my recollection, it doesn't mention
8  artistic murals specifically.
9      Q.  Is it your opinion that painted displays
10 that you deem a wall sign cannot promote
11 aesthetics or safety?
12     A.  It's my opinion that signs that
13 constitute wall signs are consistent with the
14 goals of health and safety subject to their
15 management in the sign code if they comply with
16 the metrics in the sign code.
17     Q.  As you're sitting here, can you define
18 what is art?
19         MS. JOKERST:  Object to form.
20     A.  I can -- I consider art something that's
21 displayed purely because of its aesthetic interest
22 and cultural significance.
23     BY MR. MACROBERTS:
24     Q.  When you say -- I think you said purely
25 because of its aesthetic interest.  Is that how

Page 167

1  you phrased it?
2      A.  Yes.
3      Q.  So as you're sitting here, if there is --
4  if it's -- what do you mean purely aesthetic
5  interest?
6      A.  In my opinion, it's something where the
7  motivating factor for this is just of something
8  that's just to decorate.  It's just an
9  embellishment, something that enhances the
10 interest in a building or a site or an area.
11     Q.  So when you're talking about art, you're
12 only talking about buildings?
13         MS. JOKERST:  Object to form.
14     A.  No.  Art, obviously, is -- could be a
15 painting or a sculpture that's inside or outside
16 of a building or just sitting on its own.
17     BY MR. MACROBERTS:
18     Q.  Music is art?
19         MS. JOKERST:  Object to form.
20     A.  A lot of music is, yes.
21     BY MR. MACROBERTS:
22     Q.  Is it your opinion that if there is --
23 that it's only the intent of the artist that makes
24 it art?
25     A.  No, it's whether the function is that or

Page 168

1  not.  An intent usually feeds into the function
2  that the art provides.
3      Q.  How do you determine the function of art?
4      A.  You would look at the context.
5      Q.  And what about the context matters?
6      A.  The context would tell you what, if
7  anything, the art points to, whether it's
8  decorative or whether it's designed to attract
9  your attention to a specific thing.  And so you'd
10 look at the location, you would look at the
11 specific figures, illustrations and other
12 components of the art.
13     Q.  What about the context of that green,
14 white and red painting matters to you whether
15 that's art or not?
16         MS. JOKERST:  Object to form.
17     A.  Well, the contents of the picture that
18 I've shown is that it's a restaurant.  It also has
19 text painted on the wall that points specifically
20 to the restaurant.  And in your hypothetical
21 earlier, if it's an Italian restaurant or a pizza
22 restaurant, certainly it has a picture of a pizza.
23 I don't think it's a flying saucer pizza, but it
24 is a pizza that somebody's holding that could be
25 something that's sold in that restaurant.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604            Suite 101                Suite 305
785-273-3063          Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131            316-201-1612

Page 185

1  Q. Is it factually possible for public art
2  to announce something?
3     MS. JOKERST: Object to form.
4     A. It could, I suppose.
5  BY MR. MACROBERTS:
6     Q. What is the dictionary definition of a
7  mural?
8     MS. JOKERST: Object to form.
9     A. I don't know specifically without going
10 to a dictionary.
11 BY MR. MACROBERTS:
12    Q. Do you know what the common meaning of a
13 mural is?
14    MS. JOKERST: Object to form.
15    A. I would say the common meaning of a mural
16 is however the dictionary defines it is probably
17 the best resource we have for what a mural is.
18 BY MR. MACROBERTS:
19    Q. Do you understand the common definition
20 to be a painting on a wall?
21    A. I can't answer that question without a
22 dictionary in front of me.
23    Q. Did you conduct any research or studies
24 to determine the meaning of words in the Salina
25 City Code at the time they were written?

Page 186

1     MS. JOKERST: Object to form.
2     A. I don't know of any studies that relate
3  specifically to the words that Salina used in its
4  specific sign ordinance, no.
5  BY MR. MACROBERTS:
6     Q. Did you conduct any historical research
7  in the meaning of the words in the Salina City
8  Code at the time they were written?
9     A. No, I didn't look at historic records or
10 anything like that.
11    Q. Do you know if the definition of -- or do
12 you know if the word mural was ever in the Salina
13 City Code?
14    A. I'm not aware of whether it was once upon
15 a time or not.
16    Q. Do you think the public has a common
17 understanding of what a mural is?
18    MS. JOKERST: Object to form.
19    A. I don't know how I would determine that.
20 I imagine when I -- when you use the word mural,
21 people think of a certain thing. They have an
22 image in their mind of what that is.
23 BY MR. MACROBERTS:
24    Q. And what is that? Is it a painted wall?
25    A. I believe a mural would be more than just

Page 187

1  painting on a wall.
2     Q. I don't mean your opinion of it but the
3  public's understanding. Do you have any idea what
4  the public envisions when they think of a mural?
5  Like have you conducted any surveys or looked at
6  surveys among communities?
7     A. I haven't looked at surveys of what
8  people think a mural is.
9     Q. You had -- you at some point wrote in
10 your report about procedural safeguards. Do you
11 recall that section?
12    A. Yes.
13    Q. Is it important to follow the timelines
14 that are in the Salina City Code?
15    MS. JOKERST: Object to form.
16    A. It depends.
17 BY MR. MACROBERTS:
18    Q. On what?
19    A. First of all, it would be whether the
20 timelines are mandatory or whether they're just
21 guidelines. And secondly, it's often dependent on
22 the complexity of the case. If it's something
23 straightforward, decisions can come quicker. If
24 it's something more complex that requires
25 discussion, it could take longer.

Page 188

1     Q. If a timeline is mandatory, is it
2  appropriate in your opinion to not follow it?
3     MS. JOKERST: Object to form.
4     A. In my opinion, no, I think a mandatory,
5  non-binding time limit is something that
6  applicants and cities should both follow.
7  BY MR. MACROBERTS:
8     Q. Is that to protect procedural rights?
9     MS. JOKERST: Object to form.
10    A. That could be one of the reasons.
11 BY MR. MACROBERTS:
12    Q. And substantive rights?
13    A. I'm sorry, I didn't --
14    Q. And substantive rights?
15    A. Oh, substantive rights.
16    MS. JOKERST: Form.
17    A. It could be.
18    Q. I think we are close to being done. Do
19 you mind if I take a five or ten- minute break
20 just to look through my notes to make sure I don't
21 miss anything?
22    A. Certainly.
23    MR. MACROBERTS: All right.
24    (THEREUPON, a recess was taken;
25 WHEREUPON, White Deposition Exhibit No 6 was