UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COZY INN, INCORPORATED
d/b/a The Cozy Inn and
STEPHEN HOWARD,

                 Plaintiffs,

v.                                          Case No. 24-1027-TC-ADM

CITY OF SALINA, KANSAS,

                 Defendant.

## AMENDED PRETRIAL ORDER

On November 19 and December 4, 2024, U.S. Magistrate Judge Angel D. Mitchell conducted a pretrial conference in this case, by phone. Plaintiffs Cozy Inn, Inc. d/b/a The Cozy Inn and Stephen Howard appeared through counsel Jeffrey Shaw and Samuel G. MacRoberts. Defendant City of Salina, Kansas, appeared through counsel Amanda C. Jokerst, Todd G. Messenger, and Aaron O. Martin. After the court entered the pretrial order (ECF 92), the parties notified the court that the City of Salina amended its BID Code and Design Guidelines, thereby mooting a portion of plaintiffs' claims. On the parties' request to amend the pretrial order to reflect these developments, the court now enters this amended pretrial order to supersede the previous version.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(a).

## 1.    PRELIMINARY MATTERS.

    **a.**    **Subject-Matter Jurisdiction.** Subject-matter jurisdiction is invoked under 28 U.S.C. §§ 1331, 1343, 2201, 2202, and is not disputed.

      **b.**     **Personal Jurisdiction.**  The court's personal jurisdiction over the parties is not disputed.

      **c.**     **Venue.**  Venue in this court is not disputed.

      **d.**     **Governing Law.**  Subject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by federal law interpreting the First and Fourteenth Amendments.

**2.**     **STIPULATIONS.**

      **a.**     The following facts are stipulated:[1]

        **i.**     Cozy Inn, Incorporated d/b/a The Cozy Inn is a Kansas for-profit corporation registered and in good standing with the Secretary of State of Kansas.

        **ii.**     Steve Howard is the 90% shareholder of Cozy Inn, Incorporated.  His daughter, Andrea Windholz, owns the remaining 10%.

        **iii.**     Cozy Inn, Incorporated owns and operates The Cozy Inn, a restaurant located in Salina, Kansas.

        **iv.**     Plaintiffs seek to paint a display on the exterior north wall of The Cozy Inn.

        **v.**     Plaintiffs started painting the display on November 3, 2023.

        **vi.**     The photos found at Plaintiffs Bates 50, 52, 53, 54, 57, 58, 59, 60, 61, 62, 63 and 64 represent the unfinished display as currently painted on the north wall at The Cozy Inn.

        **vii.**     The City of Salina, Kansas (the "City") determined the display painted on the north wall of The Cozy Inn is a "sign" as defined by Salina Code § 42-764 and, more specifically, a "wall sign" as defined by Salina Code § 42-781.  The City determined the sign was too large to qualify for a sign permit and that the display Plaintiffs intend to be the final display painted on the north wall at The Cozy Inn (Plaintiffs Bates 51) is a "sign" as defined

---

[1] The parties agree to further confer about factual stipulations and the admissibility of certain exhibits for trial after dispositive motions have been decided, as they believe the court's decision on summary judgment may eliminate the need for certain evidence and the parties may be able to further narrow the issues for trial.  The parties will confer and file any additional stipulations no later than 2 weeks before trial is scheduled to commence.

by Salina Code § 42-764, and more specifically, a "wall sign" as defined by Salina Code § 42-781.

viii.  The Cozy Inn is located within the C-4 zoning district and the Salina Downtown Business Improvement District No. 1.

ix.  On November 6, 2023, the City asked Howard to stop painting the display.

x.  On December 9, 2024, the Board of City Commissioners of the City of Salina ("Board") adopted Ordinance No. 24-11230, amending Salina Code Sections 2-206 through 2-211, and adding Section 2-212, pertaining to the Design Review Board (collectively, "Amended BID Code").

xi.  On December 9, 2024, the Board adopted Resolution No. 24-8264, updating the Design Guidelines for Downtown Salina Business Improvement District No. 1 ("Updated Design Guidelines").

