In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.** | Civil Action No. 6:24-cv-01027-TC-ADM |
| Plaintiffs, | Plaintiffs' Reply Brief; Index of Exhibits; Exhibit A; Certificate of Service. |
| v. | |
| **City of Salina, Kansas.** | |
| Defendant. | |

### Plaintiffs' Reply Brief

The Plaintiffs moved to exclude or strike the opinions of Salina's proffered expert, attorney Mark White, on the grounds his opinions are improper legal conclusions, that they weren't based on sufficient facts or data, they weren't the product of reliable principles or methods, and they weren't reliably applied to this case. Doc. 97. The Defendant responded by devoting nearly one third of its space to the mistaken belief that *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243 (10th Cir. 2023), turned the First Amendment analysis into a fact-free, government-deferential inquiry where the government gets to restrict speech because it says so. *See* Doc. 100. Sure enough, the district court and Tenth Circuit dismissed the plaintiffs' billboard case at the 12(b)(6) stage. But that's only because the plaintiffs didn't plead "with any specificity" the billboard regulation "faile[ed] to meet intermediate scrutiny." *Id*. at 1252.[1]

But even *if* Salina is correct—that courts analyzing First Amendment cases don't care about the facts—Rule 702 *still* doesn't authorize opinions based on insufficient data, or legal conclusions. In short, Salina has failed to meet its burden of establishing the admissibility of its proffered expert,

---

[1] *See also Aptive Env't, LLC v. Town of Castle Rock, Colorado*, 959 F.3d 961, 989 (10th Cir. 2020) (fact based First Amendment inquiry); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1071 (10th Cir. 2020) (same); *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1221 (10th Cir. 2021) (same).

and Mr. White's report and testimony should be excluded. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

I.  **White's opinions are inadmissible legal opinions.**

"[E]xpert testimony on legal matters is not admissible." *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021). Salina's suggestion that Mr. White's opinions are admissible because they are nothing more than opinion testimony that embraces the ultimate issue to be decided is incorrect. Doc. 100 at 6, 9. "While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007) (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir.1988)).

*Anderson* involved a woman's tort claim against the local TV station for airing excerpts of a video allegedly depicting the woman's rape by her estranged husband. A key element of the claim turned on whether the publication of the video was "not of legitimate concern to the public." *Anderson*, 499 F.3d at 1235. The plaintiff retained an expert to render an opinion that the video was not "newsworthy" or an issue of "public concern." *Id.* at 1237. The Tenth Circuit explained that whether the video was an issue of public concern was "the ultimate question of law" and that such legal conclusions were improper. *Id*.

Salina contends that *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, 468 F. App'x 816, 822 (10th Cir. 2012), shows that Mr. White's opinions are admissible. But the expert testimony in *MMC Management* is nothing like what is at issue in this case. That case involved a contract for the acquisition of a bank, and whether "entitlement to $16 million in tax benefits accruing over a period of years," was one of the assets of the bank included in the acquisition contract. *Id.* at 818. The proffered expert tax attorney testified about the specialized meaning of contract terms like "net of any related tax benefits, in respect of the FDIC counterclaim," and that the jury could conclude that this term in the contract could be interpreted in a "very broad manner." *MCC Mgmt.*, 468 F. App'x at 821-22. The *MMC Management* expert did not provide any testimony about the law, or the elements of the claim, he just testified about the meaning of phrases in the tax industry. The

opinions and testimony in *MMC Management* are nothing like Mr. White's opinions and testimony in this case. Mr. White's opinions and testimony do not define or explain technical terms of art utilized in a contract.

Instead, Mr. White's opinions are legal conclusions on the ultimate question of law before the Court. Mr. White's opinions do far more than simply "refer to the law in expressing his [] opinion," as the government contends. Doc. 100 at 6. His opinions are not just explanations of the facts of the matter with only a casual reference to the law. As in *Anderson* and *Specht*, Mr. White's opinions directly track with the elements of the claims, offer nothing more than a conclusory statement about the ultimate questions of law in this case, and are little more than an amicus "brief in support of" Salina. *Rural Water Dist. No. 4, Douglas Cnty., Kansas v. City of Eudora, Kan.*, 604 F. Supp. 2d 1298, 1307 (D. Kan. 2009) *aff'd in part, rev'd in part on other grounds*, 659 F.3d 969 (10th Cir. 2011). Such "testimony" is not helpful to the trier of fact, usurps the authority of the Court to decide questions of law, and is inadmissible under Rule 702.

