# Exhibit I
# Schrage Email
# 11/8/23

Message

| | |
|---|---|
| **From**: | mike.schrage@salina.org [mike.schrage@salina.org] |
| **Sent**: | 11/9/2023 5:17:40 PM |
| **To**: | Bill.Longbine@salina.org; greglenkiewicz@gmail.com; mike@landtitlesalina.com; karlryan@ryanmortuary.com; twdavis22@gmail.com |
| **CC**: | jacob.wood@salina.org; Shawn.Henessee@salina.org |
| **Subject**: | Cozy Inn Wall Sign #2 |
| **Attachments**: | Cozy Inn Code Summary.docx; APA-Ohio Sign Presentation 9-23.pdf; NH Article.pdf |

Mayor Hoppock & City Commissioners:

Staff was in contact with Mr. Howard multiple times again today and thought that we had gained his understanding that we would meet with him on Monday to discuss the issue and options further.  Lauren was recently contacted by KWCH requesting her to go on camera following their interview with Mr. Howard; she ultimately spoke with them by phone; we have been interviewed by Salina311 and we have seen social media posts indicating that Mr. Howard will be going on KSAL tomorrow morning.

Our intended message is that this question is not unique to Salina (see attached article).  We regulate the size of commercial signs through a permit process.  We were not contacted in advance (Mr. Howard asserts that it is a mural not a sign).  The proposed sign covers the majority of the wall of his building and far exceeds the size limits currently allowed by our code (see attached code summary).  We are willing to work with Mr. Howard, but this is going to be a code revision and policy decision that will take some time.  We have scheduled a meeting with Mr. Howard to start those conversations Monday of next week.

IMPORTANT NOTE:  Sharp Performance in the NE corner of 9th and Elm (north of the library) has a large wall sign that did not go through any type of permit process and has been unintentionally overlooked in terms of code enforcement.

I recently spoke with Mr. Howard.  As expected, he views it as a mural and feels he was just joining in on the mural activity taking place in the downtown.  He also indicated he does not do any kind of social media and he is trying to "go soft" in his interviews with the media suggesting he thinks we will be pleased with his comments.

Lauren has reached out to a consultant who is a planner and an attorney with a specialization in this topic who has assisted communities throughout the Midwest including Omaha.  She will be submitting a proposal for our consideration.  I have attached a slide show that she presented recently at a planning conference.  I haven't attached the presentation as a proposes solution or an on-point discussion of our issue at hand.  My primary points in attaching the presentation are that this is not unique to Salina, there are several legal considerations, it is very nuanced and complex and outside consulting would be very helpful if we want to quickly (a few months) develop a policy amendment that is similarly nuanced and takes in to account Salina specific feedback and direction.

Lauren is prepared to provide an overview of this issue during Other Business on Monday.

You are certainly welcome to contact me on my cell Friday and over the weekend.

*As is our standard advice to the Governing Body related to avoiding interactive communications, this message is intended to share information of general interest to the Governing Body.  I have included all Commissioners on this email distribution list to be sure they have the same information.  Please, do not initiate interactive communications amongst Commissioners since that would be a violation of the Kansas Open Meetings Act.*

Sincerely,

**Mike Schrage**
City Manager



Schrage

EXHIBIT NO. **26**

APPINO & BIGGS

City of Salina, Kansas
300 West Ash, Room 202
P.O. Box 736
Salina, KS 67402-0736

Phone: 785-309-5700
Fax: 785-309-5711
TDD: 785-309-5747
Website: www.salina-ks.gov

# The Cozy Inn Sign Analysis

## Sign Definitions
**Sec. 42-764. Sign.**

*Sign* is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:

(1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground;

(2) Is used to announce, direct attention to, or advertise; and

(3) Is not located inside a building.

**Sec. 42-768. Sign, business.**

*Business sign* is a sign which directs attention to a business or profession conducted, or to a commodity or service sold, offered or manufactured, or an entertainment offered, on the premises where the sign is located or to which it is affixed.

