# Exhibit Q
# Andrew 30(b)(6) Deposition Excerpts

# DEAN ANDREW, AS CORP REP

```
 1   .

 2               IN THE UNITED STATES DISTRICT COURT

 3                   FOR THE DISTRICT OF KANSAS

 4   .

 5   .

 6   COZY INN, INCORPORATED, d/b/a

 7   THE COZY INN; STEPHEN HOWARD,

 8          Plaintiffs,

 9   .

10       vs.      Civil Action No.   6:24-cv-01027-TC-ADM

11   .

12   CITY OF SALINA, KANSAS,

13          Defendant.

14   .

15   .

16                        DEPOSITION OF

17                   CORPORATE REPRESENTATIVE

18                        DEAN ANDREW,

19   taken on behalf of the Plaintiffs, pursuant to

20   Notice to Take Deposition, beginning at 2:10 p.m.

21   on the 30th day of October, 2024, at Clark, Mize &

22   Linville, 129 S. 8th Street, in the City of

23   Salina, County of Saline, and State of Kansas,

24   before Sandra S. Biggs, Kansas CCR No. 0716.

25   .
```



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

1  **commercial location or can it be directing**
2  **attention to a non-commercial location as well?**
3       A.   It can direct attention to any particular
4  location.
5       **Q.   All right.  And when the city determines**
6  **if a display advertises, what methodology does the**
7  **city use to make that determination?**
8       A.   We look to see whether the visual display
9  promotes or encourages some sort of product or
10 service or invitation to enter into some form of
11 commercial transaction or whether the visual
12 display promotes a particular brand or a
13 particular product.
14      **Q.   Does the advertising have to be**
15 **commercial in nature or can it be non-commercial?**
16      A.   It does not have to be commercial.
17      **Q.   When determining if a display is a sign,**
18 **does the city determine if the display is**
19 **calculated to attract the attention of the public?**
20      A.   No.
21      **Q.   Why doesn't the city determine that?**
22      A.   Because in interpreting and applying
23 Section 42-764, the city has interpreted that to
24 be a catchall provision and to catch any type of
25 display mechanism that's not mentioned in the



5111 SW 21st Street       6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                Suite 305
785-273-3063          Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com         913-383-1131              316-201-1612

1   application, an inventory of any existing signs

2   that are already on the property.

3       Q.   Will that maybe be called an elevation

4   drawing, is that basically like a drawing of where

5   the proposed sign would be on the property?

6       A.   No.

7       Q.   All right.  What is the elevation drawing

8   then?

9       A.   Elevation drawing is an -- a drawing

10  prepared usually by a sign manufacturer that says

11  this is the proposed sign, here's the materials

12  it's made out of, this is its height and width and

13  here is the information on whether it's designed

14  to be illuminated or static.  And it's a draw that

15  depicts the appearance and the physical

16  characteristics of that sign.

17      Q.   Would the elevation typically include the

18  copy that will be placed on that sign if it is

19  installed?

20      A.   Yes.

21      Q.   Okay.  Is the copy required to be in the

22  application?

23      A.   It is if you want us to measure the

24  letters.

25      Q.   Is the city -- strike that.  Does the

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

1    A.   No.

2    Q.   **Why not?**

3    A.   Because it's a non-conforming sign.  As a
4    non-conforming sign, the owner of the sign can
5    maintain that sign.  They just can't enlarge it or
6    structurally modify it or expand it.

7    Q.   **And has the city determined whether or**
8    **not this sign is considered an abandoned sign?**

9    A.   It is not considered an abandoned sign.

10   Q.   **When did the city make that**
11   **determination?**

12   A.   Well, if it made that determination, it
13   predated the abandoned sign code which I believe
14   was adopted in 1990.

