## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Cozy Inn, Incorporated, | ) |
| d/b/a The Cozy Inn; Stephen Howard, | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) CASE NO.  6:24-cv-01027-TC-ADM |
| | ) |
| v. | ) |
| | ) |
| City of Salina, Kansas, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant City of Salina, Kansas ("the City"), by and through its attorneys Fairfield and Woods, P. C., hereby submits the following Responses to Plaintiff's First Set of Interrogatories:

### GENERAL OBJECTIONS

1.      Defendant objects to Plaintiffs' terms and definitions to the extent they attempt to impose obligations beyond the scope of the Federal Rules of Civil Procedure.

2.      Pursuant to the stipulation set forth in the Scheduling Order (Dkt. 29) at p. 6, Defendant objects to the production of any privilege log requiring Defendant to log documents or communications created on or after February 19, 2024 that are subject to the attorney-client, work product, and anticipation of litigation privileges.

3.      Defendant objects to each discovery request to the extent it seeks the disclosure of documents or information protected from discovery by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Any inadvertent disclosure

**EXHIBIT B**

of any privileged communication or documents shall not constitute a waiver of the applicable privilege, and Defendant reserves the right to seek return of all copies of any privileged communication.

4.    Defendant objects to each discovery request to the extent that it seeks to require Defendant to disclose public documents that are equally available to all parties.

5.    Defendant objects to each discovery request to the extent it is vague, ambiguous, overly broad, unduly burdensome and oppressive, irrelevant to the claim or defense of any party, or otherwise not proportional to the needs of the case. F.R.C.P. 26(b)(1).

6.    Defendant objects to each discovery request to the extent it contains multiple, discrete subparts.  *See* F.R.C.P. 33(a)(1).

7.    Defendant's responses are based on a reasonable and diligent search for information and are made to the best of its present knowledge, information, and belief.  Because discovery in this matter is ongoing, Defendant reserves its right, consistent with Federal Rule of Civil Procedure 26(e), to supplement its Responses with additional or different information that further investigation or discovery may reveal.

8.    Defendant objects to each request to the extent it requires Defendant to provide a narrative account of its case or inquire beyond material facts supporting specific factual matters raised in the pleadings.  *See*, *e.g.*, *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186–87 (D. Kan. 1997) and *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404 (D. Kan. 1998).

9.    Defendant objects to the extent the burden of deriving the answer from business records is substantially the same for Plaintiffs as it is for Defendant.  *See* F.R.C.P. 33(d); *see also*

**EXHIBIT B**

*Linnebur v. United Telephone Ass'n, Inc.*, 2011 WL 3490022, *5 n.46 (D. Kan. Aug. 10, 2011).

      10.    The foregoing General Objections apply to and are incorporated into each and every specific Response below, whether or not expressly incorporated by reference. The repetition or omission of any General Objection in the Responses below should not be construed to mean that other applicable General Objections are not being asserted.

**FIRST SET OF INTERROGATORIES**

      1.   Please explain how the City first learned about the Plaintiffs' mural's existence.

**OBJECTION AND RESPONSE: The City objects to this discovery request to the extent it refers to the Cozy sign that is the subject of this dispute ("Cozy Sign") as a mural or otherwise implies the Cozy sign is not a sign under the Salina Code of Ordinances ("Salina Code"), Chapter 42, Articles X ("Sign Code"). Subject to and without waiving this objection, the Cozy is located on a main street approximately one block from the City's offices. Due to the size and location of the sign, it is visible to passersby from the street. Brad Anderson noticed the Cozy Sign as he drove by the Cozy, and was the first City staff member to bring the sign to the City's attention.**

      2.   Please identify the city officials who discussed with Dustin Herrs the enforcement of the mural-sign code regime against the Plaintiffs' mural and describe the extent of each official's involvement (i.e. whether the official directed Mr. Herrs to issue a citation against Plaintiffs).

