```
 1   .
 2                IN THE UNITED STATES DISTRICT COURT
 3                     FOR THE DISTRICT OF KANSAS
 4   .
 5   .
 6   COZY INN, INCORPORATED, d/b/a
 7   THE COZY INN; STEPHEN HOWARD,
 8            Plaintiffs,
 9   .
10        vs.  Civil Action No.  6:24-cv-01027-TC-ADM
11   .
12   CITY OF SALINA, KANSAS,
13            Defendant.
14   .
15   .
16                         DEPOSITION OF
17                    CORPORATE REPRESENTATIVE
18                         DUSTIN HERRS,
19   taken on behalf of the Plaintiffs, pursuant to
20   Notice to Take Deposition, beginning at 9:27 a.m.
21   on the 30th day of October, 2024, at Clark, Mize &
22   Linville, 129 S. 8th Street, in the City of
23   Salina, County of Saline, and State of Kansas,
24   before Sandra S. Biggs, Kansas CCR No. 0716.
25   .
```

**Appino & Biggs Reporting Service, Inc.**
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**EXHIBIT K**

1    character of that neighborhood.  It could also
2    impact property values.  So there are examples of
3    painted signs that could have negative impacts.
4         Q.   Okay.  But so section 5 here, subsection
5    5 here, does the property damage that is discussed
6    include aesthetic harms?
7         A.   Okay.  Okay.  I understand your question
8    better now.  You could also have multiple signs, I
9    guess, that could create litter and clutter if you
10   had a lot of painted signs.  So I think -- I
11   think it's -- I don't know that whether it's a
12   painted sign or a non-painted sign it makes much
13   of a difference according to our sign code.  It's
14   about the time, place and manner, where the signs,
15   how many signs are there, how large are the signs,
16   how tall are the signs.
17        Q.   Okay.  But subsection 5 here, is that
18   dealing with the aesthetics of signs?
19        A.   No.  This is property damage, personal
20   injury.
21        Q.   Okay.  I guess at least I'll explain what
22   I'm thinking when I read this.
23        A.   Okay.
24        Q.   When I think, okay, an improperly
25   constructed sign that could cause property damage

Appino & Biggs Reporting Service, Inc.
5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

1   A.   So we regulate signs in the aggregate
2   across the entire community.  And if we didn't,
3   there would be a potential that you could have a
4   lot more signs producing sign clutter which could
5   enhance the aesthetic of the community.  You can
6   have signs that are very large and possibly
7   distracting which could impact the aesthetics of
8   the community.
9   Q.   Sorry.  Let me stop you.  I'm not asking
10  about the sign code as a whole right now --
11  A.   Sure.
12  Q.   -- and how that may or may not enhances
13  aesthetics.  What I'm getting at is this.
14  Interrogatory 4 here --
15  A.   Yes.
16  Q.   -- specifically claims that the interests
17  served by regulating the specific types of signs
18  like The Cozy sign include aesthetics.  And so I'm
19  asking what facts support that contention that
20  regulating signs like The Cozy sign enhances
21  aesthetics?
22  A.   Well, it says the sign code regulates all
23  signs, and so that's what I was answering to.  I
24  guess I'm still not -- I'm sorry.
25  Q.   Right now, I'm focusing here on the last

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604           Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

1   district, is there any reason to believe that that
2   change would be factually incorrect?
3           MS. JOKERST:  Object to form and scope.
4       A.  That's very similar to earlier when you
5   asked me if I think what is -- well, I don't
6   remember the exact question.  But I think it's --
7   yeah, that's something I couldn't answer.
8           BY MR. SHAW:
9       Q.  Okay.  What facts does the government
10  contend show that regulating signs like The Cozy
11  sign enhances pedestrian safety?
12      A.  So if you have -- the idea is that the
13  sign regulations are designed to, again, for each
14  district limit the size of signs, the number of
15  signs, the height of signs, the location of signs
16  in order to reduce clutter.  We don't want a lot
17  of sign clutter because that can become
18  distracting.  It could impair the visual sight
19  lines for motor vehicles as well as pedestrians.
20  Sign sizes, we want to limit them so they don't
21  become a distraction.  We don't want signs that
22  hold the eye longer than they should.  We want to
23  make sure that signs are effective.  Again, that
24  comes down to clutter where if you have too many
25  signs, it becomes --



