In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.** | Civil Action No. 6:24-cv-01027-TC-ADM |
| Plaintiffs, | Plaintiffs' Response to Salina's Motion for Summary Judgment; Exhibits A-OO; Certificate of Service. |
| v. | Oral Argument Requested. |
| **City of Salina, Kansas.** | |
| Defendant. | |

**Plaintiffs' Response to Salina's Motion for Summary Judgment**

Steve Howard wants to finish painting a whimsical mural on the side of the iconic business he owns, The Cozy Inn, but can't. That's because Salina considers it a regulated sign instead of an unregulated mural. Even though all painted wall-displays are the same *thing* (paint on walls), Salina treats displays differently depending on *what* is displayed and *who* is saying it. Salina's content- and speaker-based restrictions are plainly evident. The Cozy's mural, on top, is regulated. The murals below it (and the dozens of others around the city) aren't.



Because the mural-sign code regime is content- and speaker-based, this Court should apply strict scrutiny, reject Salina's motion for summary judgment, and grant the Plaintiffs' motion instead. *See* Doc. 105. But even *if* the regime is content-neutral or a regulation of commercial speech, Salina *still* loses. Salina has no *actual evidence* justifying *any* of its arguments. The Cozy's mural isn't more likely to fall off the wall, block views, destroy Salina's tax base, or harm passersby, because it sells sliders on the inside. Calling it a "sign" doesn't change the analysis.

## Facts

### A.    Uncontested Statements of Fact.

Paragraphs 1, 5, 7, 11, 12, 13, 21, 29, 35, 36, 37, 51, 61, 62, 63, 64, and 65 are uncontested for the purpose of this motion.

### B.    Contested Statements of Fact.

2.    The City applies the Sign Code as written. Ex. B at 6, Resp. to Int. No. 5. (City's Response to Plaintiffs' First Set of Interrogatories).

**Response**: Salina does not apply the sign code as written. **(1)** Salina doesn't regulate murals even though they fit the definition of "sign." Ex. A, Andrew Dep. 91:3; Ex. B, Driscoll Dep. 93:12-14. **(2)** Salina doesn't regulate displays calculated to attract the attention of the public even though they fit the definition of "sign." Ex. C, Andrew 30(b)(6) Dep. 13:17-20; Ex. A, Andrew Dep. 46:6-12, 46:13-19, 64:14-20, 69:23—70:1. **(3)** Salina distinguishes between murals and signs based on content. Ex. D, Def. Ans. to First Set of Interrog., Rog 5, 11; Ex. E, Herrs 30(b)(6) Dep. 88:21—89:22, 90:7-13; Ex. F, Comm. Tran. 5:23-25, 10:4-5, 22:24—24:4, 26:16-22; Ex. G, Schrage Dep. 35:23—36:10, 71:11-15, 80:24—81:10, 108:1-13, 110:8-13, 121:24—123:8, 124:9—125:8; Ex. H, City Commission Minutes at CITY000173; Ex. I, Art Center DRB Packet at 7; Ex. J, Talking Points; Ex. B, Driscoll Dep. 67:19-25, 68:13-18, 88:4-12, 98:20—100:13, 106:6-11, 121:3-5, 126:19—128:7; Ex. A, Andrew Dep. 54:18-22, 55:7-8, 86:11-23, 88:20—89:18, 172:11—173:20, 175:2-6, 176:14—178:3, 178:16-22, 179:20—180:10, 285:1-4; Ex. K, Sign Permit Submittal Procedure at CITY000661; Ex. C, Andrew 30(b)(6) Dep. 27:7-20, 58:24—59:6. **(4)** Salina distinguishes unregulated murals from regulated signs based on commercial messages. Ex. L, Schrage Email 11/8/23; Ex. J, Talking Points; Ex. M, Schrage Email 11/9/23 at CITY000221; Ex. O, Benson Dep. 82:9-17; Ex. F, Comm. Tran. 5:2-5, 5:23-25, 10:4-5, 22:24—24:4, 26:17-22, 27:3-6, 28:1-8, 28:16-21; Ex. G, Schrage Dep. 61:1-3, 61:18-23, 62:1-5, 85:20—87:19; Ex. N, Schrage Email 2/20/24; Ex. P, Plts.' First Amend. Resp. to First Set of Interrog., Rog. 6; Ex. A, Andrew Dep. 89:11—90:3, 170:7—171:20; Ex. B, Driscoll Dep. 155:6—156:12. **(5)** Salina created unwritten rules and exemptions to the mural-sign code regime. Ex. C, Andrew 30(b)(6) Dep. 53:7-

9, 69:1-6, 88:16-24, 91:10-24, 100:10-22; Ex. Q, Herrs Dep. 33:12-15, 68:6-11, 77:12-15, 81:11-16, 84:12-22, 101:14-21, 101:25—102:12; Ex. B, Driscoll Dep. 124:8—125:5; Ex. A, Andrew Dep. 22:21—23:4, 24:12-15, 33:22—34:6, 35:4-5, 104:9-14, 105:6-23, 113:9-15, 114:9-20, 115:7-13, 301:21-25, 311:13-20, 322:25—323:4; Ex. G, Schrage Dep. 98:25—99:9.

3.        Sign is defined by Salina Code § 42-764 as: [undisputed code text removed]

**Response**: Plaintiffs admit that the Court may take judicial notice of the Salina City Code.[1] Salina's statement that Salina's Exhibit C contains all relevant sections of the Code is an argumentative legal opinion.

4.        The purposes of the Sign Code, codified at Salina Code § 42-500, set forth the City's governmental interests in regulating signs: [undisputed code text removed]

**Response**: Plaintiffs admit the text of Salina City Code § 42-500. Defendant's statement that § 42-500 is "[t]he purpose of the Sign Code" and "set[s] forth the City's governmental interests in regulating signs" is an argumentative legal opinion.

6.        Salina Code § 42-501 requires a sign permit to be obtained before a sign is constructed or painted. It provides: [undisputed code text removed]

**Response**: Plaintiffs admit the text of Salina City Code § 42-501. Defendant's statement purporting to describe § 42-501 is an argumentative legal opinion.

8.        Building is defined in Salina Code § 42-637 as: [undisputed code text removed]

**Response**: Plaintiffs admit the text of Salina City Code § 42-673. Defendant's statement purporting to describe § 42-673 is an argumentative legal opinion.

9.        The applicable size limitations of the Sign Code are set forth in § 42-521(4)(b). They provide: [undisputed code text removed]

**Response**: Plaintiffs admit the quoted text of Salina City Code § 42-521(4)(b) is accurate, but it is an incomplete quotation of § 42-521(4)(b), and it appears to have a scrivener's error, listing

---

[1] Available at https://library.municode.com/ks/salina/codes/code_of_ordinances

subsection (4) as subsection (1). Defendant's statement purporting to describe § 42-521(4)(b) is an argumentative legal opinion.

10.    Salina Code § 1-11 articulates that intent: [undisputed code text removed]

**Response**: Plaintiffs admit the text of Salina City Code § 1-11. Defendant's statement purporting to describe the "intent" of § 1-11 is an argumentative legal opinion.

14.    On November 3, 2023, Plaintiffs started painting the Cozy Sign. Ex. G at 2, Stipulated Fact v.

**Response**: The stipulated fact only speaks about the painting of "the display." Defendant's description of that display as "the Cozy Sign" is an argumentative legal opinion.

15.    Plaintiffs did not seek a sign permit before constructing the Cozy Sign. Ex. H

**Response**: Plaintiffs admit they did not apply for a sign permit before painting the display because they were painting a mural. Ex. T, Howard Decl. ¶¶ 5-13. Plaintiffs deny the implication that painting a mural is "constructing" a sign.

16.    Plaintiffs knew the City regulated signs, but did not review the sign regulations. Ex. H at 82:2-25, 83:1-3, 87:2-25, 88:1-25, 89:1-5, 240:15-17; 241:4-15; Ex. I (Andrea Windholz Depo.) at 71:7-12.

**Response**: Salina's citations to Salina's Ex. H 82:2-25, 83:1-3, 87:2-25, 88:1-25, 89:1-5 involve a 2021 certificate of compatibility application, not sign regulations. Mr. Howard's testimony at 240:15-17, 241:4-15 is that he did not understand the sign code. Ms. Windholz is not a plaintiff in this matter, and her deposition statement in Salina's Ex. I says nothing about her knowledge.

17.    Plaintiffs have no intent to read the sign regulations. Ex. H at 240:15-17; 241:4-15.

**Response**: Salina's Ex. H at 240:15-17; 241:4-15 does not mention Plaintiffs' intent. Mr. Howard's testimony at 240:15-17, 241:4-15 is that he did not understand the sign code.

18.    Plaintiffs have no regard for the City's reasonable, content-neutral regulations. Ex H at 190:24-25; 191:1-25; 192:1-9; 233:1-25; Ex. J (Colin Benson Depo.) at 57:23-25; 58:1-24.

**Objection**: Relevance. Plaintiffs are not obligated to hold Salina's regulations in "regard." Private citizens are free to make light of their government's actions.

**Response**: **(1)** At Salina's direction, Plaintiffs paused the mural, Doc. 16 ¶ 26, Ex. G, Schrage Dep. 127:24-25; Ex. B, Driscoll Dep. 63:9-10, 151:20—152:1-4; Ex. E, Herrs 30(b)(6) Dep. 85:7-25; **(2)** submitted a sign permit application, Ex. E, Herrs 30(b)(6) Dep., 111:1-3; Doc. 16 at ¶ 155; Ex. F, Comm. Tran. 7:17-23, 41:22-24; Ex. R, Sign Permit Application; **(3)** a certificate of compatibility application and fee, Ex. E, Herrs 30(b)(6) Dep. 111:4-7, 113:11-24; **(4)** and attended multiple meetings with city officials, Ex. Q, Herrs Dep. 23:10-16; Ex. O, Benson Dep. 79:8-13; Ex. S, Howard Dep. 176:9-12; Ex. G, Schrage Dep. 69:4-7; Ex. B, Driscoll Dep. 37:18-25. **(5)** Salina's description of the mural-sign code regime as "reasonable, content-neutral regulations" is an argumentative legal opinion.

19.    On November 6, 2023, the City reviewed the Cozy Sign, which at the time was fully outlined and partially painted on the North wall of the Cozy Inn. Ex. K (Dustin Herrs 30(b)(6) Depo.) at 82:1-20, 85:7-21; Ex. L (Photo of Cozy Sign Plaintiffs' Bates 58); Ex. G at 2, Stipulated Fact No. vi (stipulating to Plaintiffs' Bates 58).

**Response**: The cited evidence doesn't say the mural was "fully outlined." Mr. Benson had not outlined the cockpits for the burger UFOs. Ex. O, Benson Dep. 139:15—140:9.

20.    On November 6, 2023, the City informed Plaintiff, Mr. Howard, that the Cozy Sign was too large to qualify for a sign permit and asked him to pause the Cozy Sign. Ex. K at 110:2- 22, 85:7-21; Ex. H at 138:11-25, 139:4-18; Ex. J at 78:20-25, 79:1; 80:14-24.

