**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **Cozy Inn, Incorporated,** | ) |
| **d/b/a The Cozy Inn; Stephen Howard,** | ) |
| | ) |
| **Plaintiffs,** | ) **CIVIL ACTION** |
| | ) **CASE NO. 6:24-cv-01027-TC-ADM** |
| **v.** | ) |
| | ) |
| **City of Salina, Kansas,** | ) |
| | ) |
| **Defendant.** | ) |

## RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant, City of Salina, Kansas ("City"), by and through its attorneys Fairfield and Woods, P.C. and Clark, Mize & Linville, Chartered, respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment ("Motion"), and in support thereof states as follows:

### I.   INTRODUCTION

Salina, like almost every other local government in the country, regulates signs in the interest of traffic safety, aesthetics, and property values. Salina's definition of sign includes displays[1] located outside of a building that is used to "announce," "direct attention to," or "advertise." As such, if a display does any one of these things, it is a sign that is subject to regulation. The Cozy Sign[2] falls squarely within the definition of "sign" because it is used for not just one (which would itself be sufficient), but all of these things.

---

[1] "Display" refers to "any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character."

[2] "Cozy Sign" refers to the sign that Plaintiffs started painting on the North wall of the Cozy Inn without a permit on November 3, 2023, which is the subject of this lawsuit.

The Sign Code (Salina Code ("S.C.") Ch. 42, Art. X, related definitions in Art. XIV, and S.C. §§ 1-11 and § 42-581) is not concerned with "art." There is no provision of the Sign Code that specifically exempt "murals" or "works of art." Mot. at 29. Put simply, regardless of whether it is also a "mural" or "art," if a display is "used to announce, direct attention to, or advertise," it is a sign. Conversely, if a display is not "used to announce, direct attention to, or advertise," then the Sign Code does not apply to it. This balance results in artistic architectural embellishments (including some murals, but also decorative fountains, gazebos, trellises, brick or tile patterns, and similar improvements that are designed to attract attention) not being subject to regulation under the Sign Code because they are not within the scope of the definition of "sign." Put simply, the definition puts bookends on the Sign Code, preventing it from being absurdly overinclusive.

In this context, Plaintiffs' contention that "[t]he distinction between regulated signs and unregulated murals isn't specified anywhere in the written code" is a red herring. Mot. at 1. The distinction is between "signs" and "not signs." If a display that is outside of a building is "unregulated" it is because the display is not "used to announce, direct attention to, or advertise."

The Motion asserts a content bias that does not exist. Based on its building frontage, The Cozy Inn (the "Cozy") may display up to 63 square feet of signage. The Cozy Inn already has about 53 square feet of permitted signs. Mr. Howard's alleged passion for telling his "story" has no constitutional significance, but if that passion is sincere, he could scale the painting down.

But the summary judgment record shows that this case is not about Plaintiffs' desire to tell a "story." Initially, Plaintiffs specifically hired Mr. Benson for "sign lettering." Over time, and with Mr. Benson's input, the project grew into the display that is at issue in this case—the entire North wall of The Cozy, turned into a sign that includes depictions of sliders and toppings that are offered for sale at The Cozy, along with an arrow pointing to the door of the establishment and

text that says, "Don't fear the smell, the fun is inside." The North wall of the Cozy is about 528 square feet in area, an area that is many multiples larger than the Sign Code allows.

Plaintiffs' passions and intentions are not germane. It does not matter whether the Cozy Sign is also a "mural," or "art," or even if it tells a "story." The City determined that the Cozy Sign is used to "announce," "direct attention to," and "advertise," and therefore the display is a regulated sign. Plaintiffs could have, but did not, administratively appeal the City's routine fact-finding determination in that regard. Instead, they brought this federal case. Despite a lengthy diatribe of so-called "undisputed facts" that suggests that the Cozy Sign does not "announce," "direct attention to," or "advertise," Plaintiffs have never sought to have their display excluded from the definition of "sign." Instead, they seek to take a constitutional wrecking ball to the Sign Code itself—a reasonable set of regulations that Plaintiffs admit they never actually read, and have no intention of ever reading. The Motion suggests that Plaintiffs simply refuse to acknowledge the "common ground" that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

The City administered its content-neutral sign code to its letter. It did not violate Plaintiffs' civil rights. The Motion's characterization of the Cozy Sign as a "whimsical" "UFO-themed mural," and its persistent "whataboutism" in relation to displays that (unlike Plaintiffs' sign) are not "used to announce, direct attention to, or advertise" are both giant red herrings. The latter red herring is egregious when juxtaposed against the clear command that "an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248 (2023) (emphasis added).

3

The question in this case is not whether the City got it right with respect to determining the Cozy Sign (or any other sign for that matter) is a sign. Plaintiffs did not raise that claim, and because they did not administratively appeal those issues, Plaintiffs are foreclosed from bringing them to this Court.[3] Additionally, even if administrative exhaustion did not apply, Plaintiffs do not seek declaratory judgment that the Cozy Sign is not a "sign" under the Sign Code.

Federal courts do not sit as super zoning boards of appeal. The City submits that Plaintiffs' have simply repackaged a routine dispute as a constitutional claim. The claims upon which the Plaintiffs seek summary judgment are entirely without merit, and their Motion for Summary Judgment should be denied. This is not a close case.

## II.    RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

Few facts set out in the Motion's Statement of Facts ("SOF") are undisputed and material. In many cases, the statements misrepresent the summary judgment record. Further, the Motion fails to recite the most material of the "material facts," that is, the full text of the provisions of the Sign Code that are at issue in this case. The City responds to the SOF ("RSOF") as follows:

1-2.    Undisputed, but not a material fact ("NMF").

3.    Disputed. Continuing objection to Howard Declaration (Mot. Ex. A), as it seeks to improperly alter sworn deposition testimony. Mr. Howard wants customers to go inside the Cozy because he can "upsell" the customers and his purpose of having customers inside the Cozy is to sell products and merchandise. **Ex. 1** (Howard Dep.) at 41:12-15, 43:16-25, 44:1-10.

4.    Undisputed. NMF.

5.    Undisputed. NMF. It is a corporation. **Ex. 2** (Amended PTO) at 2, Stip. Fact i.

_____

[3] Plaintiffs have also not raised claims regarding selective enforcement or equal protection and are barred from raising those issues for the first time on reply to a response to a Motion for Summary Judgment.

6.    Disputed. Public art, which includes murals, is not prolific and does not represent a traffic safety or aesthetic issue. **Ex. 3** (Mark White Aff'd); **Ex. 4** (Herrs Dep.) at 41:19-25, 42:1-21, 26:10-21.

7.    Disputed. Plaintiffs' exhibit does not support this SOF. The City provides limited administrative support concerning donations for Boom! that are made to the Greater Salina Community Foundation, but the City does not provide direct funding. **Ex. 5** (Anderson Dep.) at 23:2-11.

8.    Undisputed. NMF.

9.    Disputed. NMF. Mr. Howard told Mr. Benson that he wanted the words "Don't' Fear the Smell. The Fun is inside" painted on the wall of the Cozy, "along with a burger in the middle of it," but Mr. Howard testified he did not know why he included the burger and when he provided this idea to Mr. Benson he then told Mr. Benson "just look at that wall like a [tattoo] sleeve . . . just run with it." **Ex. 1** at 94:7-25, 95:7-19, 100:8-13; 126:3-25, 127:1-25.

10.    Disputed due to how the term "mural" is used in the Motion. *See* RSOF ¶ 9.

11.    Disputed due to how the term "art" is used in the Motion. *See* RSOF ¶ 9.

12.    Disputed. NMF. *See* RSOF ¶¶ 9-11, supra.

13.    Undisputed. NMF. To Mr. Howard's intent, see RSOF ¶¶ 9-11, supra.

14.    Disputed as to the characterization of the Cozy Sign. Mr. Howard did not indicate to Mr. Benson that it was to be a spaceship. The initial renderings kept Mr. Howard's hamburger and wording, and added an onion ("That pic with arrow has the WOW factor just lean a slice of onion against it!! That will be perfect"). The additional imagery was added by Mr. Benson. The Cozy Sign design approved by Mr. Howard included hamburgers without any depiction of spaceships or alien pilots. RSOF ¶ 9; **Ex. 1** at 128:11-25, 129:1-25, 130:1-25, 131:1-25, 132:1-25,

133:1-25, 136:5-11, 146:8-25, 147:1-19; **Ex. 6** (Howard Dep. Ex. V, Texts) at 5-7, 12 (Bates 339-41, 346); Additional Material Fact ("AMF") ¶ 3 *infra*.

15.     Disputed. NMF. The image of the Cozy Sign at ECF 16, ¶ 28 (Amend. Complaint) is what Plaintiffs' alleged they intend to be the final rendering of the Cozy Sign. **Ex. 2** at p. 2, Stipulated Fact vii. This image is different than the Cozy Sign currently painted as it does not contain what Plaintiffs' have referred to as the "alien pilots" on the hamburgers. **Ex. 4** at 113:10-25, 114:1-4; **Ex. 2** at p. 2, Stipulated Fact vi.

