.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

.

.

COZY INN, INCORPORATED, d/b/a
THE COZY INN; STEPHEN HOWARD,
Plaintiffs,

.

vs. Civil Action No. 6:24-cv-01027-TC-ADM

.

CITY OF SALINA, KANSAS,
Defendant.

.

.

DEPOSITION OF

LAUREN DRISCOLL,

taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 9:06 a.m. on the 10th day of September, 2024, at the law offices of Clark, Mize & Linville, 129 S. 8th Street, in the City of Salina, County of Saline, and State of Kansas, before Sandra S. Biggs, Kansas CCR No. 0716.

.

**EXHIBIT 10**

**Q. Why did you know you were going to have to talk about it?**

A. Because it's -- it was unknown. And so, clearly, a business owner, in this case Mr. Howard, had hired somebody to paint this wall, and it had just some indications that it was probably going to be a sign, but I didn't know. We had to look and -- but that was going to take, you know, reallocating staff time to look into this further and talk to the owner and kind of figure out where and what this was.

**Q. If you recall, do you know why -- what you meant by ughhhhh in Exhibit 9?**

A. Yeah. Ughhhhh, like it didn't go through the permitting process. It hasn't been seen by anybody. So that means it's an unknown which means I'm going to walk into something Monday morning where somebody's, in this case Mr. Howard, probably has purchased something or purchased services to have somebody do this work, and it may or may not work out. So but people usually when you're a regulator and you call somebody and you have to tell them, hey, hold up a minute, you may need a permit, it's not always something that makes them happy.

there's a total allowed amount.
**Q. Did you initially think this was a mural or a sign?**
A. I mean it -- it's painted on a wall. It -- the question was we had to sit down and start to look at those pieces and just start to pull them together. I don't like to make an off-the-cuff determination. We sat down with code, pulled the definition, said, yep, it met those components. And then we looked at that location and did the math to show like not only is it a sign but its size does not fit this location.
**Q. On Sunday night when you received the text, it was still up in the air whether it was a sign or not, correct?**
A. Correct.
MS. JOKERST: Object --
BY MR. MACROBERTS:
**Q. And what is -- what do you have to look at to figure out if it's a sign or not?**
A. Salina municipal code.
**Q. And you still have to look at what the artwork is, correct?**
MS. JOKERST: Object to form.
A. Yes.

BY MR. MACROBERTS:
**Q. Why do you have to look at it?**
MS. JOKERST: Object to form.
A. Well, one, you're going to look at it for its time and place and manner characteristics as per code, right? And you're going look at it to see if it meets the definition of a sign which talks about announce, direct attention or advertise.
THE REPORTER: Talks about?
A. Announce, directs attention or advertise.
BY MR. MACROBERTS:
**Q. Are you able to do that with -- in other words, are you able to determine whether or not it announce, directs attention to or advertise without looking at the artwork?**
MS. JOKERST: Object to form.
A. No.
BY MR. MACROBERTS:
**Q. Is that why the permit process requires a picture or a rendering of what the artwork's going to look like?**
MS. JOKERST: Object to form and foundation.
A. Ask me that question one more time,

anymore, because if for some reason this isn't allowed, I don't want you to go further and can we just halt -- have some information so that you're aware of how the rules would impact this artwork, this sign and then you can make some choices. So I just didn't want him going further and spending money or doing something that he may have to change or would choose not to go forward with. And because we didn't have any of that information, we needed a few minutes to get more information from him.

BY MR. MACROBERTS:

**Q. When you say a few minutes, is that just a --**

A. Yeah, I'm sorry. We needed a couple of days just to get that additional information.

**Q. When you gave the -- do you remember giving a coffee house hypothetical to the city commission?**

A. I do. Somewhere in here, yes.

**Q. And I just want to make sure that I'm not missing a case. In there you mentioned that it was a Supreme Court case. Do you remember that?**

A. I do.

**Q. Was that correct?**

A. I recalled that this had been an example used in a case. If I'm incorrect, I'm not an attorney and I do not specialize in Supreme Court law.

**Q. And you mentioned to the city commission expressly related solely to the economic interest to the speaker and the audience. Do you recall saying that?**

A. No. But I would like to be able to reference it if you can give me a page number and a line.

**Q. Let's go to page 23, please. And just let me know when you've...**

A. Yeah. In so many words, starting at line 4, I'm using that example talking about what really is advertising, which is part of our definition, is where, you know, you're encouraging a transaction by, you know, promoting a product, encouraging somebody to use a service, and that even just the image of those services or products can be part of advertising which is part of our definition of sign.

