.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

.

.

COZY INN, INCORPORATED, d/b/a
THE COZY INN; STEPHEN HOWARD
Plaintiffs,

.

vs. Civil Action No. 6:24-cv-01027-TC-ADM

.

CITY OF SALINA, KANSAS,
Defendant.

.

.

DEPOSITION OF

DEAN ANDREW,

taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 9:02 a.m. on the 30th day of September, 2024, at Clark, Mize & Linville, 129 S. 8th Street, in the City of Salina, County of Saline, and State of Kansas, before Sandra S. Biggs, Kansas CCR No. 0716.

.

.

**EXHIBIT 11**

permits, sign permits, site plans and various applications that we have that go to our four zoning boards.

**Q. To the four zoning what?**

A. Four zoning boards that we have. We have a Planning Commission, a Board of Zoning Appeals, a Downtown Design Review Board and a Heritage Commission.

**Q. Okay.**

A. And I am the secretary to each of those boards.

**Q. So whenever a application of some sort is submitted, I guess walk me through the process of how that application will be processed by the city.**

A. An application is submitted. It is reviewed by administrative staff first. Then it is reviewed by a planner. In some cases, if there's questions about it, the planner would refer it to me and I would review it to see if it's complete and has all the information attached to it that it would be needed to take it and schedule it for a hearing.

**Q. All right. So when you say administrative staff, who is the administrative**

zoning ordinance in cases where there's uniqueness or hardship to the applicant, or someone who is dissatisfied with the way that the zoning administrator has interpreted the ordinance can appeal that determination to the Board of Zoning Appeals.

**Q. I guess what I'm asking is if an applicant thinks one of the planners made the wrong determination, can they come to you first before going to the Board of Zoning Appeals?**

A. Absolutely.

**Q. Okay. How would they do this?**

A. By contacting me.

**Q. Okay. So just reaching out to you by phone or e-mail directly?**

A. Yes.

**Q. I think you said earlier it is one of your duties as zoning administrator to provide interpretations of the zoning code. Is that correct?**

A. Yes.

**Q. Are your interpretations of the zoning code the definitive interpretations for the City of Salina?**

A. They are for appeal purposes, yes.

**Q. Okay. In the binder in front of you, I have exhibits there. The one on the top, Exhibit 1, is an excerpt of the city code. It includes the sign code, the Building Improvement District code and certain other excerpts from the zoning code. If at any point you think there's a portion of the city code that's applicable to any of our discussions that isn't included in what I printed out there, let me know and we can look up the other provisions and print them out for you. But if you could, flip to Section 42-764. It's easier to take it out of the binder. You can go ahead and do that.**

A. When you speak of 42-764, is that something that is in the definition section?

**Q. Yes, it is.**

A. I have that in front of me.

**Q. All right. So do you see the first paragraph of Section 42-764? Is it defining what a sign is for purposes of the code?**

A. Yes.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. So when it comes to the definition of a sign, I want to just go through this definition so**

flags are regulated under our code.

**Q. So what is the physical difference between a feather flag and a exempt flag?**

A. A feather flag is usually a fancy face device. It is designed to be temporary. It's not permanently affixed to the ground like a governmental flag, and it is designed to be there for only a temporary period of time.

**Q. So if a McDonald's had one flagpole out in front of the building with an American flag and then below it a McDonald's flag that's exactly the same size, same construction, am I understanding correctly the American flag would be considered an exempt flag but the McDonald's flag would be considered a feather flag?**

MS. JOKERST: Object to form.

A. A feather flag is a structural type of sign.

BY MR. SHAW:

**Q. Okay. But so in that scenario I just gave, what is the difference between the McDonald's flag and the American flag?**

A. The difference is what is called out as an exemption in our code.

**Q. So the American flag is exempt, but the**

**McDonald's flag is not exempt?**
A. It's not just --
MS. JOKERST: Object to form.
A. It's not just the American flag.
BY MR. SHAW:
**Q. So any governmental flag?**
A. Yes.
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. Do they have to be existing governments?**
MS. JOKERST: Object to form.
A. The City of Salina has an official flag. You can fly that flag in front of the city county building. We have one today. They don't need a permit for that flag.
BY MR. SHAW:
**Q. Okay. I guess what I'm getting at is, is it only the American flag or the Kansas flag or the Salina City flag that are exempt or is it other types of governments?**
MS. JOKERST: Object to form.
A. The code says a flag for a governmental entity.
BY MR. SHAW:
**Q. Well, let's say someone wanted to fly a**

BY MR. SHAW:
**Q. Is that -- is that exemption listed in Section 42-504?**
A. I don't know.
**Q. Feel free to move to that section of the code, please. Are you at Section 42-504?**
A. Yes.
**Q. Okay. Do you see in subsection 1 where it says non-commercial flags displayed on private property?**
A. Yes, I do see that.
**Q. So is this the exemption that you were referring to earlier?**
A. Yes.
**Q. So under Section 42-504, 1, non-commercial flags are exempt from the regulations of the code. Is that correct?**
A. That is what section -- subsection 1 says.
**Q. Okay. And so any flag that isn't deemed a commercial flag would be exempt? Is that correct?**
A. Yes.
THE REPORTER: Did you make an objection?
MS. JOKERST: I did to form.

