.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

.

.

COZY INN, INCORPORATED, d/b/a
THE COZY INN; STEPHEN HOWARD,
Plaintiffs,

.

vs. Civil Action No. 6:24-cv-01027-TC-ADM

.

CITY OF SALINA, KANSAS,
Defendant.

.

.

DEPOSITION OF

CORPORATE REPRESENTATIVE

DEAN ANDREW,

taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 2:10 p.m. on the 30th day of October, 2024, at Clark, Mize & Linville, 129 S. 8th Street, in the City of Salina, County of Saline, and State of Kansas, before Sandra S. Biggs, Kansas CCR No. 0716.

.

**EXHIBIT 13**

maybe rather than have him go through each one, is there anything in there that hasn't been disclosed by either party?
MS. JOKERST: No, I don't believe so.
MR. SHAW: Okay.
MS. JOKERST: Dean, you have what I sent you?
A. It is what you sent me. It includes the set of Interrogatories, the responses to those, the Requests For Admissions, the things that I was supposed to be questioned about under the topics list.
BY MR. SHAW:
**Q. All right. So we will start off kind of just discussing how the city defines a sign under the sign code. So if you can open the binder in Exhibit 1 there, we have excerpts of the code. Go to Section 42-764.**
A. The methodology in using something is a sign is determined whether it's a structure or part of a structure or portable display, whether it's either attached to the ground or painted onto a building or structure on the ground. And then we determined whether it announces, directs attention to or advertises. And then we confirm

whether it is inside or outside of a building.

**Q. Give me one second here. So when you, and when I say you, I mean the city, determine if a display is used to announce, what methodology does the city use to make that determination?**

A. We look to see whether it declares some fact or occurrence or event or some entity.

**Q. And does that announcement have to be of a commercial nature, or can it be any announcement?**

A. It could be any type of announcement.

**Q. Okay. And does the city need to review the proposed display in order to determine if it announces or not?**

A. Yes.

**Q. Okay. And when the city determines if a display directs attention to something, what methodology does the city use to make that determination?**

A. We look to see if there is something in the visual display that points to or directs attention to a particular location or position or something that's occurring in their building if there is one.

**Q. And does it have to direct attention to a**

**commercial location or can it be directing attention to a non-commercial location as well?**

A. It can direct attention to any particular location.

**Q. All right. And when the city determines if a display advertises, what methodology does the city use to make that determination?**

A. We look to see whether the visual display promotes or encourages some sort of product or service or invitation to enter into some form of commercial transaction or whether the visual display promotes a particular brand or a particular product.

**Q. Does the advertising have to be commercial in nature or can it be non-commercial?**

A. It does not have to be commercial.

**Q. When determining if a display is a sign, does the city determine if the display is calculated to attract the attention of the public?**

A. No.

**Q. Why doesn't the city determine that?**

A. Because in interpreting and applying Section 42-764, the city has interpreted that to be a catchall provision and to catch any type of display mechanism that's not mentioned in the

BY MR. SHAW:
**Q. So as long as a building is not vacant, a sign can't be abandoned?**
MS. JOKERST: Object to form.
A. The abandoned sign ordinance establishes time frames for certain parts, portions of signs or sign support structures to be removed. And the triggering for that is the date upon which the premises became vacant. If the premises is not vacant, there's no date to trigger that on.
BY MR. SHAW:
**Q. So even if the sign no longer advertises a bona fide business conducted, products sold or service provided, it isn't abandoned until the property has been vacated?**
MS. JOKERST: Object to form.
A. The time period the clock for removal starts when the premises is vacant.
BY MR. SHAW:
**Q. All right. We can move on to Exhibit 18. Are you familiar with Exhibit 18?**
A. It appears to be a photograph of Fire Station No. 2 on South Santa Fe.
**Q. Has the city made a determination about whether the mural at Fire Station No. 2 is**

**considered a sign?**

A. Yes.

**Q. What determination was made?**

A. The determination that it does not constitute a sign that announces, directs attention to or advertises.

**Q. What methodology did the city use to make that determination?**

A. It used the methodology found in Section 42-764 to determine whether the visual display on the front of the building announced or directed attention to or advertised. It does not announce or proclaim any fact, event, occurrence or entity, it does not direct attention to any specific location or opening or doorway or any physical location, and it does not advertise.

