.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

.

.

COZY INN, INCORPORATED, d/b/a
THE COZY INN; STEPHEN HOWARD
Plaintiffs,

.

vs. Civil Action No. 6:24-cv-01027-TC-ADM

.

CITY OF SALINA, KANSAS,
Defendant.

.

.

DEPOSITION OF

MICHAEL SCHRAGE,

taken on behalf of the Plaintiffs, pursuant to Notice to Take Deposition, beginning at 9:09 a.m. on the 11th day of September, 2024, at Clark, Mize & Linville, 129 S. 8th Street, in the City of Salina, County of Saline, and State of Kansas, before Sandra S. Biggs, Kansas CCR No. 0716.

.

.

**EXHIBIT 14**

A. That's Commissioner Mike Hoppock.
**Q. Was he commissioner in November -- on November 9th of 2023?**
A. Can someone tell me who the mayor was? He was definitely -- we change mayors once a year. All of them, even though they are mayor, they're a commissioner. So he was a commissioner. I just -- I don't think he was mayor at the time.
**Q. Is there a reason you only e-mailed -- I'm sorry. Tell me his name again, last name?**
A. Hoppock, H O P P O C K.
**Q. Is there a reason you e- mailed Mr. Hoppock individually?**
MS. JOKERST: Object to form.
A. Likely, he -- likely, he was contacted, reached out to me and said here's what's going on, here's what I was asked. So I was trying to boil down for him the high points of where things stood.
BY MR. MACROBERTS:
**Q. As you're sitting here now, though, you don't recall whether or not Mr. Hoppock had called you and this was in response to that call?**
A. No. Not specifically. I mean the way the e-mail's written, I wouldn't just normally --

there would be some additional context that prompted the e-mail, but I can't tell you what that was.

**Q. As part of your job as city manager, do you have individual conversations with commissioners?**

A. Yes.

**Q. What is the distinction that is commonly made between murals and art when compared to commercial speech?**

MS. JOKERST: Object to form and foundation.

A. I was trying to refer to there's case law out there. This is -- it's an ongoing conversation or point of discussion about assertions that signs are art and, therefore, not subject to regulation.

BY MR. MACROBERTS:

**Q. Is there a difference between murals and art and commercial speech as you understand the city codes?**

MS. JOKERST: Object to form and foundation.

A. Our code as its written identifies what is a sign, and then anything else is not a sign.

**Q. Based upon your understanding of the code, the display or the art does factor into whether it's deemed a sign?**

MS. JOKERST: Object to form and foundation.

A. No.

BY MR. MACROBERTS:

**Q. Why is that?**

A. It's not about the art. It's about the definition of a sign.

**Q. And when you're talking about the definition of a sign, you need to look at the display to figure that out. Is that right?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. MACROBERTS:

**Q. What are the -- so we're going to stick with page 4 for a little bit here. What are the examples of very similar issues as it relates to what constitutes art, what constitutes a sign, how does free speech get involved, how can signs and art be regulated. What are those examples?**

A. Well, the one --

MS. JOKERST: Form and foundation. I've got to get my objection in.

MR. MACROBERTS: Very well.
BY MR. MACROBERTS:
**Q. Do you see where it says the important distinction here relates to commercial speech and our ability to regulate commercial speech?**
A. Yes.
**Q. When you say our ability to regulate commercial speech, you're talking about the City of Salina, right?**
A. Yes.
MS. JOKERST: Object to form.
BY MR. MACROBERTS:
**Q. And it's your understanding that there is a distinction between commercial speech and other forms of speech?**
MS. JOKERST: Object to form.
A. I was not trying to respond to all forms of speech and parse it that far. I was trying to confirm for the city commission that there is a basis on which we can regulate signs. I used the term commercial speech equating it to advertising and equating it to what I understood the intent of the Cozy sign to be.
BY MR. MACROBERTS:
**Q. And the intent of the Cozy sign is that**

station was conflating a lot of broad topics not applying our code.

