In the United States District Court
for the
District of Kansas

| | |
|---|---|
| **Cozy Inn, Incorporated, d/b/a The Cozy Inn; Stephen Howard.** | Civil Action No. 6:24-cv-01027-TC-ADM |
| Plaintiffs, | Plaintiffs' Reply in Support of Motion for Summary Judgment; Exhibits A-Z; Index of Exhibits; Certificate of Service. |
| v. | Oral Argument Requested. |
| **City of Salina, Kansas.** | |
| Defendant. | |

**Plaintiffs' Reply in Support of Motion for Summary Judgment**

Steve Howard wants to finish painting a whimsical mural on the side of the iconic business he owns, The Cozy Inn, but can't. Salina's entire mural-sign code regime stands in the way.[1]

Because Salina's outdated and idiosyncratic regime is content- and speaker-based under *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015), this Court should apply strict scrutiny, grant the Plaintiffs' motion for summary judgment, and reject Salina's. Doc. 105 at 26-30; Doc. 108 at 24-28. Even *if* the regime is content neutral or a regulation of commercial speech, Salina *still* loses under either *Brewer v. City of Albuquerque*, 18 F.4th 1205 (10th Cir. 2021) (content neutral analysis) or *Aptive Envtl., LLC v. Town of Castle Rock, Colorado,* 959 F.3d 961 (10th Cir. 2020) (commercial speech analysis). Doc. 105 at 32-37; Doc. 108 at 28-37. Salina doesn't have any *actual evidence* of an *actual problem*; it doesn't have evidence justifying any of its restrictions on speech; it doesn't have evidence that the regime is properly tailored; it doesn't have evidence that it considered less restrictive means; and it doesn't have evidence that it leaves open alternative channels of communication. Doc. 105 at 32-37; Doc. 108 at 28-37. Indeed, Salina's argument that "radio advertising" is a constitutionally adequate alternative to a *mural* demonstrates that point. Doc. 108

---

[1] The mural-sign code regime includes the written sign code, the unwritten policies and practices, the permit requirement, the size restrictions, and the concomitant enforcement penalties.

at 34-35. Likewise, the regime is an unconstitutional prior restraint, Doc. 105 at 37-39; Doc. 108 at 37-39, and unconstitutionally vague, Doc. 105 at 39-40; Doc. 108 at 39-40.

The Cozy's one-of-a-kind, UFO-themed mural is safe, and the public adores it. This Court should grant the Plaintiffs' motion and reject Salina's so Mr. Howard can finish painting it.

## Facts

Facts asserted in a motion for summary judgment are "deemed admitted" unless they are "specifically controverted." Local Rule 56.1(a). The nonmoving party can't just claim a fact is controverted. Instead, it must "refer with particularity to those portions of the record upon which the opposing party relies." L.R. 56.1(b)(1). If the nonmoving party wants to introduce additional facts, it must do so by way of an individualized, numbered statement of additional facts. L.R. 56.1(b)(2). Salina has not complied with the Local Rules. In a number of instances, Salina *says* a fact is controverted but then cites to other parts of the record that don't actually controvert the *Plaintiffs' Statement of Facts* (*PSOF*), or it introduces new facts unrelated to the fact asserted by the Plaintiffs, or it makes argumentative legal conclusions. Because none of that is proper, in those instances, the Plaintiffs' facts should be deemed admitted. [2]

### A.    Nonresponsive and improper introduction of facts.

Many of the *Responses by Salina to Plaintiffs' Statement of Facts* (*RSOF*) are nonresponsive and improperly introduce facts unrelated to the Plaintiffs' statement of fact. For example, in *PSOF* ¶ 6, the Plaintiffs stated that "[i]n Salina, murals are prolific" and then cited to the record evidence. Salina responded with "Public art, which includes murals, is not prolific and does not represent a traffic safety or aesthetic issue." *RSOF* ¶ 6, Doc. 109 at 5. Salina's "public art" reference is nonresponsive. The Plaintiffs didn't allege public art was prolific. Salina didn't cite any evidence contravening the assertion that "murals are prolific" either. Instead of responding to Plaintiffs' statement that *murals* are prolific, Salina introduced evidence about whether *public art* is a traffic hazard or aesthetically unappealing. The following *RSOF*s claim to controvert the

---

[2] *See Dartez v. Peters*, No. 15-03255-EFM-DJW, 2017 WL 2774670, at *9 (D. Kan. June 27, 2017); *McDonald v. Raytheon Aircraft Corp.*, 959 F. Supp. 1415, 1416 n.1 (D. Kan. 1997) (responses deemed uncontroverted as they were "nonresponsive because they offer additional facts and/or legal arguments and conclusions").

