# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **Cozy Inn, Incorporated,** | ) |
| **d/b/a The Cozy Inn; Stephen Howard,** | ) |
| | ) |
| **Plaintiffs,** | ) CIVIL ACTION |
| | ) CASE NO. 6:24-cv-01027-TC-ADM |
| v. | ) |
| | ) |
| **City of Salina, Kansas,** | ) |
| | ) |
| **Defendant.** | ) |

## **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, City of Salina, Kansas ("City"), by and through its attorneys Fairfield and Woods, P.C. and Clark, Mize & Linville, Chartered, respectfully requests that this Court grant the City's Motion for Summary Judgment ("Motion"), and in support thereof Replies as follows:

### I.     INTRODUCTION

This Court should enter summary judgment for the City and against Plaintiffs on all counts of the Complaint or dismiss the Complaint for want of subject-matter jurisdiction. In the alternative, the Court should dismiss this matter because Plaintiffs have failed to state any claim. *See* City's Mot. to Dismiss (ECF 26); Brief in Support of City's Mot. to Dismiss (ECF 27).

Plaintiffs' shotgun approach to this case produces self-inflicted wounds. On the one hand, Plaintiffs strenuously complain that it is unfair to regulate the Cozy Sign as a "sign" while other displays[1] that are not signs (as they are not "used to announce, direct attention to, or advertise," and which Plaintiffs describe as "murals") are not also regulated. Yet Plaintiffs' dissatisfaction in

---

[1] In the interest of brevity the City uses "display" to refer to "any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character."

this regard does not relate to any of their causes of action—there is no equal protection claim before this Court, and none of the First Amendment tests identified by Plaintiffs are concerned with such things. On the other hand, Plaintiffs complain that the Cozy Sign should not be regulated because it is just a "story about travel," and therefore not "used to announce, direct attention to, or advertise." ECF 108 at 12 ¶ 40. That alleged story is irrelevant. Regardless of any tale Plaintiffs may contend that it tells, the Cozy Sign is obviously "used to announce, direct attention to," *and* "advertise"—so it is subject to the sign code. ECF 108 at 1 (photo), 2 (A), 5 ¶19 and 12, ¶ 40; ECF 107 at 13, ¶¶ 35-37. Plaintiffs do not seek declaratory judgment to the contrary.

In sum, Plaintiffs' claims are entirely without merit, and on this record Plaintiffs also lack standing to bring them. The definition of "sign" is content neutral (and constitutional), and so are the City's permit requirements and size limitations. While Plaintiffs raise the specter of "unwritten policies and practices," the Cozy Sign is clearly "used to announce, direct attention to, or advertise," and nothing that the City has said or done is inconsistent with the application of that definition to the letter. The Court should dismiss the case or enter summary judgment for the City.

## II.   RESPONSE TO ADDITIONAL FACTS

1. Disputed. Not a Material Fact. The exhibits cited include photos of signs that require permits (ECF 108-35 at 7, 10, 11, 16), pre-existing non-conforming signs (ECF 108-35 at 6), or displays that are located inside of a building (ECF 108-35 at 5, 14, 15, 17). **Ex. A** (City's Resp. to RFA) at No. 13, 21, 26; **Ex. B** (Dustin Herrs Dep.) at 75:1-24, 129:1-25, 130:1-11; **Ex. C** (Dean Andrew (30)(b)(6) Dep.) at 69:1-23, 67:4-14; **Ex. D** (Dean Andrew Dep.) at 304:20-25.

2. Disputed.  Not reflective of summary judgment record. **Ex. D** at 72:2-19, 75:10-14.

3. Disputed.  Mr. White did not refer to it as a learned treatise. It was a promotional publication targeted to the sign industry. **Ex. E** (Mark White Dep.) at 31:8-13, 191:19-192:1-2.