xii.  Salina has determined that the display referred to in paragraphs (iv), (v), (vi), (vii), and (ix), above, "involves only painting or repainting of a building wall" on a side elevation of the Cozy Inn building that is not a "storefront, primary façade, or secondary façade (as defined by the [Updated] Design Guidelines)," and does not "modify the color or finish of any character-defining features (as defined by the [Updated] Design Guidelines)."

xiii.  Pursuant to the Amended BID Code Section 2-207(b)(4), a Certificate of Compatibility is not required for the display referred to in paragraphs (iv), (v), (vi), (vii), and (ix) above, and consequently DRB review is also not required.

xiv.  For the purposes of this litigation, the Sign Code, Salina Code § 42-500, *et seq.*, is not affected by the Amended BID Code and the Updated Design Guidelines.

xv.  In light of the amendments described in paragraphs (x) and (xi) above, the parties agree that the BID Code controversy is moot and therefore the BID Code is no longer at issue.

b.  The parties have stipulated to the admissibility of the following exhibits for purposes of summary judgment and trial:

i.  Photos found at Plaintiffs' Bates 50, 51, 52, 53, 54, 57, 58, 59, 60, 61, 62, 63, 64.

3.    **FACTUAL CONTENTIONS.**

a.    **Plaintiffs' Factual Contentions.**[2]

<u>Overview</u>

Howard operates The Cozy Inn, a Salina landmark that has served sliders for more than 100 years.  It is renowned for its "pungent onion-esque aroma."  After observing the vibrant proliferation of murals throughout Salina, Howard commissioned a mural for the side of The Cozy Inn.  The mural would feature burger-esque flying saucers attacking The Cozy Inn with blasts of ketchup and mustard and says "Don't Fear the Smell!! The Fun is Inside!!"  After reviewing the mural's content, the City came to the conclusion that it pertained to the goods for sale at The Cozy Inn and was considered a regulated sign because it "announced, directed attention to, or advertised" The Cozy Inn.  City officials ordered Howard to halt work on the mural and instructed him to file an application for a sign permit.  When Howard filed the application, the City refused to either grant or deny the application but instead placed the application "on-hold." Plaintiffs allege violations of the Free Speech Clause of the First Amendment and the Void-for-Vagueness Doctrine of the Fourteenth Amendment.

<u>Summary of the Facts</u>

Around November of 2023, Howard hired a well-known, experienced muralist, Colin Benson, to paint a mural that reflected his and The Cozy Inn's personality as depicted below:

---

[2] The City objected to several sentences in Plaintiffs' factual contentions on the grounds that they misrepresent the discovery record and/or exceed the scope of the allegations in the Amended Complaint.  The court overrules these objections.  As the instructions on the court's Pretrial Order form explain, at this stage of the proceedings Plaintiffs need only set forth "a concise statement of the factual contentions that they believe support their respective theories of the case," so it is Plaintiffs' prerogative to frame their own factual contentions.  Further, the allegations in the Amended Complaint provided the City with ample notice that Plaintiffs would be relying on these types of factual allegations to support their claims.



On or about November 6, 2023, City officials learned that Plaintiffs were painting a mural at The Cozy Inn. After reviewing the mural's substance, and without speaking with Howard, City officials concluded that the mural "announced, directed attention to, or advertised" The Cozy Inn, and thus the City believed it fit the definition of a sign under the City code. City officials then told Howard he could not finish the mural and instructed him to submit applications for a sign permit and a Certificate of Compatibility. Howard complied with this request on or about November 13, 2023. City code contains mandatory deadlines for the City to respond to applications, but the City failed to meet these deadlines. Instead, in a letter dated February 8, 2024, the City placed the applications "on-hold." City code does not authorize placing applications "on-hold."

The mural is not an advertisement. Instead, it is an artistic expression intended to tell a story about travel. "It's not a billboard; it's artwork," Howard said. "It's my expression. It's my character going on my wall. I want to paint my wall."

The City regulates signs—including their sizes—through its written sign code, its unwritten policies and practices, its Sign Permit requirement, its Downtown Salina Business Improvement District review process, the Certificate of Compatibility requirement, and its

concomitant enforcement penalties.[3]  Plaintiffs describe this as the "mural-sign code regime."  In response to this lawsuit, the City amended its BID code and Design Review Guidelines, and determined that a Certificate of Compatibility is not required.  As a result, the BID code is no longer at issue in this matter, while the controversy over Salina's written sign code and its unwritten policies and practices remains in dispute.