## II.     White's opinions are not reliable.

Mr. White's opinions are not based on sufficient facts or data and are not the product of reliable principles and methods. *Nacchio*, 555 F.3d at 1241. Rather, his opinions are little more than inappropriate speculation and conjecture. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996). They are contradicted by evidentiary record in this case as well. *See* Doc. 97-6, Professor Taylor's Report; Doc. 97-7, Professor Taylor's testimony. And they are contradicted by Mr. White's own published learned treatise, *Content-Neutral Sign Codes After Reed and Austin*, Sign Research Foundation (Nov. 2022). Doc. 97-5.

Mr. White's report is devoid of facts from *Salina* showing that *Salina's* mural-sign code regime *actually* advances any of *Salina's* claimed interests. While Mr. White's report often references various sections of the Salina City Code, the City Code itself is simply a law, not facts or data. A proffered expert may not provide "expert" opinion simply by reading the law and opining on whether or not the law survives First Amendment scrutiny. Proper expert testimony would need facts and data about Salina itself and how the law actually impacts Salina. Mr. White's report and

opinions lack the required facts and data, and Mr. White testified that he doesn't know whether these facts even exist. *See* Doc. 97-4, White Dep. 46:25-47:1-5; 47:12-19; 47:21-48:4; 116:13-18; 120:10-17; 121:10-14; 123:7-14; 123:16-22; 124:13-19; 125:7-12. Without Salina-specific facts and data, Mr. White's opinions are no more than speculation and conjecture about whether or not Salina's mural-sign code regime violates the First Amendment. That is improper.

The government hasn't pointed to any facts or data in Mr. White's report that would contradict the facts in Professor Taylor's rebuttal report, either. As Professor Taylor pointed out, the Federal Highway Administration has conducted extensive studies on the impact of signage on traffic safety and these "reviews of signage and traffic safety have found no conclusive evidence of a link between signs and traffic accidents." Doc. 97-6, Taylor Report at 12. Mr. White's opinion that Salina's mural-sign code regime will enhance traffic safety "is not supported by scientific evidence," Doc. 97-6, Taylor Report at 10, and it is "pretty much settled science that on-premises signs don't cause traffic accidents." Doc. 97-7, Taylor Dep. 119:12-13.

Mr. White published a learned treatise on sign regulations, *Content-Neutral Sign Codes After Reed and Austin*, Sign Research Foundation (Nov. 2022), Doc. 97-5, that repeatedly contradicts the opinions he offers in this case. Defendant attempts to dismiss Mr. White's treatise as a "promotional article," that provides no more than "generalized pointers," and is "irrelevant" and "not germane." Doc. 100 at 5, 14. Defendant offers no evidence for its claim that Mr. White's treatise was a "promotional article," what it allegedly promotes, or why the analysis in the article is any less accurate because it is a "promotional article." Instead, Mr. White testified that it is a "reliable authority," and that he stood by his analysis in *Content-Neutral Sign Codes After Reed and Austin*. Ex. A, White Dep. 65:19-22.

But even if *Content-Neutral Sign Codes After Reed and Austin* is only a "promotional article," that would still cast doubt on Mr. White's proffered expert opinions. If Mr. White publicly promotes himself as holding the opinions in *Content-Neutral Sign Codes After Reed and Austin*, but then privately expresses different and contradictory opinions as a retained expert, that casts doubt

upon the reliability of Mr. White's methodology in reaching his opinions as well as his credibility as a witness.

### III. Conclusion.

Mark White's expert report and testimony provide nothing more than conclusory opinions on the ultimate questions of law in this case. Such opinions are improper and "invade[] the province of the trial judge" to determine questions of law. *United States v. Boutte*, No. 22-2079, 2024 WL 3665536, at *10 (10th Cir. Aug. 6, 2024). Additionally, his opinions are not based on sufficient facts and data, are not the product of reliable principles and methods, and are contradicted by the record in this case, Professor Taylor's rebuttal testimony, and Mr. White's own learned treatise. Mr. White's opinions are neither relevant nor reliable and should be excluded. Alternatively, the Court should exclude any portions of Mr. White's report, opinions, and testimony that are legal conclusions or that are not based on sufficient facts and data or the product of reliable principles and methods.

Dated: January 24, 2025.

Kansas Justice Institute
/s/ Jeffrey Shaw
Samuel G. MacRoberts, 22781
Jeffrey Shaw, 29767
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
Sam@KansasJusticeInstitute.org
Jeff@KansasJusticeInstitute.org
(913) 213-5018
Attorneys for Plaintiffs

### Certificate of Service

The undersigned certifies that on January 24, 2025, the above document(s) were filed using the CM/ECF system, which will send notification of such filing to all participants, including to: Aaron O. Martin, Todd G. Messenger, and Amanda C. Jokerst.

/s/ Jeffrey Shaw
Jeffrey Shaw