**Sec. 42-781. Sign, wall.**

*Wall sign* is a sign fastened to or painted on a wall of a building or structure in such a manner that the wall becomes merely the supporting structure or forms the background surface, and which does not project more than twelve (12) inches from such building.

## C-4 Sign Regulations
**Sec. 42-521. C-4 commercial districts.**

The following sign regulations shall apply in the C-4 central business districts:

(1) *Functional types permitted.* Any type listed in section 42-506, except that advertising signs for other than special public events sponsored by governmental, philanthropic and nonprofit organizations shall be prohibited in the C-4 district.

(2) *Structural types permitted.* Any type listed in section 42-507, except that mobile signs and roof signs shall be prohibited in the C-4 district.

(3) *Number of signs permitted.* In the C-4 district, four (4) signs per business with a maximum of ten (10) signs per zoning lot; provided, however, the following additional restrictions shall apply:

    a. No more than one (1) projecting sign or ground/pole sign shall be allowed per street frontage.

    b. Ground/pole signs shall be allowed only on zoning lots without buildings or those with buildings having a front yard setback of ten (10) feet or more.

    c. Ground/pole signs and projecting signs shall not be allowed in combination along the same street frontage.

CITY000223

(4) *Maximum gross surface area:*

    b.  In the C-4 district, three (3) square feet of sign area for each lineal foot of building frontage for allowable signage other than a ground/pole sign or a projecting sign; where no building frontage exists, one (1) square foot of sign area for each lineal foot of street frontage. Irrespective of building or street frontage, no property or zoning lot shall be restricted to less than thirty-six (36) square feet of sign area. No more than sixty-seven (67) percent of allowable sign area may be displayed on any building wall or street frontage. In regards to projecting signs and ground/ pole signs, the following maximum area limitations shall apply:

| Building Frontage | Projecting Signs* | Ground/Pole Signs |
|---|---|---|
| 25 feet or less | 30 sq. ft. | 45 sq. ft. |
| 26—50 feet | 36 sq. ft. | 54 sq. ft. |
| 51 feet or more | 48 sq. ft. | 72 sq. ft. |

*The maximum area for a projecting sign on a building wall without street frontage shall be four (4) square feet.

(5)    *Maximum height.* Ground/pole signs may not exceed thirty (30) feet in height above grade. Projecting or wall signs may not project above the lowest point of the roof of the structure to which it is attached.

## The Cozy Inn Information and Background

The subject property is legally described as the West 44.4 feet of the South 20.8 feet of Lot 103 on Seventh Street in the Original Town (now City) of Salina and addressed as 108 North 7th Street.

The subject property is owned by Steven Howard, he is also the owner and proprietor of the business within the building known as The Cozy Inn. The Cozy Inn Restaurant was one of the earliest known prototypes for a fast food "Hamburger Joint" in the State. The small diner-type restaurant has operated continuously from this location since opening in 1922. The utilitarian commercial building is one story and constructed of masonry with a white-painted stucco finish. Its most recognizable feature is a trademark red neon sign that hangs above the front façade on North 7th Street. The original 1922 interior, with grill, bar and five stools remains relatively intact. The restaurant and its simple hamburger and soda fare have gained notoriety over the years and have become a community icon.

The Cozy Inn occupies a property that is 20.8 feet in width and 44.4 feet in depth facing N. 7th Street. The property lines coincide with the building's exterior walls. The restaurant is bounded on the south by the old Public Utilities Building, at 110-120 W. Iron, and on the north and east by a six foot walkway and City Parking Lot 6A. The parking lot with landscaping, lighting and service areas was constructed by the City in 1986 as part of the Downtown Revitalization project.