15   Q.   **I'm confused by that.  Before the code**
16   **was adopted defining what an abandoned sign is,**
17   **the city had determined it is not an abandoned**
18   **sign?**

19        MS. JOKERST:  I'll object to form.

20   A.   This sign was inside a building.  This
21   sign's over a hundred years old and was inside a
22   building.  That building was torn down in 1985.
23   That interior wall became an exterior wall when
24   the building was removed to make way for the
25   parking lot.  So at that point in time when it

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

```
 1        BY MR. SHAW:
 2        Q.   So as long as a building is not vacant, a
 3   sign can't be abandoned?
 4             MS. JOKERST:  Object to form.
 5        A.   The abandoned sign ordinance establishes
 6   time frames for certain parts, portions of signs
 7   or sign support structures to be removed.  And the
 8   triggering for that is the date upon which the
 9   premises became vacant.  If the premises is not
10   vacant, there's no date to trigger that on.
11        BY MR. SHAW:
12        Q.   So even if the sign no longer advertises
13   a bona fide business conducted, products sold or
14   service provided, it isn't abandoned until the
15   property has been vacated?
16             MS. JOKERST:  Object to form.
17        A.   The time period the clock for removal
18   starts when the premises is vacant.
19        BY MR. SHAW:
20        Q.   All right.  We can move on to Exhibit 18.
21   Are you familiar with Exhibit 18?
22        A.   It appears to be a photograph of Fire
23   Station No. 2 on South Santa Fe.
24        Q.   Has the city made a determination about
25   whether the mural at Fire Station No. 2 is
```



5111 SW 21st Street         6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604                Suite 101                  Suite 305
785-273-3063            Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com         913-383-1131               316-201-1612

1   **considered a sign?**

2       A.   Yes.

3       **Q.   What determination was made?**

4       A.   The determination that it does not
5   constitute a sign that announces, directs
6   attention to or advertises.

7       **Q.   What methodology did the city use to make**
8   **that determination?**

9       A.   It used the methodology found in Section
10  42-764 to determine whether the visual display on
11  the front of the building announced or directed
12  attention to or advertised.  It does not announce
13  or proclaim any fact, event, occurrence or entity,
14  it does not direct attention to any specific
15  location or opening or doorway or any physical
16  location, and it does not advertise.

17      **Q.   Does this mural depicted in the exhibit**
18  **identify the building as a fire station?**

19      A.   The city's position is that it does not.
20  It could just as easily appear on a museum or
21  library or anywhere else.

22      **Q.   Does this mural pertain to the activities**
23  **conducted at the fire station?**

24           MS. JOKERST:  Object to form.

25      A.   Not this fire station.



1      Q.   Where is that mural located?
2      A.   It's on the south wall of the
3  Schlotzsky's sandwich shop.
4      Q.   And has the city determined that the
5  mural depicted here is a sign?
6      A.   Yes.
7      Q.   When did the city make that
8  determination?
9           MS. JOKERST:  Object to scope.
10     A.   I can't tell you the exact time.  I can
11 tell you it was determined when the city became
12 aware of it and went out and reviewed it.  It
13 determined it to be a regulated sign and contacted
14 the owner of the business and the owner of the
15 property to say that they needed to obtain a sign
16 permit for that sign.
17          BY MR. SHAW:
18     Q.   What portions of this mural did the city
19 consider to be triggering the sign code?
20          MS. JOKERST:  I'll object to form.
21     A.   The city determined it to be a single
22 composition and determined that the entire visual
23 display was a sign.
24          BY MR. SHAW:
25     Q.   How did the city come to that



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1    **tower off of Magnolia Street?**

2         MS. JOKERST:  I'll object to form.

3         A.   There is a sign that's painted on the
4    water tower.

5         BY MR. SHAW:

6         **Q.   Okay.  What does the sign on the water**
7    **tower say?**

8         A.   To the best of my recollection, it says
9    Salina and it has Visit Salina.org underneath it,
10   but I would have to refer to the graphic I brought
11   to the deposition with me.

12        **Q.   Okay.  Referring to an image of it would**
13   **refresh your recollection?**

14        A.   Yes.

15        **Q.   All right.  Can you turn to Exhibit 39**
16   **then, please -- I'm sorry, not Exhibit 39.  34.**

17        A.   Is it stand-alone or is it associated
18   with other things?  Some of these have multiple
19   pages.  It used to have Salina lettered on it, but
20   now, it just says Visit Salina.org, Right Place,
21   Right Reason, Right Now.