**OBJECTION AND RESPONSE: The City objects to this discovery request to the extent it refers to the Cozy Sign as a mural or otherwise implies the Cozy Sign is not a sign under the Sign Code. The City further objects to the use of the phrase "mural-sign code regime" to refer to the Sign Code or to Salina Code, Chapter 2, Article X ("BID Code"). The City objects to this request as compound and seeks information regarding the "extent of each officials' involvement" that is not a discrete subpart of the initial interrogatory asking the City to identify the city officials who discussed the "enforcement of the" Sign Code against Plaintiffs' sign.**

**Subject to and without waiving these objections, the City responds to the first interrogatory contained in this request, that is "Please identify the city officials who discussed with Dustin Herrs the enforcement of the mural-sign code regime against the Plaintiffs' mural" as follows: The City did not issue a notice of violation or citation to Plaintiffs regarding the Cozy Sign. The City determined the Cozy Sign was a sign under the Sign Code and therefore subject to the Sign Code and BID Code, evaluated the Cozy Sign under the Sign**

**EXHIBIT B**

Code and determined that the Cozy Sign was too big to qualify for a sign permit, and informed Mr. Howard of the same. The City staff members who discussed the evaluation of the Cozy Sign under the Sign Code with Dustin Herrs were Lauren Driscoll, Dean Andrew, and Mike Schrage.

Regarding the second interrogatory in this request, as to Ms. Driscoll's involvement with Mr. Herrs, while it is impossible to remember every detail of Ms. Driscoll's involvement with Mr. Herrs and more details may come to light as discovery in this matter is ongoing, in general Ms. Driscoll discussed the application of the Sign Code, the size limits of the Sign Code in relation to the size of the Cozy Sign and Cozy property, follow-up meeting with Mr. Howard and Mr. Benson, providing information to Mr. Howard regarding the applicability of the Sign Code to the Cozy sign, next steps regarding the Cozy Sign and sign permit application, and the agreement with Mr. Howard to pause the work on the Cozy Sign.

Regarding the third interrogatory in this request, as to Mr. Andrew's involvement with Mr. Herrs, while it is impossible to remember every detail of Mr. Andrew's involvement with Mr. Herrs and more details may come to light as discovery in this matter is ongoing, in general Mr. Andrew discussed the application of the Sign Code, the size limits of the Sign Code in relation to the size of the Cozy Sign and Cozy property, Mr. Howard's knowledge of the Sign Code and BID Code process, and next steps regarding the Cozy Sign.

Regarding the fourth interrogatory in this request, as to Mr. Schrage's involvement with Mr. Herrs, while it is impossible to remember every detail of Mr. Schrage's involvement with Mr. Herrs and more details may come to light as discovery in this matter is ongoing, in general Mr. Schrage participated in discussions with Mr. Herrs, Mr. Andrew and Ms. Driscoll regarding the application of the Sign Code to the Cozy Sign, meeting with Mr. Howard and Mr. Benson, and next steps regarding the Cozy Sign.

　　　　3.   Please explain the changes the City believes Plaintiffs need to make to their mural in order to "turn this into a mural rather than a sign," as suggested by Vice Mayor Longbine at the November 13, 2023, Commission meeting, (Doc. 16 at ¶ 136.) and in the Brief in Support of Defendant's Motion to Dismiss (Doc. 27 at 8).

OBJECTION AND RESPONSE: The City objects to this request to the extent it refers to the Cozy Sign as a mural or otherwise implies the Cozy Sign is not a sign under the Sign Code. The City objects to this request to the extent it seeks information protected by the attorney-client or work product privileges as it relates to the Brief in Support of Defendant's Motion to Dismiss. The City further objects to this request as it seeks the City to explain or interpret the arguments made by the City's counsel in Doc. 27 to Plaintiffs. The City also objects to this request to the extent it misinterprets the argument in Doc. 27 at 8 as a suggestion. The City also objects as the request uses only an excerpt of Vice Mayor Longbine's statement and misinterprets the statement made by Vice Mayor

**EXHIBIT B**

Longbine on November 13, 2023 as a suggestion. Mr. Longbine's full statement at the meeting was "So I guess my thoughts all along as I've studied this issue is what would it take for him to turn this into a mural rather than a sign." The statement was phrased as a question, not a suggestion. That is because Mayor Longbine does not interpret or apply the Sign Code or BID Code on behalf of the City. The City will not respond to the request to the extent it seeks information "as suggested" by Vice Mayor Longbine or in the Brief in Support of Defendant's Motion to Dismiss.