1    Q.   I don't want to interrupt you, but is the
2  city aware of any factual data showing its
3  regulating the specific type of signs that The
4  Cozy Inn has enhances pedestrian safety?
5         MS. JOKERST:  Object to scope.
6    A.   You're asking if The Cozy Inn enhances
7  traffic safety?  Is that what you said?
8         BY MR. SHAW:
9    Q.   No.  I'm asking is the city aware of any
10 like factual data showing that regulating this
11 type of sign enhances pedestrian safety?
12        MS. JOKERST:  Object to scope.
13   A.   I don't know.
14        BY MR. SHAW:
15   Q.   Is the city aware of any -- let me
16 rephrase.  What facts does the city contend
17 support the allegation that regulating signs like
18 The Cozy sign enhances traffic safety?
19   A.   So our regulations, again, are designed
20 to limit the number of signs, the location of
21 signs, the size of signs so that businesses have
22 opportunities or property owners, if they are not
23 even businesses, have opportunities to have signs
24 that give them opportunities to display and post
25 those while at the same time limiting the number

DUSTIN HERRS, AS CORP REP

1  Q. All right. When did the city first learn
2  about the mural painted on the side of The Cozy
3  Inn?
4  A. We received a -- Lauren Driscoll received
5  a message from Brad Anderson who's a City of
6  Salina employee and alerted her to the painting
7  going up, didn't know if there was any problems
8  with it per se but wanted us to be aware of it.
9  Sent her a picture, we reviewed it, said that
10 looks like a sign. I went and walked over and
11 just looked at it and saw it and like, yes, this
12 is -- has the elements of a sign for us. It has,
13 excuse me, has writings, it has pictorial images
14 and representations, emblems, symbols, it
15 announces Don't Fear the Smell or makes that
16 proclamation, invites you to come inside with an
17 arrow and attracts attention to the walk-up window
18 and the door to go into the building and has
19 burgers on it that represent the products that
20 they sell at The Cozy Inn.
21 Q. So Mr. Anderson I believe you said he's a
22 city employee, correct?
23 A. Correct.
24 Q. And he -- did you say he texted Miss
25 Driscoll?



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street      6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604         Suite 101                   Suite 305
785-273-3063             Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com      913-383-1131                316-201-1612