**Response**: Plaintiffs admit that Salina officials asked Mr. Howard to halt work on the mural because it was Salina's *opinion* that the mural was a sign that was too big. Ex. S, Howard Dep. 139:10-18. Defendant's implication that the mural is in fact a sign that is too big is an argumentative legal opinion.

22.    Before Mr. Howard even submitted a Sign Permit application, he knew the Cozy Sign, as proposed, was too large to qualify for a sign permit. Ex. H at 137:22-25, 138:1-25,139:1- 18,

140:2-21, 180:3-14, 181:4-12, 182:7-25, 183:1-13; Ex. M (Cozy Sign Permit Application); Ex. J at 78:20-25, 79:1; 80:14-24

  **Response**: Plaintiffs admit that the cited evidence shows that Salina officials had communicated to Mr. Howard the City's *opinion* that the mural was a sign that was too big. Ex. S, Howard Dep. 139:10-18. Defendant's implication that the mural is in fact a sign that is too big under the mural-sign code regime is an argumentative legal opinion.

  23. Not only did the City inform Mr. Howard that the Cozy Sign would not qualify for a sign permit within the 10-day period of § 42-502(b), but the City also understood that Mr. Howard agreed that his sign permit application (submitted on November 13, 2023) would be placed on hold. Ex. D at 229:4-24, 230:1-24, 231:1-25, 232:1-24.

  **Response**: **(1)** Mr. Howard never agreed to his application being placed on-hold. Ex. T, Howard Dec. ¶ 26. **(2)** Salina officials testified that Mr. Howard never consented. Ex. A, Andrew Dep. 233:2-6 (Q: "And at any point after he submitted his application, did Mr. Howard consent to it being placed on hold?" A: "No."); *see also id*. 230:7-233:12. **(3)** Salina first informed Mr. Howard that his application was on-hold on February 8, 2024. Ex. U, On-Hold Letter at CITY000031 ("This letter is to *inform* you that … our office *will be placing* your … sign permit application on-hold") (emphasis added); Ex. V, Michelson Dep. 17:13-23 (on-hold letter sent to communicate on-hold status to applicant). **(4)** Salina can't even say when it put the application on-hold. Ex. A, Andrew Dep. 271:3-8 (seven days before it was submitted); *id*. 229:4-8, 267:21-25 (right after it was submitted); Ex. E, Herrs 30(b)(6) Dep. 112:25—113:1, 107:19-25 ("when it came in").

  24. The City determined the Cozy Sign was a sign as defined by Salina Code § 42-764 and, more specifically, as "wall sign" as defined by Salina Code § 42-781. Ex. K at 82:10-20; Ex. B at 10, Resp. to Int. No. 11; Ex. D at 63:18-24, 64:1-3, 159:1-25, 160:1-10, 234:13-21, 346:10-16.

  **Response**: Plaintiffs deny that Salina ever made a formal determination regarding Plaintiffs' application. *See* Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2.

  25. The City interprets and applies Salina Code § 42-764 to require that subparagraphs (1), (2), and (3) therein be met for any display to be considered a "sign" that is subject to the

regulations of the Sign Code. The City has interpreted Salina Code § 42-764 consistently for decades. Ex. D at 48:8-16, 50:5-11, 51:6-11, 55:10-24; 62:16-24. Ex. N (Dean Andrew 30(b)(6) Depo.) at 11:14-25, 12:1.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: **(1)** Salina considers displays "affixed to the interior of a window" to be "sign" that is subject to the regulations of the mural-sign code regime even though it does not meet the requirements of § 42-764(3). Salina City Code § 42-504(9); Ex. C, Andrew 30(b)(6) Dep. 15:15-24. **(2)** Salina has not interpreted § 42-764 consistently, it treats displays inconsistently based on the content, speaker, or commercial nature of the display. Ex. D, Def. Ans. to First Set of Interrog., Rog 5, 11; Ex. E, Herrs 30(b)(6) Dep. 88:21—89:22, 90:7-13; Ex. F, Comm. Tran. 5:2-5, 5:23-25, 10:4-5, 22:24—24:4, 26:16-22, 27:3-6, 28:1-8, 28:16-21; Ex. G, Schrage Dep. 35:23—36:10, 61:1-3, 61:18-23, 62:1-5, 71:11-15, 80:24—81:10, 85:20—87:19, 98:25-99:9, 108:1-13, 109:1-14, 110:8-13, 121:24—123:8, 124:9—125:8; Ex. H, City Commission Minutes at CITY000173; Ex. I, Art Center DRB Packet at 7; Ex. J, Talking Points; Ex. B, Driscoll Dep. 67:19-25, 68:13-18, 88:4-12, 98:20—100:13, 106:6-11, 121:3-5, 124:8—125:5, 126:19—128:7, 129:2-20, 155:6—156:12; Ex. A, Andrew Dep. 22:21-23:4, 24:12-15, 33:22-34:6, 35:4-5, 54:18-22, 55:7-8, 86:11-23, 88:20—89:18, 89:11—90:3, 104:9-14, 105:6-23, 113:9-15, 114:9-20, 115:7-13, 170:7—171:20, 172:11—173:20, 175:2-6, 176:14—178:3, 178:16-22, 179:20—180:10, 210:17—211:6, 285:1-4, 301:21-25, 311:13-20; 322:25—323:4; Ex. K, Sign Permit Submittal Procedure at CITY000661; Ex. C, Andrew 30(b)(6) Dep. 27:7-20, 53:7-9, 58:24—59:6, 69:1-6, 88:16-24, 91:10-24, 100:10-22; Ex. L, Schrage Email 11/8/23; Ex. M, Schrage Email 11/9/23 at CITY000221; Ex. O, Benson Dep. 82:9-17; Ex. N, Schrage Email 2/20/24; Ex. P, Plts.' First Amend. Resp. to First Set of Interrog., Rog. 6; Ex. Q, Herrs Dep. 33:12-15, 68:6-11, 77:12-15, 81:11-16, 84:12-22, 101:14-21, 101:25-102:12.

26.    Applying Salina Code § 42-764, the City determined that the Cozy Sign is a "writing" "pictorial representation" "emblem" "flag, banner, streamer pennant, string of lights, or display calculated to attract the attention of the public" or "any other figure of similar character" that is "a structure or any part therefor, or a portable display, or is attached to, painted

on, or in any manner represented on a building or other structure or on the ground," that "is used to announce, direct attention to, or advertise, and is not located inside a building." Ex. B at 9, Resp. to Int. 11.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: **(1)** Plaintiffs admit that this is a partial reproduction of Defendant's Response to Plaintiffs First Set of Interrogatories, Rog. 11. **(2)** Salina's statement is an argumentative legal opinion. **(3)** Plaintiffs deny that Salina ever made a formal determination regarding Plaintiffs' application. See Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2. **(4)** Plaintiffs deny that Salina considers whether a display is calculated to attract the attention of the public. Ex. C, Andrew 30(b)(6) Dep. 13:17-20; Ex. A, Andrew Dep. 64:14-20; 69:23—70:1; 46:13-19. **(5)** Plaintiffs deny that this is how Salina actually enforced the mural-sign code regime against The Cozy; Salina enforced the regime against the Plaintiffs because it perceived the mural's content as a commercial message pertaining to goods sold by The Cozy. Ex. L, Schrage Email 11/8/23; Ex. J, Talking Points; Ex. M, Schrage Email 11/9/23 at CITY000221; Ex. O, Benson Dep. 82:9-17; Ex. F, Comm. Tran. 5:2-5, 5:23-25, 10:4-5, 22:24—24:4, 26:17-22, 27:3-6, 28:1-8, 28:16-21; Ex. G, Schrage Dep. 61:1-3, 61:18-23, 62:1-5, 85:20—87:19; Ex. N, Schrage Email 2/20/24; Ex. P, Plts.' First Amend. Resp. to First Set of Interrog., Rog. 6; Ex. A, Andrew Dep. 89:11—90:3, 170:7—171:20; Ex. B, Driscoll Dep. 155:6—156:12. **(6)** The mural at The Cozy is artwork that tells a story about travel. Ex. T, Howard Dec. ¶¶ 11-17; Ex. S, Howard Dep. 105:9, 252:22—253:5, 253:10-18.

27.    The Cozy Sign is used to announce, direct attention to, or advertise, and it is not located inside of a building. Specifically, the Cozy Sign contains a tag line announcing the infamous smells of the Cozy, it has an arrow directing attention to the building entrance and ordering window, and it advertises the hamburgers and toppings available for sale at the Cozy by depicting representations of them. Ex. B at 9, Resp. to Int. 11.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: See Response to paragraph 26.

28.    The City applies the plain language and ordinary use of the words and phrases "announce," "direct attention to," and "advertise." The City determines whether a display is used to "announce" by evaluating whether the display makes a declaration about a fact, occurrence, or intention or proclaims or gives notice of, or identifies, a business, product, or event. The City determines whether a display is used to "direct attention to" by evaluating whether the display indicates, points to, points out, or specifies a location (in general, like a particular property, or specifically, like a building entrance or pickup window). The City determines whether display is used to "advertise" by evaluating whether the display is meant to attract customers, encourage a commercial transaction, offer products or services in exchange for consideration (e.g., a display that says, "sliders, 5 for $5.00"); call attention to a brand, products, or services in order to encourage the purchase of products or services, in that it pertains to or references the goods or services for sale. **Ex. B** at 6, Resp. to Int. 5.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: **(1)** Plaintiffs admit that this is a partial reproduction of Defendant's Response to Plaintiffs First Set of Interrogatories, Rog. 5. **(2)** See Response to paragraph 26.

30.    The Cozy Inn occupies a property that is 20.8 feet in width and 44.4 feet in depth facing North Seventh Street. The building frontage occupies the entire property line. Thus, the building frontage of the Cozy Inn is 20.8 feet. The City rounded up, calculating the building frontage as 21 feet. Under Salina Code § 42-521(4)(b) the Cozy Inn had 63 square feet of allowable sign area. The City advised Mr. Howard if he wanted to erect the Cozy Sign he could reduce the size of the Cozy Sign down to the remaining 10 square feet, or remove existing signs to try to fit the sign within the allowable 63 square feet. Ex. K at 92:15-24, 93:1-16, 94:11-25, 96:3-25, 97:1-8, 98:1-13, 116:16-25, 117:1-2; Ex. E at 117:1-25, 118:19-25, 119:1-9.

**Objection**: Contains multiple alleged facts in a single numbered paragraph; hearsay; best evidence rule. City officials testified that they have never physically measured The Cozy Inn, its signs, or the mural. Ex. Q, Herrs Dep. 24:20-22. Instead, the cited measurements allegedly came

from City land records and computer software records, but no such records were produced as part of the evidentiary record. Ex. E, Herrs 30(b)(6) Dep. 93:17—94:1, 96:8-22.

**Response**: Plaintiffs admit that Salina officials testified to these measurements. Plaintiffs deny that any witness has personal knowledge of, or that any record evidence supports, these measurements. Ex. Q, Herrs Dep. 24:20-22; Ex. E, Herrs 30(b)(6) Dep. 93:17—94:1, 96:8-22.

31.    The Cozy Sign occupies the entirety of the North wall of the Cozy Inn. Ex. E at 27:25, 28:1-4; Ex. Q (Photo of Cozy Sign at Plaintiffs' Bates 51); Ex. G at 2, Stipulated Fact vii (stipulating to Plaintiffs' Bates 51); Ex. J at 121:1 and 130:6-8.