16.     Disputed. NMF. *See* RSOF ¶¶ 9-11, 14.

17.     Disputed. NMF. *See* RSOF ¶¶ 9-11, 14.

18.     Disputed. NMF. *See* RSOF ¶¶ 9-11, 14. The Cozy Sign is not one of kind. A similar sign is displayed on the wall of Jenni's Liquors, another business owned by Mr. Howard. **Ex. 1** at 213:1-13; 215:10-15; **Ex. 7** (Howard Dep. Ex. Y, Photos of Jenni's Liquor).

19.     Disputed. NMF. Mr. Howard admitted he can upsell customers better when they are inside of the Cozy Inn. **Ex. 1** at 41:12-15. *See* also RSOF ¶ 14.

20.      Disputed as the accuracy. NMF. Mr. Howard guessed that in the summertime, 50 percent of customers used the walk-up window. **Ex. 1** at 42:1-18.

21.     Not disputed for purposes of this Motion. NMF.

22.     Disputed. NMF. The Cozy is a for-profit business. **Ex. 2** at 2, Stipulated Fact i. The Cozy Sign is asking people to come inside the Cozy Inn to purchase something. Inside, Mr. Howard can upsell customers and tell them how much to order, and he wants customers to go inside and have fun so they want to come back and purchase more products. **Ex. 1** at 40:17-25, 41:1-4, 41:13-15, 43:16-25, 44:1-10, 46:9-25, 47:1-25, 48:1-9.

23.     Disputed. NMF. *See* RSOF ¶ 22.

24.    Disputed. NMF. *See* RSOF ¶ 22.

25.    Disputed. NMF. *See* RSOF ¶ 22.

26.    Undisputed.

27.    Disputed. NMF. Mr. Benson did not state whether the Cozy Sign was complete. The referenced photo shows the Cozy Sign is fully outlined, and Mr. Benson had started painting in that outline with color. **Ex. 8** (Benson Dep.) at 46:5-25, 47:1-4, 115:4-13, 134:8-12; **Ex. 9** (Benson Dep. Ex. C) at 2.

28.    Disputed in part. NMF. Mr. Anderson could not recall if he first saw the Cozy Sign driving by the Cozy Inn or on social media. He exchanged brief texts with a City employee alerting her of the Cozy Sign. **Ex. 5** at 40: 5-12, 42:5-22, 43:12-19; **Ex. 10** (Driscoll Dep.) at 34:12-25.

29.    Undisputed.

30.    Disputed in part. At the time of the initial determination, the Cozy Sign was completely outlined, and some parts had been painted. RSOF ¶ 27.

31.    Undisputed.

32.    Disputed as to context. The City determined the Cozy Sign is a sign and it exceeds the size allowance. **Ex. 11** (Andrew Dep.) at 159:19-22, 160:1-10, 188:17-25, 189:17-24.

33.    Disputed. The City applied the definition of sign to determine that the Cozy Sign is a sign and that it exceeded the size allowance. **Ex. 11** at 159:19-22, 160:1-10, 188:17-25, 189:17-24; **Ex. 4** at 85:7-25, 86:1-25, 87:1-2; **Ex. 12** (City's Resp. to First Set of Interrog.) at No. 11.

34.    Disputed. *See* AMF ¶ 2, 5, *infra*.

35.    Disputed. *See* RSOF ¶ 34.

36.    Disputed. *See* RSOF ¶¶ 34-35; Ex. _ Andrew Depo at 17:19-25, 18:1-11.

37.    Disputed. *See* RSOF ¶¶ 34-36.

38.    Disputed. *See* AMF ¶ 2, 5, infra.

39.    Disputed. **Ex. 11** at 12:16-24; AMF ¶¶ 2, 5 infra.

40.    Undisputed.

41.    Disputed. The Sign Code does not include the term "mural." The term "art" may sometimes be used as an imprecise short-hand for "not a sign." **Ex. 12** at Nos. 5, 6; **Ex. 13** (Andrew 30(b)(6) Dep.) at 11:14-25, 12:1; **Ex. 14** (Schrage Dep.) at 52:19-15; AMF ¶¶ 2, 5, *infra*.

42.    Disputed. *See* RSOF ¶ 41; **Ex. 11** at 87:17-23; **Ex. 4** at 29:6-7. There is nothing in the text of the Sign Code that identifies a particular "speaker." *See* AMF ¶ 2; Section III.B.7., *infra*.

43.    Disputed in part. Mr. Schrage's correspondence occurred, but it referred to the Cozy Sign as a wall sign. *See* ECF 105-18, Pls.' Mot. Ex. R at 2.

44.    Undisputed as to all time periods pertinent to this litigation.

45.    Undisputed.

46.    Undisputed. NMF.

47.    Disputed as to "decision to regulate [mural] as a sign." NMF. AMF ¶¶ 3, 5, *infra*.

48.    Undisputed, with clarification. NMF. Mr. Schrage's email was "trying to boil down for him the high points of where thing stood" and was "trying to refer to there's case law out there." **Ex 14** at 51:12-19, 52:8-17.

49.    Undisputed. NMF.

50.    Undisputed as to the timing and text of the memo. Disputed as to accuracy. The City regulates the size of all signs, whether their messages are commercial or non-commercial. **Ex. 13** at 13:14-16; **Ex. 15** (Herrs 30(b)(6) Dep.) at 106:9-15.

51-53.    Undisputed. NMF.

54.    Undisputed as to quoted testimony, but disputed as to accuracy. AMF ¶ 3, *infra*.

55.     Disputed. The Cozy Sign was discussed at the meeting, but the quotations were taken from the summarized minutes and do not reflect what was said by Mr. Schrage. Mr. Schrage stated "And there certainly is a misunderstanding between art and signs and commercial speech. And I would acknowledge that signs can be artistic, some more artistic than others." **Ex. 16** (Nov. 13, 2023 Meeting Transcript) at 5:23-25, 6:1-2.

56.     Undisputed, but not reflective of Summary Judgment record ("NRSJR"). Mr. Schrage testified he "was not trying to . . . parse it that far … I used the term commercial speech equating it to advertising and equating it to what I understood the intent of the Cozy sign to be." **Ex. 14** at 76:3-23.

57.     Undisputed, but NRSJR. *See* RSOF ¶ 56.

58.     Disputed. *See* RSOF ¶ 56.

59.     Undisputed as to what Mr. Schrage said, but he explained this was based on his "understanding of the Cozy sign," in particular. He does not review sign permits, apply the Sign Code, or make such determinations. **Ex. 14** at 80:24-25, 81:1-10, 128:25, 129:1-12.

60.     Disputed as to accuracy. Ms. Driscoll stated that the Cozy Sign was too large under the Sign Code. **Ex. 16** at 17:2-18. The phrase "mural-sign code regime" is an inappropriate and potentially pejorative description of the Sign Code.

61-62.  Undisputed.

63.     Undisputed. NMF.

64.     Disputed. The quote is accurate, but it is so truncated it is NRSJR.  Ms. Driscoll was discussing a hypothetical she recalled from a "Supreme Court case" and "it's one [she has] heard multiple times and it's easy to explain to somebody who's not knee deep in municipal code all the time" and "it was just a simple way to try and identify for the commission that it's more

than just a word or a picture, that all these pieces lay together." **Ex. 16** at 23:4-18; **Ex. 10** at 79:17-25, 80:1-4, 85:6-25, 86:1-9, 87:25-1-25, 88:1-2.

65.    Disputed. *See* RSOF ¶ 64.

66.    Disputed. *See* RSOF ¶ 64.

67.    Disputed. NRSJR. Mr. Schrage stated "There certainly is a circumstance where [such a display] might not be a sign." **Ex. 16** at 26:16-22.

68.    Disputed. Ms. Driscoll testified that when she made the statement "expressly related solely to the economic interest" she "was trying to connect and help the commission understand that one of the things we look for in signs, specifically related to our definition and is common in sign law and sign cases, is that where there is an economic relationship to what is being communicated, such as advertising, go buy something, purchase something, use that service." *See* RSOF ¶ 64; **Ex. 10** at 82:3-17.

69.    Undisputed. NMF.

70.    Disputed. NMF. NRSJR. **Ex. 16** at 28:5-8.

71-73.  Undisputed. NMF.

74.    Disputed. *See* RSOF ¶ 41, for reasoning and citations.

75.    Disputed. The referenced pleading does not support this contention, which amounts to legal argument, not statement of fact. *See* RSOF ¶ 41; **Ex. 13** at 13:14-16, **Ex. 15** at 106:9-15. Motion SOF ¶ 168 strongly suggests that the Plaintiffs understand this. *See* Motion SOF ¶ 75.

76.    Disputed. NRSJR. **Ex. 15** at 43:9-10 ("We can determine . . . ").

77.    Disputed. NRSJR. *See* AMF ¶ 3, *infra*.

78.    Disputed. NRSJR. *See* AMF ¶ 3, *infra*.

79.    Disputed. NRSJR. *See* AMF ¶ 3, *infra*.

80.    Disputed. Mr. Andrew was questioned with speculative, confusing hypotheticals regarding if the Cozy Inn were located next to a chicken farm, then asked whether it would be a sign if the Cozy Inn only did delivery. Noting he was without the "full context," Mr. Andrew stated "My first inclination would be to consider that a sign" because its "an invitation to partake of their food." **Ex. 11** at 166:21-25, 167:1-3, 170:7-25, 171:1-25, 172:1-4.