**Q. So if there is a painting or artwork that does not promote the business, that's not considered a sign?**

question again so I understand what you're after?

BY MR. MACROBERTS:

**Q. How do you determine expressly related solely to the economic interest to the speaker and the audience?**

MS. JOKERST: Object to form.

A. When I made this statement, it was trying to connect and help the commission understand that one of the things we look for in signs, specifically related to our definition and is common in sign law and sign cases, is that where there is an economic relationship to what is being communicated, such as advertising, go buy something, purchase something, use that service. If I had not articulated that clearly at that time, but that's what I was trying to explain to them.

BY MR. MACROBERTS:

**Q. How do you determine, though, whether or not artwork is expressly related solely to the economic interest to the speaker or the audience?**

MS. JOKERST: Object to form.

A. Well, I think taking this one piece, if we relate that to the Cozy, there were several things that went along with that in the

**Q. And that's how you interpret the code?**
MS. JOKERST: Object to form.
A. I interpret the code that advertising is one of the components of the sign code.
BY MR. MACROBERTS:
**Q. So let's go to your coffee house hypothetical. Do you remember it?**
A. I do.
**Q. Do you want to look at the transcript again?**
A. I have it in front of me.
**Q. Are you at that page?**
A. I am, page 23.
**Q. You're right. Help me understand why you presented or how you came up with the coffee house hypothetical?**
A. It's one I've seen multiple other places.
**Q. Where?**
A. Or multiple other readings to give an example of how what is happening inside of a building and what is happening on the outside of the building can be related and may affect signage.
**Q. Where did you read that?**
A. I don't know, someplace over the years.

**Q. Was it a planning conference, is it a case?**

A. It could have been any one of those, articles, cases. And sometimes some of these same hypotheticals come up in different variations, you know, it's at a conference in a session, it's also in an article, but it's one I've heard multiple times and it's easy to explain to somebody who's not knee deep in municipal code all the time.

**Q. So explain to me why under Salina city code why a coffee house that has a dove and an olive branch and says peace whether that's a sign or not?**

MS. JOKERST: Object to form and foundation.

A. You're asking me why that wouldn't be a sign?

BY MR. MACROBERTS:

**Q. On page 23 --**

A. Um-hum.

**Q. -- lines 13 through 18, you told the city commission if the coffee house has a dove with an olive branch and it says the word peace on the side of it, that's not a sign. Because even though the word peace is there, you're not selling**

**peace inside. I mean coffee may do that for some people. Because this is an easy example to explain to people, why is it under the Salina city code a coffee house with a dove and an olive branch and the word peace it's not a sign?**

A. It --

MS. JOKERST: Object to form and foundation.

A. It could be a sign in certain situations. But the example of the coffee is a simple one, and I was trying to illustrate to the city commission that a sign isn't always about text. It can be about image. It can be about text but trying to give an example of the coffee house doesn't sell peace, you know. Go team could be on the -- those are generic phrases or sayings that aren't necessarily encouraging you to go in and buy sports equipment. Now, if the coffee house was called, you know, peace coffee, it's probably a whole another story and we'll start to get into signage category. But it's not directing you -- we go back to the sign code definition. Is it -- is it advertising? Is it giving direction? Is it announce, direct attention or advertising? And so it was just a simple way to try and identify for

the commission that it's more than just a word or a picture, that all these pieces lay together.

BY MR. MACROBERTS:

**Q. So in order to make your coffee house/dove/peace hypothetical work, you would need to know what the artwork is on the outside of the building, right?**

MS. JOKERST: Object to form and foundation.

A. We would have a rendering that was submitted that would describe what was going on the side of the building.

BY MR. MACROBERTS:

**Q. Or somebody did it without a permit you would have to look at the artwork?**

A. Yes.

MS. JOKERST: Object to form and foundation.

BY MR. MACROBERTS:

**Q. And you need to know what's going on on the inside of the building, right?**

MS. JOKERST: Object to form and foundation.

A. In some cases, yes.

BY MR. MACROBERTS:

Zoning administrator. So I can pontificate all that I want, but it's not -- I'm not making that determination.