**Q. Would those be considered commercial flags?**

A. No.

**Q. Why not?**

A. Because they are just expressing that property owner's support for their team.

**Q. Do you know if the Kansas City Chiefs are a commercial enterprise?**

MS. JOKERST: Object to form.

A. Well, I know that the Kansas City Chiefs is a sports franchise that desires to make money.

BY MR. SHAW:

**Q. Okay. Could those Chiefs flags be considered advertisements for the Chiefs?**

MS. JOKERST: Object to form.

A. Not in my opinion, no.

BY MR. SHAW:

**Q. So even though it is a commercial business displaying its logo, that is not an advertisement?**

MS. JOKERST: Object to form.

A. I would consider an individual owner who has a Chiefs flag to be displaying a non-commercial flag.

BY MR. SHAW:

**correct?**

A. Yes.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. And after that, does it say or display calculated to attract the attention of the public?**

A. Yes.

**Q. Is the meaning of this section saying that any writing, pictorial representation, emblem, flag, banner, streamer, pendant, string of lights or display that is calculated to attract the attention of the public meets the definition of a sign?**

MS. JOKERST: Object to form.

A. That can't be read without reference to subsections 1, 2 and 3.

BY MR. SHAW:

**Q. Well, is there also an or after calculated to attract the attention of the public?**

A. Are you asking me if there's an or in front of it or after it.

**Q. Is there an or after calculated to attract the attention of the public?**

A. Yes.

**Q. So does that second or separate the any**

flag?

A. Flag, banner, streamer, pennant or string of lights.

BY MR. SHAW:

**Q. Okay. And such a display if it's calculated to attract the attention of the public would be a sign?**

MS. JOKERST: Object to form.

A. No, because, again, I can't make a determination without using subsections 1, 2 and 3.

BY MR. SHAW:

**Q. Why is the second or there, I guess?**

MS. JOKERST: Object to form.

A. You're speaking again to this or after the word public?

BY MR. SHAW:

**Q. Yes, that's correct?**

A. Well, if the code drafter was here, I would ask them, but my interpretation would be that it's somewhat redundant because display or any other figure seems to be somewhat repetitive.

**Q. Okay. So the display calculated to attract the attention of the public has to also be married with the three subsections?**

A. Yes.
**Q. So then a display would have to both attract the attention of the public and direct the attention of the public. Is that correct?**
A. No.
**Q. So a display that was only calculated to attract the attention of the public would be a sign?**
A. A display calculated to attract the attention of the public that was used to announce, direct attention to or advertise would be a sign.
**Q. Okay. So it would have to both attract the attention of the public and direct attention?**
A. That would be my interpretation.
**Q. Okay. And as I recall from what you said earlier, attract attention is a shorter duration than direct attention. Is that correct?**
MS. JOKERST: Object to form.
A. Yes.
BY MR. SHAW:
**Q. Okay. And the term advertise here as used in subsection 2, can you define an advertisement as used here?**
A. I think I answered that question previously, but it is to promote what is going on

required a sign permit for.

**Q. Okay. And is that because it's an advertisement?**

A. It is announcing, directing attention to and advertising the Army Recruitment Center.

**Q. So it's doing all three?**

A. Yes.

**Q. Okay. What about a church or other house of worship? They put up a display saying services Sunday at 10 a.m. Is that a sign?**

A. Yes.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Is that because it is announcing?**

A. It is announcing to the public that they are worship -- place of worship and letting the public know when they meet.

**Q. Okay. What if that same church displayed a message that said turn to Jesus. Would that be a sign?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. SHAW:

**Q. Okay. Why is that?**

A. Well, you just described it as a -- they

would put up a structure, whether it was a banner or whether it's permanent sign, that would be something that is announcing, directing attention or advertising.

**Q. What would they be advertising?**

MS. JOKERST: Object to form.

A. They would be advertising their desire for the public to turn to Jesus.

BY MR. SHAW:

**Q. Okay. In subsection 3 where it says is not located inside of a building, what is considered a building under this section?**

A. A structure that meets the definition of building in the zoning ordinance.

**Q. Okay. Would you please turn to the section defining building?**

A. Appears to be 42-637.

**Q. All right. And does that define a building as any covered structure built for the support, shelter or enclosure of persons, animals, chattels or movable property of any kind and which is permanently affixed to the land?**

A. That is the definition that's in the zoning ordinance.

**Q. All right. What is the support, shelter**

of sign as a structure.
BY MR. SHAW:
**Q. Okay.**
A. We're in the business of regulating structures, so a flag would be a structure.
**Q. Okay. Would an American flag be used to announce, direct attention to or advertise?**
MS. JOKERST: Object to form.
A. It is certainly announcing.
BY MR. SHAW:
**Q. Okay. Would it be announcing the United States?**
MS. JOKERST: Object to form.
A. Yes.
BY MR. SHAW:
**Q. Okay. Has the City of Salina's definition of a sign changed any as a result of this lawsuit?**
MS. JOKERST: Object to form and foundation and -- yeah, those are my two objections.
A. To the best of my knowledge, the city's definition of sign has been this way since 1966 and is unchanged.
BY MR. SHAW:

foundation.
A. According to the rules of construction of our city code, or and and are interchangeable, so I can't make that determination.
BY MR. SHAW:
**Q. Do you no where in the city code that is placed?**
A. In the rules of construction.
**Q. I see. So and and or are interchangeable?**
A. They can be, yes.
**Q. They can be or they are?**
A. Code says they can be.
**Q. How then is someone to know if it means and or or?**
MS. JOKERST: Object to form and foundation.
A. You have to look at the context in which its used.
MS. JOKERST:
BY MR. SHAW:
**Q. All right. In subsection 2 there, for instance, do you see the and after the semicolon?**
A. Yes.
**Q. Does that mean and or or?**