**Q. Does this mural depicted in the exhibit identify the building as a fire station?**

A. The city's position is that it does not. It could just as easily appear on a museum or library or anywhere else.

**Q. Does this mural pertain to the activities conducted at the fire station?**

MS. JOKERST: Object to form.

A. Not this fire station.

**Q. Okay. Has the city made a determination about whether this mural constitutes a sign under the sign code?**

MS. JOKERST: Object to form.

A. We have made a determination that the sign portion of this wall constitutes a sign under the sign code.

BY MR. SHAW:

**Q. When you say the sign portion, what are you referring to?**

A. The portion of the sign that we issued a sign permit for.

**Q. Can you describe the portion of this that was issued a sign permit in reference to the image?**

A. The portion that says KU, the portion that says School of Medicine, the portion that says School of Nursing, the portion that says Salina and the portion that says the University of Kansas which was installed on a blank wall.

**Q. Okay. And when -- when was the paint of this mural added to that wall?**

A. I don't know.

**Q. Okay. Was any determination ever made about whether or not the paint of that mural was a**

**part of that sign?**
A. It could not have been a part of the sign because it wasn't a single composition.
**Q. Is it possible to expand upon a sign after it has already been built by adding more elements to it?**
MS. JOKERST: Object to form and scope.
A. I believe it's theoretically possible that any original design for a sign can be modified or expanded on.
BY MR. SHAW:
**Q. Okay. Has the city ever determined whether the mural in this exhibit was an expansion or modification of the KU sign?**
A. The city has determined that only the portion for which a sign permit was issued is a regulated sign, and the remaining balance of the north wall of that building is not a regulated sign.
**Q. When was that determination made?**
MS. JOKERST: Object to scope.
A. I don't understand the question. I don't have any reason -- no one has any reason but the city to make that determination.
BY MR. SHAW:

**Q. Where is that mural located?**
A. It's on the south wall of the Schlotzsky's sandwich shop.
**Q. And has the city determined that the mural depicted here is a sign?**
A. Yes.
**Q. When did the city make that determination?**
MS. JOKERST: Object to scope.
A. I can't tell you the exact time. I can tell you it was determined when the city became aware of it and went out and reviewed it. It determined it to be a regulated sign and contacted the owner of the business and the owner of the property to say that they needed to obtain a sign permit for that sign.
BY MR. SHAW:
**Q. What portions of this mural did the city consider to be triggering the sign code?**
MS. JOKERST: I'll object to form.
A. The city determined it to be a single composition and determined that the entire visual display was a sign.
BY MR. SHAW:
**Q. How did the city come to that**

A. The City of Salina, city commission, believes that putting that information on the water tower protects the public health, safety and welfare. It also provides wayfinding by letting visitors know, one, that they're in Salina and, two, where they can find information about Salina.

BY MR. SHAW:

**Q. What facts does the city have that show that the Chamber of Commerce website promotes the public health, safety or welfare?**

MS. JOKERST: Object to form and scope.

A. Because attracting visitors and tourists to the city is their mission, and attracting visitors to the City of Salina protects the public health, safety and general welfare of the public.

BY MR. SHAW:

**Q. Are traffic and wayfinding signs -- let me rephrase that. Can any sign that might be used by a driver as a landmark be considered an exempt sign under this section?**

MS. JOKERST: Object to form and scope.

A. This exemption refers to signs that are placed or authorized by the city. This sign was both placed and authorized by the city by which I mean the governing body of the city.

doesn't even make any sense.

BY MR. SHAW:

**Q. Well, does this say rectangle or rectangles?**

MS. JOKERST: Object to form.

A. It says all the letters, numbers or symbols.

BY MR. SHAW:

**Q. I'm asking does it read the area of the smallest rectangular figure or the area of the smallest rectangles?**

A. The city for The Yard measured the smallest rectangular figure that encompassed home plate and The Yard, period, end stop.

**Q. Well, you testified there were six rectangular figures that the city measured to calculate The Yard's area. Is that correct?**

MS. JOKERST: I'll object -- I'll object to scope as it relates to the calculation at The Yard.

A. I still don't understand the question. You end up with a total square footage. We used six independent areas to come up with a total square footage and a single rectangular area that encompassed all the letters, numbers and symbols.