BY MR. MACROBERTS:

**Q. So as you understand the city code, that display is a regulated sign?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. MACROBERTS:

**Q. What did you mean when you said we do not regulate based on aesthetics?**

MS. JOKERST: Object to form.

A. Again, I was trying to confirm that we -- this was not an opinion of whether we like the aesthetic aspects of the sign. It was purely a question of is it a sign and does it meet our codes.

BY MR. MACROBERTS:

**Q. And I think later on you commented that the mural popped?**

MS. JOKERST: Object to form.

A. I did or a commissioner did. I've got to confirm that a commissioner did.

BY MR. MACROBERTS:

**Q. Later on you told the city commission, quote, and I would reiterate it's all on the basis**

**of a commercial message. Do you remember saying that?**

MS. JOKERST: Object to form.

A. Yes.

BY MR. MACROBERTS:

**Q. And that was truthful and accurate?**

MS. JOKERST: Object to form and foundation.

A. As it applied to my understanding of the Cozy sign, yes.

BY MR. MACROBERTS:

**Q. At some point, Ms. Driscoll, which you just referenced, talked about the coffee shop hypothetical. Do you remember that hypothetical?**

A. Yes.

**Q. Do you agree with that hypothetical as it relates to the Salina city code?**

MS. JOKERST: Object to form and foundation.

A. That's consistent with my understanding of the case in question, and I think it is illustrative of how we have an example that would -- we would have to parse our code to make a determination as she described.

BY MR. MACROBERTS:

**one that you referenced, based upon your understanding of the city code and thinking about the coffee shop hypothetical, if Mr. Howard painted an airplane on the side of his wall with no verbiage at all, was just a silver airplane, would that be considered a sign?**

MS. JOKERST: Object to form and foundation.

A. No.

BY MR. MACROBERTS:

**Q. Why not?**

MS. JOKERST: Object to form and foundation.

A. It doesn't rise to the criteria specified in our sign code definition.

BY MR. MACROBERTS:

**Q. Is that because Mr. Howard does not sell airplanes on the inside of his business?**

MS. JOKERST: Object to form and foundation.

A. Not just airplanes but, yeah, no direct connection to his business and the depiction of an airplane.

BY MR. MACROBERTS:

**Q. On the coffee shop hypothetical, if a**

**coffee shop painted a dove on the side of its wall and instead of having an olive branch had painted a coffee branch, based upon your understanding of the code, would that be considered a sign?**

MS. JOKERST: Object to form and foundation.

A. I would seek legal counsel on that but, yes, I believe so.

BY MR. MACROBERTS:

**Q. Are you familiar with Andy Warhol's works?**

A. Marilyn Monroe and the tomato cans maybe.

**Q. Yeah. On the tomato can, have you seen that one before?**

A. Quite sometime ago.

**Q. If Mr. Howard had painted an exact replica of Andy Warhol's Campbell's Soup can on the side of his wall, exact replica, would that be considered a sign under your understanding of the city code?**

MS. JOKERST: Object to form and foundation.

A. Applying on my understanding of the definitional criteria, no, I don't believe it would be a sign.

BY MR. MACROBERTS:
**Q. Why not?**
MS. JOKERST: Object to form and foundation.
A. I don't know that it advertises, calls attention to, directs anything pertaining -- as you've described it, anything that he does.
BY MR. MACROBERTS:
**Q. If Mr. Howard started selling Campbell's Soup inside, would that change the analysis for you?**
MS. JOKERST: Object to form and foundation.
A. Yes.
BY MR. MACROBERTS:
**Q. If -- and forgive me. I think there's a grocery store. Is it called DG Grocery Store in town?**
A. Dollar General.
**Q. Okay. Let's just use as a hypothetical a grocery store. If a grocery store paints an exact replica of Andy Warhol's Campbell's Soup can on the side of its wall, would that be considered a sign under your understanding of the code?**
MS. JOKERST: Object to form and

foundation.