Plaintiffs' asserted facts, but are both nonresponsive and improperly introduce new facts: 3, 6, 9-19, 22-25, 27, 30, 33-39, 41, 510, 59, 60, 64-68, 70, 74, 76-79, 81, 86-87, 96, 105, 107-108, 116, 128-130, 132-133, 158, 163, 180-182, 184-188, 199, 201, 203, 210, 214-215.

**B.    "Controverted" facts that aren't actually controverted by the record.**

Salina claims the following *PSOF*s are disputed, but its citations just add a few lines of deposition testimony that do not controvert any fact: 7, 20, 32-39, 42, 50, 54-60, 64-68, 70, 74-81, 84-87, 89-91, 93-95, 102, 105, 116-119, 121-123, 126, 132-136, 138-139, 141, 144-145, 149, 151, 155, 160, 162-166, 168-170, 172-178, 182, 184-188, 198, 204, 206-208, 211-212.

**C.    Argumentative legal conclusions.**

Many of Salina's *RSOF*s are improper argumentative legal conclusions rather than contradictions of fact. In *PSOF* ¶ 117 for example, the Plaintiffs stated that "Salina has a firefighter mural at Fire Station #2" and then cited to the record evidence. Salina responded by arguing that "[t]he referenced 'mural' is not pertinent to the application of the Sign Code to the facts of plaintiffs' 'concrete case.' *See* Section I at p.4, *supra*." But Section I of Salina's brief is neither a statement of additional facts nor a contradiction of a statement of facts. It's Salina's legal brief outlining their legal arguments. Salina makes similar argumentative legal conclusions dozens of times, all of which is improper. *See RSOF* ¶¶ 42, 60, 75, 81, 84, 117-122, 124-125, 127-130, 132-135, 137, 140-153, 155-159, 161-167, 169, 170-171, 176-177, 183, 200, 211-212, 216-217.

**D.    Miscellaneous issues.**

In *RSOF* ¶ 3, Salina objects to Plaintiffs' Ex. A, Doc. 105-1, a declaration from Mr. Howard, because it allegedly alters sworn deposition testimony. Salina's objection is not appropriate because it fails to specify which of the declaration's 33 paragraphs allegedly alter sworn deposition testimony. What's more, Salina's claim that Mr. Howard wants customers to go inside The Cozy so he can "upsell" them is not supported by the factual record. Ex. B, Howard Dep. 40:17-25, 41:5-12, 41:16—42:8, 42:19—43:9, 45:9-17, 46:15-25; Ex. J, Windholz Dep. 33:3-16, 33:23—34:3. Even if a particular paragraph of Mr. Howard's declaration did contradict sworn testimony, Salina would need to identify which particular paragraph was objectionable.

Salina is disputing that Mr. Howard wants to finish the mural as depicted in *PSOF* ¶ 15, which depicts alien-piloted burger-esque flying saucers attacking The Cozy with blasts of ketchup and mustard. *RSOF* ¶ 15. The record does not support this position. Salina's own Zoning Administrator testified that "[t]here is no basis to doubt" that Mr. Howard intended to have the rendition depicted in *PSOF* ¶ 15 painted on the wall of The Cozy. Ex. E, Andrew Dep. 356:6—357:2; *see also* Ex. F, Herrs 30(b)(6) Dep. 91:17-21. Mr. Howard, Mr. Benson (the muralist), and Ms. Blase (an employee at The Cozy) all testified, consistently, that the mural will depict flying saucers. Ex. B, Howard Dep. 130:9—131:2, 145:24, 253:10-19; Ex. C, Benson Dep. 25:12; 135:3-5; 137:6-7; 139:15-21; Ex. D, Blase Dep. 14:2-4.