4. Disputed. The City has not threatened anything. ECF 101 at 18-19.

### III.  ARGUMENT

#### A.  Plaintiffs Lack Standing

Article III jurisdiction is a requirement that subsists through all stages of federal judicial proceedings. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "'The party invoking federal jurisdiction bears the burden of establishing' standing . . . ." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 411-12 (2013) (quotation omitted). Plaintiffs seek to "upend" the sign code. ECF 108 at 21. That drastic step would be "fundamental," and would do "violence to legislative intent." *Outdoor Systems, Inc. v. City of Lenexa, Kan.*, 67 F. Supp. 2d 1231, 1241 (D. Kan. 1999) (citation omitted). Even if the Court found that individual words or phrases were problematic (which it should not), "[c]onstitutional litigation is not a game of gotcha . . . where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 627 (2020). The challenged phrase "used to announce, direct attention to, or advertise," if problematic, would be a "discrete constitutional flaw" that cannot be used to "take down the whole, otherwise constitutional statute." *American Ass'n of Political Consultants*, 591 U.S. at 627. If this Court determines that the application of the Sign Code cannot constitutionally be limited to those displays that are "used to announce, direct attention to, or advertise," then the Court should sever some or all of that phrase and leave the rest of the definition (and the sign code) intact.

Alternatively, if the Court were to reconstruct the definition of sign as Plaintiffs suggest, the challenged language would no longer be at issue. ECF 108 at 23. Either way, the result is the same—the Cozy Sign is still a "regulated sign." Even the fallacious argument diagramming the City's alleged interpretations (the City has used the term "display" as shorthand for 46 words at

the beginning of the definition of sign, *see* n.1, *supra*) does not change that outcome. *Id*. Plaintiffs cannot meet the redressability requirement and therefore, even if the challenged language is severed or made inapplicable by way of grammatical reconstruction, the Sign Code still applies to the Cozy Sign. ECF 108 at 2 (A); ECF 107 at 17, ¶¶ 61, 63. As to purported "unwritten definitions and policies," Plaintiffs have not articulated any that independently prevent them "from finishing their mural," so standing to challenge "unwritten definitions and policies" is not established either. In sum, Plaintiffs have not carried their burden regarding standing. Federal courts do not decide "academic questions." *Wyoming v. U.S. Dept. of Interior*, 587 F.3d 1245, 1247 (10th Cir. 2009).

**B.     The Sign Code is Content-Neutral on its Face**

The Sign Code is facially content neutral. The core of this case is whether the definition of sign, which involves whether a regulation of displays "used to announce, direct attention to, or advertise" that are "not located inside a building" is content neutral on its face. **Ex. F** (Salina Code Excerpts) at 5. The material fact on this point is undisputed: "sign" is defined by Salina Code ("S.C.") § 42-764. ECF 108 at 3, ¶ 3.; **Ex. F** at 5. This question of law is answered by the referenced text. *See City of Austin v. Reagan Nat'l Adv. of Austin, LLC*, 596 U.S. 61, 64, 76 (2022); *Harmon v. City of Norman, Okla.*, 981 F.3d 1141, 1148 (10th Cir. 2020). S.C. § 42-764 does not "single[] out specific subject matter for differential treatment." *Austin*, 596 U.S. at 69 (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169 (2015)); ECF 108 at 3, ¶ 3, **Ex. F** at 5. The *Reed* Court struck down a very different sort of regulation—one that singled out topics such as "ideological signs" and "political signs" into "23 different categories." *Id*. at 69-70. In stark contrast to the regulations struck down in *Reed*, the Sign Code's text does not reference topics, ideas, messages, or viewpoints regarding what is announced, the objects or locations to which attention may be directed, or the contents of any advertisement. ECF 108 at 3, ¶ 3, Ex. F at 5. The Complaint does not contain any

allegations that the Sign Code regulates displays based on the City's disagreement with a message, thus there can be no fact to dispute in this regard. ECF 16.

The Response distorts the law and the facts in its content-based argument. The string cite that the Response offers at page 32 to advance this "content based" theory is a wild goose chase, and the cases therein simply cannot bear the weight that Plaintiffs put on them. First, whether Plaintiffs' speech is commercial or not is not germane to the Sign Code. The closest question is whether the speech is "advertising," which could be either commercial or non-commercial. Second, none of the string cited cases support the contention that a commercial versus non-commercial distinction, alone, requires strict scrutiny. Indeed, all of the cited cases that dealt with commercial speech applied intermediate scrutiny as articulated in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557 (1980).[2] Those that addressed non-commercial speech applied strict scrutiny only where non-commercial speech was regulated based on specific ideas or topics.[3] None of the string-cited cases are relevant, let alone supportive of the contention that the Sign Code is unconstitutional. ECF 108 at 32.