The written sign code treats all outdoor murals as wall signs and purports to subject every wall sign to the same size restrictions because all murals are "displays calculated to attract the attention of the public."  But that is not how it works in practice.  If artwork "pertains" to a business, or if it's "part of a commercial transaction," the City considers it a regulated sign subject to its restrictive size limitations because of the content.  But if the content doesn't pertain to the business, Salina considers the mural to be unregulated art that is exempt from the mural-sign code regime and can take up an entire wall.  The difference between an unregulated mural and a regulated sign turns on the artwork's content.  City officials have repeatedly admitted that they must review a display's contents to determine whether the display is a regulated sign or an unregulated mural.

The City determines whether a display is a regulated sign by reviewing the display for content that announces, directs attention to, or advertises.  When asked to identify the factual basis for its assertion that Plaintiffs' mural "is obviously a sign," the City stated that "the Cozy Sign *contains* a tag line announcing the infamous smell of the Cozy, it *has* an arrow directing attention to the building entrance and ordering window, and it advertises the hamburgers and toppings available for sale at the Cozy *by depicting representations* of them."  It is clear that the City

---

[3] Violations constitute misdemeanors, punishable by a fine with each day being considered a new offense.

reviewed the contents of the mural at The Cozy Inn and considers the mural to be a sign because of its content.

The City Manager explained that The Cozy Inn's mural "includes a message that pertains to the goods or services for sale, and that makes it a sign and makes it subject to the sign code." The City's Director of Community and Development explained the unwritten policy to the City Council, saying that "[i]f a coffee house has a dove with an olive branch and it says the word 'peace' on the side of it, that – that's not a sign"; instead, the government treats it as an unregulated mural. But, the Director continued, "if we had a steaming cup of coffee and a coffee pot on the side," Salina would consider it a regulated wall sign. If that same "steaming cup of coffee" happened to be painted "on the other side of town unrelated to anything" there, the government confirmed that it would be unregulated. During depositions, City officials admitted The Cozy Inn could paint an airplane mural, or a pizza mural, and could even paint an exact replica of Andy Warhol's world-famous Campbell soup can—unless The Cozy Inn started offering travel agency services, sold pizzas, or started serving tomato soup. What's more, if a different business on the other side of town that had no relationship with The Cozy Inn or hamburgers were to paint the exact same mural that Plaintiffs painted, Salina would not consider it to be a regulated sign.

Much of the mural-sign code regime is ill defined and vague. The text of the zoning code (which includes the sign code) grants the zoning administrator the discretion to issue binding interpretations of the code. The City code allows the substitution of the conjunctive "and" with the disjunctive "or" and vice versa as "the sense requires it." Zoning Administrator Dean Andrew testified that he believes this gives him the unilateral discretion to substitute "and" for "or" at will. The phrases "pertains to the goods or services for sale," "art," "commercial speech," "mural," and much more is not anywhere in the City code. The City's use of these terms and its emphasis on

the commercial nature of goods or services for sale to distinguish between murals and signs—based on the artwork's content—is found only in the City's unwritten policies and practices.

Andrew uses this authority to implement numerous unwritten policies. For example, the City employs a different methodology of measuring the area of signs than the one written in the code if Andrew decides that it is "practical." As a result, for murals at The Yard and Sharp Performance, Andrew found it "practical" to measure the area of the mural by measuring individual elements of the mural, while excluding the background paint, while he found it to be "impractical" to measure the individual elements of The Cozy Inn mural and simply calculated the area of the entire wall, including the background paint. Andrew has utilized this discretion to determine that a mural painted on an exterior brick wall at The Yard is not considered a regulated sign because it is "inside" even though it is plainly not inside a building. Andrew testified that he ignores the portion of the sign code defining a "sign" regarding "displays calculated to attract the attention of the public." Yet the City, in response to an interrogatory, asserted that "The Cozy Sign is a display calculated to attract the attention of the public," without providing further explanation. Directly across the parking lot from The Cozy Inn's mural is a mural advertising Bull Durham Tobacco, but Andrew created an exemption to the mural-sign code regime out of whole cloth for the tobacco mural, while strictly applying the regime to The Cozy Inn. The City ignores the deadlines for responding to applications in the code if Andrew places the applications "on-hold," as happened to Plaintiffs' applications, which remain on hold.