In 2003, the DRB approved a Certificate of Compatibility (5-0) for the design and location of the new walk-up window, awning, signs, lighting and bench.  Because the off-premise seating area would occur on public property, the DRB could only make recommendations regarding the proposed seating area. Other locations for the seating area where also evaluated. The DRB voted (5-0) to recommend to that a License Agreement be approved with The Cozy Inn to allow an outdoor seating area along N. 7th Street. The Salina City Commission approved a License Agreement with The Cozy Inn on **August 11, 2003** which authorized The Cozy Inn to utilize the 50 ft. planter area along the east side of North 7th Street as an outdoor seating area.

In 2022, the DRB approved a Certificate of Compatibility (5-0) for the installation of a new awning on the west façade of the Cozy Inn building.  The awning included a 4.88 sq. ft. sign on it.

**Existing Conditions**
Current Allowable Sign Area:  21 ft. x 3 sq. ft. = 63 sq. ft. of allowable sign area and four (4) total signs allowed.

Current Signage:
1. North facing wall sign:      24.00 sq. ft.
2. 7th Street projection sign:  24.00 sq. ft.
3. 7th Street awning sign:       4.88 sq. ft.
   Total Sign Area:            52.88 sq. ft.

The Cozy Inn has the ability to install a fourth (their limit is 4) sign with no more than 10.12 sq. ft. of area.

**Proposed Hamburger Sign Analysis**
The proposed hamburger sign on the north wall of The Cozy Inn is approximately 528 sq. ft.  This would put The Cozy Inn in noncompliance as it would have approximately 581 sq. ft. of total sign area which is 518 sq. ft. over the allowable sign area.

CITY000225



# FLAGS & MURALS OH MY!

## CHALLENGING SIGN ISSUES POST-REED

2023 APA-Ohio State Conference

CITY000226

# AGENDA

How did we get here and what is going in the courts?



How can we deal with the tricky sign issues like flags, murals, and holiday decorations?



CITY000227

"It is truly a Herculean task to wade through the mire of First Amendment opinions to ascertain the state of the law relating to sign regulations."

*Granite State Outdoor Advertising, Inc. v. Clearwater,* 213 F. Supp. 2d 1312 (M.D. Fla. 2002).





frostbrowntodd.com        © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000228



frostbrowntodd.com     © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000229



## Judicial Review of Speech Regulations

CITY000230

# Reed v. City of Gilbert, Arizona

- SCOTUS, June 2015.
- Permit required for ALL signs but several exempted categories:
  - Political signs.
  - Ideological signs.
  - Temporary directional signs.
- "Some facial distinctions based on a message are obvious . . . Others are more subtle, defining regulated speech by its function or purpose."
- Content-based → strict scrutiny.





frostbrowntodd.com     © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000231

# City of Austin, Texas v. Reagan National Advertising, LLC

- SCOTUS, April 2022.
- On-premises v. off-premises signs.
- Not content based.
- "Unlike the regulations at issue in *Reed*, the City's off-premises distinction requires an examination of speech only in service of drawing **neutral, location-based lines. It is agnostic as to content.**"
- Content neutral → Intermediate scrutiny.



CITY000232

# Norton Outdoor Advertising, Inc. v. Village of St. Bernard, Ohio

- S.D. Ohio, June 2022.
- Sign regulation distinguished between on-premises and off-premises signs.
- Village's safety and aesthetics goals were substantial government interests.
- The sign regulations are designed to "protect the safety and general welfare of the public who travel I-75 within the Village."
- In *City of Austin*, the Supreme Court concluded that on/off-premises distinctions are content-neutral.



Detail at 1:1 from center of the map.

© 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000233

## LaCroix v. Town of Fort Myers Beach, Florida



- 11th Circuit 2022.
- "Laundry list" of prohibited signs, including "portable" signs.
- "There is no dispute that portable, handheld signs often convey **political, religious, or personal** messages."
- Highly protected speech.
- No alternative channels of communication.
- Content neutral, but still unconstitutional.

frostbrowntodd.com          © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000234

## Willson v. City of Bel-Nor, Missouri



- E.D. Missouri, 2020.
- One yard sign and one flag per residence.
- No window or wall signs.
- Expansive definition of "sign."
- Overbroad and not narrowly tailored.
- Under the ordinance, all banned:
  - Christmas lights.
  - Happy birthday balloons on mailbox.
  - Security system sticker on window.
  - "Welcome Home" banner.

frostbrowntodd.com    © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000235

# The bottom line.

 Categorizing types of speech can get you into trouble.