22        **Q.   I'm sorry, it used to say what?**

23        A.   Used to say Salina.

24        **Q.   Okay.  And so the city has determined**
25   **that this is a sign.  Is that what you testified**



1      A.   The City of Salina, city commission,
2   believes that putting that information on the
3   water tower protects the public health, safety and
4   welfare.  It also provides wayfinding by letting
5   visitors know, one, that they're in Salina and,
6   two, where they can find information about Salina.
7      BY MR. SHAW:
8      **Q.   What facts does the city have that show**
9   **that the Chamber of Commerce website promotes the**
10  **public health, safety or welfare?**
11         MS. JOKERST:  Object to form and scope.
12     A.   Because attracting visitors and tourists
13  to the city is their mission, and attracting
14  visitors to the City of Salina protects the public
15  health, safety and general welfare of the public.
16     BY MR. SHAW:
17     **Q.   Are traffic and wayfinding signs -- let**
18  **me rephrase that.  Can any sign that might be used**
19  **by a driver as a landmark be considered an exempt**
20  **sign under this section?**
21         MS. JOKERST:  Object to form and scope.
22     A.   This exemption refers to signs that are
23  placed or authorized by the city.  This sign was
24  both placed and authorized by the city by which I
25  mean the governing body of the city.



**DEAN ANDREW, AS CORP REP**

1      Q.    And so each line of the pentagon was
2  individually calculated as a separate sign?
3      A.    No.
4            MS. JOKERST:  Object to scope.
5      A.    You asked me how we calculated the area
6  of it.
7            MS. JOKERST:  Did we get my scope
8  objection on the record here?
9            THE REPORTER:  Yes.
10           MS. JOKERST:  Okay.
11     A.    All right.  So I understood your question
12 to be how the city calculated the size of that
13 sign.
14     BY MR. SHAW:
15     Q.    Yes, that was the question.
16     A.    We drew a rectangle around The Yard and
17 the bat, and we drew -- we measured the rectangle
18 that forms the base of home plate, the rectangle
19 that forms the left and right sides of home plate
20 and the rectangles that form the point of the home
21 plate, added those together and determined those
22 to be what constituted the area of the sign.  And
23 the black -- entirely black backdrop of the paint
24 wall was not considered to be part of the sign.
25     Q.    Okay. So if I understand you correctly,

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street   6420 W. 95th Street   800 E. 1st Street
Topeka, KS 66604      Suite 101              Suite 305
785-273-3063          Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com   913-383-1131           316-201-1612

1  symbols.
2        BY MR. SHAW:
3        Q.   So for The Yard wall sign we were
4  discussing, shouldn't there have been a single
5  rectangle that encompassed the entire home base
6  plate and the text saying The Yard?
7             MS. JOKERST:  Object to form and scope.
8        A.   I do not believe so, no.
9        BY MR. SHAW:
10       Q.   So is it the city's position that each
11 individual element of a painted wall sign may have
12 a independent rectangle drawn around it and then
13 all of those rectangles are added up to calculate
14 the wall sign?
15            MS. JOKERST:  Object to form.
16       A.   I'll let you calculate using your method
17 and then I'll answer your question, because I
18 don't understand what you're saying.  Because what
19 you're saying is exactly what we did.
20       BY MR. SHAW:
21       Q.   Yes, that's what I'm asking.  It's the
22 city's position that whenever there's a wall
23 sign --
24       A.   Where it's practical.
25       Q.   Okay.  Where it's practical?



DEAN ANDREW, AS CORP REP

```
1          BY MR. SHAW:
2          Q.   What methodology did you utilize to
3    determine that it was not practical to use this
4    method for The Cozy Inn?
5               MS. JOKERST:  Object to scope and form.
6          A.   A, it's a single composition and, B,
7    there's no rectangles.  It's not -- it all blends
8    together.
9          BY MR. SHAW:
10         Q.   Why could you not draw individual
11   rectangles around each burger and each element of
12   the mural that is painted on the wall of The Cozy
13   Inn?
14              MS. JOKERST:  Object to scope and form.
15         A.   I don't think it's practical.
16         BY MR. SHAW:
17         Q.   Okay.  And is that based on anything in
18   the code or is that your determination as zoning
19   administrator?
20              MS. JOKERST:  Object to form and scope.
21         A.   That is my determination as a zoning
22   administrator.
23              MS. JOKERST:  Can we take a brief break
24   to go off the record?  I just want to get an
25   official estimate on what we're doing for time
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604          Suite 101                  Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131               316-201-1612

106

**CERTIFICATE**

**STATE OF KANSAS**

**COUNTY OF SHAWNEE**

I, Sandra S. Biggs, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Kansas, and authorized to take depositions and administer oaths within said State pursuant to K.S.A 60-228, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal this 13th day of November, 2024.

_____Sandra S. Biggs_____
    Sandra S. Biggs, C.C.R No. 0716



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612