Subject to and without waiving these objections, the City responds only to the non-objectionable portion of the request that asks "Please explain the changes the City believes Plaintiffs need to make to their mural in order to 'turn this into a mural rather than a sign.'" The City regulates signs as defined by Salina Code § 42-764. In order to remove the Cozy Sign from the applicability of the Sign Code regulations, Plaintiffs would have to change the Cozy Sign into a display that falls outside the definition of "sign" found at Salina Code § 42-764.

As the City does not know what changes Plaintiffs would be willing to consider (particularly considering Paragraph 29 of the Amended Complaint, which states, "Mr. Howard does not want to change, alter, or deviate from" the rendering shown in Paragraph 28 of the Amended Complaint), the City cannot (and does not) know all of the potential changes that could be made to the Cozy Sign that would take it outside of the scope of the definition of sign. It would be nearly impossible for the City to guess all of the changes that could be made to the Cozy Sign to turn it into a display outside the definition of sign. However, in general, Plaintiffs can change the Cozy Sign into a display that does not "announce, direct attention to, or advertise," which would remove the display from the scope of the definition of "sign" because the criterion in Salina Code § 42-764(2) would no longer be met, or Plaintiffs could relocate the display to the inside of the Cozy building, which would remove the display from the scope of the definition of "sign" because the criterion in Salina Code § 42-764(3) would no longer be met.

    4.  Please identify every government interest served by regulating Plaintiffs' mural.

OBJECTION AND RESPONSE: The City objects to this request to the extent it refers to the Cozy Sign as a mural or otherwise implies the Cozy Sign is not a sign under the Sign Code. Subject to and without waiving this objection, the purpose statement of the Sign Code, found at Salina Code § 42-500 (https://library.municode.com/ks/salina/codes/code_of_ordinances?nodeId=CH42ZORE_A RTXSI_DIV1GE_S42-500PU), sets forth the government interests served by regulating signs under the Sign Code. The City refers Plaintiffs to § 42-500 for a complete list of those interests. The Sign Code regulates all signs, not just the Cozy Sign and the government interests are served by the regulation of all signs (by addressing both their individual and cumulative impacts), not just the Cozy Sign. The government interests served by regulating signs like the Cozy Sign include aesthetics, pedestrian and traffic safety, and property values.

EXHIBIT B

     5.  Please explain how the City determines if a mural is used to "announce, direct attention to, or advertise."

**OBJECTION AND RESPONSE:  The City objects to this request to the extent it refers to a mural as defined by Plaintiffs in their Terms and Definitions, a definition that cannot be found in the Salina Code.  Subject to and without waiving this objection, the City applies the Sign Code as written. The City does not use or apply the term "mural" as defined by Plaintiffs in their Terms and Definitions.  The Sign Code definition found in Salina Code § 42-764 refers to, in pertinent part, whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "announce, direct attention to, or advertise."**

**The City applies the plain language and ordinary use of the words and phrases "announce," "direct attention to," and "advertise."  The City determines whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "announce" by evaluating whether the display makes a declaration about a fact, occurrence, or intention or proclaims or gives notice of, or identifies, a business, product, or event.**

**The City determines whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "direct attention to" by evaluating whether the display indicates, points to, points out, or specifies a location (in general, like a particular property, or specifically, like a building entrance or pickup window).**

**The City determines whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "advertise" by evaluating whether the display is meant to attract customers, encourage a commercial transaction, offer products or services in exchange for consideration (e.g., a display that says, "sliders, 5 for $5.00"); call attention to a brand, products, or services in order to encourage the purchase of products or services, in that it pertains to or references the goods or services for sale (e.g., the depiction of hamburger on the Cozy building wall).**

     6.  Please explain how the City identifies "art" which is exempt from the mural- sign code regime. See (Doc. 16 at ¶¶ 62-65, 100, 115, 208, 216); (Doc. 16-2 at 4-6, 22-23, 28); (Doc. 16-4 at 6-7); (Doc. 27 at 9, 12).

**OBJECTION AND RESPONSE: The City objects to this requests to the extent it seeks information protected by the attorney-client, work product and anticipation of litigation**

privileges respecting Defendant's Brief in Support of its Motion to Dismiss.  The City further objects to this request to the extent it seeks the City to explain the arguments made by the City's counsel as set forth in Doc. 27 at 9 and 12.  The City further objects to the extent the request incorporates allegations to the Amended Complaint as Plaintiffs made the allegations and no answer has been filed to determine whether the allegations are admitted or denied. Based on these objections, the City will only respond to the non-objectionable portion of the request "Please explain how the City identifies 'art' which is exempt from the mural-sign code regime."