1     Q.   And is this the e-mail you sent to the
2  planning group that you're referring to right now?
3     A.   Yes.
4     Q.   Okay.  So it was there on November 6th
5  that Mr. Anderson informed Miss Driscoll?
6     A.   That's my understanding.
7     Q.   All right.  And what action did the city
8  take upon learning about the mural being painted
9  at The Cozy Inn?
10    A.   I contacted Mr. Howard and invited him to
11 come to my office to speak about it.  He did.  He
12 accepted my invitation.  He came to my office and
13 we talked.  I explained to him our concerns with
14 the sign that he was in the process of painting on
15 his north wall of The Cozy Inn property and
16 explained to him the sign limitations that are in
17 the C-4 district and how it appeared his sign was
18 exceeding the maximum allowable sign area for the
19 C-4 district.
20    Q.   And that was all on November 6th?
21    A.   That was on November 6th.
22    Q.   All right.  When you first contacted Mr.
23 Howard, had the city already determined that the
24 mural at the Cozy Inn was a sign?
25    A.   Yes.



```
 1      Q.    Fun?
 2      A.    Yeah.
 3      Q.    Okay.  And at any point, has the city
 4   reevaluated it's determination that the mural is a
 5   sign based on Mr. Howard's input?
 6      A.    No.
 7      Q.    Okay.  So that determination that had
 8   been made even before speaking to Mr. Howard that
 9   it was a sign, that has never been reconsidered by
10   the city.  Is that correct?
11      A.    Correct.
12      Q.    Okay.  Was Mr. Schrage involved in that
13   determination?
14      A.    The determination, no.
15      Q.    Okay.  When the city first contacted Mr.
16   Howard, had a determination already been made that
17   the mural was too large for the C-4 zoning
18   district?
19            MS. JOKERST:  Object to form.
20      A.    Yes.  We had already -- when I talked --
21   when I spoke with him, I had already did an
22   estimate, if you will, of the size of the sign, an
23   approximation.
24            BY MR. SHAW:
25      Q.    Okay.  How did that -- how do you
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604                 Suite 101                   Suite 305
785-273-3063            Overland Park, KS 66212         Wichita, KS 67202
www.appinobiggs.com         913-383-1131                   316-201-1612

1   calculate that approximation?
2       A.   The building has kind of -- well, what I
3   would call -- what we would call a broken facade
4   where it's got a flat roof and a facia that has
5   different elevations to it because there's a
6   parapet in the middle.  What I did is I measured
7   the height of the wall using Pictometry software
8   which can get pretty close, at least for an
9   estimation, it's good for that, where I can get
10  the height of the wall of the lower parapet and
11  the taller parapet.  I think the lower parapet was
12  like 11 feet and the top of the taller parapet was
13  13.  So I took an average of like 12 feet,
14  multiplied it by the length of the wall.  And that
15  gave me an estimate of how large that wall sign
16  was.
17      Q.   Okay.  Did you save that Pictometry
18  analysis or file?
19      A.   No.
20      Q.   I don't know exactly how Pictometry
21  works.
22      A.   No, I don't know if you can save but I
23  didn't save.
24      Q.   All right.  So there's no document
25  showing that measurement?


5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

## DUSTIN HERRS, AS CORP REP

1    A.    No.
2    Q.    Okay.  At any point since then, has the
3 city reevaluated whether the sign at The Cozy Inn
4 or the painting at The Cozy Inn that we're
5 fighting over here about whether or is or isn't a
6 sign --
7    A.    Sure.
8    Q.    -- at any point has the city reevaluated
9 whether or not that painting was too large for the
10 C-4 zoning district?
11   A.    Well, we ran some -- a mental exercise to
12 see if a text amendment could be approved to --
13 let me back up.  The C-4 district allows for 3
14 square feet of sign area per lineal foot of
15 building frontage.  And The Cozy Inn is 20.8,
16 nominally 21 feet of building frontage.  So that
17 comes out to nominally 63 total square foot of
18 sign area that's allowed.  We ran a scenario where
19 if we were to propose a text amendment to allow a
20 side wall to also be incorporated and function as
21 a frontage of a building, even though it's not
22 facing a street, would that provide sufficient
23 square footage to allow the proposed Cozy Inn
24 sign, and it was insufficient.  That idea, that
25 proposed text amendment would be insufficient for

1   in this e-mail, you got those from the Pictometry
2   software.  Is that also correct?
3        A.   The height, the 12 feet is an estimate
4   based on an average of the building.  And the 20.8
5   is from the legal description.  So, basically, the
6   deed that shows the lot depth since the building
7   is -- the building takes up the entire lot.
8        Q.   And that 44.4 feet measurement, how was
9   that one taken?
10       A.   Yeah, I apologize.  I said lot depth.
11  The 20.8 is lot width and the 44.4 is the lot
12  depth.  And that's from the deed as well, from the
13  legal description.
14       Q.   The 20.8 and the 44.4, those are both
15  from the deed description?
16       A.   Um-hum.  From the legal description of
17  the property.
18       Q.   And 12 feet, you said that's from
19  Pictometry?
20       A.   Yeah.  It's an average estimate because
21  it's got a broken facade or that has multiple
22  heights to it.
23       Q.   Okay.  Was any other measurement ever
24  taken of The Cozy Inn?
25       A.   I think later on when we did a more

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

1  thorough analysis, I think rather than taking
2  average height, I measured the height and width
3  using Pictometry of like three -- there's three
4  different sections.  I have three different
5  heights of the building.  So I measured more
6  accurately the area of the wall.  So I think in
7  my later analysis, it's a similar approximation
8  but it's more accurate.
9       Q.   All right.  Discussing your analysis, I
10  believe what you're talking about will be Exhibit
11  7, so a few pages down.
12       A.   I have Exhibit 7.
13       Q.   Is this the analysis you were just
14  referring to?
15       A.   Yes.
16            MR. SHAW:  Okay.  We'll go ahead and
17  admit Exhibit 7.
18            BY MR. SHAW:
19       Q.   So I'm trying to find here is there --
20  you said somewhere in here you did a different
21  calculation than the one that was in the previous
22  exhibit?
23       A.   Yeah.  So the previous exhibit, the e-
24  mail that we were just discussing which was -- I
25  forgot the exhibit number already, 3 maybe.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

## DUSTIN HERRS, AS CORP REP