**Response**: The mural does not occupy the entirety of the North wall, which includes a walk-up window, door, awning, and pre-existing signage. Salina officials testified that the window, door, awning, and existing signage on the North wall are not considered part of the mural and should have been subtracted from any calculation of the size of the mural. Ex. Q, Herrs Dep. 51: 20—52:18; Ex. A, Andrew Dep. 221:18—228:14.

32.    Prior to constructing the Cozy Sign, the Cozy Inn had three other signs, with a total sign area of 52.88 square feet. At the time of constructing the Cozy Sign, the Cozy Inn had 10.12 square feet of allowable sign area remaining. Ex. E at 117:19-25, 118:25, 119:1-9.

**Objection**: Hearsay; best evidence rule. City officials testified that they did not physically measure The Cozy Inn, signs, or the mural. Ex. Q, Herrs Dep. 24:20-22.

**Response**: Plaintiffs admit that Salina officials stated these measurements at deposition. Plaintiffs deny that any witness has personal knowledge of these measurements or that any record evidence supports these measurements. Ex. Q, Herrs Dep. 24:20-22.

33.    Using the dimensions of the North wall of the Cozy Inn, the City determined the Cozy Sign was approximately 528 square feet in area. Ex. K at 96:3-25, 97:1-8, 98:1-13.

**Objection**: Hearsay; best evidence rule. City officials testified that they have never physically measured The Cozy Inn or the mural. Ex. Q, Herrs Dep. 24:20-22. Instead, the cited measurements allegedly came from City land records and computer software records, but no such

records were produced as part of the evidentiary record. Ex. E, Herrs 30(b)(6) Dep. 93:17—94:1, 96:8-22.

**Response**: Plaintiffs admit that Salina officials stated these measurements at deposition. Plaintiffs deny that any witness has personal knowledge of these measurements or that any record evidence supports these measurements. Ex. Q, Herrs Dep. 24:20-22; Ex. E, Herrs 30(b)(6) Dep. 93:17—94:1, 96:8-22. Plaintiffs deny that Salina ever made a formal determination regarding Plaintiffs' application. See Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2.

34.    Plaintiffs did not administratively appeal the City's determination that the Cozy Sign was a sign and therefore subject to the requirements of the Sign Code. Ex D at 234:11-21; Ex. C (Salina Code § 42-597).

**Response**: Plaintiffs deny the implication an appeal is required and further deny that Salina ever made a formal determination under Salina City Code §§ 42-502 and 42-596(c), thus preventing Plaintiffs from being able to administratively appeal under § 42-597. Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2.

38.    According to Mr. Howard the arrow on the Cozy Sign directs people to the entrance of the Cozy Inn. Ex. H at 136:2-11.

**Response**: Salina City Code § 42-764 only refers to displays that "direct attention to," it does not include displays that "direct people to the entrance." Salina does not consider displays that direct the public to a location to be regulated signs. Ex. I, Art Center DRB Packet at 8 (unregulated mural "will direct the public to the gallery and educational activities within the Art Center building."); Ex. W, Defs. Amend. Resp. to Plts. First Set of Interrog., Rog. 8 (Salina doesn't consider the Salina Arts Center mural a sign).

39.    Mr. Howard admitted he could "upsell" better to customers who came inside of the Cozy Inn. Ex. H at 41:13-15; 43:22-25, 44:1-4; 48:2-9.

**Response**: Plaintiffs deny this claim is supported by fact. Ex. S, Howard Dep. 40:17-25, 41:5-12, 41:16—42:8, 42:19—43:9, 45:9-17, 46:15-25; Ex. X, Windholz Dep. 33:3-16, 33:23—34:3, Ex. T, Howard Dec. ¶¶ 14-17.

40.     The Cozy Sign advertises hamburger, chopped onions, pickles, ketchup, and mustard. The Cozy Sign directs attention to the front door of the Cozy Inn by way of an arrow that points to the front door of the Cozy Inn. The Cozy Sign announces the infamous onion smell by announcing, "Don't Fear the Small, the Fun is Inside." Ex. H at 76:1-14, 136:5-11, 142:20-25, 143:1-25, Ex. E at 82:23-25, 83:1, 115:3-10

Objection: Contains multiple alleged facts in a single numbered paragraph.

Response: The mural at The Cozy is artwork that tells a story about travel. It is not an announcement; it does not direct attention to anything other than itself (as all murals do); it is not an advertisement. Ex. T, Howard Dec. ¶¶ 11-17; Ex. S, Howard Dep. 105:9, 252:22—253:5, 253:10-18. Salina's contrary statements about the content of the mural are argumentative legal opinion. This statement misquotes the mural at The Cozy. Doc. 16 ¶ 23.

41.     The City also reviewed the rendering of the Cozy Sign Mr. Howard submitted with the sign permit application, which Mr. Howard alleged was intended to be the final rendering of the Cozy Sign. The City confirmed the display that Mr. Howard intended to be the final rendering of the Cozy Sign was a sign under the Sign Code. Ex. K at 108:4-13, 127:22-25 128:1-22; Ex. D at 246:10-16; Ex. M; Ex. Q

Objection: Contains multiple alleged facts in a single numbered paragraph.

Response: (1) Plaintiffs deny that Salina ever made a formal determination regarding Plaintiffs' application. Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2. (2) There is "no basis to doubt" that Mr. Howard intends to finish the mural as depicted. Ex. A, Andrew Dep. 356:21—357:2; Ex. T, Howard Dec. ¶ 31-32.

42.     The City, via its Zoning Administrator, reviewed industry specific publications in anticipation of the City of Salina's 2017 amendment to the Sign Code. The 2017 amendment, Ordinance Number 17-108882, was prompted by Reed v. Town of Gilbert (the City's Governing Body amended the Sign Code in order to ensure compliance with the First Amendment). The industry specific publications reviewed by the City addressed how signs are a significant driver distraction and how sign regulations promote traffic safety and aesthetics. Ex. A

**Objection**: Contains multiple alleged facts in a single numbered paragraph. To the extent Salina attempts to use the contents of the publications attached to Mr. Andrew's Affidavit to prove that "signs are a significant driver distraction and how sign regulations promote traffic safety and aesthetics" then it's objectionable hearsay.

**Response: (1)** The cited affidavit does not include any evidence that the Salina City Commission considered or was even aware of the publications attached to the affidavit. **(2)** Neither the official minutes nor the meeting documents published by Salina for the City Commission meetings where Ordinance Number 17-108882 was discussed give any indication that the City Commission ever considered the documents attached to Mr. Andrew's affidavit. Ex. Y, 4/17/17 Meeting Minutes; Ex. Z, 4/17/17 Meeting Documents; Ex. AA, 5/15/17 Meeting Minutes; Ex. BB, 5/15/17 Meeting Documents; Ex. CC, 6/26/17 Meeting Minutes; Ex. DD, 6/26/17 Meeting Documents; Ex. EE, 7/10/17 Meeting Minutes; Ex. FF, 7/10/17 Meeting Documents. **(3)** Salina is not aware of any evidence that the mural-sign code regime advances its alleged interests. Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 73:13—75:8; 76:19—77:10, 25:14-17, 77:23—78:10; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3, 168:9-25; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. **(4)** There is no evidence that signs present a traffic or pedestrian safety issue or harm aesthetics. Ex. GG, Taylor Dec., Rpt. at 12 (Federal Highway Administration's "reviews of signage and traffic safety have found no conclusive evidence of a link between signs and traffic accidents."); *id.* at 13 (The "research [has] demonstrated that properly placed signs are not a safety hazard"); *id.* at 10 ("[t]he argument that signs" "constitute a traffic safety hazard is not supported by scientific evidence."), *id.* at 15-18 ("no evidence" Salina's sign code "promotes an interest in aesthetics[.]"), *id.* at 6-10 ("signage should not be dismissed as clutter without evidence").

43.     The City regulates signs in the aggregate. Ex. K at 62:1-2.

**Response**: This statement is an argumentative legal opinion to which no response is needed. This statement is unsupported by facts or evidence.

44.     The City regulates the time, place, and manner of the display of signs. Ex. D at 127:1-2; Ex. K at 45:10-16.

**Response**: **(1)** This statement is an argumentative legal opinion. **(2)** This statement is unsupported by facts or evidence. **(3)** Salina regulates displays differently based on the content, speaker, or commercial nature of the display Ex. D, Def. Ans. to First Set of Interrog., Rog 5, 11; Ex. E, Herrs 30(b)(6) Dep. 88:21—89:22, 90:7-13; Ex. F, Comm. Tran. 5:2-5, 5:23-25, 10:4-5, 22:24—24:4, 26:16-22, 27:3-6, 28:1-8, 28:16-21; Ex. G, Schrage Dep. 35:23—36:10, 61:1-3, 61:18-23, 62:1-5, 71:11-15, 80:24—81:10, 85:20—87:19, 108:1-13, 109:1-14, 110:8-13, 121:24—123:8, 124:9—125:8; Ex. H, City Commission Minutes at CITY000173; Ex. I, Art Center DRB Packet at 7; Ex. J, Talking Points; Ex. B, Driscoll Dep. 67:19-25, 68:13-18, 88:4-12, 98:20—100:13, 106:6-11, 121:3-5, 126:19—128:7, 129:2-20, 155:6—156:12; Ex. A, Andrew Dep. 54:18-22, 55:7-8, 86:11-23, 88:20—90:3, 170:7—171:20, 172:11—173:20, 175:2-6, 176:14—178:3, 178:16-22, 179:20—180:10, 210:17—211:6, 285:1-4; Ex. K, Sign Permit Submittal Procedure at CITY000661; Ex. C, Andrew 30(b)(6) Dep. 27:7-20, 58:24—59:6; Ex. L, Schrage Email 11/8/23; Ex. M, Schrage Email 11/9/23 at CITY000221; Ex. O, Benson Dep. 82:9-17; Ex. N, Schrage Email 2/20/24; Ex. P, Plts.' First Amend. Resp. to First Set of Interrog., Rog. 6. **(4)** Salina is not aware of any evidence that the mural-sign code regime advances its alleged interests. Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 73:13—75:8; 76:19—77:10, 25:14-17, 77:23—78:10; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3, 168:9-25; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. **(5)** There is no evidence that the mural-sign code regime promotes aesthetics, property values, or traffic and pedestrian safety. Ex. GG, Taylor Dec., Rpt. at 12; *id.* at 13; *id.* at 10, *id.* at 15-18; *id.* at 6-10.