81.    Disputed. NRSJR. The City does not regulate the content of a sign. In some instances, the City looks at the sign to determine if it's a sign. **Ex. 14** at 71:11-15; **Ex. 10** at 67:2-25, 68:1-9, 88:4-24; **Ex. 11** at 86:11-25, 87:1-23; *see also* Section III.B.5., *infra*.

82-83.    Undisputed. NMF.

84.    Disputed. NRSJR. Mr. Herrs answered "Yes. You have to look at the character and elements of the sign." **Ex. 4** at 88:23:24; *see also* Section III.B.5., *infra*.

85.    Disputed. NRSJR. An elevation drawing identifies "the materials it's made out of" its "height and width" and whether it will be "illuminated or static" and "depicts the appearance and the physical characteristics of that sign." **Ex. 11** at 26:18-25, 27:1-16.

86.    Disputed. NRSJR. Regarding the confusing and speculative hypotheticals, Ms. Driscoll responded "From the very limited information you've given me, it might not be a sign." Mr. Schrage does not apply the Sign Code. Mr. Andrew testified "if it was in the context of a blank white wall with a pizza symbol on it that had no association with announcing or directing attention to or advertising The Cozy Inn business and did not advertise a nearby establishment, then it would not be a regulated wall sign." **Ex. 11** at 173:14-20; **Ex. 10** at 106:6-20.

87.    Disputed. NRSJR. *See* RSOF ¶ 86.

88.    Undisputed. NMF.

89.    Disputed. NMF. NRSJR. **Ex. 11** at 179:20-25, 180:1-17; **Ex. 14** at 123:10-125:8,

124:9-11, 132:3-20

90.     Disputed. Mr. Schrage testified his answers were based on his understanding. **Ex. 14** at 123:23-25, 124:20-25, 125: 2-8, 132:3-20; **Ex. 10** at 106:6-20.

91.     Disputed. NRSJR. Mr. Schrage, who does not evaluate whether displays are signs on behalf of the City testified "I would seek legal counsel on that, but yes, I believe so." **Ex. 14** at 122:25, 126:1-8; 132:3-20; **Ex. 10** at 106:6-20.

92.     Undisputed for purposes of this Response. NMF. NRSJR.

93.     Disputed. Ms. Driscoll testified she "would question whether it's a sign and then work with my staff and our legal counsel to verify my interpretation." **Ex. 10** at 100:11-13.

94.     Disputed. NRSJR. Ms. Driscoll testified that Dean Andrew would typically provide that feedback, she then provided her answer and stated, "But if that were a question . . . that's something we would talk about with legal." **Ex. 10** at 114:15-18, 116:1-4.

95.     Disputed. NRSJR. When a Commissioner asked if this "same painting" would be a sign if displayed on the other side of town, Mr. Schrage noted that could get into "off-premise signs," but he did not make a contention on behalf of the City. **Ex. 16** at 26:1-10.

96.     Disputed. *See* AMF ¶ 3, *infra*.

97-101.        Undisputed.

102.    Disputed. The purpose of the meeting was to explain why the Cozy Sign was a sign, and why it was too large to qualify for a permit. **Ex. 8** at 80:8-25, 81:1-25, 82:9-13.

103.    Undisputed (Salina asked Mr. Howard to submit a sign permit application).

104.    Undisputed.

105.    Disputed as to timing of response, undisputed as to 10-day deadline in § 42-502(b). On November 6, 2023, the City told Mr. Howard the Cozy Sign would not qualify for a sign permit.

**Ex. 4** at 112:24-25, 113:1-2.

106.    Undisputed. The application was placed on hold. **Ex. 15** at 112:25, 113:1-10.

107.    Disputed. The City provided Mr. Howard with the Cozy Inn Sign Analysis, which explained why the Cozy Sign was too large to qualify for a permit. **Ex. 8** at 80:21-25, 81:1-24; **Ex. 17** (Cozy Inn Sign Analysis, Benson Dep. Ex. G).

108.    Disputed. The statement tends to misrepresent the understandings of the parties prior to the date of the letter. The application was placed on hold immediately upon receipt. **Ex. 15** at 112:25, 113:1-10.

109-112.        Undisputed. NMF.

113.    Disputed. NRSJR. Mr. Andrew testified that on November 13th the application was "placed on file and on hold," and that on "Monday the 6th" the City was "unable to issue a sign permit." Later, counsel asked a leading question including an incorrect date (November 6th) and confused the deponent. **Ex. 11** at 229:4-8, 230:12-17, 267:21-25, 271:3-16.

114-115.        Undisputed.

116.    Disputed. NMF. The testimony is paraphrased in a manner that misrepresents its actual import. Mr. Howard expressed interest in pursuing a code-based solution and the City thought they had an understanding from verbal conversations. **Ex. 1** at 210:15-25, 211:1-2; **Ex. 15** at 117:20-25, 118:1-17.

117.    Disputed. NMF. NRSJR. Mr. Anderson referred to a "photo mural" at Fire Station No. 2. **Ex. 5** at 69:13-14.  The referenced "mural" is not pertinent to the application of the Sign Code to the facts of plaintiffs' "concrete case." *See* Section I at p. 4, *supra*.

118.    Disputed. NMF. The City has determined that the display at Fire Station No. 2 is not a sign because it is not used to announce, direct attention to, or advertise. **Ex. 13** at 58:24-25,

59:1-16; *see* RSOF ¶ 117, as to relevance.

119. Disputed. NMF. NRSJR. **Ex. 10** at 119:7-25, 120:1-25, 121:1-5; *see* RSOF ¶ 117.

120. Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

121. Disputed. NMF. Mr. Andrew explained that the staff member who wrote the report did not "do a detailed analysis of how this relates to the three elements in the sign code definition," and the installation was not a sign. **Ex. 11** at 28310-25, 284:1-10; *see* RSOF ¶ 117.

122. Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

123. Disputed. NMF. The owner of the project stated his opinion in the article that "This will help . . ." ECF 105-26, Mot. Ex. Z at 35 (Bates 271).

124. Disputed. NMF. The City has determined it is not a sign because it does not meet the definition of sign. **Ex. 10** at 127:1-25, 128:1-7; *see* RSOF ¶ 117, as to relevance.

125. Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

126. Disputed. A change in use of the building would raise questions for Ms. Driscoll regarding whether it was advertising. **Ex. 10** at 129:2-20.

127. Undisputed. NMF. RSOF ¶ 91; *see* RSOF ¶ 117, as to relevance.

128. Disputed. NMF. AMF ¶ 3, *infra*; *see* RSOF ¶ 117, as to relevance.

129. Disputed. NMF. AMF ¶ 3, *infra*; *see* RSOF ¶ 117, as to relevance.

130. Disputed. NMF. AMF ¶ 3; *see* RSOF ¶128, ¶ 117, as to relevance. Signs that comply with size limitations are permitted. **Ex. 4** at 84:1-25, 85:1-5; **Ex.15** at 69:4-16; **Ex. 10** at 116:9-25; **Ex. 12** at No. 8.

131. Undisputed as to quotation, but Salina Code ("S.C.") § 42-503(a) is more complete. *See* AMF ¶ 2, *infra*.

132. Disputed. NMF. NRSJR. "The city for The Yard measured the smallest rectangular

figure that encompassed home plate and The Yard, period, end stop." **Ex. 13** at 93:9-14; *see* RSOF ¶ 117, as to relevance.

133.    Disputed. NMF. *See* RSOF ¶ 132.

134.    Disputed. NMF. **Ex. 4** at 101:1-14; *see* RSOF ¶ 117, as to relevance.

135.    Disputed. NMF. **Ex. 13** at 62:1-25, 63:12-19; *see* RSOF ¶ 117, as to relevance.

136.    Disputed. NMF. No matter how it is measured, the Cozy Sign exceeds the allowable sign area. **Ex. 11** at 223:5-25, 224:1-5; **Ex. 4** at 24:20-25, 25:1-25, 26:1-7.

137.    Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

138.    Disputed. NMF. **Ex. 11** at 311:2-20; 92:22-24; 95:1-5.

139.    Disputed. NMF. The Cozy Sign is so large that even if the City could consider that frontage, it is still too big to qualify for a sign permit. **Ex. 4** at 32:2-25, 33:1-25, 34:1-4; 117:9-18; **Ex. 11** at 92:22-24; 95:1-5.

140.    Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

141.    Disputed. NMF. *See* RSOF ¶ 117, as to relevance.

142-143.        Undisputed. NMF. *See* RSOF ¶ 117, as to relevance for both paragraphs.

144.    Disputed. NMF. The display is inside of a building—"building" defined in S.C. § 42-637. **Ex. 11** at 55:10-24; **Ex. 4** at 88:1-18, 89:2-13, 129:1-25, 130:1-25, 131:1-19; AMF ¶ 2, *infra*. *See* RSOF ¶ 117, as to relevance.