BY MR. MACROBERTS:

**Q. Based upon your understanding of the code, keeping in mind what you told the city commission, is that artwork considered a sign that I just described to you?**

MS. JOKERST: Object to form and foundation.

A. I would question whether it's a sign and then work with my staff and our legal counsel to verify my interpretation.

BY MR. MACROBERTS:

**Q. Are you familiar with Andy Warhol?**

A. Yes. He's a mid century artist.

**Q. Are you familiar with his Campbell's Soup artwork?**

A. Yes.

**Q. Assuming the Cozy Inn did not sell Campbell's Soup, if Mr. Howard painted an exact replica of Andy Warhol's Cambell's Soup can on the side and it took up the entire wall, based upon your understanding of the code, is that a sign?**

A. I am not comfortable making that --

just an airplane? What's the size of it? What's it say on the airplane? Is there text with the airplane? What's the size of the airplane? All those things feed into it being a sign.

BY MR. MACROBERTS:

**Q. No text. Just a big silver airplane?**

MS. JOKERST: Object to form and foundation.

A. There's no text. From the very limited information you've given me, it might not be a sign. But, again, I also am not the only person that would make that determination.

BY MR. MACROBERTS:

**Q. I think you've told me the other people who helped make that determination. Have you mentioned everyone who makes that determination?**

A. Yes.

**Q. Does Mr. Schrage have any input into that determination?**

A. No.

**Q. Did he have any input into whether or not the Cozy was deemed a sign?**

A. No. He was made aware of the situation as it evolved and as staff did its research, but he did not have influence on that decision.

A. Um-hum. Yes.
MS. JOKERST: Object to form and foundation.
A. Yes, they could have guitars or ukuleles.
BY MR. MACROBERTS:
**Q. This deposition exhibit page 119, a sign permit was not applied for for this artwork, was it?**
A. No, it was not.
MS. JOKERST: Object to form.
BY MR. MACROBERTS:
**Q. And it's your -- is it your position that page 119 that artwork is not a sign?**
MS. JOKERST: Object to form.
A. I typically wouldn't take a position on this. Like it would normally come into Dean. He would review it and then give me feedback or if he even thought it needed to come to my attention.
BY MR. MACROBERTS:
**Q. As you're sitting here now --**
A. Okay.
**Q. -- knowing what you know, page 119, that artwork is not a sign, right?**
MS. JOKERST: Object.
THE WITNESS: Are you good, Amanda?

MS. JOKERST: Go.
A. Okay. I would have questions. I mean you're right, music can be performed with instruments, but, one, is it attracting your attention? Okay. It's something different. It's not part of the original wall. But is it directing you to something. The public can't get into that door. It's a stage door, and the front door is to access and make any kind of purchase on the other side of the building. So I don't know what it would be directing your attention to. Even if you tried to take the ukulele and kind of point it to something or guitar or whatever it is, they also don't sell instruments inside. They don't sell musical classes of any sort. She's also not playing the instrument which is usually what somebody would be doing with the instrument inside at a concert. And those are my first thoughts. There's no text that's, you know, saying anything or giving a direct message. Stage door, you're allowed in buildings to have, you know, egress type signage that denotes exits and stuff like that. And we have a minimal signage, a requirement, so that's -- that piece is allowed. So if we look at just the girl, the instrument and

the bird, at this glance of asking me in this situation, I don't think it would be a sign. But if that were a question, we -- you know, that's something we would talk about with legal.

BY MR. MACROBERTS:

**Q. Bear with me for a moment. If you could, please, turn to Deposition Exhibit 77.**

A. Okay. Okay.

**Q. Do you recognize this?**

A. Yes.

**Q. What is it?**

A. Schlotzsky's Deli.

**Q. Is it the city's position that Exhibit No. 77, the artwork on the left-hand side, is a sign?**

A. Yes.

MS. JOKERST: Object to form and foundation.

THE WITNESS: Sorry, Amanda.

A. Yes, it is a sign.

BY MR. MACROBERTS:

**Q. Why is it a sign?**

MS. JOKERST: Object to form and foundation.

A. Because they have a sign permit. No, it

was on the application. If they said, you know, it's 29 feet from here to here, they would have gone out and verified it's 25 feet and that the applicant's determination of what is front, sometimes what is rear, those things, depending on where the lot's situated, needs to be verified.