MR. MARTIN: Section 1-2.
MR. SHAW: Thank you.
BY MR. SHAW:
**Q. All right. For lack of any better way to do this, I'm just going to show you my computer real quick. Subsection 14 here of Section 1-2, is that what you were referring to in the rules of construction?**
A. Yes.
**Q. All right. And so with that now in front of you, how can you determine in the definition of a sign whether that is an and or an or?**
A. It is interpreted as to whether the sense requires it to make sense of the code section.
**Q. And how do you make sense of the code section such that you can make a definitive determination if it is an and or an or?**
MS. JOKERST: Object to form.
A. I look at how the code is constructed.
BY MR. SHAW:
**Q. So what about how the code is constructed makes you determine the usage of and and or in the definition of a sign?**
MS. JOKERST: Object to form.
A. Because none of the three could stand on

MR. SHAW: Required here.
THE REPORTER: And then your objection?
MS. JOKERST: Object to form.
THE REPORTER: Thank you. Sorry. Go ahead.
A. They used a series of commas followed by an or.
BY MR. SHAW:
**Q. Well, I understand that. But the code says and and or can be interchangeable. So how do you know that it means or and not and?**
MS. JOKERST: Object to form.
A. I didn't say that I know with certainty. I said that is the way I interpret the way it is drafted.
BY MR. SHAW:
**Q. Okay. Is there anyway a member of the public could know whether this means and or or without first getting your determination?**
MS. JOKERST: Object to form and foundation.
A. They could read it for themselves, and then they could contact the city to see how the city has historically interpreted it.
BY MR. SHAW:

**to look like and get a determination from you about whether it qualifies as a painted wall sign or a mural?**

MS. JOKERST: Object to form.

A. It is very commonplace for people who want to erect something or have a pictorial representation or some graphic to come into our office and say this is what I'm looking to do. Does this fit within your code.

BY MR. SHAW:

**Q. All right. And how would you help that person determine if it was a mural or a painted wall sign?**

A. By looking at whether it announces, directs attention to or advertises.

**Q. So you would need to see a rendition or plan of what it is they plan to paint?**

A. Yes.

**Q. Okay. And depending on the content of that rendition, you would make the determination if it is a mural or a wall sign?**

MS. JOKERST: Object to form.

A. I would look at it.

BY MR. SHAW:

**Q. You would look at the content to**

**determine if it is a wall sign or a mural?**
A. No. I would --
MS. JOKERST: Object to form.
A. I would look at the graphic representation.
BY MR. SHAW:
**Q. Was the graphic representation not just displaying the content they intend to paint on a wall?**
MS. JOKERST: Object to form.
A. I would look at their graphic representation.
BY MR. SHAW:
**Q. Well, what is the graphic representation?**
A. It is a rendering of what they propose to put on the wall.
**Q. Okay. What is in your mind the content of the mural?**
MS. JOKERST: Object to form and foundation.
A. City does not regulate content, so I with look at the graphic representation of their rendering.
BY MR. SHAW:
**Q. Well, how do you understand what content**

A. I would look at the rendering that they provided. And if it was words or numbers, I would determine whether those words or numbers announce, direct attention to or advertise the business or the products at that premises, and we would attempt to draw a rectangular box around those letters and calculate the square footage of the display to determine whether it was too large or not too large to be located as proposed.

BY MR. SHAW:

**Q. And let's say that same business came to you with a proposal to paint on the side of their building the Arrowhead logo of the Kansas City Chiefs and text, you know, let's go Chiefs. How would you determine if that were a sign or not?**

MS. JOKERST: Object to form.

A. I would determine whether those graphics announced or directed attention to or advertised.

BY MR. SHAW:

**Q. How would you do that?**

A. Well, in the specific context you gave me, I would interpret that to say that it is announcing that that property owner supports the Kansas City Chiefs.

**Q. What if that property was a training**

**facility for the Kansas City Chiefs?**

A. Then it would be the same thing except it's also advertising and directing attention.

**Q. Okay. Now, let's say the text on this mural, the letters are very widely spaced. Would you draw a rectangle around the entire display or only around each letter to determine its area?**

MS. JOKERST: Object to form.

A. The entire display.

BY MR. SHAW:

**Q. Okay. Would you also draw that rectangle around any other emblems that are related to that mural?**

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. So in the example I gave before, you've got the Chiefs Arrowhead and then the let's go Chiefs. Would you draw one rectangle or two separate rectangles?**

MS. JOKERST: Object to form.

A. Are we talking about painted wall signs or are we talking about murals?

BY MR. SHAW:

**Q. Well, either way. How would you determine the size?**

BY MR. SHAW:

**Q. Okay. All right. Move down still in Section 42-503 to subsection H. Does it say on corner and through lots, each lot line that abuts a street or highway shall be considered a separate street frontage?**

A. That's what it says.

**Q. Okay. Is a -- what is a through lot in your understanding of the code?**

MS. JOKERST: Object to form.