A. Yes.

BY MR. MACROBERTS:

**Q. Why?**

MS. JOKERST: Object to form and foundation.

A. Directing attention to and advertising products that they sell.

MR. MACROBERTS: I think we are close if not maybe done. If I could get maybe five minutes just to double-check that I've asked everything I wanted to.

MS. JOKERST: Yeah, that works for me because I would like a little break, too. I might have a couple of questions here, so I can organize my thoughts.

MR. MACROBERTS: Can we go off the record just for a moment.

MS. JOKERST: Yeah.

(THEREUPON, a recess was taken.)

BY MR. MACROBERTS:

**Q. Was there one person who made the decision that the display at the Cozy was a sign or not?**

MS. JOKERST: Object to form.

A. Not to my -- I think it was a collective staff analysis and conclusion.

BY MR. MACROBERTS:

**Q. And for the collective staff analysis and conclusion, who do you mean?**

A. I presume -- certainly Lauren Driscoll and Dean Andrew, and then possibly their planning staff.

**Q. I'm sorry?**

A. Possibly additional planning staff.

**Q. Like who?**

A. Dustin Herrs, I don't even know if Gage Roberts was employed at that point, but we've got a couple planners.

**Q. Are you aware if there have been any traffic accidents as a result of the -- as a direct result of the display on the side of the Cozy?**

MS. JOKERST: Object to form.

A. No, I'm not.

BY MR. MACROBERTS:

**Q. Are you aware of any pedestrian accidents as a direct result of the display at the Cozy?**

MS. JOKERST: Object to form.

A. No, I'm not.

MR. MACROBERTS: That's all I have.
MS. JOKERST: I have a couple of follow-up.
CROSS-EXAMINATION
BY MS. JOKERST:
**Q. Okay. Mr. Schrage, earlier you mentioned something about a sign handout that was provided to Mr. Howard. Do you recall mentioning something about that?**
A. Yes.
**Q. Okay. What handout were you referring to?**
A. My recollection is a sign code analysis that was a summary of the applicable sign code and then staff's analysis of the Cozy zoning category, lot size, math, relative to the size what was being proposed.
**Q. Did you prepare that sign analysis?**
A. No.
**Q. All right. Do you -- in your position as city manager, do you apply the sign code?**
MR. MACROBERTS: I'm sorry. I just -- I didn't hear the question.
BY MS. JOKERST:
**Q. I said in your position as city manager,**

**do you apply the sign code?**
A. Not directly, no.
**Q. Okay. Do you review sign permit applications?**
A. No.
**Q. Do you review Certificate of Compatibility applications?**
A. No.
**Q. In your position as city manager, are you responsible for making determinations about what displays are signs?**
A. No.
**Q. In your position as city manager, are you responsible for -- actually, I'll take that back.**
**Earlier you were asked about a coffee house hypothetical. Do you recall being asked about that?**
A. Yes.
**Q. Okay. Do you know why Lauren provided that hypothetical at the city commission meeting?**
A. I believe it was based on a case that had been litigated.
**Q. Do you know if Lauren used that coffee house hypothetical to compare it to how Salina applies its sign code?**

uncertainty, we would seek legal advice.

BY MS. JOKERST:

**Q. Okay. So if you provided an opinion today that was different than a determination that was made by the Zoning administrator regarding whether or not one of the displays you were shown today was or was not a sign, who's opinion would prevail, your opinion or the Zoning administrator's opinion?**

MR. MACROBERTS: Objection. You can answer.

A. The Zoning administrator.

BY MS. JOKERST:

**Q. From the displays that you were asked questions about today, hypotheticals, whether or not something might or might not be a sign, in your position as city manager, did you make any determinations, official determinations about whether those displays were signs or not signs?**

A. No, I did not.

MS. JOKERST: Okay. I don't have any further questions.

MR. MACROBERTS: Neither do I.

MS. JOKERST: All right.

(THEREUPON, the deposition concluded at