Despite all of that, Salina suggests that because there were preliminary drafts of the project that didn't include aliens, and because the unfinished mural doesn't *yet* have them, the final version won't. *See RSOF* ¶¶ 9-18, 27, 30 (referencing earlier drafts and uncompleted work); *RSOF* ¶ 15 (what is "currently painted" doesn't "contain what Plaintiffs' have referred to as the 'alien pilots'"). Mr. Benson and Mr. Howard each testified that the process was collaborative, and the plans evolved over time, eventually culminating in the rendition at *PSOF* ¶ 15. Ex. B, Howard Dep. 100:10-13, 127:1-19, 253:20-24; Ex. C, Benson Dep. 128:2—129:5, 129:13—131:7. *See also* Ex. AA, Taylor Dep. 183:18—184:11. The reason the mural as "currently painted" doesn't have aliens is because Salina stopped the project. Ex. C, Benson Dep. 137:1-14, 139:15—140:9.

The government contends that the "design approved by Mr. Howard included hamburgers without any depiction of spaceships or alien pilots." *RSOF* ¶ 14 (citing to Salina Exhibit 6 at 12) (*see also* Doc. 109-7). Below is the rendition that Salina says is "without any depiction of spaceships or alien pilots." Not only is that *not* the final rendition (as explained above), but there are also two burger-esque UFOs with clearly visible cockpits and alien pilots near the awning:



In *RSOF* ¶ 55, Salina improperly tries to dispute the accuracy of its own official minutes, which were drafted by Salina and approved by a unanimous vote of the City Commission.

In *RSOF* ¶¶ 108 and 116, Salina disputes that it placed Mr. Howard's sign permit application "on-hold" and contends that Mr. Howard gave his consent to this. The facts show Mr. Howard never agreed to his application being placed on-hold. Ex. A, Howard Dec. ¶ 26. Salina officials testified that Mr. Howard never consented. Ex. E, Andrew Dep. 233:2-6 (Q: "And at any point after he submitted his application, did Mr. Howard consent to it being placed on hold?" A: "No."); *see also id.* 230:7-233:12. Salina first informed Mr. Howard that his application was on-hold on February 8, 2024. Ex. G, On-Hold Letter at CITY000031 ("This letter is to *inform* you that … our office *will be placing* your … sign permit application on-hold") (emphasis added); Ex. H, Michelson Dep. 17:13-23 (on-hold letter sent to communicate on-hold status to applicant).

In *RSOF* ¶ 121, Salina disputes the accuracy of its own staff report in Plaintiffs' Ex. K, Art Center DRB Packet, based on Mr. Andrew's testimony, but Mr. Andrew testified that the report was correct. Ex. E, Andrew Dep. 283:17-21, 285:11-14.

In *RSOF* ¶¶ 147-148, Salina disputes that Mr. Benson painted bike themed murals for a bike store, Bike Tek, which Salina has never enforced the mural-sign code regime against. Salina contends that the photograph, Plaintiffs' Ex. L, Mural Photos at 300, has not been properly authenticated. Even if this is true, the deposition testimony of Mr. Benson and Salina's interrogatory responses still provide ample evidentiary support for *PSOF* ¶¶ 147-148. Ex. C, Benson Dep. 69:9-16, Ex. M, Def. Amend. Ans. to First Set of Interrog., Rog. 8.

In *RSOF* ¶¶ 155-158, Salina denied that the Bull Durham Tobacco mural is considered an abandoned sign under § 42-510, which must be removed because it no longer advertises a *bona fide* business. Instead, Salina contends the mural is exempt from regulation as a preexisting nonconforming sign. But the Zoning Administrator testified that a lawful nonconforming sign is still subject to abandonment under § 42-510 if it no longer advertises a *bona fide* business. Ex. E, Andrew Dep. 121:22—123:5. The record evidence shows that instead of enforcing § 42-510, Salina created an unwritten exemption "[b]ecause it was originally an internal sign on the wall of an

enclosed building that it was exposed to daylight in 1986 when the building that occupied that site was torn down turning the interior wall into an exterior wall." Ex. E, Andrew Dep. 301:21-25.