### C. The Sign Code is Content-Neutral As-Applied

The City applied the facially content neutral Sign Code, by its letter, to the Cozy Sign. As-applied challenges "test the application" of the regulation "to the facts of a plaintiff's concrete case." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1248-49 (10th Cir. 2023). It is undisputed the City prepared The Cozy Inn Sign Analysis and provided it to Mr. Howard on

---

[2] *Morris v. City of New Orleans*, 399 F. Supp. 3d 624, 638 (E.D. La. 2019); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993).

[3] *Reed*, 576 U.S. 155 (2015), *Ficker v. Talbot Cty., Md.*, 553 F. Supp. 3d 278 (D. Md. 2021) (political signs); *Neighborhood Enterprises, Inc. v. City of St. Louis*, 644 F.3d 728, 731 (8th Cir. 2011) (political message); *Dimmit v. City of Clearwater*, 985 F.2d 1565 (11th Cir. 1993) (U.S. Flags); *Bee's Auto, Inc. v. City of Clermont*, 8 F. Supp. 3d 1369 (M.D. Fla. 2014) (non-commercial classifications)

November 13, 2023. ECF 108 at 2 (A); ECF 107 at 12, ¶ 29; **Ex. G** (The Cozy Inn Sign Analysis). The Response does not dispute the text of S.C. §§ 42-764, 42-781, the quoted text of § 42-521(4)(b) (setting forth the size limits in C-4 district), or that the Cozy Sign is in the C-4 district. ECF 108 at 2 (A); ECF 107 at 7-8, ¶ 5; **Ex. F**. The Cozy Inn Sign Analysis demonstrates element by element how the City applied the Sign Code to the Cozy Sign. **Ex. G**.

The Response handpicks statements made by City staff who do not apply the Sign Code and ignores City staff testimony from the same transcript showing the City interpreted the Sign Code as written and applied it to the Cozy Sign to the letter. **Ex. H** (November 13, 2023 Meeting Tran.) at 15:1-25 ("If you look at our definition of a sign. . ."); *compare* ECF 108 at 2, ¶ 2 (citing to "Comm. Tran."). The commercial message of the Cozy Sign is germane only because it is an indicium that the Cozy Sign is "used to . . . advertise." ECF 108 at 24. Thus, it falls within the purview of S.C. § 42-764, just as a non-commercial advertisement would. **Ex. D** at 54:18-55:8.

D.  **There Is No Independent "Speaker Based" Claim**

The City moved for summary judgment on "all claims." ECF 107 at 23, 40. There is no independent cause of action that a regulation is unconstitutional because it is "speaker-based." Section 4.B. of the Motion (ECF 107) sets out why the Sign Code is content neutral on its face and as-applied. That subsumes—and negates—Plaintiffs' so-called "speaker-based" argument, which is simply a prong of the analysis into whether a regulation is content based. *Reed*, 576 U.S. at 170 ("Characterizing a distinction as speaker based is only the beginning—not the end—of the inquiry."). The inquiry into whether a regulation is speaker based is part of the determination of whether a regulation is "justified without reference to the content of the regulated speech," or was "adopted by the government because of disagreement with the message [the speech] conveys," *Reed*, 576 U.S. at 164. The summary judgment record does not contain any evidence (or purported

6

facts) that the government disagrees with the message the Cozy seeks to convey, because Plaintiffs did not make any allegations in that regard. ECF 16. As such, there is no disputed material fact. The Response's "speaker-based" analysis is a collection of hypotheticals involving made-up speakers in situations that are not before the Court, and there is no common ground among those speakers from which the court could reasonably infer a "content preference."

E.   **The Sign Code Passes Intermediate Scrutiny on Its Face and As-Applied**

Because the Sign Code is content neutral, the three prong "intermediate scrutiny" test applies. *Ward v. Rock Against Racism*, 491 U.S. 781, 797, 799 (1989). Prong 1: The text of S.C. § 42-500, entitled "*Purpose*," is undisputed. ECF 108 at 4, ¶ 4, **Ex. F** at 1. S.C. § 42-500 states in pertinent part that Article 42 "promotes the public health, safety and welfare of the community through a comprehensive system of . . . sign standards and requirements drawn to . . . "improve *pedestrian and traffic safety*," "protect the *aesthetic* appearance of the city's natural and building environment" and "protect *property values*." (emphasis added). As a matter of law, the City's interests in aesthetics, traffic safety, and property values are substantial, content neutral government interests. *Stockinger*, 79 F.4th at 1251; *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 795, 805, 807-08, 817.