The City's content-based discrimination is seen throughout the city. Salina exempts the following murals that are "signs" under the code from the size restrictions, and the permit regulations, because of their content: Fire Station #2; The Yard side mural; KU's School of Medicine; Salina Art Center; Mural at the Mill; and the water tower mural. The City considers

other murals to be signs but finds them to be compliant with the mural-sign code regime based on the City's unwritten policies and practices: Bull Durham; Sharp Performance; The Yard front mural; and Schlotzsky's.  Dozens of other murals throughout Salina are exempt.  The City is host to the Boom Salina Art & Mural Festival, which has painted murals all around Salina.  The City even sponsors murals throughout town through the Salina Arts & Humanities Department.  The murals throughout Salina are popular and tourist attractions, and Howard painted the mural at The Cozy Inn to be a part of this thriving cultural scene.  No member of the public has complained about the mural at The Cozy Inn.  However, numerous members of the public have complained about the City's decision to order The Cozy Inn to halt work on the mural.

Salina has not disclosed any evidence or factual basis to support the alleged purposes of the mural-sign code regime.  There is no factual basis for the belief that regulated murals are more aesthetically displeasing than unregulated murals.  There is no factual basis for the belief that regulated murals are more dangerous to pedestrians than unregulated murals.  There is no factual basis for the belief that regulated murals create a greater danger of traffic accidents than unregulated murals.  There is no factual basis for the belief that regulated murals are more likely to harm property values than unregulated murals.  There is no factual basis to treat artwork differently based on its content. Plaintiffs' expert rebuttal witness, Charles Taylor, has demonstrated that the report of Defendant's proffered expert, Mark White, is not credible or reliable, and does not provide a factual basis for the mural-sign code regime.

b.      **Defendant City of Salina's Factual Contentions.**[4]

<u>Overview</u>

The *Austin* court recognized sign regulation approvingly as a "tradition" dating back more than 150 years—and observed that during that time, such regulations have addressed "signs . . . that promote ideas, products, or services . . . [or] promote or identify things located onsite." The City has regulated signs in like fashion for about 58 years. The City's regulations are currently codified at Salina Code of Ordinances ("Salina Code"), Chapter 42, Article X ("Sign Code").

The definition of "Sign" in Salina Code § 42-764 is agnostic as to content. It turns on whether a display is used to "announce, direct attention to, or advertise" and is "not located inside a building." If a display is located outside of a building and is used to "announce, direct attention to, or advertise," then it is a "Sign" and subject to the Sign Code's size limitations. Displays that fall outside of the definition of "Sign" are not signs and are therefore not regulated as such.

Plaintiffs allege a different interpretation of the City's definition of "Sign." Under Plaintiffs' interpretation of § 42-764, a sign is *anything* that is "calculated to attract the attention of the public." Plaintiffs' interpretation is absurd, ignores the plain language of § 42-764, is not how the City interprets § 42-764, and is not how the City applied § 42-764 to The Cozy Inn sign. Plaintiffs' suggested interpretation would mean that all displays – including murals – are signs under the Sign Code.

Yet Plaintiffs' interpretation does not alter the content-neutrality analysis. The text of the Sign Code remains content-neutral. Even if Plaintiffs have the correct interpretation, they are

---

[4] Plaintiffs are currently unable to object to the City's factual contentions on the grounds that they exceed the scope of the pleadings because the City has not yet filed a pleading. If and when the City does so, Plaintiffs will raise any such objection at that time. Further, Plaintiffs object to the City's factual contentions on other grounds, but will raise those objections on summary judgment or at trial.

without relief that would address their alleged injury.  Indeed, even if this Court adopts Plaintiffs' interpretation of "sign" and finds that all displays are regulated signs, the legal status of Plaintiffs' display would not change—it would still be a sign that is too large to qualify for a permit.