 Leave open "ample" channels of communication.

 Examine your sign laws: do they prohibit more than intended?

frostbrowntodd.com    © 2021 Frost Brown Todd LLC. All rights reserved. ADVERTISING MATERIAL. These materials are not legal advice and transmission or receipt of this information does not create an attorney-client relationship.

CITY000236

# WENDY E. MOELLER, FAICP



**WENDY E. MOELLER, FAICP**

**Principal and Owner**

**Compass Point Planning**





1
2

CITY000237

# NOW WHAT?

You have the legal background, which is critical to understanding the risks…but now but?

Even with the legal restrictions, there is still a lot you can't do.



Keep in mind…

1. **There is no perfect sign code model.**
2. There is always going to be a little grey area.

13

CITY000238

# PERMANENT SIGNS

## THE EASY PART 

**A permanent sign is a structure much like a fence, shed, or building – Establish the types allowed**

- Wall signs
- Projecting signs
- Monument signs
- Pole signs
- Window signs
- Awning signs
- Digital signs
- And so on…





14

# PERMANENT SIGNS

## THE EASY PART ✓



**Set up the rules for height, area, location, lighting, materials, digital, etc.**

- All are forms of content neutral regulations

- All are going to be based on community policy



CITY000240

# PERMANENT SIGNS

## THE EASY PART 



SCOTUS gave communities the ability to make on-premise versus off-premise distinction so easy to deal with billboards.



Prior to this, many communities simply dropped the distinction. If no signs were large enough to be billboards, then billboards are essentially prohibited

CITY000241

# PERMANENT SIGNS

## THE CHALLENGE - MURALS 

- No simple solution

- Art is a form of a message

- Some communities simply prohibit any painted wall sign, regardless of whether it would be considered art or a sign.





CITY000242

# PERMANENT SIGNS

## THE CHALLENGE - MURALS 



**Some communities take a calculated risk of making a commercial vs. noncommercial message distinction.**

- Focus on the facades that can be painted

- Materials (paint or banners)

- % of coverage

- General design principles

CITY000243

# PERMANENT SIGNS

## THE CHALLENGE - MURALS 

### Some communities have a special design review.

- Sometimes by a government-based board but others by an arts group/board

- The design criteria can be written in a content-neutral manner

- But happens when that group doesn't like the message?



CITY000244

# PERMANENT SIGNS

## THE CHALLENGE - MURALS 

### Keep in mind...

- Art is in the eye of the beholder

- Most communities do not regulate how you paint a home

- Graffiti – Illegally placed art but not always terrible and sometimes encouraged



Noncommercial message on a residential garage door



"Graffiti" along the Donaukanal in Vienna

CITY000245

# PERMANENT SIGNS

## THE CHALLENGE - FLAGS 



- Flags can be signs too…

- Many sign codes exempt US, State, and religious flags. **Don't do that!!**

- Focus on the support structure (poles/posts)

- At the most – commercial versus noncommercial distinction




CITY000246

# TEMPORARY SIGNS




## THE <u>KIND OF</u> EASY PART 

**Definitely temporary signs!**

### Temporary signs are a little more challenging…

- The entire structure is temporary or portable, and not intended to be a permanent installation.
- However, tough to place time limits on every temporary signs because some need longer time frames
  - Real estate signs?
  - Political/opinion signs – Free Speech is year-round!