The City objects to the use of the phrase "mural-sign code regime" to refer to the Sign Code or BID Code. Subject to and without waiving these objections, the Sign Code regulates "signs" as defined by § 42-764.  If a display is not a sign it does not fall within the scope of the Sign Code.

As to the term "art," the term "art" may be used from time to time as an imprecise short-hand for "not sign," but the term "art" is not included in the Sign Code and is not relevant to the determination of whether a display (whether it is artistic or not) is a "sign."  This is because some artistic displays are also "signs," and some are not.  To clarify, the artistic displays that are also signs are subject to regulation. The artistic displays that are not signs are just art, and because they are not also signs, they are not subject to regulation.

A "sign" under the sign code "is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:  (1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground; (2) Is used to announce, direct attention to, or advertise; and (3) Is not located inside a building.

Please see Response to Interrogatory No. 5 above for additional information responsive to this request.

7.   Please identify any murals that exceed the mural-sign code regime's size restrictions which the Defendant has determined are unregulated "art" within the last 5 years.

OBJECTION AND RESPONSE: The City objects to this request to the extent it refers to the Sign Code or BID Code as the "mural-sign code regime."  The City objects to this request to the extent it refers to a definition of "mural" in Plaintiffs' Terms and Definitions as that definition is not in the Sign Code or BID Code.  Subject to and without waiving these objections, the City applies the Sign Code as written. The City does not apply the

**EXHIBIT B**

term mural as defined by Plaintiffs in their Terms and Definitions.  The Sign Code definition found in Salina Code § 42-764 refers to whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "announce, direct attention to, or advertise."  The Sign Code regulates signs as defined by Salina Code § 42-764. If a display is not a sign it does not fall within the scope of the Sign Code.  Displays that are not signs are not subject to the size limits of the Sign Code, and the City does not evaluate the size of such displays. Accordingly, the City does not have information about the location or sizes of displays that are not signs under the Sign Code.  The City, does not have sufficient information to "identify" as requested.  Moreover, "unregulated 'art'" (which the City interprets as displays that are not signs) cannot exceed the Sign Code's size restrictions because those restrictions only apply to regulated signs.

8.   Please identify any murals that exceed the mural-sign code regime's size restrictions which the Defendant has determined are regulated "signs" within the last 5 years.

**OBJECTION AND RESPONSE: The City objects to this request to the extent it refers to the Sign Code or BID Code as the "mural-sign code regime."  The City objects to this request to the extent it refers to a definition of "mural" in Plaintiffs' Terms and Definitions that does not correspond to the Sign Code or BID Code.   Subject to and without waiving these objections, the City applies the Sign Code as written, it does not use or apply the term "mural" as defined by Plaintiffs in their Terms and Definitions.  The Sign Code definition found in Salina Code § 42-764 refers to whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to "announce, direct attention to, or advertise."  The Sign Code regulates signs as defined by § 42-764, and if a display is a sign within the Sign Code it is subject to the size limits of the Sign Code.**

**Pursuant to Request for Production No. 5, Defendant is producing citations issued within the last 5 years.  Pursuant to F.R.C.P. 33(d), Defendant refers Plaintiffs to those documents produced in Defendant's forthcoming supplemental disclosure for information responsive to this request.**

9.   Please explain how the City determines if a mural "pertains to the goods or services for sale." See Amended Complaint at ¶¶ 32, 44, 52-54, 64-65, 128.

**OBJECTION AND RESPONSE: The City objects to this request to the extent it refers to a definition of "mural" in Plaintiffs' Terms and Definitions as that definition is not in the Sign Code or BID Code.  Subject to and without waiving this objection, the City applies the Sign Code as written, it does not apply the term "mural" as defined by Plaintiffs in their Terms and Definitions.  The Sign Code definition found in Salina Code § 42-764 refers to whether a "writing," "pictorial representation," "emblem," "flag, banner, streamer pennant, string of lights, or display," or "any other figure of similar character" is used to**

**EXHIBIT B**

"announce, direct attention to, or advertise." Salina Code § 42-764 does not use the phrase "pertains to the goods or services for sale." Rather, Salina Code § 42-764 applies to a display if, among other things, it "announces, directs attention to, or advertises." One way to evaluate whether a display "advertises" is if it encourages the purchase of products or services, in that it pertains to or references the goods or services for sale.