```
 1        Q.    Yes, 3.
 2        A.    Had 540 square feet.  This analysis says
 3   528.  I wanted to make clear that I measured it
 4   differently and that I believe this is more
 5   accurate --
 6        Q.    Okay.
 7        A.    -- than the other one.  The previous one
 8   was more estimated.  This one, I was measuring the
 9   height of the portion, the east portion that's
10   lower.  And there's a central portion that's
11   taller, measured that separate.  And then there's
12   a west portion that's lower again, I measured that
13   and then added them together.
14        Q.    All right.  Did this analysis subtract
15   any wall area for the existing signs on that
16   facade of The Cozy Inn?
17        A.    It did not subtract the area of the
18   existing signs on that side.
19        Q.    Okay.  Did it subtract any area for the
20   service window or door on that facade of The Cozy
21   Inn?
22        A.    It did not.
23        Q.    Did it subtract for any of the other
24   architectural features on that facade of The Cozy
25   Inn?
```


5111 SW 21st Street  
Topeka, KS 66604  
785-273-3063  
www.appinobiggs.com

6420 W. 95th Street  
Suite 101  
Overland Park, KS 66212  
913-383-1131

800 E. 1st Street  
Suite 305  
Wichita, KS 67202  
316-201-1612

1  received it on.
2      Q.  All right.
3      A.  That's the date he signed it anyway.
4      Q.  Okay.  Can you confirm that the city has
5  received this application?
6      A.  Yes.
7          MR. SHAW:  Okay.  I'll admit Exhibit 8.
8      BY MR. SHAW:
9      Q.  On the third page there of Exhibit 8, is
10 that a rendition of the mural that the Cozy was
11 attempting to paint on their wall?
12     A.  Yes.  According to Mr. Howard, this is
13 what he was proposing.
14     Q.  Okay.  Does the city have any reason to
15 doubt Mr. Howard when he says that this is what he
16 was proposing?
17         MS. JOKERST:  Object to scope and form.
18     A.  I don't know.
19     BY MR. SHAW:
20     Q.  Does the city have any reason to believe
21 that this rendition is not the planned mural that
22 The Cozy Inn was intending to paint?
23         MS. JOKERST:  Object to scope and form.
24     A.  I'm not sure, but some of the outlines of
25 some of the pictorial representations are

Appino & Biggs Reporting Service, Inc.
5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

DUSTIN HERRS, AS CORP REP

1   application was neither granted or denied?
2         A.   Correct.  So when we met with Mr. Howard,
3   we informed him, and when I say when we met with
4   him, when we met with him on November -- I've got
5   to get that, November 6 of 2023, we informed him
6   that his proposed sign exceeded the sign maximum
7   limitation in the C-4 district and that staff was
8   unable to approve.  And in talking with him about
9   potential options, we expressed that we could
10  potentially look at a text amend, and that was
11  expressed at the meeting that we had with him
12  later at the Smoky Hill Museum.  And he seemed
13  responsive to the idea of exploring a text
14  amendment which would be a public process to
15  potentially change the sign code to potentially
16  allow signage like what Mr. Howard was proposing.
17  And so we had -- even though we were not able to
18  approve the sign and we informed Mr. Howard of
19  that, we were open to trying to come up with a
20  potential sign amendment that could allow
21  something similar to what he was being -- what he
22  was proposing.
23        Q.   So at that meeting, you mentioned at the
24  Smoky Hill Museum?
25        A.   Um-hum.



1    A.   Yes.
2    Q.   **Was The Cozy Inn ever provided with a**
3    **written statement of the reasons of denial?**
4         MS. JOKERST:  Object to form and scope.
5    A.   The Cozy Inn was informed before the
6    application was even applied for and the sign
7    permit was applied for that the sign was -- did
8    not conform to the C-4 regulations and is not
9    something the staff had the authority to permit.
10        BY MR. SHAW:
11   Q.   **Was that a written statement?**
12   A.   It was not a written statement.  It was a
13   verbal statement in a meeting that I had with Mr.