45.     These time, place, and manner regulations limit the size, number, height and location of signs pursuant to the specific zoning district wherein the sign is located. Ex. K at 45:10-16, 71:12-16, 72:19-21; Ex. D at 127:1-2; Ex. R (Mark White Aff'd) at ¶ 6.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

14

46.     Regulating the size, number, height, and location of signs helps to reduce clutter, thereby reducing distractions, keeping visual sight lines for vehicles and pedestrians clear, and ensuring signs remain effective while not holding the eye of viewer for too long. Ex. K at 71:12-23.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

47.     The Sign Code seeks to protect the aesthetics of the community and quality of life, while reducing safety hazards that can result from sign clutter. Ex. E at 64:10-18.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

48.     Eliminating the risk of sign wars--where in order to have more prominent signage businesses compete by erecting additional signs and signs that are larger than the surrounding signs cluttering the area--also protects the aesthetics and safety of the community. Ex. E at 60:6-24, 61:2-25, 62:1-18.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

49.     Excessive amounts of "signage, both in terms of number of signs and size of signs" can become distracting and cause safety problems. Ex. E at 121:10-25.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

50.     The Sign Code seeks a balance by allowing "ample amount of signage for each property" allowing "effective and attractive" signs "without becoming a safety concern." Ex. E at 121:23-25, 122:1-2.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: This statement is an argumentative legal opinion. This statement is unsupported by facts or evidence. See Response to paragraph 44.

52.     In the C-4 District, the number of signs is limited to "four (4) signs per business." Ex. C (§ 42-521(4)(b)); Ex. D at 131:20-24.

**Response**: Plaintiffs admit that this statement correctly quotes a portion of § 42-521. Salina's mural-sign code regime allows more than four signs in the C-4 district based on written and unwritten exemptions. Salina City Code §§ 52-504, 42-505, 42-508, 42-525, 42-581; Ex. A, Andrew Dep. 22:21—23:4, 33:22—34:6, 35:4-5, 105:6-23, 114:11-20, 115:7-13, 301:21-25.

53.     In the C-4 District, the size and number limitations are designed to prevent safety problems. Ex. E at 62:16-19.

**Response**: Salina is not aware of any evidence that the mural-sign code regime promotes safety. Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 73:13—75:8; 76:19—77:10, 25:14-17, 77:23—78:10; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3, 168:9-25; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. There is no evidence that the regime promotes traffic or pedestrian safety. Ex. GG, Taylor Dec., Rpt. at 12; id. at 13; id. at 10; id. at 6-10.

54.     The C-4 district is a more pedestrian-oriented area where the buildings are shoulder to shoulder and share common walls. Ex. E at 17:7-21.

**Response**: This statement is unsupported by evidence. Much of the C-4 district consists of broad avenues and open spaces. Ex. HH, Cozy Photos at 49; Ex. II, Mural Photos at 82-83, 93, 95, 98, 120; Ex. JJ Photos at 85-86, 106, 113-115.

55.     The Sign Code serves compelling and substantial urban planning purposes including traffic safety and aesthetics. The Sign Code directly and materially furthers its recited purposes, set forth in Salina Code § 42-500. The Sign Code is consistent in practice with the state of the art nationally for how sign regulations interact with decorative building features such as murals. To that end, it is consistent with twenty-one sign and mural regulations in Kansas and Oklahoma, which demonstrate a range of approaches to regulating signs while accommodating the

benefits of murals.  This is because murals are integral to buildings, are not designed to direct attention to a place, and as such do not function as signs. **Ex. R** at ¶ 6.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: **(1)** These statements are argumentative legal opinion. **(2)** Salina is not aware of any evidence that the mural-sign code regime advances its alleged interests. Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 73:13—75:8; 76:19—77:10, 25:14-17, 77:23—78:10, Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3, 168:9-25; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. **(3)** There is no evidence that the mural-sign code regime promotes aesthetics, property values, or traffic and pedestrian safety. Ex. GG, Taylor Dec., Rpt. at 12; *id*. at 13; *id*. at 10, *id*. at 15-18; *id*. at 6-10.

56.     The restrictions in the Sign Code are reasonable, generally accepted regulations of the size, number, placement and design of signs. The Sign Code varies sign height, size and design by zoning district. This is a state of the art, and generally accepted technique for controlling sign clutter. The Sign Code keeps signs in scale with the building's context which furthers the City's aesthetic interests. This is especially important in the historic downtown C-4 district, where the 67% limitation on the total sign area on any building wall or street frontage protects aesthetics and architectural integrity. Ex. R at ¶ 6.

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: See Response to paragraph 55.

57.     The terms and phrases used in the definition of sign in the Sign Code, such as advertise and announce, are well understood and in common use in sign regulations throughout the nation and in Kansas. Ex. R at ¶ 6(g).

**Objection**: Contains multiple alleged facts in a single numbered paragraph.

**Response**: These statements are argumentative legal opinion. There is no evidence that these terms and phrases are well understood. The definitions Mr. White cites differ from Salina

claimed definitions. *Compare* White's definition of "announce" and "advertise," Ex. KK, White Report at 18, *with* Salina's definitions, Ex. D, Def. Resp. to Plt. First Set of Interrogs., Rog 5.

58.     The Cozy Inn communicates via Facebook, branded merchandise worn or used by their customers, community events, radio advertising, banner advertising at indoor football events, billboards, bumper stickers, and a sign similar to the Cozy Sign on the wall of Jenni's Liquors in a nearby town. Ex. I at 19:5-25, 20:1-25, 21:1-25, 22:1-2, 23:8-25, 24:1-25, 26:7-25, 27:1-2, 29:12-25, 30:1-25, 59:2-25, 60:1-19; Ex. H at 89:11-24, 150:8-24; 213:3-13, 221:25, 222:1-12; Ex. S (Photo from Stephen Howard Deposition Ex. Y).

**Objection**: Contains multiple alleged facts in a single numbered paragraph. Salina's Ex. S was disclosed after the deadline established in the Scheduling Order, warranting exclusion under Rule 37(c)(1). Plaintiffs objected previously, Ex. S, Howard Dep. 213:18-22, and object again.

**Response**: **(1)** Plaintiffs admit The Cozy Inn communicates some messages via Facebook, radio advertising, banner advertising at indoor football events, and billboards. **(2)** Branded merchandise or bumper stickers worn or used by their customers are the communications of the individual displaying them, not The Cozy Inn. Ex. A, Andrew Dep. 33:23—35:5 (individual displaying Kansas City Chiefs flag is expression of individual, not the Chiefs). **(3)** The mural at Jenni's Liquor is not considered a regulated sign by the City of Brookville, Kansas, Ex. S, Howard Dep. 223:4-19, and is a communication of Jenni's Liquor and its owners, not The Cozy Inn. **(4)** Any implication that these communications provide an alternative channel of communication is an argumentative legal opinion.

59.     Charles Taylor admitted that prior to construction of the Cozy Sign, the Cozy Inn signs that were already in place were "conspicuous enough," and did in fact "brand the site." Ex. T at 177:20-23; 180:1-2 (Charles Taylor Depo.)

**Response**: Plaintiffs admit that the quotations from Professor Taylor are accurate. Plaintiffs deny that the purpose of the mural at The Cozy is to make The Cozy conspicuous or to brand the site. The mural at The Cozy is artwork that tells a story about travel. Ex. T, Howard Dec. ¶¶ 11-17; Ex. S, Howard Dep. 105:9, 252:22—253:5, 253:10-18.

60.    Mr. Howard was upset about the City's determination that his display was a sign and that it was too large to qualify for a permit. Ex. I at 48:4-17.

**Response**: This statement is argumentative and unsupported by the evidence cited. Plaintiffs deny that Salina made a formal determination regarding Plaintiffs' application. Ex. U, On-Hold Letter, Ex. E, Herrs 30(b)(6) Dep. 109:24—110:2.

### C.    Additional Statement of Facts.

1.    Salina is filled with dozens of murals. Ex. II, Mural Photos; Ex. JJ, Photos

2.    Zoning Administrator Andrew testified that "[a]ccording to the rules of construction of our city code, or and and are interchangeable," Ex. A, Andrew Dep. 72:2-3, depending on the context, *id*. 72:18-19.

3.    Salina's proffered expert, Mark White, is the author of a learned treatise, "*Content-Neutral Sign Codes After Reed And Austin*, (Sign Research Foundation 2022). Ex. NN, White Dep. 191:19-192:2; Ex. MM, *Content-Neutral Sign Codes After Reed and Austin*.

4.    Salina has threatened to seek legal fees personally from Mr. Howard. Ex. S, Howard Dep. 250:16—251:7; Doc. 101, Amended Pretrial Order (APTO) at 19.

### Argument

## I.    The Plaintiffs have standing.

The Plaintiffs want to finish their whimsical mural but can't. Salina's entire mural-sign code regime[2] stands in the way. Nonetheless, Salina's primary standing argument appears to focus on "redressability" and suggests that if the definition of a "sign" is theoretically severed from the code, the Plaintiffs still couldn't finish painting their full-sized display. Doc. 107 at 18-19. Redressability only requires that "a favorable judgment would meaningfully redress the alleged injury." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006). Contrary to Salina's arguments, the Plaintiffs have not just challenged the constitutionality of the definition of a "sign" under § 42-764. The Plaintiffs have requested a judgment declaring the *entire* mural-sign

---

[2] The mural-sign code regime includes the written sign code, the unwritten policies and practices, the permit requirement, the size restrictions, and the concomitant enforcement penalties.

code regime unconstitutional including the permit requirement, the size limitations, and Salina's unwritten policies and practices. The Plaintiffs clear the low redressability hurdle—a successful outcome would allow the Plaintiffs to finish their mural, and the requested relief would redress the Plaintiffs' constitutional injuries. *Aptive Envtl., LLC v. Town of Castle Rock, Colorado,* 959 F.3d 961, 978 (10th Cir. 2020) (enjoining enforcement of ordinance establishes redressability); *Pacific Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1229 (10th Cir. 2005) (plaintiffs' injury "would be redressed by a judicial conclusion that the Ordinance is unconstitutional.").

Salina's suggestion that its severability ordinance deprives the Plaintiffs of standing is mistaken. The question of severability "is whether the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken." *Clark v. City of Williamsburg, Kansas*, 388 F. Supp. 3d 1346, 1362 (D. Kan. 2019), *aff'd*, 844 F. App'x 4 (10th Cir. 2021) (cleaned up). If the "invalid portion" "is such an integral and inseparable part of the whole scheme and purpose of the law," it "may not be severed." *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1024 (1993) (cleaned up). Invalid language may not be severed if it would "effect[] the meaning of what remains," *Clark*, 388 F. Supp. 3d at 1362 (cleaned up), or would "change[] the scope of the Act," *Thompson*, 252 Kan. at 1024.

Salina only applies its permit and size regulations to displays it considers "signs." *Response to Statements of Fact* (*RSOF*) ¶ 2, Ex. A, Andrew Dep. 91:3 ("we don't regulate murals"); Ex. B, Driscoll Dep. 93:12-14 ("murals" are "a whole another thing[.]"). According to Salina, "the definition of 'sign'" is "the central issue of this case." Doc. 107 at 2. As such, the definition of a "sign" is plainly integral to the sign code, it's improbable Salina would have passed a sign code without defining "sign," severing "sign" from the code would fundamentally "effect[] the meaning of what remains," *Clark*, 388 F. Supp. 3d at 1362 (cleaned up), and would "change[] the scope of the Act," *Thompson*, 252 Kan. at 1024.

If the Plaintiffs were challenging a discrete provision of the mural-sign code regime, such as the exemptions for "noncommercial flags displayed on private property," § 42-504(1), or "memorial signs and tablets displayed on private property," § 42-504(5), then Salina's severability

might have some merit. Those provisions could be cleanly severed from the rest of the mural-sign code regime "without doing violence to legislative intent." *Clark*, 388 F. Supp. 3d at 1362. But eliminating the definition of the very thing that the mural-sign code regime regulates would fundamentally upend it. If there is no definition of a "sign," it would be impossible to conclude The Cozy's mural was indeed a "sign," that it required a "sign permit," and that was subject to the size limitations for "signs" in the C-4 district. The entire mural-sign code regime topples without a definition of a "sign," and therefore, it's not severable.