145.    Disputed. NMF. *See* RSOF ¶ 144; *see* RSOF ¶ 117, as to relevance.

146.    Undisputed. NMF. *See* RSOF ¶ 144.

147.    Disputed. NMF. Unsupported in Plaintiffs' SOF. No deponent has identified or authenticated the Bike Tek mural, its location, or the disclosed photo at Mot. Ex. F at 16 (Bates 300) (ECF 105-6). *See also* RSOF ¶ 117, as to relevance.

148.     Disputed. NMF. *See* RSOF ¶ 147.

149.     Disputed as to "music studio" and "musical themed." NMF. **Ex. 5** at 62:1-24, 63:2-4; *see* RSOF ¶ 117, as to relevance.

150.     Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

151.     Disputed. NMF. **Ex. 11** at 283:23-25, 284:1-10. *See* RSOF ¶ 117, as to relevance.

152.     Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

153.     Undisputed. NMF. *See* Section I at p. 2, *supra*, as to relevance.

154.     Undisputed.

155.     Disputed. The display is a sign. **Ex. 19** (City's Resp. to RFAs) at Nos. 13-16.

156.     Undisputed. NMF. S.C. § 42-510 does not apply. *See* RSOF ¶ 155; AMF ¶ 2, *infra*.

157.     Undisputed. It is a nonconforming, preexisting sign. *See* RSOF ¶ 155; AMF ¶ 2, *infra*.

158.     Disputed. It is a non-conforming, pre-existing sign. *See* RSOF ¶ 155.

159.     Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

160.     Disputed. NMF. The website is operated by the Chamber of Commerce under contract with the City. **Ex. 13** at 76:2-12.

161.     Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

162.     Disputed. NMF. The sign is exempt under S.C. § 42-504(2) as putting that information on the water tower protects the public health, safety, and welfare and serves as a wayfinding sign. **Ex. 13** at 77:1-6. *See* RSOF ¶ 160; *see also* RSOF ¶ 117, as to relevance.

163.     Disputed. NMF. Scoreboards are exempted under the Sign Code and provide game-specific information. If the second side of the structure is used for advertising, it does not fall under the scoreboard exemption. **Ex. 11** at 103:1-25, 104:1-25, 105:1-13, 106:3-9; *see* RSOF ¶ 117, as

to relevance.

164.    Disputed. NMF. *See* RSOF ¶ 163.

165.    Disputed. NMF. *See* RSOF ¶ 163.

166.    Disputed. NMF. *See* RSOF ¶ 163.

167.    Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

168.    Disputed. NRSJR. The display is regulated because it is a structure outside of a building that is used to announce, direct attention to, or advertise. **Ex. 11** at 54:18-25, 55:1-8.

169.    Disputed, NMF. NRSJR. Non-commercial flags are exempt from the Sign Code. **Ex. 11** at 32:1-25, 34:22-24. *See* RSOF ¶ 117, as to relevance.

170.    Disputed, NMF. NRSJR. *See* RSOF ¶ 169; and RSOF ¶ 117, as to relevance.

171.    Undisputed. NMF. *See* RSOF ¶ 117, as to relevance.

172.    Disputed. NMF. NRSJR. Mr. Andrew testified that in addition to announcing, it would also direct attention and advertise the business. **Ex. 11** at 89:25, 90:1-3.

173.    Disputed. NMF. NRSJR. **Ex. 11** at 113:1-25, 114:1-25, 115:1-25, 116:1-25, 117:1-25, 118:1.

174.    Disputed. NMF. NRSJR. *See* RSOF ¶ 173.

175.    Disputed. NMF. NRSJR. *See* RSOF ¶ 173.

176.    Disputed. NMF. NRSJR. Salina Code provides the word "or" may be read as "and" and the word "and" as "or," where the sense requires it. S.C. §1-2(14); **Ex. 11** at 72:6-19; 75:1-19. This is not a material fact in part because the Cozy Sign is "used to announce, direct attention to," *and* "advertise." This manner of interpretation is common practice in a number of different legal contexts. Cf. § 22:5. Grammatical construction; punctuation, 2 Couch on Ins. § 22:5.

177.    Disputed. NMF. NRSJR. *See* RSOF ¶ 176.

178.     Disputed. NMF. NRSJR. Members of public could read the code themselves. **Ex. 11** at 81:17-24.

179.     Undisputed. However, the purpose statement in S.C. § 42-500 sets forth a more complete list of the City's interests. **Ex. 12** at No. 4.

180.     Undisputed as quoted, but NRSJR. The City also provided City staff testimony and expert testimony demonstrating how the Sign Code advances its stated interests. AMF ¶ 7, *infra*.

181.     Disputed. *See* RSOF ¶ 180; AMF ¶ 7, *infra*.

182.     Disputed. NRSJR. *See* AMF ¶ 7, *infra*.

183.     Undisputed as quoted. NMF. Objection—Questioning exceeded scope of 30(b)(6) notice. **Ex. 15** at 74:2. Plaintiffs provide no authority for the proposition that before-and-after studies of the efficacy of sign codes is a constitutional requirement, and there is no controlling case law to support that proposition.

184.     Disputed. NRSJR. *See* AMF ¶ 7, *infra*; **Ex. 15** at 71:9-25, 72:15-25-73:1-12 (discussing how the Sign Code protects pedestrian and traffic safety).

185.     Disputed. NRSJR. *See* AMF ¶ 7, *infra*.

186.     Disputed. AMF ¶ 7, *infra*.

187.     Disputed. NRSJR. *See* AMF ¶ 7, *infra*.

188.     Disputed. NRSJR. *See* AMF ¶ 7, *infra*.

189.     Undisputed.

190-196.     Undisputed. NMF.

197.     Undisputed.

198.     Disputed. NRSJR. The cited deposition text refers only to studies commissioned or conducted by Salina, and the SOF is not limited in like fashion. **Ex. 20** (White Dep.) at 46:25-

47:1-5.

199.    Undisputed. NMF. *See* **Ex. 21** (Andrew Aff.) at ¶ 7 (explaining 2017 amendment).

200.    Undisputed. NMF. Plaintiffs provide no authority for the proposition that peer-reviewed studies of the efficacy of sign codes in promoting a specific City's planning goals is a constitutional requirement, and there is no controlling case law to support that proposition.

201.    Disputed. Mr. White studied the efficacy of the Sign Code. His conclusions are set out in his Affidavit and Expert Witness Report. **Ex. 3**; AMF ¶¶ 1, 7, *infra*.

202.    Undisputed. NMF. The difference was not specified to the deponent.

203.    Disputed. NMF. Mr. White testified that he was "not aware" of any study that was "that specific." **Ex. 20** at 115:22-25-116:5-11. Further, he testified that there are "tons of studies" regarding signs and traffic distractions. **Ex. 20** at 14:13-21, 133:5-10.

204.    Disputed. NMF. NRSJR. **Ex. 20** at 124:6-11.

205.    Undisputed.

206.    Undisputed. NMF.

207.    Disputed. NMF. NRSJR. **Ex. 20** at 120:2-17.

208.    Disputed. NRSJR. **Ex. 20** at 123:7-14.

209.    Undisputed. NMF.

210.    Undisputed. NMF. The Sign Code provisions at issue in this case do not distinguish between commercial and noncommercial speech. RSOF ¶¶ 55, 56, 75.

211.    Disputed. NMF. NRSJR. **Ex. 20** at 125:7-12. *See* RSOF ¶ 117, as to relevance.

212.    Disputed. Publication is not a "learned treatise." It is a publication targeted at urban planners. **Ex. 20** at 65:17, 193:16-21.

213.    Undisputed. NMF.

214.     Disputed. Signs pull a driver's attention away from the road, create a safety hazards based on their potential to distract motorists, and are in one of the highest categories of distractions. **Ex. 4** at 41:19-25, 42:1-21, 26:10-21; **Ex. 15** at 77:12-21; **Ex. 22** (Stutts Report, Charles Taylor Dep. Ex. G) at 15-16, Table 6; **Ex. 20** at 124:19-21

215.     Disputed. *See* RSOF ¶ 214.

216.     Disputed. As articulated in Section IV(B)(8), *infra*, AMF ¶ 7, infra.

217.     Disputed. See AMF ¶ 7, Section IV(B)(8) *infra*; **Ex. 20** at 124:19-21; **Ex. 3** (White Aff. Ex. 1 at 26-29 (citing to publications regarding traffic safety)).

218-221.        Undisputed. NMF.

222-224.        Undisputed.

225.     Undisputed. NMF.

## III.     <u>ADDITIONAL MATERIAL FACTS</u>

1.     The Sign Code is a state of the art, generally accepted technique for controlling sign clutter. The terms and phrases used in the definition of sign, such as advertise and announce are well understood and in common use throughout the nation and in Kansas. Ex. __ (Mark White Aff'd at ¶ 6).

2.     The full text of the definition of Sign is codified at S.C. § 42-764, and the full text of the definition of "building" is codified at S.C. § 42-637. **Ex. 18**.