**Q. If you could turn to Deposition Exhibit 71, please. Are you familiar with Deposition Exhibit 71?**

A. Yes, I believe this is one of our fire stations.

**Q. Do you know what's on the side of the fire station?**

A. Well, I think this --

**Q. That's a bad question.**

A. Yeah.

**Q. Do you see artwork on Deposition Exhibit 71?**

MS. JOKERST: Object to form.

A. I see a series of black and white pictures on the front of the fire station.

BY MR. MACROBERTS:

**Q. Do you know what that depicts?**

A. This was installed before me, but I believe they're historical pictures of Salina

firefighters.

**Q. Based upon your understanding of the city code, this is not a sign?**

MS. JOKERST: Object to form and foundation.

A. I didn't make this determination, so and without knowing more about the sign and what it's depicting, I would also probably ask the question, the fire department isn't selling a service. So I mean that's a question I would have. But this determination was made before me, and I would assume city legal counsel had some input into that determination.

BY MR. MACROBERTS:

**Q. Which I don't want to know anything about. But I'm asking you as you're sitting here today based upon your understanding of the city code, is it fair to say that this is not a sign because the fire department is not selling services?**

MS. JOKERST: Object to form and foundation.

A. If the question was placed to me, I would question that it's not -- it's not directing you anywhere. It's not announcing anything. The fire

department is a public building, and it's not asking you to come in and get a service or make any type of transaction. But I -- it's one that I don't think is cut and dry, and I think it would be worth a discussion with legal counsel.

BY MR. MACROBERTS:

**Q. Which, again --**

A. Yeah. But I'm --

**Q. Yeah, yeah. Okay.**

A. That's where I would go with that because it's not cut and dry.

**Q. And what -- help me understand what's not cut and dry about this?**

MS. JOKERST: Object to form.

A. Well, I think the fact that it's a public service. So I don't -- I'm not familiar with a case where that may come into advertising. So we would -- my thought is I would research more and see where that's been viewed in the past with other decisions.

BY MR. MACROBERTS:

**Q. So if that picture or those pictures are deemed advertising, then it's a sign?**

MS. JOKERST: Object to form.

A. That's one way you could look at it. I

A. Yes, I recognize it.

**Q. What is it?**

A. It's a large painting on the grain silos here in town.

**Q. Is that commonly referred to as the Mural at the Mill?**

A. It is, yes.

**Q. Was that -- forgive me if you answered this already. Was that painted before or after you coming to Salina?**

A. It's been my time here.

**Q. Okay. And based upon your understanding of the city code, that's not a sign, correct?**

A. Correct, it is not a sign.

**Q. And no permit was applied for, and there was no problem with them not applying for a permit, right?**

MS. JOKERST: Object to form and foundation.

MR. MACROBERTS: I'll restate it because I asked two questions at once.

BY MR. MACROBERTS:

**Q. You're not aware of anyone applying for a permit for this?**

A. Correct. And a permit was not applied

for. A sign permit was not applied for.

**Q. Why is this not considered a sign based upon your understanding of the code?**

A. It doesn't meet the definition of a sign. So I mean we didn't review it. I didn't make this determination. But using the definition of a sign, this did not meet that definition.

**Q. Forgive me because I've tried finding this and I don't know. Hopefully, you do. Is that grain elevator operational at all?**

A. I don't think so.

**Q. Is anything happening inside the grain elevator?**

A. No.

**Q. If somebody were to operate that grain elevator as a business and in the business they charged an admittance fee and kids were playing on the inside of that, based upon your understanding of the code that would be a sign then, correct?**

MS. JOKERST: Object to form and foundation.

A. So they've turned it into something where kids are playing on the inside and that you're saying is my determination that automatically makes it a sign?

BY MR. MACROBERTS:

**Q. No. I'll ask it again. If an operator charged money for kids to come inside, pick a daycare or a recess zone, something like that, this Mural at the Mill would then be considered a sign under your understanding of the code, correct?**

MS. JOKERST: Object to form and foundation.

A. It would be enough to catch my attention that I would bring it to my staff and ask them to research and make that determination.

BY MR. MACROBERTS:

**Q. Is it fair to say that the reason it would raise questions because in your mind it would encourage a commercial transaction?**

MS. JOKERST: Object to form.

A. No. I would say it would be advertising something because the use of the building had changed.

BY MR. MACROBERTS:

**Q. All right. I'm asking you to please turn to Deposition Exhibit 76.**

A. Okay.

**Q. Do you know what this is a picture of?**