A. A through lot would be a lot, for example, on Schilling Road that has frontage on both Schilling Road and the street opposite so that that lot has two front yards.

BY MR. SHAW:

**Q. Okay. So would those two roads be parallel roads?**

A. They would be.

**Q. Okay. And for a corner lot, would that be where you've got two perpendicular roads?**

A. Yes.

**Q. Okay. Are alleyways considered a road under this definition for calculating frontage?**

A. They are not.

MS. JOKERST: Object.

**Q. Okay. What about private streets? Do frontage for private streets count?**

MS. JOKERST: Object to form.

A. A private street would be equivalent to a public street.

BY MR. SHAW:

**Q. Okay. What is the difference between an alley and a private street?**

MS. JOKERST: Object to form.

A. An alley is publically dedicated right-of-way.

BY MR. SHAW:

**Q. Okay. Okay. Can we move down to Section 42-504 again. We discussed non-commercial flags and window signs. So we can move down to other ones. The exemption in subsection 3, is that for signs attached to motor vehicles, buses or railroads?**

MS. JOKERST: Object to form.

A. We're in subsection I, 1, 2 and 3 or I'm not following where we are.

BY MR. SHAW:

**Q. No. This is 42-504, subsection 3. We were in 42-503 before. So if you're at subsection I, you still might be in 42-503.**

**between a scoreboard and a billboard?**

MS. JOKERST: Object to form and foundation.

A. I would do it the way we did it at Kansas Wesleyan's football stadium.

BY MR. SHAW:

**Q. What did you do with Kansas Wesleyan's football stadium?**

A. Kansas Wesleyan University, they put up a scoreboard. They got a building permit to put up their scoreboard. On the back of their scoreboard facing Cloud Street, they sold advertising to area businesses. We determined that that back side of the scoreboard was a off-premise advertising sign and required them to get a billboard permit for that.

**Q. Okay. But the reverse side of that was considered to be a scoreboard?**

A. Correct.

**Q. Okay. And so how did you determine the scoreboard aspect of it from the billboard aspect of it?**

MS. JOKERST: Object to form.

A. Because a scoreboard was simply a structure, and it had changeable copy on it that

listed the home team, the visitor's team, the time and score.

BY MR. SHAW:

**Q. Is a billboard something more than a structure with changeable copy?**

MS. JOKERST: Object to form and foundation.

A. A billboard is synonymous with the term off-premises or advertising sign. And if Kansas Wesleyan University sells advertising space to area business that are not located on the premises and that sign is oriented towards Cloud Street and not the stadium, then that side of the structure is not a scoreboard. It is a off-premise sign.

BY MR. SHAW:

**Q. What does the orientation have to do with the sign?**

A. The presumption in exempting a scoreboard is that a scoreboard --

MS. JOKERST: Can I -- did my objection get on there?

THE REPORTER: No. Can you give it to me, please.

MS. JOKERST: Object to form.

A. Can you repeat the question?

MR. SHAW: Can you read that back, please?

THE REPORTER: "What does the orientation have to do with the sign?"

MS. JOKERST: I said object to form.

A. The adopted exemption for scoreboards is based partially on the fact that the information they convey is directed to people that are in the stadium. And the determination for taking that scoreboard structure and saying that it's an off-premise sign is because the advertising is not oriented towards or directed towards the people within the stadium.

BY MR. SHAW:

**Q. If the advertising copy were placed on the side of that scoreboard facing the audience, would that be a scoreboard or an advertising sign?**

MS. JOKERST: Object to form.

A. It would be a scoreboard.

BY MR. SHAW:

**Q. Even with the advertising copy?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. SHAW:

**Q. Okay. So it is the orientation of the**

**sign as opposed to the copy displayed on the sign that makes it a scoreboard?**

A. It is not the orientation. It is the structure and its use. And if the structure at Kansas Wesleyan University was only a scoreboard oriented towards people in their stadium, it would be a scoreboard. The fact that they used it as a sign support structure for off-premise advertising made the back side of it a sign.

MS. JOKERST: And did -- did my objection get noted there.

THE REPORTER: No. Give it to me again, please?

MS. JOKERST: Object to form. Hey, Dean, can you just slow down just a little bit so I can get those in there?

BY MR. SHAW:

**Q. Is the scoreboard at Kansas Wesleyan a digital scoreboard?**

A. Yes.

**Q. I guess when I say that, I'm thinking the kind of like jumbo vision type thing you see at professional sports stadiums with basically a giant, you know, TV screen. Is that that kind of digital scoreboard?**

of time.

BY MR. SHAW:

**Q. Okay. Does this section apply to non-commercial signs as well?**

MS. JOKERST: Object to form.

A. It appears to refer to signs that advertise a bona fide business.

BY MR. SHAW:

**Q. Okay. So let's say, for instance, someone put up a, you know, Mitt Romney 2012 sign, and it's still up here in 2024. Is that sign considered abandoned?**

MS. JOKERST: Object to form.

A. It would be considered an election sign that was up seven days after the election.

BY MR. SHAW:

**Q. So you're not allowed to have any election signs seven days after an election?**

A. Correct.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. If I were a -- not me. If any property owner were a big Dwight Eisenhower fan and they just wanted to put up a paint on the side of their wall, you know, I like Ike, would that be**

**allowed?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. SHAW:

**Q. Is I like Ike a campaign slogan from the Eisenhower campaign?**

MS. JOKERST: Object to form and foundation.