Salina objects to *PSOF* ¶ 183 on the grounds that it exceeded the scope of the 30(b)(6) notice, Doc. 80-1, and that Plaintiffs have not provided "authority for that proposition that before-and-after studies of the efficacy of sign codes is a constitutional requirement." *RSOF* ¶ 183. Plaintiffs noticed the 30(b)(6) topic of "The facts supporting the government's contention that its application of the mural-sign code regime promotes the following claimed government interests, both in general and as applied to The Cozy's mural: Traffic Safety." Doc. 80-1 at 1. Plaintiffs asked the 30(b)(6) witness "Is the city aware of any facts showing that the sign code, in fact, enhances traffic safety, has succeeded in its objective?" Ex. F, Herrs 30(b)(6) Dep. 73:13-16. The witness answered by claiming that a before-and-after study would be required: "I don't know how you would even do a study like that if you have these design standards, because you wouldn't have a before and after picture to evaluate." Ex. F, Herrs 30(b)(6) Dep. 73:18-21. The witness opened this door and Plaintiffs just asked the logical follow-up question of whether Salina was aware of any such study by any municipality. Ex. F, Herrs 30(b)(6) Dep. 73:23—74:3.

Salina disputes that its expert's publication, *Content-Neutral Sign Codes After Reed and Austin*, is a "learned treatise" on the grounds it was targeted at urban planners. *See RSOF* ¶ 212, Under FRE 803(18)(B), a publication is considered a learned treatise if it "is established as a reliable authority by the expert's admission or testimony," FRE 803(18)(B), which Mr. White did here. Ex. N, White Dep. 191:19—192:2.

E.    **The Plaintiffs' objections.**

The Plaintiffs object to Salina's *RSOF* ¶¶ 136 and 139, which argue that Plaintiffs' mural is too big. This is hearsay and violates the best evidence rule. Salina officials testified that they have never physically measured The Cozy Inn, its signs, or the mural. Ex. I, Herrs Dep. 24:20-22. Instead, the cited measurements allegedly came from Salina land records and software records, but no such records are in the evidentiary record. Ex. F, Herrs 30(b)(6) Dep. 93:17—94:1, 96:8-22.

**F.      The Plaintiffs' responses to Salina's Additional Statement of Facts.**

1.      **Objection**: Contains multiple statements of fact.

**Response**: Argumentative legal opinion. Not supported by fact or evidence.

2.      **Response**: Plaintiffs admit the text of §§ 42-764 and 42-637. Defendant's commentary on the code is argumentative legal opinion.

3.      **Objection**: Contains multiple statements of fact.

**Response**: This is not in fact how Salina applied the code against The Cozy. Salina applied the regime against The Cozy because Salina believed it communicated a commercial message. Ex. O, Schrage Email 11/8/23; Ex. P, Talking Points; Ex. Q, Schrage Email 11/9/23 at CITY000221; Ex. C, Benson Dep. 82:9-17; Ex. R, Comm. Tran. 5:2-5, 5:23-25, 10:4-5, 22:24—24:4, 26:17-22, 27:3-6, 28:1-8, 28:16-21; Ex. S, Schrage Dep. 61:1-3, 61:18-23, 62:1-5, 85:20—87:19; Ex. T, Schrage Email 2/20/24; Ex. U, Plts.' First Amend. Resp. to First Set of Interrog., Rog. 6; Ex. E, Andrew Dep. 89:11—90:3, 170:7—171:20; Ex. V, Driscoll Dep. 155:6—156:12.

4.      **Objection**: Contains multiple statements of fact.

**Response**: Salina's citations to Salina's Ex. 1, Doc. 109-2, 82:2-25, 83:1-3, 87:2-25, 88:1-25, 89:1-5 involve a 2021 certificate of compatibility application, not sign regulations. Mr. Howard's testimony at 240:15-17, 241:4-15 is that he did not understand the sign code and does not mention Plaintiffs' intent. Ms. Windholz is not a plaintiff in this matter, and her deposition statement in Salina's Ex. 23, Doc. 109-24, says nothing about her knowledge or intent.