Prong 2: The Court decides as a matter of law whether the Sign Code "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799. It is undisputed the City regulates the size, number, and location of signs. ECF 108 at 3, ¶ 3 (admitted to text of S.C. § 42-764), at 3, ¶ 9 (admitted to text of S.C. § 42-521(4)(b) that allows "[i]n the C-4 district, three (3) square feet of sign area for each lineal foot of building frontage"), at 16, ¶ 52 (admitted as to text of S.C. § 42-521 that states "four (4) signs per business" in C-4 district), at 9, ¶ 30 ("Plaintiffs admit that Salina officials testified to these

measurements" which showed the Cozy had 63 square feet of allowable sign area), at 10, ¶ 32 ("Plaintiffs admit that Salina officials stated these measurements at deposition" which showed the Cozy had 10.12 square feet of allowable sign area remaining), and at 2 (A) (ECF 107 at 12, ¶ 29 (The Cozy Inn Sign Analysis was provided to Mr. Howard); **Ex. G**. "[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S 703, 726 (2000).

Time, place, and manner restrictions, like the City's size, number, and location regulations, *per force* address the "distinct safety and esthetic challenges" posed by signs. *Austin*, 596 U.S. at 64, 71, 75. In fact, in *Reed*, the court held "that a city might reasonably view the general regulation of *signs* as necessary because *signs* 'take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.'" *Reed*, 576 U.S. at 173 (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994)) (emphasis added). *Reed* recognized that "regulating size" was one "content-neutral option[] available" to effectively "resolve problems with safety and aesthetics." *Id*. at 173, 174-75 (Alito, J. concurring, noting that municipalities can enact "rules that would not be content based" such as "rules restricting the total number of signs allowed per mile of roadway.")).

Prong 3: It is undisputed that Plaintiffs have ample alternative channels to communicate the information. ECF 108 at 18, ¶ 59 ("Plaintiffs admit that the quotations from Professor Taylor are accurate"—"Charles Taylor admitted that prior to construction of the Cozy Sign, the Cozy Inn signs that were already in place were 'conspicuous enough' and did in fact 'brand the site'"), 9, ¶ 30 ("Plaintiffs admit that Salina officials testified to these measurements"—measurements showed the Cozy had 63 square feet of allowable sign area), and at 10, ¶ 32 ("Plaintiffs admit that Salina

officials stated these measurements at deposition" which showed the Cozy had 10.12 square feet of sign area remaining); at 10, ¶ 31 (admitting to "existing signage on the North wall"), and 10, ¶ 32 (no record citation to refute ECF 107 at 13, ¶ 32 that Cozy had three other signs, D. Kan. Rule 56.1(b)(1)). "Plaintiffs admit The Cozy Inn communicates some messages via Facebook, radio advertising, banner advertising at indoor football events, and billboards . . . [branded] merchandise or bumper stickers" and a "mural at Jenni's Liquor" which is a "communication of Jenni's Liquor and its owners." ECF 108 at 18, ¶ 18 (Mr. Howard owns Jenni's Liquor and the "mural" is a reference to the Cozy Sign. **Ex. I** (Stephen Howard Dep.) at 11:17-25, 12:1-3, 221:3-25, 222:1-12.

Here, the Court decides as a matter of law whether the alternative modes of communication do not threaten Plaintiffs' ability to "communicate effectively." *Taxpayers for Vincent*, 466 U.S. at 812. "The First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). The Sign Code regulates signs, but it does not prohibit them. It is undisputed that Plaintiffs can communicate their message and comply with the Sign Code if they reduce the size of the Cozy Sign. *See Harmon*, 981 F.3d at 1149; 9, ¶ 30, 10, ¶¶ 31-32; **Ex. G**. The Sign Code therefore passes intermediate scrutiny.