The sign code is concerned with what a display does, not what it says.  The text of the sign code makes no reference to topics, ideas, messages, or viewpoints regarding what is announced, the objects or locations to which attention may be directed, or the contents of any advertisement. While in some circumstances City officials may have to look at a display to determine if it is a Sign, a sign code is not content-based merely because it requires a reading of the sign to determine if a content-neutral regulation applies.  Structurally, the Cozy Inn sign is a wall sign as defined in Salina Code § 42-781.  Salina Code § 42-781 also makes no reference to content and is concerned with the physical structure of a sign; to be a wall sign, the display must also fit within the definition of Sign in § 42-764.

The Sign Code is Content-Neutral

On its face, the definition of "Sign" is not content-based.  There are no unwritten policies and procedures.  City officials, including the Zoning Administrator, do not have unbridled discretion.  City officials, including the Zoning Administrator, follow the Sign Code provisions.

The purposes set forth in Salina Code § 42-500 are also content-neutral.  As such, intermediate scrutiny applies, and the Sign Code is constitutional because: (1) the purposes articulated in Salina Code § 42-500 (particularly traffic safety, pedestrian safety, property values, and aesthetics) are substantial government interests; (2) the Sign Code is narrowly tailored to advance those interests because the interests are furthered more effectively under the Sign Code than in the absence of regulation; and (3) Plaintiffs have ample alternative channels of communication of their information.  In fact, Plaintiffs can display the exact same sign in a smaller

size, Plaintiffs have other existing signs on the Cozy Inn premises that fit within the allowable sign area, and Plaintiffs already communicate information through a number of other channels including radio, billboards, and social media.[5]

In considering whether the Sign Code is content-based as-applied to the Cozy Inn, the Court only considers how the sign code was applied to the Plaintiffs' sign. No other display is germane to Plaintiffs' case. The City applied the definition of "Sign" as written to the Cozy Inn sign. The City outlined its application of the Sign Code to the Cozy Inn sign in a document entitled the "Cozy Inn Sign Analysis." The City provided this memorandum to Howard and explained why the Sign was too large to qualify for a sign permit. On November 13, 2023, City staff informed the City Commission why Howard's display was a "Sign" under the Sign Code. The deposition testimony of City staff also supports the City's position that it applied the definition of Sign as written to the Cozy Inn sign.

Plaintiffs appear to make the argument that the Sign Code represents a commercial speech regulation that is unconstitutional. The Sign Code is not a commercial speech regulation. However, assuming *arguendo* this Court finds the Sign Code distinguishes between "signs" and displays that are not signs based on whether the display is commercial speech or noncommercial speech, the commercial-noncommercial distinction is not a classification of speech that is content-based or otherwise implicates strict scrutiny. Commercial speech is subject to an intermediate standard of review (discussed above). The Sign Code does not favor commercial speech over noncommercial speech. Indeed, Plaintiffs' Amended Complaint concedes this at ¶ 210 ("This demonstrates Salina's antipathy toward content related to a business and commercial speech. This

---

[5] Although the City's purposes are substantial government interests as a matter of law and require no evidence, the City has disclosed evidence, including its expert report, that the Sign Code actually advances the City's interests.

also demonstrates Salina's preference for content unrelated to a business and noncommercial speech."). Interestingly, Plaintiffs complain that noncommercial speech is favored and simultaneously allege that their sign displays noncommercial speech. However, Plaintiffs do not request declaratory judgment that the Sign Code does not apply to their sign.

<u>The City Determined Howard's Display was a "Sign"</u>

Salina Code § 42-501 directs a property owner to obtain a sign permit before a sign is painted, constructed, erected, remodeled, relocated, or expanded. The sign permit application form identifies the information required to be submitted for review. Plaintiffs did not seek a sign permit before beginning construction of the wall sign. Plaintiffs knew the City regulated signs, but did not review the regulations. Plaintiffs testified that they have no intent to read the regulations. On November 3, 2023, Plaintiffs started painting the wall sign. On November 6, 2023, the City reviewed the wall sign that was fully outlined and partially painted on the wall. The City determined that Plaintiffs' display is a wall sign under Salina Code §§ 42-764 and 42-781.