**Temporary Sign?**

CITY000247

# TEMPORARY SIGNS



## THE EASY PART 

**You can pick and choose what TYPES of temporary sign structures to allow or prohibit!**

- Yard Signs
- Banner Signs
- Feather Signs
- Air-Activated Graphics
- Balloon Signs
- Sidewalk Signs
- And so on…







CITY000248

# TEMPORARY SIGNS



## THE CHALLENGE - CONTENT 

- Temporary signs are where the vast majority of content-based regulations are found.

- There is no easy solution – all approaches have pros and cons

- It is a matter or risk, and to some extent, the level of things you want to deal with in your job.







CITY000249

# TEMPORARY SIGNS



## THE CHALLENGE - CONTENT ?

### Door #1 – 100% Content-Neutral

- Safest bet from a legal standpoint

- Most communities establish the maximum number, size, and aggregate area of temporary signage allowed, as well as set the types

- Have to allow a reasonable amount of signage to accommodate all temporary sign and speech needs – There is no magic number.

- No matter how much signage you allow, it is very likely it will be an enforcement nightmare at elections.

| TABLE ⬦ TEMPORARY SIGN ALLOWANCES | | | |
|---|---|---|---|
| **Zoning Districts** | **Residential** | **Nonresidential** | |
| **Time Limit** | Unrestricted | Unrestricted | 30 Days per Quarter [1] |
| **Maximum Number or Area per Lot** | 40 Square Feet | 40 Square Feet | 20% of Permanent Building Signage Allowed or 36 Square Feet, whichever is Less |
| **Maximum Sign Area per Sign** | 6 Square Feet | 16 Square Feet | |
| **Maximum Height** | 4 Feet | 6 Feet | 6 Feet |
| **Permitted Sign Types** | Window or Yard | Banner, Sidewalk, or Yard | Banner, Feather, or Yard |
| **Zoning Permit Required** | No | No | No |
| [1] A quarter shall be defined as evenly timed quarter of the calendar year (January to March, April to June, July to September, and October to December). | | | |

CITY000250

# TEMPORARY SIGNS

## THE CHALLENGE - CONTENT 

### Door #2 – Commercial versus Noncommercial Distinction

- Slight legal risk because it is unclear if communities can make the distinction

- Cannot be more restrictive on the noncommercial message signs

- Cannot go beyond commercial versus noncommercial distinction

- Makes administration and enforcement easier, especially around elections

| Message | Non-Commercial Message | Commercial Message | | | |
|---|---|---|---|---|---|
| Zoning | All Districts | Residential Districts[1] | Nonresidential Districts | Nonresidential Districts | Nonresidential Districts (New Use)[2] |
| Time Limit | Unrestricted | Unrestricted | Unrestricted | 30 days, twice per year | 60 days |
| Maximum Number or Area per Lot | Unlimited | 2 signs | 12 sq. ft. per each 100 lineal feet of frontage | 64 sq. ft. | Equal to number of existing permanent signs |
| Maximum Area per Sign | 32 sq. ft. | 8 sq. ft. | 12 sq. ft. | 64 sq. ft. | Equal to area of permanent sign to be covered |
| Maximum Height | 4 ft. | 4 ft. | 6 ft. | 6 ft. | Equal to height of existing sign to be covered |
| Permitted Types | Yard, Window | Yard, Window | Yard, Banner | Yard, Banner, Vehicle[3] | Banner |
| Permit Required | No | No | No | Yes | Yes |

Table 1163.13-1: Temporary Sign Allowances

Note 1: Any conditionally permitted use located in a residential zoning district shall be permitted the same amount of temporary signs with a commercial message as allowed in nonresidential zoning districts.

Note 2: Regulations applicable to the establishment of a new use within an existing building where there is existing permanent sign to be covered by a temporary sign.

Note 3: Notwithstanding the provisions of Section 1163.06.Q, temporary signs may be permitted on vehicles (not trailers) that are operable, display current plates and registration and are parked in paved parking areas in a manner not obstructing traffic circulation.