10. For any Request for Admission that you denied, please explain the reasons for your denial.

**OBJECTION: The City objects to this request to the extent it seeks to impose obligations outside the scope of, or different than, the Federal Rules of Civil Procedure. F.R.C.P. 36(4) requires a matter be admitted, or specifically deny the request or state in detail why the answering party cannot truthfully admit or deny it. Further, a denial must fairly respond to the substance of the matter.**

11. Please identify the factual basis for the claim made in your Brief in Support of Defendant's Motion to Dismiss (Doc. 27 at 2) that "Plaintiffs' display is obviously a sign".

**RESPONSE: The City refers Plaintiffs to the allegations in their Amended Complaint found at ¶¶ 15-29 for allegations showing Plaintiffs' display is a sign pursuant to Salina Code § 42-764. The City also refers Plaintiffs to the transcript attached as Exhibit A to Plaintiffs' Amended Complaint at 15:2-23 for additional facts showing Plaintiffs' display is a sign pursuant to Salina Code § 42-764. Plaintiffs sign is a "writing" "pictorial representation" "emblem" "flag, banner, streamer pennant, string of lights, or display calculated to attract the attention of the public" or "any other figure of similar character" that is "a structure or any part therefor, or a portable display, or is attached to, painted on, or in any manner represented on a building or other structure or on the ground," that "is used to announce, direct attention to, or advertise, and is not located inside a building."**

**The Cozy Sign is a display calculated to attract the attention of the public, that is attached to or painted on a building. It is used to announce, direct attention to and advertise and it is not located inside of a building. Specifically, the Cozy Sign contains a tag line announcing the infamous smells of the Cozy, it has an arrow directing attention to the building entrance and ordering window, and it advertises the hamburgers and toppings available for sale at the Cozy by depicting representations of them.**

Respectfully submitted this 12th day of July , 2024.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin | Todd G. Messenger, | Amanda C. Jokerst |
| Bar Number 24170 | CO Bar Number 38783 | CO Bar Number 47241 |
| Attorney for Defendant City | Pro Hac Vice Attorney for | Pro Hac Vice Attorney for |

**EXHIBIT B**

| of Salina, Kansas | Defendant City of Salina, | Defendant City of Salina, |
|---|---|---|
| CLARK, MIZE & | Kansas | Kansas |
| LINVILLE, CHARTERED | Fairfield and Woods, P.C. | Fairfield and Woods, P.C. |
| P.O. Box 380 | 1801 California St., | 1801 California St., |
| Salina, KS 67402-0380 | Ste. 2600 | Ste. 2600 |
| Tel. (785) 823-6325 | Denver, CO 80202 | Denver, CO 80202 |
| Fax: (785) 823-1868 | Tel. (303) 830-2400 | Tel. (303) 830-2400 |
| Email: | Fax: (303) 830-1033 | Fax: (303) 830-1033 |
| aomartin@cml-law.com | Email: | Email: |
| | tmessenger@fwlaw.com | ajokerst@fwlaw.com |

**EXHIBIT B**

## VERIFICATION

I, Mike Schrage, as City Manager for the City of Salina, Kansas, declare that the foregoing responses to the interrogatories contained in the foregoing **DEFENDANT'S RESPONSES TO PLAINTIFFS' FIRST SET OF DISCOVERY TO PLAINTIFFS** are true and correct as of this date based upon my present knowledge, information, and belief.

_____
Signature

Executed on July 12, 2024

**EXHIBIT B**

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of July, 2024, I caused the foregoing **DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** to be served on the following parties by electronic mail as follows:

Jeffrey Shaw.
Samuel G. MacRoberts
Kansas Justice Institute
12980 Metcalf Avenue, Suite 130
Overland Park, KS 66213
Telephone: 913-213-5121; 913-213-5018
E-mail: jeff@kansasjusticeinstitute.org; sam.macroberts@kansasjusticeinstitute.org

*Attorneys for Plaintiffs*

*/s/ Amanda C. Jokerst*
Amanda C. Jokerst