14   Howard on November 6th and then also at a later
15   meeting that took place at the Smoky Hill Museum.
16   Q.   **Was The Cozy Inn provided with any**
17   **recommendations about potential changes to the**
18   **project that might allow it to be approved?**
19   A.   I did mention to Mr. Howard that he could
20   reduce the signage -- the size of the signage to
21   an area that would fit within the 63 total square
22   feet that he had, that he could either reduce the
23   proposed sign down to the remaining nominally 10
24   square feet that he has or he could remove some
25   existing signs as well but reduce his total

1  signage down to the 63 square feet that he's
2  allowed.
3      Q.   Was that -- you said that to him orally?
4      A.   Correct.
5      Q.   Okay.  Was there any written --
6      A.   No.
7      Q.   -- statement of that to Mr. Howard?
8      A.   No.  We did not record that.  That was in
9  our initial meeting.
10     Q.   All right.  All right.  Can we go back to
11 Exhibit 11 which was Mr. Michelson's letter.
12     A.   I have Exhibit 11.
13     Q.   And so did this letter inform Mr. Howard
14 that both his Sign Permit Application and
15 Certificate of Compatibility Application had been
16 placed on hold?
17     A.   Yes.
18     Q.   And when was this letter sent?
19     A.   February 8th, 2024.
20     Q.   Was any other written correspondence sent
21 to Mr. Howard informing him that his applications
22 were on hold?
23     A.   No.  We thought we were of a common
24 understanding from our verbal conversations that
25 we were going through a comprehensive review of

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street       6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604          Suite 101                   Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131                316-201-1612

1  material facts.  Do you see that?
2       A.   Oh, the very top.  Yep, sorry.  Defendant
3  interprets this to mean the material facts and
4  respond to this request with material facts.
5       Q.   Okay.  So is it your understanding that
6  this response encompasses the material facts as
7  stated in that sentence right there?
8       A.   Yes.
9       Q.   All right.  We can no longer need to
10 refer to No. 42.
11      I have one clarification for you.  So Mr.
12 Howard when he submitted the sign permit and the
13 Certificate of Compatibility Permit Application,
14 and I'll wait for you to get that organized and
15 then I'll ask?
16      A.   Okay.  Can I shut the book?
17      Q.   Yeah.
18      A.   Okay.
19      Q.   Dustin, just shut the book.  We've got to
20 keep moving.
21      A.   Yeah.  Sorry.
22      Q.   All right.  So when Mr. Howard submitted
23 the Certificate of Compatibility Application and
24 the Sign Permit Application, he included a
25 rendering of his proposed final -- what he said

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1   was going to be his proposed final sign.  Is that
2   right?
3       A.   Correct.
4       Q.   Okay.  And the city looked at the photo
5   of the final proposal that Mr. Howard submitted,
6   correct?
7       A.   Yes.
8       Q.   Okay.  And the city after looking at that
9   photo confirmed that the proposed final rendering
10  was still a sign, correct?
11      A.   Yeah.  It was not only the same as what
12  is up there, all the elements and character of the
13  sign that cause it to be a sign are in place.
14      Q.   Okay.  And the city didn't like redo a
15  whole sign analysis, though, after receipt of
16  that, right?
17      A.   No.  The area was still nominally the
18  entire wall, the entire north face, and it still
19  exceeded the 10 square feet that he would --
20  surplus area that he still had in terms of
21  additional signage that he could add.  And,
22  therefore, we were not able to permit it.
23           MS. JOKERST:  That's all I have.
24           MR. SHAW:  That's all we have for you,
25  Mr. Herrs.  Thank you for your time.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION
5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com
6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131
800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612