Salina's claim that severing "sign" from its code would mean that its size and permitting regulations would still apply to The Cozy's display is particularly confused. Doc. 107 at 19. The definition of a "sign" is the operative regulatory verbiage. According to Salina, if something is a "sign," it's regulated. If it's not a "sign," it's not regulated. If "sign" were stricken from the code, neither the permitting nor the size regulations would apply to any painted display at all. Salina makes that very point later in its memorandum. Doc. 107 at 22 ("Displays that fall outside of the definition of 'sign' are not signs and are therefore not regulated as such") (cleaned up).

What's more, severing the definition of "sign" would only strengthen the Plaintiffs' prior restraint and void for vagueness claims. Without *any* definition of a "sign," Salina officials would have unlimited discretion to decide when a mural is regulated and when it is not. Without *any* definition of "sign" there would not be any standards on what is regulated, much less the "narrow, objective standards" the First Amendment requires. *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). Without *any* definition of "sign," "regulated parties [couldn't] know what is required of them," and Salina officials would not have the "precision and guidance" to guarantee "that those enforcing the law do not act in an arbitrary or discriminatory way," *F.C.C. v Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012) (cleaned up).

Salina's severance argument is also based on an out-of-circuit case that has never been cited in-circuit for the idea that theoretically severing a statute *before* determining its constitutionality deprives a First Amendment litigant of standing. Doc. 107 at 19 (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793 (8th Cir. 2006)).

Next, Salina suggests—without any legal citations—Plaintiffs can't challenge the "timing provisions" of the sign code because they "started painting without a permit," were "well-aware" they needed one, and because they "agreed to delayed processing" of it. Doc. 107 at 20. Plaintiffs did start painting without a permit, but that's because they thought they were painting an unregulated mural, not a regulated sign. *RSOF* ¶ 15. Salina instructed the Plaintiffs to apply for a permit; the Plaintiffs never "agreed to delayed processing" of it. *RSOF* ¶¶ 18, 23; Ex. T, Howard Dec. ¶ 26; Ex. A, Andrew Dep. 233:2-6. That Salina can't even say *when* it put the Plaintiffs' application on hold belies any notion there was an agreement. *RSOF* ¶ 23 (application put on hold *seven days before* it was submitted, right after it was submitted, and "when it came in"). Besides, applying for a permit isn't even a requirement. *See, e.g.*, *Ass'n of Cmty. Organizations for Reform Now, (ACORN) v. Municipality of Golden, Colo.*, 744 F.2d 739, 744 (10th Cir. 1984); *Koontz v. Watson*, 283 F. Supp. 3d 1007, 1018 (D. Kan. 2018).

The Plaintiffs "have standing to challenge those portions of the Code which provide the basic definitional structure for the terms used," "and which more generally define the scope of signs allowed." *Bee's Auto, Inc. v. City of Clermont*, 8 F. Supp. 3d 1369, 1379 (M.D. Fla. 2014). The Plaintiffs have standing to challenge Salina's unwritten definitions and policies that prevent them from finishing their mural. *See id*; *Aptive*, 959 F.3d at 979 (First Amendment applies to "city policies"); *NAACP v. City of Philadelphia*, 39 F. Supp. 3d 611, 616 (E.D. Pa. 2014) (standing exists to challenge "unwritten policy" that prevented speech), aff'd sub nom. *NAACP v. City of Philadelphia*, 834 F.3d 435 (3d Cir. 2016).

In sum, the Plaintiffs have standing. They've suffered a constitutional injury, caused by the defendant, which would be redressed by an order granting Plaintiffs the requested relief. *Aptive,* 959 F.3d at 978; APTO 2.a.iv-v., 2.a.ix., 5.a-c.; Doc. 16 ¶¶ 306-315.

## II.    Salina applies the definition of a "sign" differently from the code's text.

Salina interprets § 42-764's definition of a "sign" to include only subsections (1), (2), and (3). Doc. 107 at 27.

22

In doing so, Salina either removes entire sections of the definition, substitutes "and" for "or," or combines both approaches. Doc. 107 at 28 ("the definition of sign[s]" are "those displays (**and** 'any other figure[s] of similar character'")) (emphasis added); *Additional Statement of Facts (ASOF)* ¶ 2 (Salina uses "and" and "or" interchangeably). In any event, Salina now admits it *applies* the definition differently from the code's text. Doc. 107 at 26 (admitting definition of sign "is limited in application"). This is how Salina's interpretations look:



In either one, Salina's interpretation contradicts the "longstanding canons of statutory construction" that a court must construe a statute "so that effect is given to all provisions, so that no part will be inoperative or superfluous, void or insignificant." *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 698–99 (2022) (cleaned up). Salina's reading renders half of § 42-764 a nullity.

Despite this, Salina argues it should be allowed to effectively rewrite its code, otherwise it "would result in sign permits for displays *inside of buildings*." Doc. 107 at 27 (emphasis in original). However, the code plainly contemplates that permits *are* required for displays inside a building, as evidenced by the exemption for *indoor* window signs. § 42-504(9) (exemption for signs "affixed to the interior of a window").

Salina's assertion that its interpretations have been "consistent and reasonable" *see* Doc. 107 at 26, is directly contradicted by the record. *ASOF* ¶ 2 (using "and" and "or" interchangeably); *RSOF* ¶¶ 2 (ignoring the code's text); *RSOF* ¶¶ 2, 52 (inventing code exemptions).

Properly read, a "display that is calculated to attract the attention of the public" is a "sign." Subsections (1), (2), and (3) are catchalls for "any other figure of similar character." Doc. 16 ¶¶ 36-39. That reading provides meaning and effect to all of the code's text.

**III.    Salina's mural-sign code regime violates the First Amendment.**

**A.    The mural-sign code regime is content- and speaker-based.**

Salina's argument that the sign code is "content-neutral," that it "applies the Sign Code as written," and that it determined The Cozy's display was too big "based on objective content neutral standards," Doc. 107 at 20, 25, is not just legally incorrect, it's belied by the extensive factual record, nearly all of which Salina ignores.

As shown throughout the Plaintiffs' summary judgment memorandum, Salina applies its size and permitting requirements to displays it considers signs but doesn't apply them to displays it considers murals. Doc. 105 at 26-30. The difference between an unregulated mural and a regulated sign turns on its content and the speaker. If the display relates to the entity putting it up, is "part of a commercial transaction," contains a "commercial message," or if it "includes a message that pertains to the goods or services for sale," Salina considers it a regulated sign and applies its regulations. *RSOF* ¶¶ 2, 25-28, 44-50; *see also* Ex. J, Talking Points (a "distinction is commonly made between murals and art when compared to commercial speech"). Conversely, if the display's content shows something else, Salina doesn't apply its size and permitting regulations.

Because "[t]hese distinctions are based solely on the content of the [display] at issue," and because "the restrictions that apply depend on the 'communicative content' of the [display], like here," Salina's mural-sign code regime "is content-based." *Clark*, 388 F. Supp. 3d at 1359 (relying on *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). *See also Cent. Radio Co. Inc. v. City of Norfolk, Va.*, 811 F.3d 625, 633 (4th Cir. 2016) (cleaned up) (regulation was content based because "it exempted works of art that in no way identified or specifically related to a product or service, but it applied to art that referenced a product or service" and "because it applied or did not apply as a result of content").[3]

---

[3]*See also Ficker v. Talbot Cnty., Maryland*, 553 F. Supp. 3d 278, 285 (D. Md. 2021) (size limit based on subject is content based); *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1329 (M.D. Fla. 2009) (application of code was content based because murals displayed "in conjunction with" a business were subject to size regulations, but murals showing "first responders" or "kids playing in the park" were

It's also content based under *Aptive,* where the Tenth Circuit rejected the argument that a commercial door-to-door solicitors' curfew was content neutral. 959 F.3d at 966, 970, 999. The curfew "*is* content-based," the Tenth Circuit held, because it "applies by distinguishing between the commercial and noncommercial content of the solicitors' speech," a "conclusion dictated by the Supreme Court's decision in *Discovery Network*. There, the Court struck down a law that banned commercial but not noncommercial newsracks. In so doing, the Court concluded that the regulation was not content-neutral because the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech." *Id.* at 982 (internal quotes cleaned up, italics in original). The learned treatise authored by Salina's own retained expert demonstrates the regime is content based. *ASOF* ¶ 3; *see* Ex. MM at 9-10, 20-21 ("Tips to Comply with *Reed*" and "*Reed*'s Top 10 Takeaways").

The government's repeated citations to *City of Austin v. Reagan Nat'l Advert.*, 596 U.S. 61 (2022) are flawed and don't help Salina. Doc. 107 at 2, 3, 21, 22. This case is nothing like that one. In *Austin*, billboard companies challenged an off-premises, "location-based and content-agnostic" regulation that didn't "single out any topic or subject matter for differential treatment," and there was "no evidence in the record that the City had applied the sign code provisions differently for different messages or speakers." *Id.* at 73-74, 76, 67 (cleaned up). This case isn't about billboards, and it doesn't involve off-premises, location-based regulations. Salina's repeated statements, actions, and testimony proves the regime is anything but content-agnostic, and even though all painted wall-displays are the same physical *thing* (paint on walls), Salina treats them differently depending on *what* the paint displays and *who* is painting it. Salina doesn't regulate the Mural at the Mill, *ASOF* ¶ 1; Ex. II, Mural Photos at 82, because of its content but does regulate The Cozy's

---

unregulated art); *Kerston v. City of Mandan,* 389 F. Supp. 3d 640, 642, 644, 646 (D.N.D. 2019) (city's claim that a bar's mural depicting mountains, cowboys, and the bar's name, was a regulated sign, not an unregulated mural was "[c]learly" a "regulation [that] is based on the content of the speech," and "is not content neutral"); *Morris v. City of New Orleans*, 399 F. Supp. 3d 624, 635, 636 (E.D. La. 2019) ("[U]ndeniably content based" that New Orleans considered a painting with "a non-commercial message" an unregulated a mural, but considered a painting with "a commercial message" a regulated "sign").

mural because of *what* it depicts and *who* painted it. In short, Salina overreads *Austin*. It didn't "nullify *Reed*'s protections," or "cast doubt on any" "precedents recognizing examples of topic or subject-matter discrimination as content based." *Austin*, 596 U.S. at 76.

At a more fundamental level, that Salina almost exclusively relies on billboard and other off-premise sign cases underscores the weakness of its position. Murals can't fall over, occupy land that could be put to other uses, block views, or feature flashing lights. Billboards have long been treated differently than murals. *See, e.g., Pagan v. Fruchey*, 492 F.3d 766, 774 (6th Cir. 2007) (*en banc*) (explaining that billboard case doesn't apply to case involving "for sale" signs on cars); *Cafe Erotica of Fla., Inc. v. St. Johns Cnty.*, 360 F.3d 1274, 1285 (11th Cir. 2004) (the "law of billboards" is "a law unto itself"). Calling a mural a "sign" because of the content doesn't change the analysis: wall-paintings can't fall over, occupy land, or block views, or feature flashing lights.