3.     City staff applied the Sign Code as written, and determined the Cozy Sign met the definition of Sign under the Sign Code as it is used to "announce," "direct attention to," and "advertise." City staff applies the plain language and ordinary use of the words and phrases "announce," "direct attention to," and "advertise." The Cozy Sign announces the Cozy and its infamous onion smell, directs attention to the entrance by way of an arrow that points to the front

door, and advertises the hamburger condiments, pickles, onions, ketchup, mustard for sale at the Cozy. **Ex. 1** at 94:7-25, 95:7-19, 100:8-13, 136:5-11; **Ex. 15** at 86:13-25, 89: 3-22, 90:7-25; **Ex. 11** at 159:19-22, 160:1-10; **Ex. 12** at Nos. 5, 11; **Ex. 4** at 47:4-12, 115: 3-10, 116:11-21.

4.    Plaintiffs knew the City regulated signs, but did not read the Sign Code and have no intent to read the Sign Code. **Ex. 1** at 82:2-25, 83:1-3, 87:2-25, 88:1-25, 89:1-5, 240:15-17; 241:4-15; **Ex. 23** (Andrea Windholz Dep.) at 71:7-12.

5.    The City interprets and applies S.C. § 42-764 to require subparagraphs (1), (2), and (3) therein be met for any display to be considered a "sign." **Ex. 11** at 48:8-16, 50:5-11, 51:6-11, 55:10-24; 62:16-24; **Ex. 13** at 11:14-25, 12:1.

6.    The Sign Code contains a content substitution clause at S.C. § 42-511. **Ex. 18**.

7.    The Sign Code directly and materially furthers its recited purposes, set forth in S.C. § 42-500. **Ex. 3** at ¶ 6; **Ex. 24**; **Ex. 4** at 17:7-21, 60:6-24, 61:2-25, 62:1-18, 64:10-18, 121:10-25, 121:1-2, 121:23-25, 122:1-2.; **Ex. 15** at 20:10-25, 21:1, 26:1-21, 27:2-9, 27:17-25, 28:1-7, 37:2-25, 38:1-10, 45:10-16, 44:16-24, 45:1-3, 45:10-16, 47:15-25, 48:1-21 ("I think it protects property values," prevents "giant billboard" from going up in a residential neighborhood that "might impact the property values,"), 58:1-19, 62:1-2, 71:12-16, 72:19-21, 73:13-21, 73:3-11 ("the more signs you have . . .  it can become distracting when you're focusing on signs rather than driving or walking. And by limiting the number of signs, you reduce clutter. By limiting the size of signs, you limit signs that might be a distraction."), 74:17-25, 75:1-8 ("we have had a lot of redevelopment" and "that property values have gone up,"), 76:54-7, 77:12-21 ("signs by their definition attract your eye in a way to announce, direct attention to or advertise does change the character of a sign in relationship to or contrasted to a mural, a painted mural and that that could have impacts on traffic safety."); **Ex. 11** at 127:1-2, 131:20-24; *see also* RSOF ¶ 182.

8.    The City advised Mr. Howard if he wanted to erect the Cozy Sign he could reduce the size to the remaining 10 square feet, or remove existing signs to try to fit within allowable 63 square feet. **Ex. 15** at 92:15-24, 93:1-16. 94:11-25, 96:3-25, 97:1-8, 98:1-13, 116:16-25, 117:1-2.

9.    The Cozy Inn has various platforms of communication. **Ex. 23** at 19:5-25, 20:1-25, 21:1-25, 22:1-2, 23:8-25, 24:1-25, 26:7-25, 27:1-2, 29:12-25, 30:1-25, 59:2-25, 60:1-19; **Ex. 1** at 89:11-24, 150:8-24; 213:3-13, 221:25, 222:1-12.

10.    Plaintiffs did not administratively appeal the City's determination that the Cozy Sign was a sign and therefore subject to the requirements of the Sign Code. **Ex 11** at 234:11-21; **Ex. 18** (S.C. § 42-597).

11.    The Salina Code has severability provisions at S.C. § 1-11. **Ex. 18**.

## IV.    <u>ARGUMENT</u>

The Motion's contentions about the "idiosyncracies" of the City's so-called "mural-sign code regime" (Sign Code) offer more heat than light. In fact, though its specific numerical standards are reflective of the Salina Board of Commissioners' considered, proper legislative judgments regarding community aesthetics and the appropriate balance between the need for sign-based communication and the risk of sign clutter (to aesthetics, traffic and pedestrian safety, and property values). the Sign Code itself does not stand out as "idiosyncratic." Its regulatory methods (e.g., number of signs, area of signs proportionality of wall signs, and so forth) are state-of-the-art, industry-standard, and widely-used. Additional Material Fact ("AMF") ¶ 1.

For the purpose of identifying what the Sign Code regulates, the City defines "sign" in S.C. § 42-764. AMF ¶ 2. Its definition is based upon a long history and common understandings about what signs are. It is clear, it is content-neutral, and it was applied to the letter to the Cozy Sign. The U.S. Supreme Court recently detailed the historical backdrop of regulations that specifically

deal with signs. *See City of Austin v. Reagan Nat'l Advert.*, 596 U.S. 61, 65 (2022) (describing sign regulation as a "tradition" dating back more than 150 years—and observing that during that time, such regulations have addressed "signs . . . that promote ideas, products, or services . . . [or] promote or identify things located onsite."). As S.C. § 42-764 demonstrates, the Sign Code does not parse topics, ideas, messages, or viewpoints. AMF ¶ 2. Indeed, it is a content-neutral regulation of *signs*—displays that are traditionally understood (and clearly defined in § 42-764) as displays that "are used to announce, direct attention to, or advertise."

### A.    Plaintiffs' Opening Argument Deprives Them of Article III Standing.

The Motion strenuously argues that the Sign Code should be expanded to apply to all architectural embellishments and structures that include decoration and "attract attention," regardless of whether they are "used to announce, direct attention to, or advertise." That argument deprives them of standing. *See United States v. Texas*, 599 U.S. 670, 675 (2023) (U.S. Const., Art. III is confine judicial power to "'Cases' and 'Controversies.'" "[A] case or controversy can exist only if a plaintiff has standing. . . ."). "To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *Id*. at 676. The element of redressability requires more than a "'merely speculative' showing that the court can grant relief to redress the plaintiff's injury." *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006); *Friends of the Earth, Inc. v Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "[S]tanding concerns the court's subject-matter jurisdiction and may be raised at any time." *Bertels v. Farm Bureau Property & Casualty Ins. Co.*, 123 F.4th 1068, 1074 (10th Cir. 2024).

The Motion's opening argument is astounding because what necessarily follows from it is that Plaintiffs are without standing. The Motion insists, "*all* outdoor murals are regulated wall signs, and every wall sign is supposed to be subjected to the same size restrictions and permit

requirements." Put another way, The Motion demands that so-called "murals" (that is, painted displays that are not "used to announce, direct attention to, or advertise")—displays that Plaintiffs are "proud of," and allegedly want to keep in place—should join Plaintiffs' sign in the universe of regulated signs. RSOF ¶ 8. If the opening argument carries the day, the regulatory status of Plaintiffs' sign would not change, and Plaintiffs will be without redress. Moreover, if this Court finds that the phrase "used to announce, direct attention to, or advertise" renders the Sign Code unconstitutional, that phrase is severable, similarly leaving the Plaintiffs without redress. RSOF ¶ 11. Consequently, this Court should enter summary judgment against Plaintiffs. Mot. at 26.

**B. The Undisputed Material Facts Do Not Support Summary Judgment for Plaintiffs.**

**1.    The Definition of "Sign" is Content Neutral.**

The full text of the definition of "sign" (Ex. 18, AMF ¶ 2) is the heart of this case. The definition is content-neutral on its face. Displays that are not located inside a building and "used to announce, direct attention to, or advertise" are signs. AMF ¶ 2. The definition is deeply rooted in an historical common-sense understanding about what signs are. That history is constitutionally significant. *Austin*, 596 U.S. at 75 ("'history and tradition of regulation'" are "relevant when considering the scope of the First Amendment."). Unlike the regulations at issue in *Reed*, the City's definition of sign does not parse protected speech into specific categories based on the topics, ideas, messages, subject matter, or viewpoints that the signs convey. *Cf.*, *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015). It does not even concern itself with whether a sign displays commercial or noncommercial speech. The definition of sign is "agnostic as to content." *Austin*, 596 U.S. at 69. The phrase "used to announce, direct attention to, or advertise," does not make the Sign Code "content based." *Cf. Austin*, 596 U.S. at 75 n.6 (noting with approval Justice Alito's concurring opinion in *Reed*, which observed that "'[r]ules imposing time restrictions on signs

advertising a one-time event,' which 'do not discriminate based on topic or subject,'" would be content neutral.). "The Court thus must determine which level of scrutiny applies to the manner in which the provisions actually regulate speech." *Id*. at 68 n.3. To that end, there is no rational construction of the Sign Code that would suggest that its application interferes with "democratic self-government and the search for truth." *Id*. at 70 n.4.