A. I don't know.

BY MR. SHAW:

**Q. Okay. Why would the I like Ike sign be allowed but not the Mitt Romney 2012 sign not -- let me rephrase that. Why is an I like Ike sign not considered a political sign seven days after an election?**

MS. JOKERST: Object to form.

A. Well, for one, Mr. Eisenhower is deceased, so he couldn't be running for any elective office. And it is simply an expression of whoever the sign holder is that they like Ike.

**Q. But why can't the Mitt Romney fan continue expressing their admiration for Mitt Romney?**

MS. JOKERST: Object to form and foundation.

A. If he wants to strike all portions from the sign that deal with voting for Mr. Romney or have an election date in it, then he can all the signs he wants that shows that he loves Mitt Romney.
BY MR. SHAW:
**Q. Okay. So if the Eisenhower fan painted vote Eisenhower 1952, would that be considered a political sign that can't be up more than 7 days?**
MS. JOKERST: Object to form and foundation.
A. I would not consider that an election sign.
BY MR. SHAW:
**Q. Why wouldn't you consider it an election sign?**
A. Common sense tells me it's not an election sign. It's not left over from some election.
**Q. What if the sign had been painted in 1952 and it was just still around?**
MS. JOKERST: Object to form.
A. I would consider it a historic sign.
BY MR. SHAW:
**Q. I see and what is a historic sign?**

MS. JOKERST: Object to form.
A. A historic sign is a sign that predates the sign codes that we have adopted. Then it would be preexisting.
BY MR. SHAW:
**Q. So is there a difference in your mind between a historic sign and a non-conforming sign?**
A. We actually have a defined term for historic sign, and you can get a sign designated as historic. I'm using historic in a generic sense. The precise word is preexisting.
**Q. Okay. So a sign that is preexisting cannot be abandoned. Is that what you're saying?**
A. A preexisting sign is not an abandoned sign under 42-510 of this code.
**Q. Even if the business that advertised is long out of business?**
A. That is correct.
**Q. Can you flip down to Section 42-581? Are you there, sir?**
A. Yes.
**Q. Okay. Can you read subsection A and let me know when you're done.**
A. I'd have to go back and see the context in which this appears. Okay. I've read

subsection
A.
**Q. All right. So does this section deal with non-conforming signs?**
A. It does. It was specifically targeted to address non-conforming signs in the downtown C-4 district. But it doesn't limit it to that, but that was the intent to address that.
**Q. All right. And is the concept of a non-conforming sign, is that something that is a sign that predates a certain date and doesn't comply with the provisions of the code?**
A. It is a sign that --
MS. JOKERST: Object to form.
A. Excuse me.
MS. JOKERST: Go ahead. I noted my objection.
A. It is a sign that predates the current code and in some aspect may be non-conforming as to size or setback or some other aspect.
BY MR. SHAW:
**Q. Okay. And as a general matter, if it is considered a non-conforming sign but it predates the designated date, it is allowed to remain?**
A. It is allowed to remain in place as long

as it's not expanded or modified or removed.

**Q. Okay. And what date does this statute give for the cutoff for it to be an authorized non-conforming sign?**

MS. JOKERST: Object to form.

A. It gives April 17th, 1990.

BY MR. SHAW:

**Q. All right. So is it your understanding then that any sign before April 17th, 1990 would be considered non-conforming?**

A. If it's --

MS. JOKERST: Object to form.

A. If it's a sign that's not permitted or which doesn't comply with the sign code.

BY MR. SHAW:

**Q. Okay. And if the sign is before 1990 but it advertises a business that has gone out of business, does it maintain its non-conforming status?**

MS. JOKERST: Object to form.

A. It depends on the origin of the sign, but it could be a preexisting non-conforming sign.

BY MR. SHAW:

**Q. So it would not be classified as an abandoned sign then?**

**Q. Had anyone determined on that day that the painting at The Cozy Inn was a sign?**
MS. JOKERST: Object to form.
A. All the actions that were taken from that staff meeting on were based on the possibility that it would be determined to be a sign.
BY MR. SHAW:
**Q. Was it, in fact, determined to be a sign?**
A. It was.
**Q. When was that decision made?**
MS. JOKERST: Object to form.
A. Sometime during that week.
BY MR. SHAW:
**Q. Who made that determination?**
A. Mr. Herrs made the initial determination, and then I concurred.
**Q. Why did you concur?**
A. Because I agreed with his determination.
**Q. Why did you agree with his determination?**
A. Because I determined that the graphic display announced, directed attention to and advertised the business which was The Cozy Inn.
**Q. And you determined that within the first week?**
A. Yes.

**Q. What specifically did you determine announced, direct attention to or advertised?**

A. I determined that the graphic displays of the burgers that were available for sale in the building, the ketchup, mustard packets and particularly the words associated with Don't Fear the Smell and The Fun is inside with an arrow pointing directly to the north pickup window constituted a display that announced, directed attention to and advertised The Cozy Inn business.

**Q. Did it -- did you determine it did all three of those, announced, direct attention to and advertised?**

A. I believe it does, yes.

**Q. Okay. What part of the painting announces The Cozy Inn?**

A. The burgers that are on display.

**Q. How do they announce The Cozy Inn?**

A. Because they depict the product that's available inside that building.

**Q. How do the painting on the side of The Cozy Inn direct attention?**

A. The words Don't Fear the Smell is associated with the unique odor that emanates from that building and from their product the onion

**Q. Okay.**

A. If the arrow was 5 feet tall and 20 feet long and filled in as a shape, that would be different than a single line which is much more difficult to calculate.