5.      **Response**: Salina considers a display "affixed to the interior of a window" to be a "sign" that is subject to the regulations of the mural-sign code regime even though it does not meet the requirements of § 42-764(3). Salina Code § 42-504(9); Ex. W, Andrew 30(b)(6) Dep. 15:15-24. Salina does not consider the mural at The Yard, Ex. L, Mural Photos at 91, 123, 124, 301, to be a sign because Salina claims it is inside a building. Photographs show it is painted on the exterior brick wall of Building A and adjacent to Building B, the covered baseball field. Ex. X, Yard DRB Packet at 0166, 183.

6.    **Response**: Plaintiffs admit the text of § 42-511. Defendant's commentary on § 42-511 is argumentative legal opinion.

7.    **Objection**: Contains multiple statements of fact; argumentative legal opinion.

**Response**: This additional statement of fact contradicts the testimony of Salina's 30(b)(6) representative and its answers to interrogatories. *See* Ex. F, Herrs 30(b)(6) Dep. 73:13-21, 73:23—74:3, 74:5-15, 74:17—75:8, 76:19-23, 76:25—77:10, 25:14-17, 77:23—78:10; Ex. Y Def. Ans. to Second Set of Interrog., Rog 1.

8.    **Response**: Salina's Ex. 15, Doc. 109-16 at 92:15-24, 93:1-16, 94:11-25, 96:3-25, 97:1-8, 98:1-13, do not support this contention.

9.    **Response**: (1) Plaintiffs admit The Cozy Inn communicates some messages via Facebook, radio advertising, banner advertising at indoor football events, and billboards. (2) Branded merchandise or bumper stickers worn or used by their customers are the communications of the individual displaying them, not The Cozy Inn. Ex. E, Andrew Dep. 33:23—35:5. (3) The mural at Jenni's Liquor is a communication of Jenni's Liquor and its owners, not The Cozy Inn. (4) Any implication that these communications provide an alternative channel of communication is an argumentative legal opinion.

10.    **Response**: Plaintiffs deny the implication an appeal is required and deny that Salina ever made a formal determination under Salina Code §§ 42-502 and 42-596(c), preventing an appeal under § 42-597. Ex. G, On-Hold Letter, Ex. F, Herrs 30(b)(6) Dep. 109:24—110:2.

11.    **Response**: Plaintiffs admit the text of § 1-11. Defendant's commentary on § 1-11 is argumentative legal opinion.

## Reply Argument

### I.    The Plaintiffs have standing.

Salina insinuates that Mr. Howard should have administratively appealed *something* to *someone* but doesn't say *what* should have been appealed, or *to whom* the appeal should have been made. Salina doesn't cite any cases for that proposition either. Doc. 109 at 3, 4. The criticism is unfounded. To the extent it's a legal argument, it's incorrect. Mr. Howard didn't need to exhaust

administrative remedies before bringing this § 1983 suit. *See, e.g., Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Dennis v. Higgins*, 498 U.S. 439, 454 (1991); *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 502 (1982). Besides, under Kansas law, Salina's administrative bodies can't declare the mural sign-code regime unconstitutional, which is the relief Mr. Howard seeks. *See, e.g., Kansas Bldg. Indus. Workers Comp. Fund v. State*, 49 Kan. App. 2d 354, 381-383 (2013), *aff'd*, 302 Kan. 656, (2015).

Salina also contends that the Plaintiffs lack standing because in its view, what Mr. Howard *really* wants is to force the dozens of unregulated murals around town to join the "universe of regulated signs." Doc. 109 at 23. Salina misconstrues the relief Mr. Howard seeks. The Plaintiffs are seeking a declaratory judgment that Salina's mural sign-code regime is unconstitutionally content- and speaker-based, unconstitutionally vague, and that it is unconstitutional prior restraint. Doc. 16; Doc. 101. The Plaintiffs are seeking injunctive relief that would enjoin Salina from enforcing its unconstitutional regime against *the Plaintiffs*. This Court is perfectly capable of crafting such narrow relief.