### F. Though Inapplicable, the Sign Code Passes *Aptive's* Evidentiary Demands

The Sign Code does not treat commercial speech and non-commercial speech differently. Because the Cozy Sign is commercial speech to which the Sign Code applies, it does not transmogrify the Sign Code into a commercial speech regulation. The Response struggles to comprehend what constitutes commercial speech, yet the standard is ubiquitous. It is an advertisement that refers to a particular product, whose speaker has an economic motivation. *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983). This standard is easy to apply here

where it is undisputed that the Cozy Sign depicts burgers, states "Don't Fear the Smell!," and the "Cozy sells hamburgers. . . [and] the smell of onions is distinct to the Cozy Inn." ECF 108 at 5 at ¶ 19 ("burger UFOs"), at 1 (photo), and at 2 (A); ECF 107 at 13, ¶¶ 35-37.

Even if the *Central Hudson* commercial speech test were applicable, then the Sign Code "need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). Here, the text of S.C. § 42-500 is undisputed, and states Article 42 seeks to "improve pedestrian and traffic safety," "protect the aesthetic appearance," and "protect property values." ECF 108 at 4, ¶ 4; **Ex. F** at 1. As discussed in Section III(D), *supra*, these are substantial government interests as a matter of law.

Plaintiffs contend, relying on an oral solicitation case, that the City must prove with evidence the Sign Code actually advances its stated interest. ECF 108 at 28. The Response discounts the *Metromedia* Court's approach to the issue by citing *Aptive and Pagan v. Fruchey*, 492 F.3d 766 (6th Cir. 2007), cases that were not supported by an extensive record of "common-sense judgments of local lawmakers." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509 (1981). Yet, even if *Aptive* applies, the City satisfies its evidentiary requirement. *Aptive Environmental, LLC v. Town of Castle Rock*, 959 F.3d 961, 989 (10th Cir. 2020).

Moreover, the Supreme Court "has permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and simple common sense." *Aptive*, 959 F.3d at 989. "When evaluating whether a municipality has put forward sufficient anecdotes, history, or common sense to demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree . . . we evaluate the evidence in light of the cases where those categories of evidence have previously been invoked."

*Id*. (quotations omitted). At least 34 other municipalities across the United States utilize the phrase "announce, direct attention to, or advertise" in their definitions of sign.[4] **Ex. J** (Municipal Code Citations). That history and tradition matters—and supports upholding S.C. § 42-764. *See Austin*, 596 U.S. at 75.

Moreover, the Supreme Court has observed that all signs, not just billboards, share a common thread that is the mix of speech and structure and pose unique problems that must be addressed through regulation. *Reed*, 576 U.S. at 173; *Ladue*, 512 U.S. at 48; *Taxpayers for Vincent*, 466 U.S. at 806-07. Under the *Aptive* standard, the City can rely on the "common sense" judgment of the governing body, the not less than 34 other local governments that use essentially the same approach, and the voluminous Supreme Court precedent finding that time, place and manner restrictions (like size, number, and location) effectively address the harms presented by signs and advance interests in aesthetics, traffic safety, and property values. *Reed*, 576 U.S. at 173; *Ladue*, 512 U.S. at 48; *Taxpayers for Vincent*, 466 U.S. at 806-08; *Metromedia*, 453 U.S. at 509.

Even still, there is sufficient evidence in the summary judgment record that regulation of the size, number, and placement of signs promotes the City's stated objectives. *See* pp. 11-12, *infra*. It is undisputed that City Planner Dustin Herrs is certified by the American Institute of Certified Planners ("AICP"), that AICP requires continuing education credits, including those addressing sign regulations. ECF 108 at 2 (A); ECF 107 at 9, ¶¶ 11-12. Mr. Herrs testified that the Sign Code advances its stated interests, by "for each district limit[ing] the size of signs, the number of signs, the height of signs, the location of signs in order to reduce clutter . . . that can become distracting . . . signs by their definition attract your eye in a way to announce, direct attention to or

---

[4] The City requests that pursuant to Federal Rule of Evidence 201, the Court take judicial notice of the municipal ordinance provisions cited in **Ex. J** (with hyperlinks to municipal codes). *North Mill Street, LLC v. City of Aspen*, 6 F.4th 1216, 1221 n.3 (10th Cir. 2021)

advertise does change the character of a sign in relationship to or contrasted to a mural . . . that could have impacts on traffic safety . . . an excessive amount of signage both in terms of number of signs and size of signs, it can . . . become distracting and potentially cause safety problems. It could also damage the aesthetic of the community." **Ex. B** at 121:10-25; **Ex. K** (Dustin Herrs 30(b)(6) Dep.) at 71:9-25, 77:12-21. While the Response claims it disputes Mr. Herrs' quoted testimony, it does not provide record citation that directly refutes these statements. ECF 108 at 14-15, ¶¶ 44-49; ECF 107 at 14-15, ¶¶ 44-49. Rather, it cites generalizations by Charles Taylor, which are rebutted by the Stutts report cited by Dr. Taylor. **Ex. L** (Stutts Report) at 15-16, Table 6 (signs are in one of the highest categories of distraction).