The Cozy Inn wall sign announces (among other things, the infamous onion smells of The Cozy Inn that Howard admitted "tag" anyone who enters). It "directs attention to" by way of a large arrow that points to the building entrance and ordering window. The sign also advertises, by way of pictorial representations, the hamburgers and hamburger toppings (ketchup, mustard, pickles, onions) that are available for sale at The Cozy Inn. Salina Code § 42-521 provides the sign area and number limitations for signs in the C-4 district (where The Cozy Inn is located). Using the dimensions of The Cozy Inn north wall (which the City obtained from a prior application submitted by The Cozy Inn for an awning sign and software the City has to assist in measuring the height of buildings), and noting the sign occupied the entire north wall, the City determined The Cozy Inn sign was too large to qualify for a sign permit under the sign area limitations in § 42-521.

Given the existing sign inventory, the Cozy Inn had approximately 10 square feet of remaining sign allowance, but the wall sign was approximately 528 square feet in size.

On November 6, the City contacted Howard and asked him to pause the painting, advising him that the painting was a wall sign under the sign code, it needed a sign permit, and it was too big to qualify for a sign permit as proposed.  Howard did not administratively appeal this determination.  The City met with Howard again on November 13.  At this meeting, the City provided Howard with the Cozy Inn Sign Analysis memorandum that outlined the specific provisions of the sign code the City applied to Howard's sign to determine it was a sign and that it was too large to qualify for a sign permit.  Howard did not administratively appeal this determination either.

The City understood that Howard was upset by the City's determination, and the City wanted to work with him to see if a code-based solution could be reached.  In doing so, the City explained to Howard that it was going to engage a sign consultant that would help the City evaluate if the Salina community was in favor of permitting wall signs as large as The Cozy Inn sign on the sides of smaller buildings, and if the City could amend the Sign Code in a content-neutral fashion while continuing to advance its content-neutral purposes.  While uncertain if this was possible, the City wanted to try to work with Howard, and the City understood that Howard was interested in pursuing this option.  The City did not have any official submission from Howard regarding the sign, so it invited him to submit a sign permit application.[6]  Unbeknownst to the City, Howard had already contacted the Kansas Justice Institute on November 11, 2023 to ask about representation in this case.

---

[6] Howard submitted this application, which included a rendering of the proposed final wall-sign that was different than the wall sign painted on the side of the Cozy Inn.  After a review of the allegedly final rendering, the City confirmed the display was a sign.

<u>The Sign Code Is Not an Impermissible Prior Restraint</u>

With respect to Plaintiffs' prior-restraint claim, the Sign Code, on its face, does not promote arbitrary enforcement because it provides sufficient standards to limit the City and its officials' discretion. The Sign Code has numerous procedural safeguards including avenues for variances and appeals to resolve issues with the City. Further, the standard in the Sign Code is whether the display:

> (1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground; (2) Is used to announce, direct attention to, or advertise; and (3) Is not located inside a building.

City staff under the supervision of the zoning administrator are capable of determining whether the structure or display is attached to, painted on, or represented on a building or other structure or on the ground. City staff under the supervision of the zoning administrator are capable of determining whether a display announces, directs attention to, or advertises. The City has been interpreting the definition of sign consistently for decades. The City applies the plain language and ordinary use of the words and phrases "announce, direct attention to, or advertise." The word "advertise" – which the Cozy Inn sign does – is widely used in defining "sign" for regulatory purposes. It is particularly clear when, as here, the advertisements pertain to or reference "goods or services for sale." "Building" is also a defined term in the Salina Code, and City staff under the supervision of the zoning administrator are capable of determining when a display is not located inside of a building. These criteria are constitutionally sufficient.

Further, the Sign Code provides for a brief, specified period of time within which the City must issue or deny a sign permit. In this case, the City informed Howard within three days after he began painting the sign that it was too large to qualify for a sign permit. In an effort to cooperate with Howard regarding a possible code-based solution, and understanding that he was interested

in pursuing this option, the City placed the Plaintiffs' application "on-hold" instead of outright denying it. This approach was intended to be collaborative and helpful, and while it was relatively novel, it was neither illegal nor unconstitutional. The City did not need to again inform Howard that the sign was too large for a sign permit. He already knew that, and indicated as much on the sign permit application.