CITY000251

# TEMPORARY SIGNS



## THE CHALLENGES 

- **Obscenity**

  - Don't do it. You can try the "neighborly" way and ask for items to be removed but avoid governmental enforcement

- **Holiday celebrations**

  - Some communities maintain an exemption but that could still be considered content-based exemptions.

  - Other communities just avoid having regulations related to them.



CITY000252

# TEMPORARY SIGNS

## THE CHALLENGES 

- **Human signs and vehicle signs**

  - A lot of communities just avoid regulations and hope for the best.

  - Some focus on location.

  - The toughest part is when is it intended to be a sign?



CITY000253



# QUESTIONS?

**Scott D. Phillips**
sphillips@fbtlaw.com
513.870.8206

**Wendy E. Moeller, FAICP**
wmoeller@compasspointplanning.com
513-543-8651

CITY000254



CITY000255

72°

## LOCAL

In-depth news coverage of the Greater Boston Area.

ART

# Pastry Mural Pits Bakery Against NH Town in Free Speech Suit

Where is the line between art, and advertising? The unresolved question is testing the direct democracy of a small New England town, where a painting of pastries has led to zoning dispute, a First Amendment lawsuit and a local vote

By **Kathy McCormack** and Robert F. Bukaty • Published April 18, 2023 • Updated on April 18, 2023 at 11:42 am

Bakery owner Sean Young was thrilled when high school art students covered the big blank wall over his doorway last spring with a painting of the sun shining over a mountain range made of sprinkle-covered chocolate and strawberry donuts, a blueberry muffin, a cinnamon roll and other pastries.

The display got rave reviews, and Young looked forward to collaborating with the school on more mural projects at his roadside bakery in Conway, New Hampshire.

Then the town zoning board got involved, deciding that the pastry painting was not so much art as advertising, and so could not remain as is because of its size. Faced with modifying or removing the mural, or possibly dealing with fines and criminal charges, Young sued, saying the town is violating his freedom of speech rights.

The painting could stay right where it is if it showed actual mountains, instead of pastries suggesting mountains, or if the building wasn't a bakery.

CITY000256

*Get Boston local news, weather forecasts, lifestyle and entertainment stories to your inbox. Sign up for NBC Boston's newsletters.*

"They said it would be art elsewhere," Young told The Associated Press in an interview. "It's just not art here."

"The town should not have the right to police art," he said.

The controversy has residents of this town of 10,000 grappling with big questions about creativity and liberty as it tries to preserve its rural character. Like other White Mountain communities that draw skiers, nature lovers and shoppers, Conway is under development pressure, making the sign dispute fraught with worries that any concession to commerce could change what they hold dear.

Many — including the zoning board members — applauded the students' colorful work, but said rules must be followed, even if they're old and outdated. At about 90 square feet (8.6 square meters), the mural is four times bigger than the sign code allows.

5:53

Here's a Sneak Peak of 'Life, Liberty and the Pursuit of New Hampshire' — Streaming Now on NBC10 Boston

CITY000257

Life, Liberty, and the Pursuit of New Hampshire follows a libertarian political migration known as the Free State Project. Twenty years ago, one man penned a manifesto encouraging 20,000 libertarians to sign a pledge and move to the Granite State for more freedom. Now "The Free State Project" is shaking up politics and communities in New Hampshire and growing in strength and numbers.

Following a longstanding democratic tradition of New England town meetings, residents deliberated how to define a sign before ultimately voting down changes last week. The local newspaper said the proposed wording wasn't clear. Ultimately, a judge may have to resolve what remains an open debate in town.

"Those kids put their heart in it," retiree Steve Downing said. He thinks the painting should stay.

"Everyone has to comply with the ordinance," said Charlie Birch, a former U.S. Forest Service worker. "And even though it was done by the students, which was well done, and I give them a lot of credit for it ... if you have the ordinance, 'One for all,' that's where we are. You can't really make any exceptions, otherwise everybody else will want the exception."