Salina says it was "transparent about how it applied the Sign Code" to The Cozy's mural, Doc. 107 at 24-25, and indeed it was. Salina officials transparently (and repeatedly) admitted the code is, and was applied to The Cozy, in a content- and speaker-based manner. *RSOF* ¶¶ 2, 25, 26-28, 44-50; Ex. F, Comm. Tran. 10:4-5 (Salina applies regulations "all on the basis of a commercial message"). Salina's attempts at cleaning that up through its litigation positions aren't credible. For one instance, Salina says The Cozy's mural is a "sign" because it was a "display calculated to attract the attention of the public." Doc. 107 at 24. But Salina also says that's *not* how it interprets or applies the code. Doc. 107 at 26-27. Salina's own 30(b)(6) representative testified it ignores that part of the code as well. *RSOF* ¶¶ 2, 26; Ex. E, Andrew 30(b)(6) Dep. 13:17-20 ("Q. When determining if a display is a sign, does the city determine if the display is calculated to attract the attention of the public? A. No."); *see also* Ex. A, Andrew Dep. 64:14-15, 18-20; 69:23—70:1; 46:13-19.

Salina can't credibly explain *why* the mural at The Cozy is a regulated sign, but the Mural at the Mill isn't, even under its preferred reading of the code. Doc. 107 at 27; *ASOF* ¶ 1; Ex. II, Mural Photos at 82; *RSOF* ¶¶ 2, 25-28, 42, 44-50, 53, 55; Ex. C, Andrew 30(b)(6) Dep. 13:17-20; Ex. A, Andrew Dep. 64:14-20, 69:23—70:1, 46:6-19, 210:17—211:6; Ex. B, Driscoll Dep. 126:19—

128:7, 129:2-20; Ex. G, Schrage Dep. 108:1-13, 109:1-14; Ex. NN, White Dep. 120:10-17, 121:10-14, 125:7-12. The Mural at the Mill is a display, it "attract[s] the attention of the public," it "direct[s] attention to" itself, and it "direct[s] attention to" downtown Salina. Even though it's a "sign" as the code defines it in § 42-764, Salina considers it an unregulated mural. *RSOF* ¶¶ 2, 25, 44-50; Ex. B, Driscoll Dep. 126:19—128:7; Ex. G, Schrage Dep. 108:1-13. Besides, whether something is "used to announce, direct attention to, or advertise" is still content based because it "target[s] speech based on its communicative content," it "applies to particular speech because of the topic discussed or the idea or message expressed," it targets "specific subject matter," it "draws distinctions based on the message," "cannot be justified without reference to the content of the regulated speech," it "defin[es] regulated speech by its function or purpose," and because it "disagree[s] with [certain] message[s]," *Reed,* 576 U.S. at 155, 163-64, 169 (cleaned up) and "turn[s] on whether the speech is commercial or not." *Aptive*, 959 F.3d at 982; *see also id.* at 983; *RSOF* ¶¶ 2, 25, 44-50; Ex. A, Andrew Dep. 285:1-4 (regulated sign defined by "function").

Salina's litigation positions and the undisputed factual record also demonstrate the mural-sign code regime is a speaker-based restriction. To start with, Salina admits it prohibits some painted displays but not others to "eliminat[e] the risk of sign wars" between "businesses." Doc. 107 at 31. What's more, a pizza shop could paint an exact replica of The Cozy's mural, but The Cozy can't. *RSOF* ¶¶ 2, 25-28, 44-50; Ex. F, Comm. Tran. 23:4—24:4, 26:16-22; *see also* Ex. G, Schrage Dep. 121:25—123:9, 123:16—125:8; Ex. B, Driscoll Dep. 106:6-11, 155:6—156:12; Ex. A, Andrew Dep. 24:12-15, 54:18—55:8, 172:11—173:20, 175:2-6, 177:5—178:3, 179:20—180:10 (more speaker-based examples). All of that "favor[s] some speakers over others" and "reflects a content preference." *Reed*, 567 U.S. at 170. Salina didn't move for summary judgment on the speaker-based theory. *See* Doc. 107. The Plaintiffs did. Doc. 105 at 2, 26, 29-30.[4]

"Both on its face and in its practical operation," Salina's mural-sign code regime "imposes a burden based on the content of speech and the identity of the speaker," *Sorrell v. IMS Health*

---

[4] The Plaintiffs have consistently alleged the regime is speaker based as well. *See* Doc. 16 ¶¶ 3, 32, 34, 192, 198, 199-200, 202-203, 211, 213-214, 229, 308; Doc. 31 at 1, 5, 8; Doc. 101 at 16, 18.

*Inc.*, 564 U.S. 552, 567 (2011), and is "a paradigmatic example of content-based discrimination," *Reed*, 576 U.S. at 169. Because the undisputed factual record shows that Salina treated The Cozy's mural as a regulated sign, and not an unregulated mural, based on what it depicted and the identity of the speaker, strict scrutiny applies. Salina can't meet that heavy burden—indeed, it doesn't even try to. *See* Doc. 107.

### B.    Salina's restrictions can't survive *any* form of heightened scrutiny.

#### 1.    Even if it's content neutral, the mural-sign code regime is unconstitutional.

Salina argues that under a content neutral analysis, it doesn't need to produce any evidence. Doc. 107 at 29-30. That position is over-the-top and wrong. As Mr. Howard previously explained, the Tenth Circuit's content-neutral test is fact-intensive. Doc. 105 at 32-37. In *Brewer v. City of Albuquerque*, the city restricted pedestrian activities on the theory it "was necessary to address persistent and troubling pedestrian safety concerns stemming from high rates of vehicular accidents[.]" 18 F.4th 1205, 1209 (10th Cir. 2021). The city's 900 accident and police reports, statistical information regarding injuries and fatalities, anecdotes from city council, police officers, and expert testimony on traffic engineering and roadway design *still* wasn't enough to prove there was a real-life, non-speculative harm, or that the city's ordinance alleviated a non-speculative harm in a direct and material way. *Id.* at 1232, 1227, 1226. The Tenth Circuit even described that record as "largely evidence free" and "pauc[e]." *Id.* at 1245, 1238.

For Salina's evidence-free theory, and in keeping with its theme, Salina primarily relies on three billboard cases. Two of these are District of Colorado opinions involving the same plaintiffs, one of which was affirmed on appeal, but not for the reasons Salina says. Doc. 107 at 29-30. What Salina doesn't say is that on appeal, the Tenth Circuit cited *Brewer* and upheld the dismissal—not because the facts don't matter—but because the plaintiffs didn't properly allege the billboard regime failed intermediate scrutiny. In any event, none of the three cases apply here.

Salina says it doesn't need evidence because of *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). Doc. 107 at 3, 28-29, 30. In *Metromedia*, the United States Supreme Court explained that billboards create "a unique set of problems" and expressed a billboard-specific

observation that "billboards are real and substantial hazards to traffic safety." 453 U.S. 490, 509-510 (1981). Still, the Supreme Court left open the possibility that the facts could lead to a different result. *Id*. at 509. Given the unique harms billboards pose, courts analyzing billboard-specific regulations have largely deferred to the Supreme Court's billboard-specific observations. Indeed, that's precisely what the District of Colorado did in *StreetMediaGroup, LLC v. Bd. of Cnty. Commissioners of Cnty. of Adams, State of Colorado*, No. 21-CV-1232-RMR-KLM, 2023 WL 5613018, at *3 (D. Colo. Mar. 30, 2023), one of the cases cited by Salina. Doc. 107 at 30.

Murals aren't billboards though. They can't fall over, block views, or occupy physical land. *Metromedia*'s billboard-specific observations don't apply here. In *Pagan*, for example, the government regulated "for sale" signs on cars and "argued that even in the absence of evidence of concrete harm, [courts] should defer to legislative judgments on matters of traffic safety and aesthetics" because of *Metromedia*. 492 F.3d at 774. The Sixth Circuit rejected the government's "theory" it need not provide evidence" and rejected the proposition that *Metromedia* applied. "*Metromedia* does not control the outcome of this case," it said. *Id*. at 774; *see also*, *Cafe Erotica*, 360 F.3d at 1285 (the "law of billboards" is "a law unto itself").

In the other *StreetMedia* case cited by Salina, the billboard companies argued that treating billboards "differently depending on whether the message was paid for or not" was unconstitutional under strict scrutiny. *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1247 (10th Cir. 2023). The Tenth Circuit upheld the dismissal, but not because the facts don't matter. As the Plaintiffs previously explained, Doc. 105 at 36-37, *StreetMedia* didn't turn the First Amendment analysis into a fact-free, government-deferential inquiry where Salina gets to restrict speech because it says so. Instead, the Tenth Circuit held that strict scrutiny didn't apply, cited *Brewer*, and explained that it was "skeptical" the regulatory regime could survive intermediate scrutiny, but because the billboard plaintiffs did "not allege with any specificity that the Act and rules fail to meet intermediate scrutiny," it "[t]hus conclude[d] that the district court properly dismissed" the claim. *Id*. at 1252. *StreetMedia* doesn't say that the facts don't matter. The dismissal wasn't upheld for the reasons Salina says.

Salina also relies on *Wag More Dogs, LLC., v. Cozart*, 680 F.3d 359 (4th Cir. 2012) for its "evidence doesn't matter" theory. Doc. 107 at 3. *Wag More Dogs* pre-dated *Reed* and the Fourth Circuit has abandoned it. *Cent. Radio Co. Inc. v. City of Norfolk, Va.* is instructive. There, the Fourth Circuit initially relied heavily on *Wag More Dogs* to uphold a sign code, 776 F.3d 229 (4th Cir. 2015), but the case was vacated and remanded post-*Reed,* 576 U.S. 1049 (2015). On remand, the Fourth Circuit reversed itself, holding the sign code unconstitutional without citing *Wag More Dogs*. 811 F.3d 625 (4th Cir. 2016). Even the law review cited by Salina recognized that *Wag More Dogs* was an outlier before *Reed*. Doc. 107 at 31. The article, written two years before *Reed*, characterized *Wag More Dogs* as the "minority approach" and was the "sole mural case" applying the minority view. Chistina Orlando, *Art or Signage?: The Regulation of Outdoor Murals and the First Amendment*, 35 Cardozo L. Rev. 867, 884, 886 (2013). In any event, *Wag More Dogs* was poorly reasoned, lacked limiting principles, and was contrary to the First Amendment, as the Fourth Circuit eventually recognized by abandoning it.

Salina's fact-free, "because I said so" theory of regulating *some* painted wall displays but not others isn't credible. Murals aren't hazardous, and neither are the murals that Salina says are signs. There is nothing in this record or the caselaw that says they are. Whether they're called a sign or a mural doesn't change things either. It's all just paint. Wall paintings can't fall over, block views, or occupy physical land; and they're not more or less dangerous because of their content.