### 2. The Motion's Interpretation of Salina Code § 42-764 is Nonsensical.

The summary judgment record shows that before they started work on their sign, Plaintiffs were aware that the City had a Sign Code. AMF ¶ 4. Plaintiffs did not read the Sign Code, and Plaintiffs have no interest in what the Sign Code actually says. AMF ¶ 4. Similarly, the Motion is not concerned with what the Sign Code actually says. Indeed, the full text of the definition of "sign" is not set out anywhere in the Motion's 225 paragraph Statement of Facts or its numerous Exhibits. Instead of setting it out in full for objective review, the Motion slices and dices the text of the definition of sign, seasons it with absurdity, and ultimately misrepresents both what it says and how it has been consistently applied. AMF ¶ 5. According to the Motion, a display becomes a sign if it is "calculated to attract the attention of the public," no matter what it is used for, whether it is even a structure, and whether it is inside or outside of a building.

Under the Motion's fatally-flawed reasoning, the Sign Code applies to paintings hung inside a museum, flags hung inside a sports arena, "historical pictures and articles" displayed inside of The Cozy Inn, and even the televisions at the local sports bar. There is no legal or practical tradition of regulating any of these things as signs, and the summary judgment record does not suggest that the City ever applied its Sign Code that way. The Motion's concocted interpretation of the definition of sign flies in the face of well-established principles of statutory construction. *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir.1986) ("absent ambiguity or irrational result,

the literal language of a statute controls."); *Crane v. Commissioner*, 331 U.S. 1, 6 (1947) (words must be construed in their "ordinary, everyday sense."); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (The court "must look to the particular . . . language at issue, as well as the language and design of the statute as a whole."); AMF 3. The Court must "choose the reasonable result over the 'absurd' one." *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006).

The City interprets its Code in the commonsense manner in which it is written. AMF ¶¶ 2, 3, 5. That is, a display must be "(1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure or on the ground; (2) Is used to announce, direct attention to, or advertise; and (3) Is not located inside a building." AMF ¶¶ 2, 5. That is why the Cozy Sign is a "sign," and the "murals" in the City that are highlighted in the Motion that do not "announce, direct attention to, or advertise," are not.

### 3. The Motion's Contentions Regarding Content Distinctions Are Illogical.

The Sign Code does not distinguish between commercial and noncommercial speech. RSOF ¶ 50. It does, however, address displays that are used to "announce, . . . or advertise," whether the announcements are commercial or not. *Id*. Plaintiffs' "commercial message" announces and advertises—as essentially all commercial messages on signs do. Hence the discussions of commercial messages in the summary judgment record. RSOF ¶¶ 55, 56, 75, 203. Those discussions did not rewrite the text of the Sign Code. Only a duly adopted ordinance can do that.

The Motion's lengthy diatribe on commercial speech is another red herring. Indeed, the Motion directly concedes this point, arguing it is "undisputed," and "material" that if a "church . . . painted a mural saying, 'Turn to Jesus,' Salina would consider that a regulated sign because '[t]hey would be advertising their desire for the public to turn to Jesus." Mot. at ¶168, 27.

Moreover, to avoid any doubt on this point, the Sign Code includes a "content substitution clause." S.C. § 42-511; AMF ¶ 6. Plaintiffs' argument that the Sign Code distinguishes between commercial and noncommercial speech is specious, and without support in the summary judgment record.

### 4. *Aptive* and *Discovery Network* Do Not Require Strict Scrutiny.

The Motion cites *Aptive Envtl., LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020) and *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410 (1993) in an attempt to cast the Sign Code as "content based" (and therefore subject to strict scrutiny) because it "applies by distinguishing between the commercial and noncommercial content of the solicitors' speech." Mot. at 27. But as detailed in Section 3., *supra*, the Sign Code makes no such distinctions. All of the statements cited in the Motion relating to commercial speech simply support the City's finding that the Cozy Sign is "used to announce, . . . or advertise." RSOF ¶¶ 55, 56, 75, 203.

But even if the Sign Code parsed speech based on whether it is commercial or noncommercial (which it does not), such a distinction is not "content based" in the manner that leads to strict scrutiny review. The Motion misrepresents *Aptive* and *Discovery Network* on this point. Neither case supports the application of strict scrutiny. To the contrary, both cases specifically applied the *Central Hudson* test for commercial speech regulations. *See Aptive*, 959 F.3d at 986; *Discovery Network*, 507 U.S. at 1510. The *Central Hudson* test is intermediate scrutiny. *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1066 (10th Cir. 2001).

### 5. "Reading the Sign" Is Constitutionally Permissible.

The Motion's "read sign" argument was specifically and completely rejected in *Austin*:

This Court's First Amendment precedents and doctrines have consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral.

> Most relevant here, the First Amendment allows for regulations of solicitation—
> that is, speech "requesting or seeking to obtain something" or "[a]n attempt or effort
> to gain business." To identify whether speech entails solicitation, one must read or
> hear it first.

*Austin*, 596 U.S. at 72. Likewise, the notion that "whether something is 'used to announce, direct attention to, or advertise' is . . . content based" cannot be squared with controlling precedent:

> [T]he Court has reasoned that restrictions on solicitation are not content based and
> do not inherently present "the potential for becoming a means of suppressing a
> particular point of view," so long as they do not discriminate based on topic, subject
> matter, or viewpoint. *Heffron* . . ., 452 U.S. [at] 649 . . . (1981).

*Id*. If "restrictions on solicitation" are "not content based," then it must follow that regulations of displays that are "used to announce, direct attention to, or advertise," are similarly not content based. Put another way, from a First Amendment perspective, a restriction on displays that are "used to announce, direct attention to, or advertise," is not substantively different from regulations of speech that is "requesting or seeking to obtain something." While a City official may need to "read the sign" in order to determine whether it "is used to announce, direct attention to, or advertise," there is no risk of discrimination based on "topic, subject matter, or viewpoint." There is no potential for the Sign Code to become "a means of suppressing a particular point of view."

The Motion urges this Court to be dismissive of *Austin*, suggesting that billboards have been treated differently. Mot. at 28 n.6. The Motion is wrong about that—cases about billboards and cases about other types of signs are decided using the same fundamental principles:

> Unlike oral speech, signs take up space and may obstruct views, distract motorists,
> displace alternative uses for land, and pose other problems that legitimately call for
> regulation. It is common ground that governments may regulate the physical
> characteristics of signs—just as they can, within reasonable bounds and absent
> censorial purpose, regulate audible expression in its capacity as noise.

*City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994).

**6. *Complete Angler*, *Kerston*, and *Morris* Do Not Square with the Instant Case, and Are Not Persuasive.**

28

The Motion relies heavily on *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326 (M.D. Fla. 2009), *Kerston v. City of Mandan*, 389 F. Supp. 3d 640 (D. ND 2019), and *Morris v. City of New Orleans*, 399 F. Supp. 3d 624 (E.D. La. 2019), which are district court cases from outside of the Tenth Circuit. None of them are pertinent to this case, and due to their procedural postures, they are of little value. *Kerson* and *Complete Angler* were an *ex parte* temporary restraining order ("TRO") and a preliminary injunction, respectively. As such, they are not even binding on subsequent proceedings in the courts that decided them. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In *Complete Angler*, decided before *Austin*, the plaintiffs hired an artist to paint game fish on the wall of their bait shop. 607 F. Supp. 2d 1326 (M.D. Fla. 2009). The display contained "no text" and did not depict anything for sale in the bait shop. *Id*. at 1329. Clearwater exclude "'[a]rt work and/or architectural detail,'" from regulation, defining "art work" as "'. . . paintings . . . which do not identify a product or business and which are not displayed in conjunction with a commercial, for profit or nonprofit enterprise.'" *Id*. at 1331. Clearwater concluded that the painting was not "art work" because it was "displayed 'in conjunction with' a commercial enterprise," and further, argued that it was therefore commercial speech. *Id*. at 1332. The court disagreed, making a preliminary finding that the display was noncommercial speech and that Clearwater discriminated against plaintiffs' noncommercial speech based on its content. *Id*.

*Complete Angler* is inapposite. The Salina Sign Code does not define "art," and further, it is not concerned with whether a sign is "displayed 'in conjunction with' a commercial enterprise." In Salina, if a work of art on an outside building wall is "used to announce, direct attention to, or advertise," it is a sign. It does not matter whether the speaker is a commercial enterprise. It also does not matter whether the speech is commercial or noncommercial. Moreover, unlike the display

at issue in *Complete Angler*, the Cozy Sign advertises "goods or services for sale" and uses an arrow to direct attention to the order window and public entrance.