**Q. So if the mural on the side of The Cozy Inn didn't include hamburgers or an arrow and it just had the phrase Don't Fear the Smell, The Fun is inside, would you consider that to be a sign?**

A. Yes.

**Q. What part of that phrase makes it a sign in your view?**

A. Don't Fear the Smell and The Fun is inside.

**Q. Would either of those phrases on their own be considered a sign or is it only the combination of the two?**

MS. JOKERST: Object to form.

A. Either one.

BY MR. SHAW:

**Q. Okay. So if it just said Don't Fear the Smell, that would be a sign?**

A. Yes.

**Q. If The Cozy Inn happened to be located next to a chicken farm, let's say, would it still**

**be a sign?**
A. Yes.
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. Even if it was referring to the smell of the chickens?**
MS. JOKERST: Object to form.
A. Not my job to determine what it's referring to. My job's to determine whether it's a sign or not.
BY MR. SHAW:
**Q. But did you determine that the phrase Don't Fear the Smell is referring to The Cozy Inn?**
MS. JOKERST: Object to form.
BY MR. SHAW:
**Q. How did you make --**
THE REPORTER: Whoa, whoa, whoa. What's your answer? What was your answer, I'm sorry.
A. I hadn't answered it yet.
THE REPORTER: Okay.
BY MR. SHAW:
**Q. Did you determine that the phrase Don't Fear the Smell was a reference to the smell of The Cozy Inn?**
MS. JOKERST: Object to form.

**smell but its neighbor did have a smell?**

MS. JOKERST: Object to form.

A. Because the sign is still inviting customers to come in and partake of their product and notwithstanding the smell of the chicken farm.

BY MR. SHAW:

**Q. If The Cozy Inn was not a restaurant or -- let's do a different one. Let's say The Cozy Inn only did delivery and so customers would never come to the Cozy Inn location, would the phrase Don't Fear the Smell still be a sign?**

MS. JOKERST: Object to form.

A. That would require me to speculate.

BY MR. SHAW:

**Q. I'm asking you to state how you would interpret this code in that scenario?**

A. I think you're asking me to speculate without the full context.

**Q. The full context is that this is a building that delivers food to customers but customers never come to that building, and it has a mural saying Don't Fear the Smell. Would that be interpreted as a sign under the code?**

MS. JOKERST: Object to form.

A. I'd have to see what's on the rest of the

wall of the building.

BY MR. SHAW:

**Q. It's a white wall except for those words?**

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Would it be a sign in that situation?**

A. My first --

MS. JOKERST: Object to form.

A. My first inclination would be to consider that a sign.

BY MR. SHAW:

**Q. Why is that?**

A. Because there's nothing else on the wall of the building.

**Q. Why does the presence of other things on the wall of the building change the determination one way or another?**

MS. JOKERST: Object to form.

A. Well, it's not -- it's not a non-commercial message.

BY MR. SHAW:

**Q. If it's referencing the smell of its neighbor, would that be a non-commercial message?**

MS. JOKERST: Object to form.

A. Not necessarily.

BY MR. SHAW:
**Q. What message would that be?**
A. The Don't Fear the Smell message could still be an invitation to partake of their food.
**Q. Even if no one would ever come to this building?**
A. Even if no one would ever come there, because their food -- they're telling the public their food is not affected by the smell of the chicken farm.
**Q. I see. If the mural depicted pizzas, would that be considered a sign for the Cozy Inn?**
MS. JOKERST: Object to form.
A. What else is on the wall?
BY MR. SHAW:
**Q. It is the white wall of The Cozy Inn, and there's just a big pizza mural on it?**
MS. JOKERST: Object to form.
A. Well, I think the first thing I would do is to determine whether it is off-premise advertising for some other establishment in the downtown area.
BY MR. SHAW:
**Q. How would you determine that?**
A. By looking at the pizza and seeing if it

made reference to any of the existing establishments in Salina or the downtown area.

**Q. And if it's just a pepperoni pizza with no sort of logo or wordage on it, is that a sign or a mural under the code?**

MS. JOKERST: Object to form.

A. I don't have to determine whether it's a mural. I only have to determine whether it's a regulated wall sign.

BY MR. SHAW:

**Q. Okay. Would you determine that that is a regulated wall sign?**

MS. JOKERST: Object to form.

A. Again, you're asking me to speculate. But if it was in the context of a blank white wall with a pizza symbol on it that had no association with announcing or directing attention to or advertising The Cozy Inn business and did not advertise another nearby establishment, then it would not be a regulated wall sign.

BY MR. SHAW:

**Q. If that exact same painting were painted on the wall across town at a pizza joint, would that then be a sign?**

MS. JOKERST: Object to form.

guess I don't know. How much longer and would now be a good time to take a short lunch break?

MR. SHAW: Give me maybe five minutes. I'm almost done with this line of questioning. Then we can take a short break -- or we could take a lunch break, not just a short break.