Salina also suggests that this Court may not redress the Plaintiffs' injury because the Court could just sever the phrase "used to announce, direct attention to, or advertise" from the written definition of a "sign." Yet Salina itself insists that "[t]he full text of the definition of 'sign' is the heart of this case." Doc. 109 at 24. The crux of Salina's argument is that the phrase "used to announce, direct attention to, or advertise," is the key language of the sign code, and that it is "nonsensical" to try to define a sign without this phrase. Doc. 109 at 25-26. A court may not sever "such an integral and inseparable part of the whole scheme and purpose of the law," *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1024 (1993) (cleaned up), because this would "change[] the scope of the Act," *id.*, and would "effect[] the meaning of what remains," *Clark v. City of Williamsburg, Kansas*, 388 F. Supp. 3d 1346, 1362 (D. Kan. 2019), *aff'd*, 844 F. App'x 4 (10th Cir. 2021) (cleaned up). *See also* Doc. 108 at 18-22.

## II.    *City of Austin* **did not overrule** *Reed*.

Salina overreads *City of Austin v. Reagan Nat'l Advert.*, 596 U.S. 61 (2022). The Court did not "completely reject[]" its "read the sign" analysis. Doc. 109 at 27. Instead, the Court explained that an "examination of speech *only* in service of drawing neutral, location-based lines" doesn't make it "*automatically* content based." *Id.* at 69 (emphasis added). Austin's "location-based and content-agnostic" regulations didn't "single out any topic or subject matter for differential treatment," and there was "no evidence in the record that the City had applied the sign code provisions differently for different messages or speakers." *Id.* at 73-74, 76, 67 (cleaned up). *This* regime and *this* record are far different from *Austin*. This case isn't about billboards, and it doesn't involve off-premises, location-based regulations. Salina's repeated statements, actions, and testimony proves the regime is anything but content-agnostic, and even though all painted wall-displays are the same physical *thing* (paint on walls), Salina treats them differently depending on *what* the paint displays and *who* is painting it. Salina's code enforcers need to look at the art, interpret it, divine its meaning, and "evaluate whether" it makes "a declaration about a fact, occurrence, or intention or proclaims or gives notice of, or identifies," or "evaluate[s] whether the display is meant to attract customers" or "encourage[s] a commercial transaction," and the like. Ex. Z, Def. Rep. to First Set of Ingerrogs, Rog 5. For a city that *says* it's agnostic about the content of a display, Salina spends a lot of time and energy disputing the content of The Cozy's mural. *RSOF* ¶¶ 9-18, 27, 30. Salina even questioned Mr. Howard's expert about the scientific accuracy of depicting spaceships without any visible means of propulsion. Ex. AA, Taylor Dep. 183:18—184:11.

What's more, the *Austin* majority cabined its own holdings, explaining that it didn't "nullify *Reed*'s protections," or "cast doubt on any" "precedents recognizing examples of topic or subject-matter discrimination as content based." *Austin*, 596 U.S. at 76. Salina's mural-sign code regime is content based because it "target[s] speech based on its communicative content," it "applies to particular speech because of the topic discussed or the idea or message expressed," it targets "specific subject matter," it "draws distinctions based on the message," "cannot be

justified without reference to the content of the regulated speech," it "defin[e]s regulated speech by its function or purpose," and because it "disagree[s] with [certain] message[s]." *Reed,* 576 U.S. at 155, 163-64, 169 (cleaned up). In short, this case is controlled by *Reed,* not *Austin.*

**III.    Private property does not receive lesser protection than the traditional public forum.**

Salina claims there is a "stricter version of the intermediate scrutiny test" that applies in a traditional public forum, and a different "conventional intermediate scrutiny" test that applies to private property. Doc. 109 at 34. Salina argues that because *Brewer v. City of Albuquerque,* 18 F.4th 1205 (10th Cir. 2021), and *McCraw v. City of Oklahoma City,* 973 F.3d 1057 (10th Cir. 2020), involved traditional public fora, the stricter version applied there, but shouldn't apply here. Doc. 109 at 34. Because The Cozy is "private property," Salina implies that the more permissive test for nonpublic fora should apply. Doc. 109 at 34 (citing nonpublic fora standard). This confuses private property with a "nonpublic forum."

The distinction between a traditional public forum and a nonpublic forum is entirely about the "extent to which the government can control access" to *government* property. *Brewer,* 18 F.4th at 1219 (describing forum analysis) (cleaned up). Both a traditional public forum and a nonpublic forum involve *government-owned property* that the *government itself* is managing. Greater restrictions are allowed in a nonpublic forum, where the government may restrict public access, including prisons, military bases, and a school district's internal mail system. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46 (1983). The caselaw involving government restrictions of speech in a nonpublic forum is simply irrelevant to restrictions on private property.