Additionally, industry specific publications, reviewed by Zoning Administrator Dean Andrew, show the City was aware of the history and consensus of how municipalities regulate signs in a content-neutral manner, and set forth anecdotes, history, and common sense to support why the City regulates signs in the manner it does, and how the Sign Code advances its stated interest. **Ex. M** (Dean Andrew Aff.). Testimony from Mark White further evidences the Sign Code is in line with the history, consensus, and common sense of sign regulations as the Sign Code is consistent in practice with the state of the art nationally for how sign regulations interact with decorative building features such as murals. **Ex. M** (Mark White Aff.). Mr. White's report shows the Sign Code falls within the consensus of 21 sign and mural regulations in Kansas and Oklahoma, and the publications cited therein further attest to the history, consensus, and common sense of the Sign Code. **Ex. M**.

The City does not have to prove that regulating any one sign (e.g., the Cozy Sign) actually advances the purposes of the Sign Code. *See U.S. v. Edge Broadcasting*, 509 U.S. 418, 431 (1993) ("the State was entitled to protect its interest by applying a prophylactic rule to those circumstances

generally; we declined to require the State to go further and to prove that the state interests supporting the rule actually were advanced by applying the rule in [a] particular case."). The Sign Code applies in the aggregate, and in that capacity advances the articulated interests.

*Brewer* and *McCraw* do not change the result—they are about time, place, and manner restrictions in a traditional public forum. Both decisions describe the heightened sensitivity that is needed in the public forum context. *Brewer v. City of Albuquerque* 18 F.4th 1205, 1226 (10th Cir. 2021); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1065-66 (10th Cir. 2020). The Cozy Inn is private property. It is not a "traditional public forum," and therefore *Brewer* and *McCraw* are inapposite. Conventional intermediate scrutiny applies.

Additionally, there is no as-applied challenge for commercial speech regulations. The Response cites *Edenfeld v. Fane* to the contrary, but *Fane* has not been good law on that point for more than three decades. *See U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 431 (1993) (addressing *Fane*, stating plainly that the Court "did not suggest that Fane could challenge the regulation on commercial speech as applied only to himself or his own acts of solicitation."). *Greater New Orleans Broad. Ass'n, Inc. v. United States*, decided in 1999, does not change that result. That case was an extension of *Edge Broadcasting*, and related to a class of speakers (an association of broadcasters and its members), not (as in the instant case) as-applied to one individual speaker. *See Greater New Orleans Broad. Ass'n v. U.S.*, 527 U.S. 173, 176, 180 (1999).

**G.   The Sign Code Is Not an Unconstitutional Prior Restraint**

It is undisputed S.C. § 42-502(b) requires a sign permit be issued or refused within ten (10) days after the receipt of an application or within such further period as may be agreed to by the applicant. ECF 108 at 2 (A); ECF 107 at 8, ¶ 7. This meets the constitutional requirements on its face. As applied, it is undisputed the City informed Mr. Howard the Cozy Sign was a sign and was

13

too big for a permit within the 10-day period—before he even submitted the sign permit application. It is undisputed Mr. Howard started painting the Cozy Sign (or as the Response notes "the display") on November 3, 2023, and that three days later, the City told Mr. Howard to stop painting the Cozy Sign "because it was [the City's] *opinion* that the mural was a sign that was too big." ECF 108 at 4, ¶ 14 and 5, ¶20. It is undisputed the City prepared The Cozy Inn Sign Analysis and gave it to Mr. Howard on November 13, 2023. ECF 108 at 2 (A); ECF 107 at 12, ¶ 29; **Ex. G**. It is undisputed that before Mr. Howard submitted the application, "officials had communicated to Mr. Howard the City's *opinion* that the mural was a sign that was too big." ECF 108 at 5-6, ¶ 22.