The Sign Code Is Not Unconstitutionally Vague

As to Plaintiffs' vagueness claim, the Sign Code provides people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Its text provides clear standards that ordinary people can understand, and therefore does not encourage arbitrary and discriminatory enforcement. During depositions, both Howard and Windholz testified that they had not read the Sign Code, did not attempt to read the Sign Code, and do not intend to read the Sign Code.

The Sign Code does not regulate "murals." It regulates signs. As such, the Sign Code is not vague simply because it does not define mural or any number of other terms and phrases enumerated by Plaintiffs that are simply not pertinent to regulating signs. Other words and phrases that are used in the Sign Code need no definition and do not render the Sign Code vague as they have well-understood meanings.

**4.    LEGAL CLAIMS AND DEFENSES.**

    **a.    Plaintiffs' Claims.**

        i.    <u>Violation of the First Amendment Free Speech Clause:</u> Salina's mural-sign code regime (which includes Salina's written sign code, § 42-500 et seq., Salina's unwritten policies and practices, Salina's Sign Permit requirement, and their concomitant enforcement penalties) violate Plaintiffs' First Amendment rights because, both on its face and as applied to the mural at The Cozy Inn, it is a content-based restriction on speech, a speaker-based restriction on speech, and a prior restraint of speech. The mural-sign code regime is unconstitutional under strict scrutiny, intermediate scrutiny, or rational basis review. Plaintiffs also contend, to preserve the issue for appellate review, that the "commercial speech"

16

doctrine is inconsistent with the First Amendment and should be overturned.

ii.    <u>Void-for-Vagueness Doctrine of the Fourteenth Amendment:</u> the mural-sign code regime is void for vagueness under the Fourteenth Amendment. Salina's mural-sign code regime "is so standardless that it authorizes or encourages seriously discriminatory enforcement," in violation of the Due Process Clause. The mural-sign code regime is so vague "that regulated parties [do not] know what is required of them," and fails to provide the "precision and guidance" required to guarantee "that those enforcing the law do not act in an arbitrary or discriminatory way.

**b.    Defendant the City's Defenses.**

The City asserts the following defenses:

i.    Plaintiffs have not sought declaratory judgment from this Court to declare that their display is not a sign under the Sign Code, so Plaintiffs have not requested a declaration that will redress their asserted injuries.

ii.    The Sign Code is content-neutral on its face and as applied to the Plaintiffs because the germane provisions of the Sign Code are not concerned with the idea, topic, subject, or viewpoint of the message displayed, the Sign Code is justified without reference to the content of the regulated speech, and the Sign Code was applied as it is written.

iii.    The Sign Code passes intermediate scrutiny because it is narrowly tailored to advance the City's substantial interests of traffic safety, pedestrian safety, aesthetics, and property values, and it leaves open ample alternative channels because Plaintiffs can communicate the information with the exact same sign in a smaller size, with other existing signs on the Cozy Inn premises that fit within the allowable sign area, and through a number of other alternative channels.

iv.    The Sign Code is not a prior restraint because it provides sufficient standards to limit the City and its officials' discretion, so it does not promote arbitrary enforcement.

v.    The Sign Code is not a prior restraint because it provides for a brief, specified period of time within which the City must issue or deny a sign permit, and the City informed Mr. Howard within three days after he began painting the sign that it was too large to qualify for a sign permit. The unique circumstances of this case, in which the City attempted to collaborate with the Plaintiffs to achieve a legislative solution, do not transmogrify the Sign Code into an unconstitutional prior restraint.

vi.    Plaintiffs may not seek relief on behalf of "others similarly situated."

    **vii.**    The Sign Code is not vague because it provides people of ordinary intelligence with a reasonable opportunity to understand what conduct is prohibited.

    **viii.**    The Sign Code is not vague because it provides narrow, objective, and definite standards that properly guide the City and its permitting officials.