Art teacher Olivia Benish, who worked with three students on the project, apologized to the board in September for not doing "due diligence" to make sure the mural would comply. She didn't respond to requests for an interview. But she told the board members that there has to be a way to give students the opportunity to create positive public works of art "without upsetting the law and the powers that be," according to the town minutes.

The lawsuit Young filed in January argues that the town is unconstitutionally discriminating against him. He asked a judge to prevent the town from enforcing its sign code.

And now other businesses have been drawn into the controversy.

## More New Hampshire news



**APR 17**
Trump Holding April Campaign Event in Manchester, NH



**APR 17**
Mass. Woman Arrested After Leading Police on Chase Through Several NH Towns

CITY000258



**APR 12**

Catalytic Converter Theft Ring That Sawed Thru Mass., NH Is Busted, Feds Say

Long before the pastry painting was installed, the town had allowed other murals at a local shopping center, but in December the town found that three of those artworks are, indeed, signs that violate size limits. They go before the zoning board on Wednesday.

Young, who is being represented by the Virginia-based Institute for Justice, asked for $1 in damages. Meanwhile, he's selling T-shirts as a high school art department fundraiser, saying "This is Art" with the artwork on the front, and "This is a Sign" of a roadside "Leavitt's Country Bakery" sign on the back.

"As Conway officials have confirmed, the town does not consider a painting to be a "sign" if it does not convey what town officials perceive to be a commercial message," the lawsuit says. "But the town's perception is that any mural depicting anything related to a business is a 'sign.' This is governmental discrimination based on the content of the speech" and the speaker's identity, it said.

The lawsuit says the town's sign definition is "incredibly broad," with no mention of murals in the code: A sign in Conway is "any device, fixture, placard, structure or attachment thereto that uses color, form, graphic, illumination, symbol, or writing to advertise, announce the purpose of, or identify the purpose of any person or entity, or to communicate information of any kind to the public, whether commercial or noncommercial."

> ## *Get updates on what's happening in Massachusetts to your inbox. Sign up for our News Headlines newsletter.*

Board member Luigi Bartolomeo said he thinks the pastry painting is art, not advertising. He read the definition out loud at the board's meeting in August, and said he agrees with a local attorney who called it "unconstitutionally vague."

"I think it's a very badly written piece of code here," said Bartolomeo, who recently retired. But Board Chairperson John Colbath said the board has to work with the ordinance, which was approved by voters, and that there is a process to change that.

CITY000259

"If they had done a seasonal mural on the wall — covered bridges and sunflowers and what have you — and it did not represent what your business is in, then it would be more likely to be a well-respected piece of art and not construed as a sign," Colbath said at the August meeting.

He said to Young, "I understand the art thing — and you look and you see a mountain — but the general public sees donuts on the front of the bakery."

"I think most of the people said it's art," Young responded.

In its denial of Young's appeals, the board concluded that the bakery won't be negatively affected without the display.

"This supposed distinction between murals and signs shouldn't matter," attorney Betsy Sanz of the Institute said in a news release. "After all, nothing in the First Amendment distinguishes between art and commercial signs — or commercial speech of any kind."

The town and Young agreed in February to pause court proceedings — and any potential fines or charges — pending a vote on a revised definition that would allow the painting to stay. But it failed in last week's elections, with 805 to 750 voting against it, according to the town clerk's office. The judge now wants to hear from both sides by May 10.

"We're ready to keep going," Young said.

Town Manager John Eastman declined an interview, referring questions to town lawyer Jason Dennis, who said he would soon meet with town officials to discuss next steps.

The Conway Daily Sun offered its analysis in an editorial last week: "Voters smartly concluded that the proposed new definition of signs would only further complicate enforcement. That said, it is not a stretch to conjecture that most voters are fine with the murals at Leavitt's Country Bakery and Settlers Green. We suggest the town figure out a way to back off enforcement until a clearer definition can be written, one that accommodates 'art.'"

Copyright AP - Associated Press

---

This article tagged under:

CITY000260