Salina's other contention, that the "record is replete with evidence justifying how the Sign Code advances" its interests, can't be taken seriously. Doc. 107 at 32. The "evidence" consists of a law review article (that explains just how outlandish and unconstitutional it is to regulate murals differently based on their content), a blog post, and six pages from what appears to be a 2009 PowerPoint presentation on *digital signs* and *billboards*. Salina Ex. A ¶ 6.i-iii. None of that was considered by the City Commissioners either. Salina Ex. A ¶ 3 (documents were "in *my* file" and "considered *by me*" before the 2017 code amendment) (emphasis added); *see also RSOF* ¶ 42; Ex. Y, Z, AA, BB, CC, DD, EE, FF (commission minutes and documents show this "evidence" was not considered by City Commission).

Salina's proffered evidence doesn't explain why it regulates some painted displays but not others; and doesn't explain how regulating some painted displays, but not all painted displays, directly and materially advances its stated interests. The law review article in particular undercuts Salina's entire regulatory theory. *See, e.g.*, Orlando, *Art or Signage?*, 35 Cardozo L. Rev. at 870 (regulating commercial and noncommercial murals differently is "impermissible content-based regulation" and "stands in stark contrast to the current state of free speech law"); *id.* at 889 ("hardly seem[s] necessary, fair, or prudent," and would be "foolish and wasteful," to demand that a cupcake shop that sells coffee to remove a coffee cup mural); *id.* at 895 (includes quotation that "If you can't even paint some grapes on the side of a wine store, then we've gone to the land of silly"); *see also, id.* at 885-86. If the City Commissioners and other Salina officials *had actually read* and *considered* that law review article, The Cozy's UFO-themed mural would be finished by now. *RSOF* ¶¶ 2, 25-28, 44-50; Ex. F, Comm. Tran. 10:4-5 (Salina regulates "all on the basis of a commercial message"); Ex. Def. Ans. to First Set of Interrog., Rog 11 (The Cozy can't have burger-esque mural); *RSOF* ¶¶ 2, 25-28, 44-50; Ex. F, Comm. Tran. 23:4—24:4 (coffee shop can't have a coffee mural); *RSOF* ¶¶ 2, 25-28, 44-50; Ex. B, Driscoll Dep. 155:6—156:12 (taco shop can't have taco mural).

Salina doesn't have *any* evidence justifying its speech restrictions on safety grounds. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 73:13—74:15; 76:25—77:10, 25:14-17, 77:23—78:10; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. There is no evidence that the sign code has actually succeeded in those objectives, that a mural pertaining to a business is unsafe, that it would cause a traffic accident, or a pedestrian accident. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 25:14-17, 73:13—75:8, 76:19—77:10, 77:23—78:10 ; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3, 168:9-25; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12; Ex. GG, Taylor Dec., Rpt. at 12; *id.* at 13; *id.* at 10, *id.* at 15-18; *id.* at 6-10. There is no

evidence that a painted mural will fall off the wall, that burger-esque UFOs are more dangerous than flying pizza slices, that commercial art is more dangerous than non-commercial art, or that private art is more dangerous than public art. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. E, Herrs 30(b)(6) Dep. 25:14-17 Ex. NN, White Dep. 114:20—115:8, 115:22—116:11. There is no evidence The Cozy's mural has caused any safety issues at all. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. G, Schrage Dep. 126:15-25; Ex. B, Driscoll Dep, 167:16-22. Salina's lack of credible, real-world evidence supporting its theoretical safety interests is unsurprising: "[t]he argument that signs" "constitute a traffic safety hazard is not supported by scientific evidence." Ex. GG, Taylor Dec., Rpt. at 10-14. So, "while the City's" theoretical "interest in public safety" may be significant, "it is not enough for the City to use broad safety justifications to establish the Ordinance's necessity." *Brewer*, 18 F.4th at 1226 (cleaned up).

The government's reliance on *City of Ladue v. Gilleo*, 512 U.S. 43 (1994) is misplaced. Doc. 107 at 28. Again, unlike the physical yard signs at issue there, murals don't take up physical space and obstruct views, distract motorists, displace alternative uses for land, or pose other problems that legitimately call for regulation. *Id*. at 43. Besides, the City of Ladue lost.

Salina's theoretical interest in "aesthetics" is not supported by any studies, statistics, or credible evidence either. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) 76:19-23; Ex. G, Schrage Dep. 126:15—127:11; Ex. B, Driscoll Dep.167:16—168:3; Ex. NN, White Dep. 46:25—48:4, 123:7-22, 124:13-19, 125:7-12. There is *no evidence* that a mural pertaining to a business is not aesthetically pleasing. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. NN, White Dep. 123:7-22, 124:13-19, 125:7-12. In fact, the opposite is true. The public enjoys The Cozy's mural. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. B, Driscoll Dep. 168:9-25; Ex. T, Howard Dec. ¶ 29; *see also* Ex. F Comm. Tran. 32:2-5 (The Cozy's mural "pops."). Salina's lack of any credible evidence supporting its theoretical interests in aesthetics is unsurprising. The scientific evidence doesn't support it. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. GG, Taylor Dec., Rpt. at 15-18. Because there "is nothing in the record" to credibly "suggest that commercial messages in artwork are more unsightly than non-commercial messages in artwork," Salina's mural-sign code

regime is "unconstitutional insofar as it distinguishes between commercial and non-commercial artwork." *Morris*, 399 F. Supp. 3d at 637; *see also*, *Discovery Network*, 507 U.S. at 425 (commercial newsracks "no greater an eyesore"); *Neighborhood Enterprises*, 644 F.3d at 737-38 (aesthetics not narrowly tailored when exemptions are content-based); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993) (city may not "promot[e] aesthetics" "by restricting speech depending upon the message expressed"); *Ficker* 553 F. Supp. 3d at 284-85 (sign code not narrowly tailored); *Reed,* 576 U.S. at 172 (same); *Bee's Auto,* 8 F. Supp. 3d at 1380.

Salina's "visual assault" on aesthetics argument and its reliance on *Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) is also misplaced. Doc. 107 at 28. That law banned posting signs on the government's *own* property to stop the build-up of temporary signs. *Id.* at 807. It didn't regulate aesthetics on private property, recognizing that "private property owners' esthetic concerns" would prevent the "visual assault" at issue in *Vincent. Id.* at 811. Indeed, regulating speech for "purely esthetic" reasons raises "serious First Amendment concerns." *Ward v. Rock Against Racism*, 491 U.S. 781, 793 (1989).

Salina doesn't have evidence for its claimed interest in "property values," that the code actually increases property values, or that The Cozy's mural impacts property values. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. LL, Def. Ans. To Second Set. Interrog. 1; Ex. E, Herrs 30(b)(6) Dep. 74:17—75:8; Ex. G, Schrage Dep. 127:8-11; Ex. B, Driscoll Dep.167:23—168:3; Ex. NN, White Dep. 46:25—48:4. To the extent Salina claims other interests, they're either not "substantial," or they're irrelevant, APTO 4.b.iii., and unsupported by actual evidence. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. GG, Taylor Dec., Rpt. at 12; *id.* at 13; *id.* at 10, *id.* at 15-18; *id.* at 6-10.

Just as in *Brewer*, "the City frames much of its narrow tailoring argument around" its proffered expert, attorney Mark White. 18 F.4th at 1229. Mr. White doesn't have any evidence that the government's "recited harms, specifically defined, are real and that the" mural-sign code regime "will in fact alleviate them in a direct and material way." *Brewer*, 18 F.4th at 1227 (cleaned up); *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. NN, White Dep. 46:25—48:4, 114:20—115:8, 115:22—116:18, 120:10-17, 121:10-14, 123:7-22, 124:13-19, 125:7-12. "Crucially," Mr. White's "opinions are

theoretical, and largely unmoored from any on-the-ground data" from Salina. *Brewer*, 18 F.4th at 1229. Indeed, Mr. White's "testimony exposes, rather than bolsters, the lack of tailoring at the heart of the Ordinance." *Id*. at 1230. Among the many reasons why, Mr. White's learned treatise demonstrates the regime is content based and can't survive any level of scrutiny. ASOF ¶ 3, *see* Ex. MM at 9-10, 20-21 (regime violates "Tips to Comply with *Reed*" and "*Reed's* Top 10 Takeaways"). "Thus," Mr. White's "generic and theoretical opinions do not aid the City's cause." *Brewer*, 18 F.4th at 1230. What's more, there is "no conclusive evidence of a link between signs and traffic accidents;" "properly placed signs are not a safety hazard;" "[t]he argument that signs" "constitute a traffic safety hazard is not supported by scientific evidence;" there is "no evidence" that Salina's sign code "promotes an interest in aesthetics;" and there is no scientific or other evidentiary support undergirding any of Salina's stated interests either. *RSOF* ¶¶ 42, 44-50, 53, 55; Ex. GG, Taylor Dec., Rpt. at 12; *id*. at 13; *id*. at 10, *id*. at 15-18; *id*. at 6-10.

There's no evidence whatsoever that Salina considered less restrictive means. *Brewer*, 18 F.4th at 1221. Salina doesn't "leave open ample alternative channels of communication" either. *Id*. at 1220 (cleaned up). Salina's proposed alternative methods wouldn't allow the Plaintiffs to convey the intended message, would reach a different audience, or would be more expensive. That isn't a constitutionally adequate substitute. *See City of Ladue*, 512 U.S. at 56-57.

Because Salina remains willfully uninformed about what the mural is and the message it's conveying, Salina's proposed alternative channels of communication aren't adequate. The one-of-a-kind, Sci-Fi-themed mural tells a story about alien- and human-travelers. *RSOF* ¶¶ 26-28, 39, 40, 59 Ex. T, Howard Dec. ¶¶ 4-17; Ex. S, Howard Dep. 105:9, 252:22—253:5, 253:10-18. The visual artistry conveys the Plaintiffs' character. Id. The mural isn't selling hamburgers, and it's not intended to maximize profits. Id. The mural isn't an advertisement and Mr. Howard isn't trying to "brand the site" with it. Id. So, Salina's suggestion that The Cozy could just reduce the wall-sized mural to about the size of an ironing board and "advertise the hamburgers it sells" through "Facebook, branded merchandise," "banner advertising," "billboards," "bumper stickers," and "interviews" isn't constitutionally adequate. Doc. 107 at 4, 29. That's tantamount

to suggesting Andy Warhol, who wasn't advertising soup, could just advertise tomato soup, through the internet or bumper stickers. Besides, branded merchandise and bumper stickers are the speech of the individuals displaying them. Salina's suggestion that "radio advertising" is a constitutionally adequate alternative to the visual and artistic representation of aliens blasting The Cozy's wall with ketchup and mustard isn't credible. Doc 107 at 4, 29. It's true that Mr. Howard participates in "community events," Doc. 107 at 4, 29, but Salina hasn't explained how that is even a communication, much less a constitutionally adequate alternative to telling a story through a wall-painting. Likewise, Salina doesn't say how a different piece of art, at a different building owned by a different business, in a different city, with a different message, is a constitutionally adequate substitute for The Cozy's mural. Doc. 107 at 24, 29 (relying on "sign located at Jenni's Liquors"). It's self-evidently not.

Once completed, The Cozy's wall-sized mural would be permanently affixed, easily viewable at all times of the day, every day of the year, by anyone and everyone. Unlike "branded merchandise," "bumper stickers," and the like, the public wouldn't need to pay anyone to see it; and it wouldn't cost Mr. Howard additional money to produce it either. Shrinking the mural to about the size of an ironing board or yoga mat would make it incredibly difficult to see and would reach a much smaller audience. In short, given the First Amendment's purpose and history—protecting speech—Salina's proposed alternatives are not constitutionally adequate.

## 2. Even under *Central Hudson*, the mural-sign code regime is unconstitutional.

Salina fundamentally misunderstands what constitutes commercial speech. Doc. 107 at 36.[5] Salina never explains *why* it thinks The Cozy's mural constitutes commercial speech either. In a single sentence, it just says that it *is* commercial speech. Doc. 107 at 37.

Commercial speech is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). In *Complete Angler*, the court explained that if a mural isn't "proposing commercial transactions," it isn't

---

[5] Salina's passing references to *Wag More Dogs* is mistaken, for the reasons above.

commercial speech, even *if it* "occasionally inspire[s]" commercial transactions. 607 F. Supp. 2d at 1332 (fish mural at a bait and tackle shop was not commercial speech). The Cozy's mural doesn't say "five burgers for a dollar," and it doesn't propose a commercial transaction. It's "artwork," "express[ive]," conveys Mr. Howard and The Cozy's "character," and tells a story about alien travelers visiting The Cozy by burger-esque UFOs. *RSOF* ¶¶ 26-28, 39, 40, 59; Ex. T, Howard Dec. ¶¶ 4-17; Ex. S, Howard Dep. 105:9, 252:22—253:5, 253:10-18; Doc. 105 at 31. As such, The Cozy's mural is not commercial speech. But even *if* this Court assumes The Cozy's mural is commercial speech and applies less-than-strict scrutiny,[6] Salina *still* isn't entitled to summary judgment.[7]

The commercial speech test isn't a fact-free, government-deferential inquiry. Doc. 105 at 32-35. *See also*, *Edenfield*, 507 U.S. at 771; *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489–90 (1995); *Pagan,* 492 F.3d at 771 (rejecting government's "theory" it "need not provide evidence").

The Tenth Circuit requires Salina to prove that its stated interests are "substantial," that its restrictions advance its interests "in a direct and material way," and that its restrictions are "narrowly tailored." *Aptive*, 959 F.3d at 987–88, 982 (cleaned up). All of that requires *actual evidence*, which Salina doesn't have. 959 F.3d at 996 ("[c]onjectural harms and suppositions" are insufficient); *id*. at 995 ("asserted interests" in "the abstract" not enough); *id*. at 999 ("harms" must be "real and that its restriction will in fact alleviate them to a material degree") (cleaned up); *id*. at 990 (record requires "a concrete, nonspeculative harm").

In *Aptive*, the Tenth Circuit reviewed the evidentiary record after a bench trial on the town's solicitor curfew. 959 F.3d at 966. The town produced complaints about registered and

---

[6] It's the Plaintiffs' view that even if the mural is considered commercial speech, strict scrutiny should apply. Doc. 105 at 27 (distinguishing between commercial and noncommercial speech is content based); Doc. 105 at 30-31 (explaining that regulation of commercial speech that isn't content-neutral triggers strict scrutiny); Doc. 105 at 30 (explaining that providing less protection to commercial speech is inconsistent with the First Amendment).

[7] Salina is mistaken when it argues "as-applied commercial speech challenges are not justiciable." Doc. 107 at 36. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 777 (1993) (successful as-applied challenge to commercial speech restriction); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 181 (1999) (same); *Miyoko's Kitchen v. Ross*, No. 20-CV-00893-RS, 2021 WL 4497867, at *5 (N.D. Cal. Aug. 10, 2021) (same).

unregistered solicitors, solicitors visiting homes after the curfew time, testimony from council members, town employees, the police chief, and its former mayor, statistical evidence, and much more. *Id*. at 990-992. That was not enough to satisfy the government's evidentiary burdens. *Id*. at 996.

Even assuming Salina's interests are substantial *in the abstract*—Salina "fails to carry its burden of demonstrating that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Aptive*, 959 F.3d at 989 (cleaned up). As shown in the content-neutral analysis above, and in the Plaintiffs' own summary judgment memorandum, Doc. 105 at 33-35, Salina's proffered evidence (a law review article that undercuts its argument, a blog post, six pages from what appears to be a 2009 PowerPoint presentation on digital signs and billboards, and opinion testimony from Mark White, who also authored a learned treatise undercutting Salina's arguments) isn't anything close to the evidence that Castle Rock produced, which still wasn't enough. There's no evidence supporting any of Salina's arguments, and there's no evidence Salina considered less restrictive means either. Salina's anecdotes about other sign codes, Doc. 107 at 32, is "woefully insufficient" as well, because there's no evidence supporting those codes either. *Aptive*, 959 F.3d at 993.

Salina can't credibly explain why it treats murals differently from signs, why flying pizza slices are safe and aesthetically pleasing but burger-esque UFOs aren't, or justify any of its content-based exemptions from the mural-sign code regime. Because Salina doesn't have *any* evidence of real-life, tangible harms, or evidence justifying its restrictions, or evidence that the regime directly and materially advances its alleged interests, or evidence that its restrictions are not over- or under-inclusive, or evidence that it considered less restrictive alternatives, this Court should not grant Salina summary judgment.

## IV.     Salina's mural-sign code regime is an unconstitutional prior restraint.

Salina says there's no prior restraint because The Cozy's mural "was too big to qualify for a sign permit," and "the City also understood and Mr. Howard agreed that his sign permit application" "would be held in abeyance." Doc. 107 at 33. The record demonstrates otherwise.

Salina told Mr. Howard to submit a permit application, and he did as he was told. *RSOF* ¶ 23. Salina officials admit Mr. Howard didn't consent to his application being placed on hold either. *RSOF* ¶ 23. Salina argues that it didn't "need to again inform Mr. Howard about what he already knew," that Salina "could not legally issue a sign permit," as though that matters in a prior restraint analysis. Doc. 107 at 34. It doesn't. At bottom, Salina's code says it needed to send a written denial within ten days, and Salina didn't do that, instead putting the application on-hold indefinitely. *RSOF* ¶ 23. That's an unconstitutional prior restraint. *See, e.g.*, *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 558-59 (1976); *Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1290 (10th Cir. 2002) (cleaned up); *see Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1259 (10th Cir. 2004).

Salina also seems to suggest that it doesn't need to provide "procedural safeguards regarding timing" because, it says, its code is content neutral. Doc. 107 at 32-33. It's not content neutral, for the reasons stated above. But even if it were, it's still considered an unconstitutional prior restraint where the government "enjoys unduly broad discretion in determining whether to grant or deny a permit[.]" *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002); *id.* (must be "adequate standards to guide the official's decision and render to so subject to effective judicial review"). As the record demonstrates though, there are no narrow, objective, or definite standards guiding Salina when it's determining whether a display is a regulated sign or an unregulated mural.[8] The Zoning Administrator can't definitively say whether a painting of a cow in a field of mustard plants, tomatoes, and onions, would be a sign or a mural, if painted on The Cozy's wall; or if "traditional science fiction" UFOs would be a sign or mural, if painted on The Cozy's wall. RSOF ¶ 2, 25, 44; Ex. A, Andrew Dep 176:22—177:3; 178:16-22.

Salina's admission that it has to "evaluate whether" a display makes "a declaration about a fact, occurrence, or intention or proclaims or gives notice of, or identifies," or "evaluate[s]

---

[8] Salina's suggestion that *Wag More Dogs* helps it is, again, mistaken, for the reasons above. *Wag More Dogs* was the minority view even before the sea change of *Reed*. Orlando, *Art or Signage*, 35 Cardozo L. Rev. at 884.

whether the display is meant to attract customers" or "encourage[s] a commercial transaction" helps prove the point. Doc. 107 at ¶ 28; *RSOF* ¶ 28. None of that constrains discretion or provides constitutionally adequate guidelines. Consider a coffee shop that paints a branch on its wall, in the surrealist style of Salvidor Dalí. Salina's code enforcer would need to look at the art, interpret it, divine its meaning, and decide whether the dream-like branch looked enough like a *coffee* branch for it to be considered a regulated sign. *See RSOF* ¶¶ 2, 25, 44; Ex. G, Schrage Depo. 122:25—123:8. There is no narrow, objective, or definite standards guiding Salina's code enforcer for making that determination. Finally, discretion is so unlimited, Salina puts applications "on-hold" in "the discretion of the reviewer if they feel like they're actively working with an applicant." Ex. A, Andrew 30(b)(6) Dep. 29:7-18.

Salina's constantly changing, undefined policies on when and how it applies its mural-sign code regime demonstrates the extent of its unbridled, unconstitutional discretion.

## V.    Salina's mural-sign code regime is unconstitutionally void for vagueness.

Salina says the "text" of its sign code "provides clear standards that ordinary people can understand" and "does not encourage arbitrary enforcement." Doc. 107 at 39. Because the code's key terms aren't defined and don't provide clear standards though, Salina is forced to explain *how* it (says it) applies the code, rather than pointing to what the code actually says. Doc. 107 at ¶ 28. Which, by the way, isn't even accurate. *RSOF* ¶¶ 26, 28; *ASOF* ¶ 2. The code is *so* vague, Salina even had to hire an expert to try and help explain what the words *could* mean. Doc. 107 at ¶ 57. Finally, in a last-ditch effort, Salina points to the *Wag More Dogs* district court opinion. But as shown above, *Wag More Dogs* was an outlier even when it was written, and the Fourth Circuit abandoned the principles of that case long ago. At bottom, the record demonstrates the code is a confusing, jumbled mess that does indeed encourage arbitrary enforcement. *See*, *e.g.*, *RSOF* ¶¶ 2, 25-28, 44-50. Left with little else, Salina says that the "overbreadth doctrine does not apply to commercial speech." Doc. 107 at 39 (citations omitted). The Cozy's mural isn't commercial speech though. *RSOF* ¶ 40. The Cozy isn't raising claims on behalf of others either. Finally, even if The Cozy's mural is commercial speech, the regime "must nonetheless be invalidated as

overbroad," because it "prohibits fully protected, non-commercial speech." *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989). *RSOF* ¶¶ 2, 25, 44-50; Ex. A, Andrew Dep. 54:18—55:8 (explaining that a "Turn to Jesus" mural on a church is an advertisement and a regulated sign).

## Conclusion

Salina's mural-sign code regime is plainly unconstitutional under *any form* of heightened First Amendment scrutiny, it's an unconstitutional prior restraint, and it's unconstitutionally vague. This Court should reject Salina's motion for summary judgment and grant the Plaintiffs' motion instead. *See* Doc. 105.

Dated: February 28, 2025.                    Kansas Justice Institute

                                            /s/ Samuel G. MacRoberts
                                            Samuel G. MacRoberts, 22781
                                            Jeffrey Shaw, 29767
                                            12980 Metcalf Avenue, Suite 130
                                            Overland Park, Kansas 66213
                                            sam@kansasjusticeinstitute.org
                                            (913) 213-5018
                                            Attorneys for Plaintiffs

## Certificate of Service

The undersigned certifies that on February 28, 2025, the above document(s) were filed using the CM/ECF system, which will send notification of such filing to all participants.

                                            /s/ Samuel G. MacRoberts
                                            Samuel G. MacRoberts