*Wag More Dogs,* is a close analog for the instant case. That case involved a business owner who tried to skirt a sign code with essentially the same arguments raised in the Motion. *See Wag More Dogs, Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359 (4th Cir. 2012) (still cited as good law by Fourth Circuit and reasoning right on par with *Austin*—a regulation is not content based when "officials must superficially evaluate a sign's content to determine the extent of applicable restrictions" at 368). In *Wag More Dogs*, a doggy day care facility painted a "mural" on an exterior wall that faced a public dog park, depicting "happy cartoon dogs, bones, and paw prints," some of which were from the business' logo. *Id*. Like Plaintiffs, Wag More Dogs argued that its "mural" was "noncommercial speech," not an "advertisement." *Id*. at 369. Unpersuaded, the Fourth Circuit held that the display was an advertisement because it "was meant to attract customers," it included dogs from the company's logo (which were "analogous to referencing a specific product"), and it sought to create goodwill with potential customers. *Id*. at 370. The summary judgment record in the instant case shows that the Cozy Sign is similarly designed "to attract customers," includes references to "a specific roduct," and seeks to "create goodwill with customers." It "advertises," and it is a therefore a sign.

In *Kersten v. City of Mandan*, decided before *Austin*, the regulations at issue parsed speech in several ways (including subjugating political speech), prohibiting "murals that (1) 'convey a commercial message,' (2) use words that are a 'dominant feature of the art,' or (3) have 'political messages.'" 389 F. Supp. 3d at 643. The *Kersten* Court did not specify the First Amendment test that it would apply. But more importantly, Salina's Sign Code is not at all like Mandan's. It is

unconcerned with whether messages are commercial or noncommercial, whether "words are a 'dominant feature,'" or whether "political messages" are depicted.

Finally, *Morris v. City of New Orleans*, decided before *Austin*, is a summary judgment order regarding the City of New Orleans' regulation of "the installation of artwork on all private property throughout the City . . . ." 399 F. Supp. 3d 624, 627 (E.D. La. 2019). New Orleans regulated both "signs" and "murals," with a distinction between the two based on whether the speech involved was commercial (in which case, the display was a "sign") or noncommercial. *Id.* at 634-35. For noncommercial speech, New Orleans went further and regulated the speech as a mural only if it was also "a work of art," a phrase that the New Orleans did not (and could not) define. *Id.* at 635. Like *Complete Angler* and *Kersten*, *Morris* is inapposite. Salina's Sign Code does not distinguish between commercial and noncommercial speech. Moreover, it does not concern itself with whether any particular display is "a work of art."

### 7. The Sign Code Is Not a "Speaker Based" Regulation, and Incidental Effects on Some Speakers or Messages But Not Others Are Permissible.

There is nothing in the text of the Sign Code that addresses who the "speaker" is. A content neutral regulation may have an "incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The summary judgment record demonstrates that the Sign Code's effects are incidental, and further, that the Sign Code does not single out any speaker or identifiable class of speakers for differential treatment.

The Motion misrepresents the significance of whether a regulation is "speaker based." "Characterizing a distinction as speaker based is only the beginning—not the end—of the inquiry." *Reed*, 576 U.S. at 170. Indeed, "laws favoring some speakers over others demand strict scrutiny," but only "when the legislature's speaker preference reflects a content preference," such as laws "limiting the content of newspapers, but only newspapers" or "the political speech of all

31

corporations." *Id*. The summary judgment record shows that the Sign Code is not speaker based, and there is no evidence at all of a "speaker preference" that "reflects a content preference."

### 8.   The *Central Hudson* Test Does Not Apply, But the Sign Code Easily Passes It.

The Sign Code does not treat commercial speech and noncommercial speech differently. However, if this Court were to read a commercial/noncommercial speech distinction into the Sign Code, the *Central Hudson* test would apply because the Cozy Sign depicts commercial speech.

While it makes no difference under the Sign Code, to the extent this Court may consider it pertinent, the Cozy Sign displays commercial speech. "[S]peech may properly be characterized as commercial speech where, among other things, (1) it is concededly an advertisement, (2) it refers to a specific product, or (3) it is motivated by an economic interest in selling the product." *U.S. v. Wenger*, 427 F.3d 840, 847 (10th Cir. 2005). Only one of these factors must be present, and at a minimum, the Cozy Sign "refers to a specific product." The summary judgment record also demonstrates that the Cozy Sign is "concededly an advertisement," and "is motivated by an economic interest in selling the product." RSOF ¶¶ 3, 19, 22.

If the *Central Hudson* test were applicable, then the Sign Code "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980)); *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed."). The *Central Hudson* test is intermediate scrutiny applied to content neutral regulations, except that as-applied commercial speech challenges are not justiciable. *See U.S. v. Edge Broad. Co*., 509 U.S. 418, 431 (1993); *Brewer v. Albuquerque*, 18 F.4th 1205, 1252 (10th Cir. 2021); *Leavitt*, 256 F.3d at 1066.

The Motion's assertion that the governmental interests articulated in S.C. § 42-500 are not "substantial" is downright erroneous. Aesthetics, traffic and pedestrian safety, and property values are well-established "substantial governmental interests" as a matter of law. *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 795, 805-06 (1984) (property values and community aesthetics); *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1251 (10th Cir. 2023) (aesthetics and traffic safety).

As a matter of law, the Sign Code directly advances the City's substantial government interests in community aesthetics, traffic and pedestrian safety, and property values because it includes limitations upon the size, number, and placement of signs. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508 (1981); *Reed*, 576 U.S. at 173 (regulating size is a content-neutral option to "resolve problems with safety and aesthetics"); *Outdoor Sys., Inc. v. City of Lenexa*, 67 F. Supp. 2d 1231, 1238 (D. Kan. 1999). But even if this Court requires further evidence on this point, the summary judgment record includes that evidence. RSOF ¶¶ 3, 19, 22, 182, 184, 185, 186, 187; AMF ¶ 7; ECF 107 at 29-32 (City's Memo. in Support of MSJ).

Because Plaintiffs are not entitled to judgment as a matter of law, or alternatively, because there are disputed material facts as to how the Sign Code directly advances the City's substantial government interests, the Motion must be denied.

### 9. The Commercial Speech Doctrine Is Settled Law.

This is not a commercial speech case. Yet Plaintiffs seek to leverage this case to argue that the "commercial speech doctrine . . . contradicts the First Amendment's original public meaning, is prone to arbitrary application, is unfounded." Mot. at 31. Argument about the underpinnings of the commercial speech doctrine is out of place here. They are also specifically contrary to Supreme Court and Tenth Circuit precedent. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 767 (1993); *Fox*,

492 U.S. at 481; *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S.

557 (1980); *Brewer v. Albuquerque*, 18 F.4th 1205, 1252 (10th Cir. 2021).

### 10. Strict Scrutiny Does Not Apply.

The Sign Code is "agnostic as to content." *Austin*, 596 U.S. at 69. Because the Sign Code

is content neutral, strict scrutiny does not apply. *Id*.

### 11. Intermediate Scrutiny Applies, and the Sign Code Passes Intermediate Scrutiny.

The Motion urges this Court to apply a stricter version of the intermediate scrutiny test than

is justified in this case, citing to *Brewer* and *McCraw v. City of Oklahoma City*. *Brewer* and

*McCraw* are about time, place, and manner restrictions in a traditional public forum. The *Brewer*

Court described the heightened sensitivity in that context, observing that because the regulated

speech took place in a traditional public forum:

> the City must "specifically define[ ]" that interest, lest our narrow tailoring analysis
> "more closely resemble[ ] the 'reasonably necessary' standard used in reviewing
> restrictions on speech" in nonpublic fora.

*Brewer*, 18 F.4th at 1226; *see also McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1065-66

(10th Cir. 2020) ("a court must identify whether the challenged restrictions affect a public or

nonpublic forum; that determination dictates the extent to which the government can restrict First

Amendment activities within the forum"). The Cozy Inn is private property. It is not a "traditional

public forum," and therefore *Brewer* and *McCraw* are inapposite.

In the instant case, conventional intermediate scrutiny applies. It is a three-prong test of

whether: (a) the City's articulated interests in aesthetics, traffic and pedestrian safety, and property

values are substantial (b) the regulations advance at least one of those interests in a manner that

"would be achieved less effectively absent the regulation"; and (c) the regulations leave open

"ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791, 799.

The Court decides the first prong (whether the face of the Sign Code is content neutral) as a matter of law. *Austin*, 596 U.S. at 64, 76; *Harmon v. Norman*, 981 F.3d 1141, 1148 (10th Cir. 2020). The definition of "sign" that is the central issue of this case is agnostic as to content. It turns on whether a display is "used to announce, direct attention to, or advertise" and is "not located inside a building." Salina Code § 42-764. The Sign Code is not concerned with what is announced, to what attention is directed, or what is advertised.[4]

The face of the Sign Code is content neutral because it neither regulates based on the "topic discussed" or the "idea or message expressed," nor targets speech "based on its communicative content" or "viewpoint." *Austin*, 596 U.S. at 69 (quoting *Reed*, 576 U.S. at 163); *Taxpayers for Vincent*, 466 U.S. at 804; **Ex. 18** (S.C. §§ 42-764, 42-781). The text of the challenged definition of "sign" does not refer to content at all. It simply defines "sign" in a way that is consistent with common understandings, recognizing that unlike decorative architectural features that provide visual interest, signs are "used to announce, direct attention to, or advertise." S.C. § 42-764. Through the lens of the First Amendment, regulation of displays that are "used to announce, direct attention to, or advertise," is not different from regulation of speech that is "requesting or seeking to obtain something"—a distinction that is similarly content neutral. *See Austin*, 596 U.S. at 72.

Salina Code § 42-500 enumerates the City's government interests, which include aesthetics, traffic and pedestrian safety, and property values. As a matter of law, these interests are both substantial and justified without reference to the content of the regulated speech (content-neutral). *Taxpayers for Vincent*, 466 U.S. at 795, 805-06 (property values and community

---

[4] The definition of "sign" in Salina is substantially similar to the content neutral definition of sign before the Court in the *Austin* case. *Austin*, 596 U.S. at 1469. Similarly, KS ST 68-2232(p) (implementing the Highway Beautification Act), defines "sign" as "any outdoor sign structure, display, . . . or other thing which is designed, intended or <u>used to advertise</u> or inform . . . ." (emphasis added).

aesthetics); *Stockinger*, 79 F.4th at 1251 (aesthetics and traffic safety). Therefore, the Sign Code satisfies the first prong of the intermediate scrutiny test.

As a matter of law, the Sign Code advances the City's substantial government interests in community aesthetics, traffic and pedestrian safety, and property values because it includes limitations upon the size, number, and placement of signs. *See* Section IV(B)(8) *supra* for case citations. As the Court observed in *Metromedia*, it is not "speculative" that the substantial, content-neutral objectives of sign regulations would be achieved less effectively absent the regulations. *Id.* at 510-11. Therefore, the Sign Code satisfies the second prong of the intermediate scrutiny test.

Plaintiffs have "ample alternative channels for communication of the information." First, Plaintiffs could have painted the exact same sign, scaled to about 10 square feet, or if other signs were removed, about 63 square feet. AMF ¶ 8. Second, deposition testimony reveals that Plaintiffs communicate in many ways, including Facebook, branded merchandise worn or used by their customers, community events, radio advertising, interviews, banner advertising at indoor football events, billboards, bumper stickers, and a sign located at Jenni's Liquors in a nearby town. AMF ¶ 9. Therefore, the Sign Code satisfies the third prong of the intermediate scrutiny test.

There is no genuine dispute of material fact as to the content-neutrality of the Sign Code or intermediate scrutiny test that the First Amendment requires for such regulations. Because Plaintiffs are not entitled to judgment as a matter of law on these issues, the Motion must be denied.

### 12.  The Sign Code Is Not An Impermissible Prior Restraint.

The Sign Code is not an impermissible prior restraint. Prior restraints are permissible if the permitting system includes "procedural safeguards that reduce the danger of suppressing constitutionally protected speech." *Se. Promotions, LTD v. Conrad*, 420 U.S. 546, 559 (1975). Prior restraints consist of two procedural safeguards: (1) timing and (2) limitations upon discretion.

Generally, a brief, specified time period for decision-making that allows for prompt judicial review is required. *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1253 (10th Cir. 2000). However, persuasive case law from the Ninth Circuit has found that procedural safeguards regarding timing "are not required for content-neutral time, place, and manner" regulations. *Epona v. Ventura*, 876 F.3d 1214, 1225 (9th Cir. 2017) (citing *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322-23 (2002)). The prior restraint doctrine also requires limits on "the licensor's discretion." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988).

If it is applicable, the timing safeguard in S.C. § 42-502(b) says that a sign permit must be issued or refused within 10 days after receipt of an application, or within such further period as may be agreed to by the applicant. RSOF ¶ 105. That is both "brief" and "specified." In the instant case, the City asked Plaintiffs to stop the painting of the Cozy Sign within three days after Plaintiffs started the work (before Plaintiffs had applied for a permit). RSOF ¶¶ 26, 29, 104, 105. The City promptly told Plaintiffs that the Cozy Sign would not qualify for a permit because: (1) it was a sign; and (2) it was too big. RSOF ¶¶ 102, 105. Consequently, before Mr. Howard submitted his application, he knew that the Cozy Sign was too big to qualify for a sign permit. RSOF ¶¶ 102, 105. Additionally, the City and Mr. Howard agreed that his sign permit application would be held in abeyance. RSOF ¶ 116. That is an "agreement by the applicant." RSOF ¶¶ 105, 116. Regardless of that agreement, the First Amendment does not require the City to repeatedly inform Mr. Howard about what he already knew—the sign he had painted was too big for a permit. RSOF ¶¶ 105, 107. Holding the application was a courtesy, not a First Amendment violation.

Moreover, the Sign Code, on its face, does not promote arbitrary enforcement. It provides constitutionally sufficient standards to limit the City and its officials' discretion. Further, it contains numerous procedural safeguards including avenues for variances and appeals to resolve

issues with the City. AMF ¶ 10, RSOF ¶ 105. Ordinary people can determine whether a structure or display is attached to, painted on, or represented on a building (as defined in the Sign Code). AMF ¶¶ 3, 5. Ordinary people can determine whether a display is "used to announce, direct attention to, or advertise." *Id*. The summary judgment record demonstrates that the City applied the plain language and ordinary use of these words. AMF ¶¶ 3, 5.

The word "advertise" is widely used in defining "sign" for regulatory purposes. *See, e.g.*, n.5, *supra*, at 36. The Cozy Sign plainly "advertises." AMF ¶ 3. That is particularly clear since the advertisement pertains to or references "goods or services for sale." *Id*.; *Wag More Dogs*, 680 F.3d at 370. On its face and as-applied, the Sign Code constrains the discretion of the decision-maker and therefore does not constitute an impermissible prior restraint. Because the Plaintiffs are not entitled to judgment as a matter of law, or alternatively because material facts as to the interpretation of the Sign Code are disputed, the Motion must be denied.

### 13.    The Sign Code Is Not Unconstitutionally Vague.

An ordinance is "unconstitutionally vague for one of two reasons: it either 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or it 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Dr. John's, Inc. v. Roy*, 465 F.3d 1150, 1158 (10th Cir. 2006) (quotation omitted). The task of identifying business advertising, is a "very basic test" that is "not unconstitutionally standardless or vague . . . ." *Wag More Dogs*, 795 F. Supp. 2d at 390. The vagueness doctrine is not based on "the mere fact that close cases can be envisioned." *United States v. Williams*, 553 U.S. 285, 305 (2008). Indeed, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has

been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. As such, the Motion's fixation on what may be close cases is not pertinent to the constitutional inquiry. The application of the Sign Code to the Cozy Sign is not a close case.

Ordinarily, "'[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Williams, 553 U.S. at 304 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–495, n. 6 and 7 (1982)). Yet even if this challenge is available to Plaintiffs, the Sign Code provides people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Its text provides clear standards that ordinary people can understand, and therefore does not encourage arbitrary and discriminatory enforcement. AMF ¶¶ 1, 3, 5.

During depositions, both Howard and Windholz testified that they had not read the Sign Code and did not attempt to read the Sign Code. AMF ¶ 4. The Sign Code does not regulate "murals." It regulates signs. As such, the Sign Code is not vague simply because it does not define mural or any number of other terms and phrases identified by the Motion that are not used and not pertinent to the City's objective approach to identifying and regulating signs. AMF ¶1.

The Cozy Sign is clearly within the scope of the Sign Code, and Plaintiffs cannot be heard on their vagueness claim. But even if they could, the Sign Code provides clear standards that ordinary people can understand and, therefore, does not encourage arbitrary enforcement. The Sign Code is not impermissibly vague, and this Court must deny the Motion with regard to its vagueness arguments because Plaintiffs are not entitled to judgment as a matter of law.

## V.    <u>CONCLUSION</u>

This Court should dismiss this case for lack of subject matter jurisdiction because Plaintiffs have presented an argument that demonstrates that they are without standing before this Court.

Alternatively, this Court should deny the Motion for Summary Judgment because it does not show that Plaintiffs are entitled to judgment as a matter of law on any of their claims.

Dated this 28th day of February, 2025.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin | Todd G. Messenger, | Amanda C. Jokerst |
| Bar Number 24170 | CO Bar Number 38783 | CO Bar Number 47241 |
| Attorney for Defendant City | Pro Hac Vice Attorney for | Pro Hac Vice Attorney for |
| of Salina, Kansas | Defendant City of Salina, | Defendant City of Salina, |
| CLARK, MIZE & | Kansas | Kansas |
| LINVILLE, CHARTERED | Fairfield and Woods, P.C. | Fairfield and Woods, P.C. |
| P.O. Box 380 | 1801 California St., | 1801 California St., |
| Salina, KS 67402-0380 | Ste. 2600 | Ste. 2600 |
| Tel. (785) 823-6325 | Denver, CO 80202 | Denver, CO 80202 |
| Fax: (785) 823-1868 | Tel. (303) 830-2400 | Tel. (303) 830-2400 |
| Email: | Fax: (303) 830-1033 | Fax: (303) 830-1033 |
| aomartin@cml-law.com | Email: | Email: |
| | tmessenger@fwlaw.com | ajokerst@fwlaw.com |

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I caused the foregoing **RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record including: Jeffrey Shaw and Samuel G. MacRoberts

s/ Aaron O. Martin
Aaron O. Martin