BY MR. SHAW:

**Q. Are you familiar with the artist Andy Warhol?**

A. I think I know who he is.

**Q. Can you turn to Exhibit 38. It should be almost the last exhibit. It should be the second to the last page in the binder?**

A. Oh, the very last.

**Q. That's it right there.**

A. Right there. Okay.

**Q. So what's marked there as Exhibit 38, have you ever seen that painting before?**

A. I have not.

**Q. Okay. If that painting were painted on the side of The Cozy Inn, would that be considered a sign?**

MS. JOKERST: Object to form.

A. I would give the same answer I did with the airplane. That does refer to a specific

product. It borderline could be considered an off-premise sign directing people to a product that is available in other locations in Salina. But just standing by itself, it does not announce or direct attention to or advertise The Cozy Inn.

BY MR. SHAW:

**Q. If The Cozy Inn sold tomato soup, would that change your calculus?**

MS. JOKERST: Object to form.

A. It would.

BY MR. SHAW:

**Q. Okay. Would that make you determine that this is a sign?**

MS. JOKERST: Object to form.

A. I would determine that it advertises a product that they are making available to their customers inside.

MR. SHAW: Okay. All right. We can break for lunch now.

(THEREUPON, a recess was taken.)

BY MR. SHAW:

**Q. Mr. Andrew, before we took our lunch break, I believe you had said that you had attended a meeting on Monday, November 6th of 2023 when you were first informed about the painting on**

**Q. What are those ways you could calculate it without physically measuring?**
A. Well, there is the county appraiser's records. There's also our building permit records. And our building permit records give us the dimensions of the buildings that are on that address.
**Q. Are you familiar with a piece of software called Pictometry?**
A. I am.
**Q. Would Pictometry be a valid way of making these measurements?**
MS. JOKERST: Object to form.
A. Pictometry is never as good as either going over and measuring or having building plans.
BY MR. SHAW:
**Q. Okay. When this e-mail was sent, had a determination been made by the city that the painting on the side of The Cozy Inn would not be allowed by the city code?**
MS. JOKERST: Object to form.
A. A determination had been made that it would not be allowed by city code because it was too large based on the circumstances of the property.

BY MR. SHAW:

**Q. And so that would be on November 6th that determination had been made?**

A. Yes.

**Q. And that determination was made by Mr. Herrs?**

A. It was made by Mr. Herrs and concurred with by myself and Ms. Driscoll.

**Q. Do you know the date you concurred with that determination?**

A. It was concurred before this e-mail was sent out.

**Q. Okay. So did Mr. Herrs have a face-to-face conversation with you before he sent this e-mail?**

A. He did.

**Q. Okay. And in that face-to- face conversation, did he convey the substance of this e-mail to you?**

A. He conveyed what his measurements told him about the total area of the sign.

**Q. Okay.**

A. And that it was far too large for that C-4 district regulations would allow.

**Q. In that conversation you had with him,**

A. I didn't prepare it. He did. And I've seen different numbers. He started out at 540 and changed that to 528.

BY MR. SHAW:

**Q. Would he have been correct to subtract that sign from the mural sign area?**

MS. JOKERST: Object to form.

A. Yes, because it already exists.

BY MR. SHAW:

**Q. Would he have been incorrect if he didn't subtract that area?**

MS. JOKERST: Object to form.

A. He wouldn't necessarily be incorrect because it's all one integral display. But he did not take that into account because it's already account for as existing signage.

BY MR. SHAW:

**Q. I guess my concern here is, is that 24 square feet has been double counted, that if he includes that area within his rectangle for calculating the size of this mural and doesn't subtract 24 square feet from it, we are now double counting that 24 square feet. Do you understand?**

MS. JOKERST: Object to form.

A. I understand, but it's completely

irrelevant.
**Q. Why is that irrelevant?**
A. Because the magnitude between 60 square feet or 63 square feet and 500 plus square feet, a 24-square foot margin of error is immaterial.
**Q. Okay. I understand that conclusion if what you're just saying is that it wouldn't have changed the outcome. But I'm just trying to figure out what is the proper way to calculate the numbers?**
A. The proper way to calculate the numbers is to take the existing signage, we calculate the difference between the existing signage that already exists and the proposed signage and we see if the proposed signage will fit within that allocation. So if their allocation was that they can have 150 square feet of total sign area and they have 63, then they can -- their additional signage can be the difference between 63 and 150.
**Q. I understand. But if this signage has been double counted, the calculation would be incorrect. Is that true?**
MS. JOKERST: Object to form.
A. There is nobody on city staff, including me or Mr. Herrs or anybody, who is going to stand

artificial rectangles around it. We treated the entire north wall as part of the display area.

BY MR. SHAW:

**Q. Okay. After Mr. Howard submitted this application on November 13th or whenever he submitted it, what was done with this application by your department?**

A. It was placed on file and on hold.

**Q. What does it mean for it to be on hold?**

A. It means that we could not approve it, but we were going to try to continue to work with Mr. Howard to find a code-compliant code-based solution that might allow ultimately the sign to be installed.

**Q. Does the city code discuss procedures for placing a sign permit on hold?**

MS. JOKERST: Object to form.

A. It does not.

BY MR. SHAW:

**Q. So is placing a sign permit on hold just a unwritten practice?**

MS. JOKERST: Object to form.

A. It's not an unwritten practice. It's usually done in consultation with the applicant.

BY MR. SHAW:

**Q. Was this done in consultation with Mr. Howard?**
A. Absolutely.
**Q. Did Mr. Howard agree to having his permit being placed on hold?**
A. Yes.
**Q. When did he make that agreement?**
A. When he talked to Mr. Herrs.
**Q. Mr. Herrs told you that Steve Howard agreed to his application being played on hold?**
MS. JOKERST: Object to form.
A. Mr. Howard was informed on Monday the 6th that we were unable to issue a sign permit, and he was informed that we were going to continue to work with him on coming up with a code-compliant solution that might allow the sign to ultimately be installed.
BY MR. SHAW:
**Q. But he submitted this application after that date. Is that correct?**
A. That is correct.
**Q. And at any point after that, did Mr. Howard consent to his application being place on hold?**
MS. JOKERST: Object to form.

**any time even while an application is pending?**

A. Absolutely. It happens all the time.

**Q. I see. And does the code not set out that it is only by a final determination of the zoning administrator that the Board of Zoning Appeals gains jurisdiction?**

MS. JOKERST: Object to form.

A. What is your definition of a final determination?

BY MR. SHAW:

**Q. What is your definition of a final determination?**

A. My determination was on Monday November 6th, I had determined this to be a sign that required a sign permit. That was my determination. It didn't change. It didn't change under any of the additional information that we had. Mr. Howard, if he disagreed with my determination that it was a sign could have appealed my determination as being incorrect to the Board of Zoning Appeals.

**Q. I believe earlier you had said when a sign permit was denied, a letter is sent out to the applicant. Is that correct?**

A. I did not say that. I said when a sign

**due to the unique nature of the existing signs at The Cozy Inn, our office will be placing your Certificate of Compatibility application and your sign permit application on hold until our review of the sign regulations is complete. Is that sentence past tense or future tense?**

MS. JOKERST: Object to form.

A. I'm not sure I follow the question.

BY MR. SHAW:

**Q. Do you see where it says our office will be placing your Certificate of Compatibility application and sign permit application on hold?**

A. If I was writing it, it would say has been placed.

**Q. I see. Do you know why it was not written in that manner?**

MS. JOKERST: Object to form.

A. I do not have firsthand knowledge of that.

BY MR. SHAW:

**Q. When was the application placed on hold?**

A. When it was received.

**Q. So would that be November 13th, 2023?**

A. That would be the date it was received if that was in fact the date it was received.

department is involved with, including The Cozy Inn.

**Q. So just so I've got this straight, it's your position that The Cozy Inn's application was placed on hold on November 6th, 2023. Is that correct?**

MS. JOKERST: Object to form.

A. Yes. And we told Mr. Howard that we were going to work to try to come up with a code compliant solution that might ultimately end up with his permit being issued for his display and that that was going to take some amendments to our current sign code. And so we were trying to convey the message that we were going to continue to work with him as well as others in the community who had sign issues of their own.

BY MR. SHAW:

**Q. Does this letter make any reference to a determination made on November 6th?**

A. It does not.

MS. JOKERST: Object to form.

BY MR. SHAW:

**Q. Were you instructed to send this letter by Miss Driscoll?**

MS. JOKERST: Object to form.

**Art Center building?**
A. Yes.
**Q. What does it mean to be similar in function to a sign?**
MS. JOKERST: Object to form and foundation.
A. Something that might be visually appealing or attract your eye.
BY MR. SHAW:
**Q. And when it says it will direct the public to the gallery, what does that mean?**
MS. JOKERST: Object to form and foundation.
A. That means it was written by a staff member that doesn't have all the full nuances.
BY MR. SHAW:
**Q. Are you saying the staff report is incorrect?**
MS. JOKERST: Object to form.
A. I'm not saying the staff report was incorrect.
BY MR. SHAW:
**Q. What does it mean then that the staff whoever wrote this doesn't understand the nuances?**
A. They did not, when they did their

analysis, they didn't do a detailed analysis of how this relates to the three elements in the sign code definition. They were rather loose in their language. I would agree that this art installation is similar to the function of a sign except we determined it was not a sign and it was not required to go to the Design Review Board. And the only reason it did was because the Art Center asked so they could obtain a Certificate of Compatibility for their facade grant application.

**Q. So your department determined that this mural was not a sign. Is that correct?**

MS. JOKERST: Object --

A. We determined that the mural was not a sign and that it was not required to be reviewed by the Design Review Board.

BY MR. SHAW:

**Q. Does this staff report say anywhere that it was determined that it was not a sign?**

MS. JOKERST: Object to form.

A. It says it's intended similar in function to a sign or logogram. If it was a sign, it would have resulted in a sign permit, but we did not issue a sign permit for this art installation.

BY MR. SHAW:

A. It was.
**Q. Is that Schlotzsky's located inside of a large shopping center?**
A. It's an outlot that's located in the Mid State Plaza addition.
**Q. Do you know how the frontage for that building was calculated?**
A. I do.
**Q. How was it calculated?**
A. It was calculated based off their 9th Street frontage and the mall ring road on the south.
**Q. I see. So it wasn't just the street frontage. It was the parking lot of the large shopping center which had a path for cars to drive. That was considered street frontage?**
A. No, that --
MS. JOKERST: Object to form.
A. That was considered to be a private street that provided access to Schlotzsky's.
BY MR. SHAW:
**Q. Even though there's parking in between Schlotzsky's and that private road?**
A. Yes.
**Q. Okay. Go quickly to Exhibit 39, please.**