Salina confuses the issue further by implying that the "stricter version of intermediate scrutiny" for the traditional public forum applied in *Brewer* and *McCraw* was distinct from the "conventional intermediate scrutiny" that was applied in *Ward v. Rock Against Racism,* 491 U.S. 781 (1989). Doc. 109 at 34. But *Ward* was about speech restrictions in a traditional public forum as well. *Id.* at 791. What's more, *Brewer* and *McCraw* relied on, interpreted, and applied *Ward.* Finally, in *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984), where the Supreme Court held that public utility poles were a nonpublic forum, *id.* at 814-15, the Court

recognized that private property was not the same thing as nonpublic forum, and private property wasn't regulated the same way because "private property owners' esthetic concerns will keep the posting of signs on their property within reasonable bounds," *id.* at 811.

## IV.    Governmental interests must be substantial in fact, not just in the abstract.

Salina insists its alleged interests in aesthetics, property values, traffic safety, and pedestrian safety are "substantial governmental interest[s] as a matter of law," and it is "downright erroneous" for the Plaintiffs to question those interests. Doc. 109 at 33. Salina misapprehends the difference between an interest that may be substantial *in the abstract* and an interest that is substantial *in fact*. Traffic safety may well be a *theoretically* substantial interest, but whether there is *actually* a substantial traffic safety issue is a question of fact. *Brewer*, 18 F.4th at 1238 ("significant government interests" in traffic and pedestrian safety must be "real and not speculative."); *Aptive*, 959 F.3d at 995–96 (substantial interest "in the abstract" does not "justify any regulation simply through talismanic invocation of that interest."). Salina has not provided any evidence that murals, even murals Salina considers signs, *in fact* pose any threat to aesthetics, property values, traffic safety, or pedestrian safety. As a result, Salina lacks a substantial government interest in regulating murals.

## V.    This Court can review the evidence of the proliferation of murals in Salina.

Salina suggests that because the Plaintiffs are mounting an as-applied claim, this Court should ignore the Plaintiffs' references to the dozens of unregulated murals around town, including the Mural at the Mill. Salina doesn't develop this argument, it just highlights one sentence from *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243 (10th Cir. 2023), that says "an as-applied challenge tests the application of that restriction to the facts of a plaintiffs' concrete case." Doc. 109 at 3. That Salina wants to keep this Court from considering that evidence is unsurprising. Even though all painted wall-displays are the same physical *thing* (paint on walls), the evidence shows that Salina treats them differently depending on *what* the paint displays and *who* is painting it. The Mural at the Mill isn't regulated, but the mural at The Cozy is, all because of *what* it depicts and *who* painted it. That evidence, along with dozens of other examples around town, disproves

Salina's argument that it did not apply its code in a content- or speaker-based way; and likewise, it disproves Salina's argument that it "administered" the "code to its letter." Doc. 109 at 3. So, when Salina *says* it applies its code in a content-neutral way, it's perfectly reasonable for this Court to see what Salina has *actually done. See Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1334 (M.D. Fla. 2009) (discussing the abundance of unregulated murals in city). It also demonstrates the mural-sign code regime is based on a long history of unwritten policies and practices. *See id.* Furthermore, in as-applied claims, courts are *supposed* to look to the facts of the case, *not* ignore them. A finding that a law is not facially content based "does not end the First Amendment inquiry." *Austin,* 596 U.S. at 76. Instead, a court must then analyze whether a facially content-neutral law is in fact content based. *Id.* It is therefore appropriate to examine the evidence of other murals in Salina when considering if the city's sign code violates the First Amendment. *See id*; *Complete Angler,* 607 F. Supp. 2d at 1334.

Consideration of the proliferation of unregulated murals throughout Salina is also appropriate in the Plaintiffs' facial claims. For one instance, if Salina is indeed enforcing the code "to its letter" as it says, the dozens of unregulated murals show the "letter" of the code is *in fact* facially content- and speaker-based.

Moreover, the "distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and dispositions in every case involving a constitutional challenge." *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (cleaned up); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012) (in a facial challenge, there is "no one test that applies"). The facial and as-applied "label is not what matters," because "facial challenges and as-applied challenges can overlap conceptually." *Supreme Ct. of N. M.*, 839 F.3d at 907 (cleaned up). "Indeed, the line between facial and as-applied relief is a fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation." *Id.* at 908. The same substantive legal standards apply regardless. *Doe*, 667 F.3d at 1127–28. Put simply, the distinction between an as-applied and facial challenge is not about what evidence can be

considered, or what substantive test will apply, but "goes to the breadth of the remedy employed by the Court" instead. *Doe*, 667 F.3d at 1124 (cleaned up); *see Sup. Ct. of N.M.*, 839 F.3d at 917.

At bottom, the Plaintiffs are referencing the dozens of unregulated murals around town, which includes the Mural at the Mill, to show that either Salina applies its code in content- and speaker-based manner, or the code is facially content- and speaker based. Either way, it's proper for this Court to consider them.

## VI.  The mural-sign code regime is an unconstitutional prior restraint.

Salina argues that the regime is not an unconstitutional prior restraint because "Mr. Howard agreed that his sign permit application would be held in abeyance." Doc. 109 at 37. Mr. Howard never consented to his sign permit application being placed "on-hold." *PSOF* ¶ 116; Ex. A, Howard Dec. ¶ 26. The Zoning Administrator testified that Mr. Howard never consented. Ex. E, Andrew Dep. 233:2-6. Salina puts applications "on-hold" when in "the discretion of the reviewer if they feel like they're actively working with an applicant." Ex. W, Andrew 30(b)(6) Dep. 29:7-18. Salina first informed Mr. Howard that his application was on-hold months after the 10-day deadline of § 42-502 passed. Ex. G, On-Hold Letter at CITY000031 ("This letter is to *inform* you that … our office will be *placing* your … sign permit application on-hold") (emphasis added); Ex. H, Michelson Dep. 17:13-23 (letter communicated on-hold status to applicant). Besides, Salina's own statement of facts don't support the contention Mr. Howard agreed. *See* Def. Doc. 107 at 10, *Defendant's SOF* ¶ 23 ("the City also *understood* that Mr. Howard agreed that his sign permit application (submitted on November 13, 2023) would be placed on hold.") (emphasis added); Doc. 109 at 113 *RSOF* ¶ 116 ("the City *thought* they had an understanding from verbal conversations.") (emphasis added). It's plainly evident, based on the factual record, that Salina knows Mr. Howard never consented to Salina's decision to place his application "on-hold." Salina's regime is an unconstitutional prior restraint.

## VII.  The mural-sign code regime is unconstitutionally vague.

The vagueness of Salina's mural-sign code regime can be seen by simply looking at the murals Salina has allowed around town and reading Salina's claimed justifications for exempting

them. The mural at The Yard is painted on the external brick wall of a building, adjacent to a covered baseball field. It is not inside the covered baseball field. Yet Salina insists that the code is malleable enough to say that it is inside the covered baseball field. See Ex. L, Mural Photos at 91, 123, 124, 301.



The mural-sign code regime is also vague enough for Salina to determine that the Bull Durham Tobacco mural, which clearly meets the definition of an abandoned sign in § 42-510, is not an abandoned sign because it was, allegedly, an indoor sign at some point in the distant past. Ex. L, Mural Photos at 93.



The written code does not contain any exemption for displays that were formerly indoors but are now outdoors. The vagueness of this code unconstitutionally "authorizes or encourages seriously discriminatory enforcement." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

### Conclusion

This Court should grant the Plaintiffs' motion for summary judgment and reject Salina's. *See* Docs. 105, 108.

Dated: March 14, 2025.                    Kansas Justice Institute

/s/ Jeffrey Shaw
Samuel G. MacRoberts, 22781
Jeffrey Shaw, 29767
12980 Metcalf Avenue, Suite 130
Overland Park, Kansas 66213
sam@kansasjusticeinstitute.org
(913) 213-5018
Attorneys for Plaintiffs

## Certificate of Service

The undersigned certifies that on March 14, 2025, the above document(s) were filed using the CM/ECF system, which will send notification of such filing to all participants.

/s/ Jeffrey Shaw
Jeffrey Shaw