Regarding the safeguard of limiting the "licensor's discretion," "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 at 793-95 (upholding standards that were "undoubtedly flexible" and required "considerable discretion" of the officials implementing them.") The task of identifying business advertising, is a "very basic test" that is "not unconstitutionally standardless or vague . . . ." *Wag More Dogs LLC v. Artman*, 795 F. Supp. 2d 377 (E.D. Va. 2011), *aff'd*, 680 F. 3d 359 (4th Cir. 2012) (still cited as good law by Fourth Circuit and reasoning right on par with *Austin*—in holding (at 368) that—a regulation is not content based when "officials must superficially evaluate a sign's content to determine the extent of applicable restrictions.").

Here, it is undisputed that the text of S.C. § 42-764 provides that one standard in determining a Sign is whether the display (among other possible things) "advertises." ECF 108 at 3, ¶ 3; **Ex. F** at 5. That standard is constitutionally sufficient. *See Austin,* 596 U.S. at 64-65. The Cozy Sign plainly advertises. *See* Section I, *supra*. It is undisputed that the text of S.C. § 42-764 has additional standards of "announce, direct attention to," and "not located inside a building." ECF 108 at 3, ¶ 3; **Ex. F** at 5. The text of S.C. § 42-637, which defines building, is undisputed.

14

ECF 108 at 3, ¶ 8. On their face and as-applied, the criteria of the Sign Code do not constitute an impermissible prior restraint. Summary judgment in favor of the City is proper.

### H.    *The Sign Code is Not Unconstitutionally Vague*

While "[t]here is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question . . . because we are [c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Hill,* 530 U.S. at 733 (quotations omitted). Legislators are not held to "an unattainable standard" and "[d]ictionary definitions and old-fashioned common sense" can aid the vagueness inquiry. *Fusaro v. Howard*, 19 F.4th 357, 371-72 (4th Cir. 2021) (citing *Wag More Dogs*, 680 F. 3d at 359).

It is undisputed that the text of S.C. § 42-764 sets forth "used to announce, direct attention to, or advertise" and "not located inside a building." ECF 108 at 3, ¶ 3; **Ex. F** at 5. The text of S.C. § 42-637, which defines building, is undisputed. ECF 108 at 3, ¶ 8. While the Response disputes that Mr. Howard did not read the Sign Code, the deposition cited in the Response states—"Q: Okay. Have you read the Salina sign code? A: No. Q: Okay. And you don't care about reading it, do you. A: No." ECF 108 at 4, ¶ 16-17, **(**Howard's testimony at 241:4-15). With the use of good old-fashioned common sense, and dictionary definitions if needed, people of ordinary intelligence, who read the definition, have a reasonable opportunity to understand what conduct the Sign Code prohibits. These clear standards do not encourage arbitrary and discriminatory enforcement and summary judgment for the City is proper.

### IV.    CONCLUSION

This Court should dismiss this case for lack of subject matter jurisdiction. Alternatively, this Court should grant the City's Motion for Summary Judgment on all claims.

Dated this 14th day of March, 2025.

| s/ Aaron O. Martin | s/ Todd G. Messenger | s/ Amanda C. Jokerst |
|---|---|---|
| Aaron O. Martin<br>Bar Number 24170<br>Attorney for Defendant City of Salina, Kansas<br>CLARK, MIZE & LINVILLE, CHARTERED<br>P.O. Box 380<br>Salina, KS 67402-0380<br>Tel. (785) 823-6325<br>Fax: (785) 823-1868<br>Email: aomartin@cml-law.com | Todd G. Messenger,<br>CO Bar Number 38783<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: tmessenger@fwlaw.com | Amanda C. Jokerst<br>CO Bar Number 47241<br>Pro Hac Vice Attorney for Defendant City of Salina, Kansas<br>Fairfield and Woods, P.C.<br>1801 California St., Ste. 2600<br>Denver, CO 80202<br>Tel. (303) 830-2400<br>Fax: (303) 830-1033<br>Email: ajokerst@fwlaw.com |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, I caused the foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record including: Jeffrey Shaw and Samuel G. MacRoberts

s/ Aaron O. Martin
Aaron O. Martin