    **ix.**    The "overbreadth" doctrine, which relates to vagueness, does not apply to commercial speech.

**5.**    **DAMAGES AND NON-MONETARY RELIEF REQUESTED.**

Plaintiffs seek the following relief:

**a.**    A declaratory judgment that the City's mural-sign code regime—which includes the City's written sign code, unwritten policies and practices, Sign Permit requirement, and its concomitant enforcement of penalties ("mural-sign code regime")—as written and enforced:

    **i.**    is an unconstitutional content-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated;

    **ii.**    is an unconstitutional speaker-based restriction on speech, on its face and as applied to Plaintiffs and others similarly situated;

    **iii.**    (alternatively, if the mural-sign code regime is ruled to be content-neutral and speaker-neutral) fails to satisfy intermediate scrutiny, on its face and as applied to Plaintiffs and others similarly situated;

    **iv.**    is an unconstitutional prior restraint on speech, on its face and as applied to Plaintiffs and others similarly situated; and

    **v.**    is void for vagueness, on its face and as applied to Plaintiffs and others similarly situated.

**b.**    A prospective permanent injunction enjoining the City, its officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the City's mural-sign code regime on its face and as applied to Plaintiffs and other similarly situated.

**c.**    A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on The Cozy Inn, or for completing the mural on The Cozy Inn.

**d.**    Should plaintiffs prevail, they will seek their attorney fees and costs pursuant to 42 U.S.C. § 1988.

Defendant seeks the following relief:

    **a.**    Should the City prevail, it will seek its attorney fees and costs pursuant to 42 U.S.C. § 1988 on the grounds that Plaintiffs' case is frivolous, vexatious, harassing, and/or groundless.

**6.**    **AMENDMENTS TO PLEADINGS.**

    The parties do not anticipate any amendments to the pleadings.  Should the Court deny the motion to dismiss in whole or in part, Defendant will file an answer to the amended complaint.

**7.**    **DISCOVERY.**

    Under the scheduling order and any amendments, all discovery was to have been completed by **October 18, 2024**.  All discovery is complete.

    Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations.  Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.**    **MOTIONS.**

    **a.**    **Pending Motions.**

        **i.**    Defendant's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF 26).

        **ii.**    Plaintiffs' Motion to Strike or Exclude Opinions of Attorney Mark White.

        **iii.**    Defendant's Motion to Exclude Plaintiffs' Rebuttal Expert Pursuant to F.R.E. 702.

    **b.**    **Additional Pretrial Motions.**

    After the pretrial conference, the parties intend to file the following motions:

        **i.**    Plaintiffs intend to file a motion for summary judgment and any necessary motions in limine.

> ii.     Defendant intends to file a motion for summary judgment and any necessary motions in limine.

The original dispositive-motion deadline, as established in the scheduling order and any amendments, was vacated on December 17, 2024 (ECF 96).  The dispositive-motion deadline is now re-set for **February 7, 2025**.   The parties must follow the summary-judgment guidelines on the court's website:

https://ksd.uscourts.gov/sites/ksd/files/Summary-Judgment-Guidelines%202023.pdf

Principal briefs in support of, or in response to, summary judgment motions must not exceed 40 pages and replies must not exceed 15 pages.  *See* D. KAN. RULE 7.1(d)(2).  Any motion to exceed these page limits or for an extension of briefing deadlines must be filed at least three days before the brief's filing deadline.  *See* D. KAN. RULE 6.1(a), 7.1(d)(4).

    **c.     Motions Regarding Expert Testimony.** The parties have both filed motions to exclude the testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law, as of the filing deadline of **December 20, 2024**.

**9.     TRIAL.**

The trial date was vacated on December 17, 2024. The trial date is re-set for **October 7, 2025, at 9:00 a.m., in Wichita, Kansas**.  This case will be tried by the court sitting without a jury. Trial is expected to take approximately 2 days.  The court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition

testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

10.     **ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The parties have not participated in mediation.  They currently believe the prospects for settlement of this case are poor and they do not believe that court-ordered ADR would be helpful.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the court if they reach an agreement that resolves the litigation as to any or all parties.  Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the court's jury coordinator at least one full business day before the scheduled trial date.

**IT IS SO ORDERED.**

Dated January 16, 2025, at Kansas City, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge