APPEAL,ETT−2D,LC1,MJLC3

# U.S. District Court
# DISTRICT OF KANSAS (Wichita)
# CIVIL DOCKET FOR CASE #: <u>6:24−cv−01027−TC</u>

Cozy Inn, Incorporated et al v. Salina, Kansas, City of      Date Filed: 02/19/2024
Assigned to: District Judge Toby Crouse      Jury Demand: Plaintiff
Cause: 42:1983 Civil Rights Act      Nature of Suit: 440 Civil Rights: Other
     Jurisdiction: Federal Question

### Plaintiff

**Cozy Inn, Incorporated**        represented by    **Jeffrey Shaw**
*doing business as*        Kansas Justice Institute
Cozy Inn, The        12980 Metcalf Avenue, Suite 130
       Overland Park, KS 66213
       913−213−5121
       Alternative Phone:
       Cell Phone: 818−434−5219
       Email: <u>jeff@kansasjusticeinstitute.org</u>
       *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*
       *Bar Number: 29767*
       *Bar Status: Active*

       **Samuel G. MacRoberts**
       Kansas Justice Institute
       12980 Metcalf Avenue, Suite 130
       Overland Park, KS 66213
       913−213−5018
       Alternative Phone:
       Cell Phone: 785−633−0735
       Email:
       <u>sam.macroberts@kansasjusticeinstitute.org</u>
       *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*
       *Bar Number: 22781*
       *Bar Status: Active*

### Plaintiff

**Stephen Howard**        represented by    **Jeffrey Shaw**
       (See above for address)
       *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*
       *Bar Number: 29767*
       *Bar Status: Active*

       **Samuel G. MacRoberts**
       (See above for address)
       *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

1

*Bar Number: 22781*
*Bar Status: Active*

V.

**Defendant**

| | | |
|---|---|---|
| **Salina, Kansas, City of** | represented by | **Aaron O. Martin** |

Clark, Mize & Linville, Chtd.
129 South 8th Street
PO Box 380
Salina, KS 67402–0380
785–823–6325
Fax: 785–823–1868
Alternative Phone:
Cell Phone:
Email: aomartin@cml–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 24170*
*Bar Status: Active*

**Amanda C. Jokerst**
Fairfield and Woods, PC
1801 California Street, Suite 2600
Denver, CO 80202
303–830–2400
Fax: 303–830–1033
Alternative Phone: 303–894–4494
Cell Phone:
Email: ajokerst@fwlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

**Todd G. Messenger**
Fairfield and Woods, PC
1801 California Street, Suite 2600
Denver, CO 80202
303–830–2400
Fax: 303–830–1033
Alternative Phone: 303–894–4469
Cell Phone:
Email: tmessenger@fwlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Number:*
*Bar Status: Phv*

2

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 02/19/2024 | 1 | COMPLAINT with trial location of Wichita (Filing fee $405, Internet Payment Receipt Number AKSDC−6277267.), filed by Cozy Inn, Incorporated, Stephen Howard. (Attachments: # 1 Verification, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C) (MacRoberts, Samuel) (Entered: 02/19/2024) |
| 02/19/2024 | 2 | CIVIL COVER SHEET by Plaintiffs Cozy Inn, Incorporated, Stephen Howard. (MacRoberts, Samuel) (Entered 02/19/2024) |
| 02/19/2024 | 3 | CORPORATE DISCLOSURE STATEMENT by Cozy Inn, Incorporated, Stephen Howard identifying None a corporate parent. (MacRoberts, Samuel) (Entered: 02/19/2024) |
| 02/19/2024 | 4 | ENTRY OF APPEARANCE by Jeffrey Shaw on behalf of Cozy Inn, Incorporated, Stephen Howard. (Shaw, Jeffrey) (Entered: 02/19/2024) |
| 02/20/2024 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Toby Crouse and Magistrate Judge Ang D. Mitchell for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with th entry.)<br><br>**NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available t conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent form are available at http://www.uscourts.gov/forms/civil−forms/notice−consent−and−reference−civil−action−magistrate−jud (jk) (Entered: 02/20/2024)** |
| 02/20/2024 | | SUMMONS ISSUED as to Salina, Kansas, City of (issued to Attorney for service). Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This i TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (jk) (Entered: 02/20/2024) |
| 02/26/2024 | 5 | SUMMONS RETURNED EXECUTED −− Personal Service by Cozy Inn, Incorporated, Stephen Howard upo Salina, Kansas, City of served on 2/21/2024, answer due 3/13/2024. (MacRoberts, Samuel) (Entered: 02/26/20 |
| 03/08/2024 | 6 | ENTRY OF APPEARANCE by Aaron O. Martin on behalf of Salina, Kansas, City of. (Martin, Aaron) (Entere 03/08/2024) |
| 03/08/2024 | 7 | CLERKS ORDER EXTENDING TIME until 3/27/2024 for Defendant Salina, Kansas, City of to answer or otherwise plead. Signed by deputy clerk on 3/08/2024. (jk) (Entered: 03/11/2024) |
| 03/12/2024 | 10 | AMENDED CLERKS ORDER EXTENDING TIME until 3/27/2024 for Defendant Salina, Kansas, City of to answer or otherwise plead. Signed by deputy clerk on 3/12/2024. (jk) (Entered: 03/14/2024) |
| 03/13/2024 | 8 | MOTION for attorney Amanda C. Jokerst to appear pro hac vice (Pro hac vice fee $50, Internet Payment Rece Number AKSDC−6298055.) by Defendant Salina, Kansas, City of. (Motion referred to Magistrate Judge Ange D. Mitchell.) (Martin, Aaron) (Entered: 03/13/2024) |
| 03/13/2024 | 9 | MOTION for attorney Todd G. Messenger to appear pro hac vice (Pro hac vice fee $50, Internet Payment Rece Number AKSDC−6298080.) by Defendant Salina, Kansas, City of. (Motion referred to Magistrate Judge Ange D. Mitchell.) (Martin, Aaron) (Entered: 03/13/2024) |
| 03/18/2024 | 11 | ORDER granting 8 Motion to Appear Pro Hac Vice of Amanda C. Jokerst for Salina, Kansas, City of pursuant D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Angel D. Mitchell on 3/18/202 (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 03/18/2024) |

| 03/18/2024 | 12 | ORDER granting 9 Motion to Appear Pro Hac Vice of Todd G. Messenger for Salina, Kansas, City of pursuan D. Kan. Rule 83.5.4 for purposes of this case only. Signed by Magistrate Judge Angel D. Mitchell on 3/18/202 (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 03/18/2024) |
|---|---|---|
| 03/27/2024 | 13 | MOTION to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendant Sali Kansas, City of. (Martin, Aaron) (Entered: 03/27/2024) |
| 03/27/2024 | 14 | BRIEF IN SUPPORT of 13 Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) by Defendant Salina, Kansas, City of. (Martin, Aaron) (Entered: 03/27/2024) |
| 03/28/2024 | 15 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 5/16/202 at 11:30 AM by Telephone ADM – CONFERENCE LINE 1–888–363–4749 ACCESS CODE 3977627 before Magistrate Judge Angel D. Mitchell. Rule 26 Planning Conference Deadline 4/26/2024. Rule 26 Initial Disclosures Deadline set for 5/6/2024. Proposed Scheduling Order Deadline 5/6/2024. Signed by Magistrate Judge Angel D. Mitchell on 3/28/2024. (ca) (Entered: 03/28/2024) |
| 04/10/2024 | 16 | AMENDED COMPLAINT against Salina, Kansas, City of, filed by Cozy Inn, Incorporated, Stephen Howard. (Attachments: # 1 Verification, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(MacRoberts, Samue (Entered: 04/10/2024) |
| 04/10/2024 | 17 | NOTICE of Filing of Verified Amended Complaint by Cozy Inn, Incorporated, Stephen Howard re 14 Memorandum in Support of Motion, 13 Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (MacRoberts, Samuel) (Entered: 04/10/2024) |
| 04/10/2024 |  | SUMMONS ISSUED as to Salina, Kansas, City of (issued to Attorney for service). Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This i TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (jk) (Entered: 04/10/2024) |
| 04/11/2024 | 18 | ORDER. Salina's motion to dismiss, Doc. 13 , is denied as moot. Signed by District Judge Toby Crouse on 4/11/2024. (mam) (Entered: 04/11/2024) |
| 04/11/2024 | 19 | SUMMONS RETURNED EXECUTED –– Personal Service by Cozy Inn, Incorporated, Stephen Howard upo Salina, Kansas, City of (MacRoberts, Samuel) Modified on 4/12/2024 to add party served (ca). (Entered: 04/11/2024) |
| 04/18/2024 | 20 | CLERKS ORDER EXTENDING TIME until 5/9/2024 for Defendant Salina, Kansas, City of to answer or otherwise plead re 16 Amended Complaint. Signed by deputy clerk on 4/18/2024. (jsh) (Entered: 04/18/2024) |
| 04/19/2024 | 21 | STIPULATION by Salina, Kansas, City of. (Martin, Aaron) (Entered: 04/19/2024) |
| 04/26/2024 | 22 | MOTION for Leave to File Excess Pages *for Brief in Support of Motion to Dismiss* by Defendant Salina, Kans City of. (Martin, Aaron) (Entered: 04/26/2024) |
| 04/29/2024 |  | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 22 MOTION for Leave to File Excess Pages** *for Brief in Support of Motion to Dismiss*. **The motion will be resolved by the District Judge.(alh)** (Entered: 04/29/2024) |
| 04/30/2024 | 23 | ORDER denying 22 Motion for Leave to File Excess Pages. Signed by District Judge Toby Crouse on 4/30/24 (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 04/30/20 |
| 05/06/2024 | 24 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Initial Disclosures and Documents 1–156. (Shaw, Jeffrey) (Entered: 05/06/2024) |
| 05/06/2024 | 25 | NOTICE OF SERVICE by Salina, Kansas, City of of Initial Disclosures. (Martin, Aaron) (Entered: 05/06/2024 |
| 05/09/2024 | 26 |  |

| | | |
|---|---|---|
| | | MOTION to Dismiss for Failure to State a Claim by Defendant Salina, Kansas, City of. (Martin, Aaron) (Enter 05/09/2024) |
| 05/09/2024 | 27 | BRIEF IN SUPPORT of 26 Motion to Dismiss by Defendant Salina, Kansas, City of. (Martin, Aaron) (Entered 05/09/2024) |
| 05/16/2024 | 28 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: SCHEDULING CONFERENCE was held on 5/16/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associate with this entry.) (alh) (Entered: 05/16/2024) |
| 05/16/2024 | 29 | SCHEDULING ORDER: estimated trial time 2–4 days. Discovery deadline 10/18/2024. Proposed Pretrial Ord due by 11/4/2024. Final Pretrial Conference set for 11/14/2024 at 01:30 PM by Telephone ADM – CONFERENCE LINE 1–888–363–4749 ACCESS CODE 3977627 before Magistrate Judge Angel D. Mitche Dispositive motion deadline 12/20/2024. Jury Trial set for 9/9/2025 at 09:00 AM in Wichita before District Ju Toby Crouse. Signed by Magistrate Judge Angel D. Mitchell on 5/16/2024. (kas) (Entered: 05/16/2024) |
| 05/22/2024 | 30 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Supplemental Initial Disclosures and Documents 157–216. (Shaw, Jeffrey) (Entered: 05/22/2024) |
| 05/30/2024 | 31 | RESPONSE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard re 26 Motion to Dismiss for Failure to Stat Claim (MacRoberts, Samuel) (Entered: 05/30/2024) |
| 06/05/2024 | 32 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Plaintiffs' First Set of Interrogatories Pursuant to Fed. R. Civ. P. 33; Requests for Admission Pursuant to Fed. R. Civ. P. 36; Request for Production Documents Pursuant to Fed. R. Civ. P. 34 (Shaw, Jeffrey) (Entered: 06/05/2024) |
| 06/13/2024 | 33 | REPLY TO RESPONSE TO MOTION by Defendant Salina, Kansas, City of re: 26 Motion to Dismiss for Failure to State a Claim (Martin, Aaron) (Entered: 06/13/2024) |
| 06/18/2024 | 34 | MOTION Motion to Disregard Newly Raised Argument or for Leave to File Sur–Reply re 33 Reply to Respon to Motion by Plaintiffs Cozy Inn, Incorporated, Stephen Howard (Attachments: # 1 Exhibit 1 (Proposed Sur–reply)) (MacRoberts, Samuel) (Entered: 06/18/2024) |
| 06/18/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 34 MOTION Motion to Disregard Newly Raised Argument or for Leave to File Sur–Reply re 33 Reply to Response to Motion . The motion will b resolved by the District Judge.(alh)** (Entered: 06/18/2024) |
| 06/18/2024 | 35 | ORDER denying motion to disregard, Doc. 34 . Plaintiffs filed a motion to disregard a newly raised argument, essentially asserting that a defendant cannot succeed on an argument raised for the first time in a reply and seeking leave to file a sur–reply. There is no need for such a motion: if the argument is proper, it will be considered; if it is not, it will not be; and, if any additional briefing is needed, it will be requested. Both reques are denied. Signed by District Judge Toby Crouse on 6/18/24. (This is a TEXT ENTRY ONLY. There is no.pd document associated with this entry.) (ta) (Entered: 06/18/2024) |
| 07/18/2024 | 36 | NOTICE OF SERVICE by Salina, Kansas, City of of Responses to Plaintiffs' Written Discovery Requests (Martin, Aaron) (Entered: 07/18/2024) |
| 07/26/2024 | 37 | NOTICE OF SERVICE by Salina, Kansas, City of of Defendant's Privilege Log (Martin, Aaron) (Entered: 07/26/2024) |
| 08/01/2024 | 38 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Second Set of Interrogatories and Sec Set of Requests for Production of Documents (Shaw, Jeffrey) (Entered: 08/01/2024) |
| 08/02/2024 | 39 | NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition (MacRoberts, Samuel) (Entered: 08/02/2024) |
| 08/05/2024 | 40 | |

| | | MOTION for Discovery Hearing. Via an email to the court on August 2, 2024, the parties moved the court to schedule a Discovery Hearing. (referred to Magistrate Judge Angel D. Mitchell) (alh) (Entered: 08/05/2024) |
|---|---|---|
| 08/05/2024 | 41 | ORDER granting 40 Motion for Discovery Hearing. A Discovery Hearing/Conference is set for 8/14/2024 at 01:30 PM by Telephone before Magistrate Judge Angel D. Mitchell. The parties are directed to call in to the CONFERENCE LINE at 1–888–363–4749 and enter ACCESS CODE 3977627. Signed by Magistrate Judge Angel D. Mitchell on 8/5/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 08/05/2024) |
| 08/05/2024 | 42 | ***DISREGARD – ENTERED IN ERROR*** MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: FINAL PRETRIAL CONFERENCE was held on 8/5/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Modified on 8/6/2024 per ADM chambers (heo)) (Entered: 08/05/2024) |
| 08/06/2024 | | DOCKET ANNOTATION: Please disregard 42 Minute Entry re Final Pretrial Conference; entry made in error. (heo) (Entered: 08/06/2024) |
| 08/14/2024 | 43 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: DISCOVERY HEARING was held on 8/14/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 08/14/2024) |
| 08/14/2024 | 44 | ORDER: Parties to further meet and confer about the disputed discovery responses by August 21, 2024. Defendants wish to supplement those responses, they must do so by August 23, 2024. Plaintiffs' motion to compel is due by August 30, 2024. Defendant's response is due by September 9, 2024. Plaintiffs' reply is due by September 12, 2024. Signed by Magistrate Judge Angel D. Mitchell on 8/14/24. (msb) (Entered: 08/14/2024) |
| 08/16/2024 | 45 | NOTICE OF SERVICE by Salina, Kansas, City of of Defendant's First Set of Written Discovery Requests to Plaintiffs (Martin, Aaron) (Entered: 08/16/2024) |
| 08/16/2024 | 46 | NOTICE OF SERVICE by Salina, Kansas, City of of Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2) (Martin, Aaron) (Entered: 08/16/2024) |
| 08/22/2024 | 47 | NOTICE OF SERVICE by Salina, Kansas, City of of Defendant's First Supplemental Disclosures (Martin, Aaron) (Entered: 08/22/2024) |
| 08/29/2024 | 48 | (VIEW RESTRICTED – WITHDRAWN PER DOCKET ENTRY 49) OBJECTION(S) to *Defendant's Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2)* by Cozy Inn, Incorporated, Stephen Howard. (Shaw, Jeffrey) Modified text and restriction on 9/6/2024 (msb). (Entered: 08/29/2024) |
| 08/30/2024 | 49 | NOTICE of Withdrawal of Filed Objection to Defendant's Expert Disclosure and Report by Cozy Inn, Incorporated, Stephen Howard re 48 Objection(s) (Shaw, Jeffrey) (Entered: 08/30/2024) |
| 08/30/2024 | 50 | NOTICE OF SERVICE by Salina, Kansas, City of of Amended Discovery Responses and Privilege Log (Martin, Aaron) (Entered: 08/30/2024) |
| 09/03/2024 | 51 | MOTION for Discovery Hearing. Via an email to the court on August 29, 2024, the parties moved the court to schedule a Discovery Hearing. (referred to Magistrate Judge Angel D. Mitchell) (alh) (Entered: 09/03/2024) |
| 09/03/2024 | 52 | ORDER granting 51 Motion for Discovery Hearing. A Discovery Hearing/Conference is set for 9/18/2024 at 10:00 AM by Telephone before Magistrate Judge Angel D. Mitchell. The parties are directed to call in to the CONFERENCE LINE at 1–888–363–4749 and enter ACCESS CODE 3977627. Signed by Magistrate Judge Angel D. Mitchell on 9/3/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 09/03/2024) |
| 09/03/2024 | 53 | NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition of 30(b)(6) Representative on September 30, 2024 (Attachments: # 1 Exhibit A)(Shaw, Jeffrey) (Entered: 09/03/2024) |

| 09/04/2024 | 54 | NOTICE of Second Supplemental Initial Disclosures and Documents 217–301 by Cozy Inn, Incorporated, Stephen Howard (Shaw, Jeffrey) (Entered: 09/04/2024) |
| 09/05/2024 | 55 | NOTICE OF SERVICE by Salina, Kansas, City of of Response to Plaintiffs' Second Discovery Requests, and Defendant's Supp. Privilege Log (Martin, Aaron) (Entered: 09/05/2024) |
| 09/06/2024 | 56 | NOTICE OF SERVICE of Third Supplemental Initial Disclosures and Documents 302–315 by Cozy Inn, Incorporated, Stephen Howard (Shaw, Jeffrey) Modified title on 9/9/2024. (kmc) (Entered: 09/06/2024) |
| 09/08/2024 | 57 | NOTICE OF SERVICE of Fourth Supplemental Initial Disclosures and Documents 316–325 by Cozy Inn, Incorporated, Stephen Howard (Shaw, Jeffrey) Modified title on 9/9/2024. (kmc) (Entered: 09/08/2024) |
| 09/08/2024 | 58 | NOTICE OF SERVICE of Fifth Supplemental Initial Disclosures and Documents 326–334 by Cozy Inn, Incorporated, Stephen Howard (Shaw, Jeffrey) Modified title on 9/9/2024. (kmc) (Entered: 09/08/2024) |
| 09/13/2024 | 59 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Plaintiffs' Response to Defendant's First Set of Interrogatories; Verification; Plaintiffs' Response to Defendant's First Set of Requests for Admission; Plaintiffs' Response to Defendant's First Set of Requests for Production of Documents; Documents 0335–0373; Privilege Log (Shaw, Jeffrey) (Entered: 09/13/2024) |
| 09/16/2024 | 60 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Third Set of Requests for Production of Documents (Shaw, Jeffrey) (Entered: 09/16/2024) |
| 09/18/2024 | 61 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: DISCOVERY HEARING was held on 9/18/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 09/18/2024) |
| 09/18/2024 | 62 | NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition of Dean Andrew on September 30, 2024 (Shaw, Jeffrey) (Entered: 09/18/2024) |
| 09/18/2024 | 63 | AMENDED NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition of 30(b)(6) Representative on October 17, 2024 (Attachments: # 1 Exhibit A)(Shaw, Jeffrey) (Entered: 09/18/2024) |
| 09/20/2024 | 64 | NOTICE OF SERVICE by Cozy Inn, Incorporated, Stephen Howard of Rebuttal Expert Disclosure; Expert Report; and Expert Curriculum Vitae (Shaw, Jeffrey) (Entered: 09/20/2024) |
| 09/20/2024 | 65 | NOTICE OF SERVICE by Salina, Kansas, City of of Second Supplemental Disclosures (Martin, Aaron) (Entered: 09/20/2024) |
| 09/24/2024 | 66 | NOTICE OF SERVICE by Salina, Kansas, City of of Third Supplemental Disclosures (Martin, Aaron) (Entered: 09/24/2024) |
| 09/27/2024 | 67 | NOTICE OF SERVICE by Salina, Kansas, City of of Fourth Supplemental Disclosures (Martin, Aaron) (Entered: 09/27/2024) |
| 10/03/2024 | 68 | NOTICE OF SERVICE by Salina, Kansas, City of of Notice of Deposition of Colin Benson (Martin, Aaron) (Entered: 10/03/2024) |
| 10/03/2024 | 69 | NOTICE OF SERVICE by Salina, Kansas, City of of Notice of Deposition of Jess Blase (Martin, Aaron) (Entered: 10/03/2024) |
| 10/04/2024 | 70 | Joint MOTION for extension of time *to conduct expert depositions* by Defendant Salina, Kansas, City of (referred to Magistrate Judge Angel D. Mitchell) (Martin, Aaron) (Entered: 10/04/2024) |
| 10/07/2024 | 71 | ORDER granting 70 joint motion to extend expert discovery deadline. For good cause shown in the motion, the court extends the discovery deadline to November 13, 2024, for the limited purpose of conducting expert depositions. Signed by Magistrate Judge Angel D. Mitchell on 10/7/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 10/07/2024) |

| 10/08/2024 | 72 | MOTION for Discovery Hearing. Via an email to the court on October 7, 2024, the parties moved the court to schedule a Discovery Hearing. (referred to Magistrate Judge Angel D. Mitchell) (alh) (Entered: 10/08/2024) |
| 10/08/2024 | 73 | ORDER granting 72 Motion for Discovery Hearing. A Discovery Hearing/Conference is set for <u>10/16/2024 at 11:00 AM</u> by Telephone before Magistrate Judge Angel D. Mitchell. The parties are directed to call in to the CONFERENCE LINE at 1–888–363–4749 and enter ACCESS CODE 3977627. Signed by Magistrate Judge Angel D. Mitchell on 10/8/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with t entry.) (alh) (Entered: 10/08/2024) |
| 10/09/2024 | <u>74</u> | NOTICE OF SERVICE by Salina, Kansas, City of of Notice of Deposition of Andrea Windholz (Martin, Aaro (Entered: 10/09/2024) |
| 10/14/2024 | <u>75</u> | NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition of Mark White on Octobe 31, 2024 (Shaw, Jeffrey) (Entered: 10/14/2024) |
| 10/16/2024 | 76 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: DISCOVERY HEARING was held on 10/16/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry (alh) (Entered: 10/16/2024) |
| 10/16/2024 | 77 | ORDER: On October 16, 2024, the court convened a discovery conference at the parties' request to discuss plaintiff's Rule 30(b)(6) notice to defendant. During the conference, the court provided guidance on various top so that the parties could proceed with defendant's Rule 30(b)(6) deposition. The court directed the parties to contact chambers for an additional discovery conference if, after the deposition, disputes remain unresolved. Signed by Magistrate Judge Angel D. Mitchell on 10/16/2024. (This is a TEXT ENTRY ONLY. There is no.p document associated with this entry.)(alh) (Entered: 10/16/2024) |
| 10/16/2024 | <u>78</u> | NOTICE OF SERVICE by Salina, Kansas, City of of Technical Objections to Plaintiffs' Expert Disclosure and Report (Martin, Aaron) (Entered: 10/16/2024) |
| 10/18/2024 | <u>79</u> | NOTICE OF SERVICE by Salina, Kansas, City of of Responses to Plaintiffs' Third Request for Production of Documents (Martin, Aaron) (Entered: 10/18/2024) |
| 10/18/2024 | <u>80</u> | SECOND AMENDED NOTICE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard of taking deposition of 30(b)(6) Representative on October 30, 2024 (Attachments: # <u>1</u> Exhibit A)(Shaw, Jeffrey) (Entered: 10/18/202 |
| 10/21/2024 | 81 | MOTION for Discovery Hearing. Via an email to the court on October 16, 2024, the parties moved the court to schedule a Discovery Hearing. (referred to Magistrate Judge Angel D. Mitchell) (alh) (Entered: 10/21/2024) |
| 10/21/2024 | 82 | ORDER granting 81 Motion for Discovery Hearing. A Discovery Hearing/Conference is set for <u>10/23/2024 at 02:30 PM</u> by Telephone before Magistrate Judge Angel D. Mitchell. The parties are directed to call the CONFERENCE LINE at 1–888–363–4749 and enter ACCESS CODE 3977627. Signed by Magistrate Judge Angel D. Mitchell on 10/21/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 10/21/2024) |
| 10/23/2024 | 83 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: DISCOVERY HEARING was held on 10/23/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry (alh) (Entered: 10/23/2024) |
| 10/23/2024 | <u>84</u> | ORDER. On 10/23/2024, the court convened a discovery conference at defendant's request to discuss plaintiffs responses to defendant's written discovery requests. As set forth in more detail on the record, the parties agreed continue meeting and conferring on these discovery issues. Should any issues remain unresolved, the court set following briefing schedule and page limits for defendant to file a motion to compel–– Defendant's motion to compel is due by 11/6/2024, and is limited to 7 pages. Plaintiffs' response is due by 11/13/2024, and is limited 7 pages. Defendant's reply is due by 11/15/2024, and is limited to 2 pages. Signed by Magistrate Judge Angel Mitchell on 10/23/2024. (mam) (Entered: 10/23/2024) |

| 10/31/2024 | 85 | Joint MOTION for extension of time *to file pretrial order* by Defendant Salina, Kansas, City of (referred to Magistrate Judge Angel D. Mitchell) (Martin, Aaron) (Entered: 10/31/2024) |
|---|---|---|
| 11/01/2024 | 86 | ORDER granting 85 joint motion for extension of time to submit proposed pretrial order. The parties must sub their proposed pretrial order by **November 8, 2024**. The pretrial conference is rescheduled for **November 19, 2024, at 1:30 pm**. (CONFERENCE LINE 1–888–363–4749/ACCESS CODE 3977627). Signed by Magistrate Judge Angel D. Mitchell on 11/1/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 11/01/2024) |
| 11/19/2024 | 87 | MINUTE ENTRY for proceedings before Magistrate Judge Angel D. Mitchell: FINAL PRETRIAL CONFERENCE was held on 11/19/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associat with this entry.) (alh) (Entered: 11/19/2024) |
| 11/20/2024 | 88 | ORDER. The court will reconvene the final pretrial conference on 12/4/2024 at 03:30 PM by Telephone ADM CONFERENCE LINE 913–423–1010 ACCESS CODE 172 480 243 before Magistrate Judge Angel D. Mitch During the conference, the court also discussed defendant's contention that plaintiffs' expert report exceeded th scope of a proper rebuttal expert disclosure. The court set the following deadlines and parameters for an anticipated motion to strike: Defendant's motion is due by December 3, 2024, and is limited to 10 pages. Plaintiffs' response is due by December 13, 2024, and is limited to 10 pages. Defendant's reply is due by December 18, 2024, and is limited to 3 pages. Signed by Magistrate Judge Angel D. Mitchell on 11/19/2024. (kmc) (Entered: 11/20/2024) |
| 12/03/2024 | 89 | MOTION to Strike *Plaintiffs' Rebuttal Expert* by Defendant Salina, Kansas, City of (referred to Magistrate Jud Angel D. Mitchell) (Attachments: # 1 Exhibit List Index of Exhibits to Defendant's Motion to Strike Plaintiffs' Rebuttal Expert, # 2 Exhibit Exhibit A – City Expert Disclosure, # 3 Exhibit Exhibit B – White Expert Report, 4 Exhibit Exhibit C – Plaintiffs' Rebuttal Expert Disclosure, # 5 Exhibit Exhibit D – Taylor Expert Report, # 6 Exhibit Exhibit E – Taylor Depo Excerpts)(Martin, Aaron) (Entered: 12/03/2024) |
| 12/04/2024 | 90 | MINUTE ENTRY for proceedings held before Magistrate Judge Angel D. Mitchell: FINAL PRETRIAL CONFERENCE was held on 12/4/2024. The parties must submit any additional proposed changes to the pretri order by 5:00 PM on Friday, December 6. (This is a TEXT ENTRY ONLY. There is no.pdf document associat with this entry.) (alh) (Entered: 12/04/2024) |
| 12/04/2024 | 91 | ORDER denying 89 motion to strike plaintiffs' rebuttal expert report. As explained on the record during the December 4, 2024 pretrial conference, the Scheduling Order defined the scope of rebuttal expert disclosures as those offered "to contradict or rebut evidence on the same subject matter identified by another party." (ECF 29 3–4.) The court finds that the report of plaintiffs' expert falls within this scope. The parties may file any other Daubert–based motions to exclude expert testimony by the December 20 deadline set in the Scheduling Order. Signed by Magistrate Judge Angel D. Mitchell on 12/4/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (alh) (Entered: 12/04/2024) |
| 12/09/2024 | 92 | PRETRIAL ORDER ENTERED estimated trial time 2 days; Dispositive motion deadline 12/20/2024. Court T set for 9/9/2025 at 09:00 AM in Wichita, Kansas before District Judge Toby Crouse. Signed by Magistrate Jud Angel D. Mitchell on 12/9/2024. (ca) (Entered: 12/09/2024) |
| 12/13/2024 | 93 | MOTION for extension of time *to file their Motion for Summary Judgment* by Plaintiffs Cozy Inn, Incorporate Stephen Howard (MacRoberts, Samuel) (Entered: 12/13/2024) |
| 12/13/2024 | 94 | NOTICE OF TELEPHONE CONFERENCE: Telephone Conference set for 12/16/2024 at 09:30 AM by Telephone TC – CONFERENCE: 785–337–8299; ACCESS CODE: 890 312 185 before District Judge Toby Crouse. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ta) (Entered: 12/13/2024) |
| 12/16/2024 | 95 | MINUTE ENTRY for proceedings held before District Judge Toby Crouse: TELEPHONE CONFERENCE he on 12/16/2024. Order to follow. (Court Reporter Kelli Stewart.) (ta) (Entered: 12/16/2024) |

| | | |
|---|---|---|
| 12/17/2024 | 96 | ORDER denying motion for extension of time, Doc. 93 . A few days after the pretrial order was entered, defendant amended its guidelines that at are at the heart of this dispute. Plaintiffs seek and defendants do not oppose additional time to evaluate what those amendments do to the issues in dispute. Following a telephone hearing, the summary judgment deadline and trial setting are cancelled. The parties should contact the Magistrate Judge by January 10, 2025 to address management of this dispute. As a result, the motion for extension of time, Doc. 93, is DENIED as moot. Signed by District Judge Toby Crouse on 12/17/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 12/17/2024) |
| 12/20/2024 | 97 | MOTION to Exclude Expert Testimony *or Strike* by Plaintiffs Cozy Inn, Incorporated, Stephen Howard (Attachments: # 1 Exhibit List, # 2 Exhibit A – Defendant's Expert Disclosure, # 3 Exhibit B – Defendant's Expert Report: Mark White, # 4 Exhibit C – Deposition Excerpts: Defendant's Expert Witness Mark White, # 5 Exhibit D – S. Mark White, Content–Neutral Sign Codes After Reed And Austin, Sign Research Foundation (Nov. 2022), # 6 Exhibit E – Plaintiffs' Expert Report: Charles R. Taylor, Ph.D., # 7 Exhibit F – Deposition Excerpts: Plaintiffs' Expert Charles R. Taylor, Ph.D.)(Shaw, Jeffrey) (Entered: 12/20/2024) |
| 12/20/2024 | 98 | MOTION to Exclude Expert Testimony by Defendant Salina, Kansas, City of (Attachments: # 1 Exhibit List Index of Exhibits to Defendant's Motion to Exclude Plaintiffs' Rebuttal Expert, # 2 Exhibit Exhibit A – Defendant's Expert Disclosure, # 3 Exhibit Exhibit B – Expert Report of S. Mark White, # 4 Exhibit Exhibit C – Plaintiffs' Rebuttal Expert Disclosure, # 5 Exhibit Exhibit D – Expert Report of Charles R. Taylor, Ph.D., # 6 Exhibit Exhibit E – Excerpts from Deposition of Charles R. Taylor, Ph.D., # 7 Exhibit Exhibit F – Cozy Responses to First RPD)(Martin, Aaron) (Entered: 12/20/2024) |
| 01/10/2025 | 99 | RESPONSE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard re 98 Motion to Exclude Expert Testimony (Attachments: # 1 Exhibit List Index of Exhibits, # 2 Exhibit A – Rebuttal Expert Disclosure, # 3 Exhibit B – Taylor Report, # 4 Exhibit C – Taylor CV, # 5 Exhibit D – Salina Expert Disclosure, # 6 Exhibit E – White Report, # 7 Exhibit F – Taylor Depo Excerpts, # 8 Exhibit G – White Depo Excerpts, # 9 Exhibit H – Responses to Second Set of Interrogatories, # 10 Exhibit I – Herrs 30(b)(6) Depo Excerpts)(Shaw, Jeffrey) (Entered: 01/10/2025) |
| 01/10/2025 | 100 | RESPONSE by Defendant Salina, Kansas, City of re 97 Motion to Exclude Expert Testimony,, (Attachments: # 1 Exhibit List Index of Exhibits, # 2 Ex. Ex. 1 – Mark White Deposition Excerpts)(Martin, Aaron) (Entered: 01/10/2025) |
| 01/16/2025 | 101 | AMENDED PRETRIAL ORDER ENTERED: estimated trial time 2 days. Dispositive motion deadline 2/7/202 Court Trial set for 10/7/2025 at 09:00 AM in Wichita, Kansas before District Judge Toby Crouse. Signed by Magistrate Judge Angel D. Mitchell on 1/16/2025. (kas) (Entered: 01/16/2025) |
| 01/24/2025 | 102 | REPLY TO RESPONSE TO MOTION by Plaintiffs Cozy Inn, Incorporated, Stephen Howard re: 97 Motion to Exclude Expert Testimony,, (Attachments: # 1 Exhibit List Index of Exhibits, # 2 Exhibit A – White Deposition Excerpts)(Shaw, Jeffrey) (Entered: 01/24/2025) |
| 01/24/2025 | 103 | REPLY TO RESPONSE TO MOTION by Defendant Salina, Kansas, City of re: 98 Motion to Exclude Expert Testimony,, (Attachments: # 1 Exhibit List Index of Exhibits, # 2 Ex. Ex. A – Excerpts from Deposition of Charles Taylor, Ph.D, # 3 Ex. Ex. B – Westlaw Docket for Borden Park, L.P. v. City of San Antonio, # 4 Ex. Ex. C – Westlaw Docket for Peterson et al v. Downers Grove, The Village of, # 5 Ex. Ex. D – Westlaw Docket for Lamar OCI South Corporation v. City of Oxford, Mississippi, # 6 Ex. Ex. E – Expert Report of Charles R. Taylor, Ph.D., # 7 Ex. Ex. F – Relevant Portions of Stutts Report – The Role of Driver Distraction in Traffic Crashes)(Martin, Aaron) (Entered: 01/24/2025) |
| 02/07/2025 | 104 | MOTION for Summary Judgment by Plaintiffs Cozy Inn, Incorporated, Stephen Howard (MacRoberts, Samuel (Entered: 02/07/2025) |
| 02/07/2025 | 105 | MEMORANDUM IN SUPPORT of 104 MOTION for Summary Judgment by Plaintiffs Cozy Inn, Incorporated Stephen Howard (Attachments: # 1 Ex. A, # 2 Ex. B, # 3 Ex. C, # 4 Ex. D, # 5 Ex. E, # 6 Ex. F, # 7 Ex. G, # 8 Ex. H, # 9 Ex. I, # 10 Ex. J, # 11 Ex. K, # 12 Ex. L, # 13 Ex. M, # 14 Ex. N, # 15 Ex. O, # 16 Ex. P, # 17 Ex. Q, # 1 |

| | | |
|---|---|---|
| | | Ex. R, # 19 Ex. S, # 20 Ex. T, # 21 Ex. U, # 22 Ex. V, # 23 Ex. W, # 24 Ex. X, # 25 Ex. Y, # 26 Ex. Z, # 27 Ex. AA, # 28 Ex. BB, # 29 Ex. CC, # 30 Ex. DD, # 31 Ex. EE, # 32 Ex. FF, # 33 Ex. GG, # 34 Ex. HH, # 35 Ex. II, # 36 Ex. JJ, # 37 Ex. KK, # 38 Ex. LL, # 39 Exhibit List)(MacRoberts, Samuel) (Entered: 02/07/2025) |
| 02/07/2025 | 106 | MOTION for Summary Judgment by Defendant Salina, Kansas, City of (Martin, Aaron) (Entered: 02/07/2025 |
| 02/07/2025 | 107 | MEMORANDUM IN SUPPORT of 106 MOTION for Summary Judgment by Defendant Salina, Kansas, City (Attachments: # 1 Exhibit List Index of Exhibits to Defendant's Motion for Summary Judgment, # 2 A – Dean Andrew Affidavit with Affidavit Exs. 1 and 2, # 3 B – City's Responses to Plaintiffs' First Set of Interrogatorie # 4 C – Relevant Sections of Salina Municipal Code, # 5 D – Dean Andrew Deposition Excerpts, # 6 E – Dust Herrs Deposition Excerpts, # 7 F – Dustin Herrs Affidavit, # 8 G – Amended Pretrial Order (ECF 101), # 9 H – Stephen Howard Deposition Excerpts, # 10 I – Andrea Windholz Deposition Excerpts, # 11 J – Colin Benson Deposition Excerpts, # 12 K – Dustin Herrs 30(b)(6) Deposition Excerpts, # 13 L – Photo of Cozy Sign (Plaintiffs Bates 58), # 14 M – Sign Permit Application, # 15 N – Dean Andrew 30(b)(6) Deposition Excerpts, # 16 O – Cozy Inn Sign Analysis, # 17 P – Michael Schrage Deposition Excerpts, # 18 Q – Photo of Cozy Sign alleged Final Rendering (Plaintiffs Bates 51), # 19 R – Mark White Affidavit with Affidavit Ex. 1, # 20 S – Photo of sign at Jenni's Liquors (Exhibit Y to S. Howard Depo.), # 21 T – Charles Taylor, Ph.D. Deposition Excerpts)(Martin, Aaron) (Entered: 02/07/2025) |
| 02/28/2025 | 108 | RESPONSE by Plaintiffs Cozy Inn, Incorporated, Stephen Howard re 106 Motion for Summary Judgment (Attachments: # 1 Ex. A – Andrew Deposition Excerpts, # 2 Ex. B – Driscoll Deposition Excerpts, # 3 Ex. C – Andrew 30(b)(6) Deposition Excerpts, # 4 Ex. D – Defendant's Answers to Plaintiffs' First Set of Interrogatorie # 5 Ex. E – Herrs 30(b)(6) Deposition Excerpts, # 6 Ex. F – Salina City Commission Transcript, # 7 Ex. G – Schrage Deposition Excerpts, # 8 Ex. H – City Commission Minutes, # 9 Ex. I – Art Center DRB Packet, # 10 Ex. J – Talking Points, # 11 Ex. K – Sign Permit Submittal Procedure, # 12 Ex. L – Schrage Email 11/8/23, # Ex. M – Schrage Email 11/9/23, # 14 Ex. N – Schrage Email 2/20/24, # 15 Ex. O – Benson Deposition Excerp # 16 Ex. P – Plaintiffs' First Amended Response to Defendant's First Set of Interrogatories, # 17 Ex. Q – Herrs Deposition Excerpts, # 18 Ex. R – Sign Permit Application, # 19 Ex. S – Howard Deposition Excerpts, # 20 Ex T – Howard Declaration, # 21 Ex. U – On–Hold Letter, # 22 Ex. V – Michelson Deposition Excerpts, # 23 Ex. W – Defendant's Amended Response to Plaintiffs' First Set of Interrogatories, # 24 Ex. X – Windholz Depositi Excerpts, # 25 Ex. Y – 4/17/17 Salina City Commission Meeting Minutes, # 26 Ex. Z – 4/17/17 Salina City Commission Meeting Documents, # 27 Ex. AA – 5/15/17 Salina City Commission Meeting Minutes, # 28 Ex. BB – 5/15/17 Salina City Commission Meeting Documents, # 29 Ex. CC – 6/26/17 Salina City Commission Meeting Minutes, # 30 Ex. DD – 6/26/17 Salina City Commission Meeting Documents, # 31 Ex. EE – 7/10/17 Salina City Commission Meeting Minutes, # 32 Ex. FF – 7/10/17 Salina City Commission Meeting Document 33 Ex. GG – Taylor Declaration and Report, # 34 Ex. HH – Cozy Photos, # 35 Ex. II – Mural Photos, # 36 Ex – Photos, # 37 Ex. KK – White Declaration and Report, # 38 Ex. LL – Defendant's Answers to Second Set of Interrogatories, # 39 Ex. MM – Content–Neutral Sign Codes After Reed and Austin, # 40 Ex. NN – White Deposition Excerpts, # 41 Ex. OO Shaw Declaration, # 42 Exhibit List)(MacRoberts, Samuel) (Entered: 02/28/2025) |
| 02/28/2025 | 109 | RESPONSE by Defendant Salina, Kansas, City of re 104 Motion for Summary Judgment (Attachments: # 1 Exhibit List Index of Exhibits to Defendant's Response to Plaintiffs' Motion for Summary Judgment, # 2 Exhibit 1–Howard Deposition, # 3 Exhibit 2–Amended Pretrial Order, # 4 Exhibit 3–White Affidavit, # 5 Exhibit 4–Dustin Herrs Deposition, # 6 Exhibit 5–Anderson Deposition, # 7 Exhibit 6–Exhibit V to Howard Depo, # 8 Exhibit 7–Exhibit Y to Howard Depo, # 9 Exhibit 8–Benson Depo, # 10 Exhibit 9–Exhibit C to Benson Depo, # 11 Exhibit 10–Driscoll Depo, # 12 Exhibit 11–Dean Andrew Depo, # 13 Exhibit 12–Response to First Set of Interrogatories, # 14 Exhibit 13–Dean Andrew Corporate (30(b)(6)) Depo, # 15 Exhibit 14–Schrage Depo, # 1 Exhibit 15–Dustin Herrs Corporate (30(b)(6)) Depo, # 17 Exhibit 16–Meeting Transcript, # 18 Exhibit 17–Sign Analysis, # 19 Exhibit 18–Sign Code Excerpts, # 20 Exhibit 19–Response to Requests for Admission, # 21 Exhibit 20–White Deposition, # 22 Exhibit 21–Dean Andrew Affidavit, # 23 Exhibit 22–Stutts Article, # 24 Exhibit 23–Windholz Deposition, # 25 Exhibit 24–Dustin Herrs Affidavit)(Martin, Aaron) (Entered: 02/28/202 |

| 03/05/2025 | 110 | MOTION to Supplement *or Correct Plaintiffs' Memorandum in Support of Motion for Summary Judgment* by Plaintiffs Cozy Inn, Incorporated, Stephen Howard (Attachments: # 1 Ex. MM – Defendant's Answer to Secon Set of Interrogatories, # 2 Exhibit List)(Shaw, Jeffrey) (Entered: 03/05/2025) |
| 03/06/2025 | 111 | ORDER granting 110 Motion to Supplement to Memorandum in Support 105 of Motion for Summary Judgme 104 by Plaintiffs Cozy Inn. Signed by District Judge Toby Crouse on 3/6/25. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 03/06/2025) |
| 03/14/2025 | 112 | REPLY TO RESPONSE TO MOTION by Plaintiffs Cozy Inn, Incorporated, Stephen Howard re 104 Motion f Summary Judgment. (Attachments: # 1 Ex. A – Howard Declaration, # 2 Ex. B – Howard Deposition, # 3 Ex. – Benson Deposition, # 4 Ex. D – Blase Deposition, # 5 Ex. E – Andrew Deposition, # 6 Ex. F – Herrs 30(b)(( Deposition, # 7 Ex. G – On–Hold Letter, # 8 Ex. H – Michelson Deposition, # 9 Ex. I – Herrs Deposition, # 10 Ex. J – Windholz Deposition, # 11 Ex. K – Art Center DRB Packet, # 12 Ex. L – Mural Photos, # 13 Ex. M – Def. Amend. Ans. First Set of Rogs, # 14 Ex. N – White Deposition, # 15 Ex. O – Schrage Email 11/8/23, # 16 Ex. P – Talking Points, # 17 Ex. Q – Schrage Email 11/9/23, # 18 Ex. R – Commission Transcript, # 19 Ex. S Schrage Deposition, # 20 Ex. T – Schrage Email 2/20/24, # 21 Ex. U – Plt. First Amend. Resp. First Set of Ro # 22 Ex. V – Driscoll Deposition, # 23 Ex. W – Andrew 30(b)(6) Deposition, # 24 Ex. X – Yard DRB Packet, 25 Ex. Y – Def. Ans. Second Set of Rogs, # 26 Ex. Z – Def. Ans. First Set of Rogs, # 27 Ex. AA – Taylor Deposition, # 28 Exhibit List)(Shaw, Jeffrey) (Entered: 03/14/2025) |
| 03/14/2025 | 113 | REPLY TO RESPONSE TO MOTION by Defendant Salina, Kansas, City of re 106 Motion for Summary Judgment. (Attachments: # 1 Index of Exhibits, # 2 Ex. A – City's Response to Requests for Admissions, # 3 E B – Dustin Herrs Deposition Transcript Excerpts, # 4 Ex. C – Dean Andrew 30(b)(6) Corp. Deposition Transc Excerpts, # 5 Ex. D – Dean Andrew Deposition Transcript Excerpts, # 6 Ex. E – Mark White Deposition Transcript Excerpts, # 7 Ex. F – Relevant Salina Code Excerpts, # 8 Ex. G – The Sign Code Analysis, # 9 Ex. – City Commission Meeting Transcript, # 10 Ex. I – Stephen Howard Deposition Transcript Excerpts, # 11 Ex – Other Jurisdiction Municipal Code Citations, # 12 Ex. K – Dustin Herrs 30(b)(6) Corp. Deposition Transcrip Excerpts, # 13 Ex. L – Stutts Report, # 14 Ex. M – Dean Andrew Affidavit, # 15 Ex. N – Mark White Affidavit)(Martin, Aaron) (Entered: 03/14/2025) |
| 03/28/2025 | 114 | MOTION to Supplement *or Correct Defendant's Response to Plaintiffs' Motion for Summary Judgment [ECF 109]* by Defendant Salina, Kansas, City of (Attachments: # 1 Exhibit 13 – Dean Andrew Corporate (30(b)(6)) Depo)(Martin, Aaron) (Entered: 03/28/2025) |
| 03/28/2025 | 115 | ORDER granting 114 Motion to Supplement Defendant City of Salina, Kansas's Response, Doc. 109, to Plaintiffs' Motion for Summary Judgment, Doc. 104. Signed by District Judge Toby Crouse on 3/28/25. (This i TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 03/28/2025) |
| 04/17/2025 | 116 | TRIAL ORDER: SEE ORDER FOR ADDITIONAL DEADLINE INFORMATION. Estimated trial time 2 day Bench Trial set for 10/7/2025 at 09:00 AM in Wichita Courtroom (TBD) before District Judge Toby Crouse. I Limine Conference set for 9/15/2025 at 10:00 AM in Wichita Courtroom (TBD) before District Judge Toby Crouse. Signed by District Judge Toby Crouse on 4/17/25. (ta) (Entered: 04/17/2025) |
| 05/30/2025 | 117 | NOTICE OF SUPPLEMENTAL AUTHORITY by Cozy Inn, Incorporated, Stephen Howard re: MOTION for Summary Judgment 106 filed by Defendant Salina, Kansas, City of, MOTION for Summary Judgment 104 file by Plaintiff Stephen Howard, Plaintiff Cozy Inn, Incorporated (MacRoberts, Samuel) (Entered: 05/30/2025) |
| 06/04/2025 | 118 | RESPONSE to 117 Notice of Supplemental Authority, 109 Response to Motion,,,, by Defendant Salina, Kansa City of. (Martin, Aaron) (Entered: 06/04/2025) |
| 06/20/2025 | 119 | ORDER denying without prejudice 26 Motion to Dismiss for Failure to State a Claim. The parties' motions for summary judgment, Docs. 104 & 106, and their motions to exclude expert testimony, Docs. 97 & 98, will be decided in the ordinary course. Signed by District Judge Toby Crouse on 6/20/2025. (ca) (Entered: 06/20/2025 |
| 06/30/2025 | 120 | |

| | | |
|---|---|---|
| | | NOTICE of Regarding Non–Party Injunctive Relief by Cozy Inn, Incorporated, Stephen Howard. (Shaw, Jeffr (Entered: 06/30/2025) |
| 07/07/2025 | 121 | ANSWER to 16 Amended Complaint by Salina, Kansas, City of. (Martin, Aaron) (Entered: 07/07/2025) |
| 08/12/2025 | 122 | Final WITNESS LIST by Cozy Inn, Incorporated, Stephen Howard.(Shaw, Jeffrey) (Entered: 08/12/2025) |
| 08/12/2025 | 123 | Final EXHIBIT LIST by Cozy Inn, Incorporated, Stephen Howard.(Shaw, Jeffrey) (Entered: 08/12/2025) |
| 08/12/2025 | 124 | Amended Final WITNESS LIST by Cozy Inn, Incorporated, Stephen Howard.(Shaw, Jeffrey) (Entered: 08/12/2025) |
| 08/12/2025 | 125 | Final WITNESS LIST by Salina, Kansas, City of.(Martin, Aaron) (Entered: 08/12/2025) |
| 08/12/2025 | 126 | Final EXHIBIT LIST by Salina, Kansas, City of.(Martin, Aaron) (Entered: 08/12/2025) |
| 08/19/2025 | 127 | NOTICE of Telephone Conference: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Telephone Conference set for 8/21/2025 at 03:30 PM. Participants are directed to call into Conference Line: 785–337–82 ACCESS CODE 890 312 185. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ta) (Entered: 08/19/2025) |
| 08/19/2025 | 128 | OBJECTION(S) to *Defendant's Final Exhibit Disclosures 126* by Cozy Inn, Incorporated, Stephen Howard. (Shaw, Jeffrey) Modified to add link on 8/20/2025 (msb). (Entered: 08/19/2025) |
| 08/19/2025 | 129 | OBJECTION(S) to *Defendant's Final Witness Disclosures 125* by Cozy Inn, Incorporated, Stephen Howard. (Shaw, Jeffrey) Modified to add link on 8/20/2025 (msb). (Entered: 08/19/2025) |
| 08/19/2025 | 130 | OBJECTION(S) to 123 Exhibit List by Salina, Kansas, City of. (Martin, Aaron) (Entered: 08/19/2025) |
| 08/19/2025 | 131 | OBJECTION(S) to 124 Witness List by Salina, Kansas, City of. (Martin, Aaron) (Entered: 08/19/2025) |
| 08/21/2025 | 132 | MINUTE ENTRY for proceedings held before District Judge Toby Crouse: TELEPHONE CONFERENCE he on 8/21/2025. Upon agreement of the parties and in light of the anticipation that all the issues presented in the parties' summary judgment papers are legal questions that can be resolved without a trial, the parties' remainin pretrial obligations are suspended and the current trial setting is cancelled. An in–person status conference is s to occur on 10/22/2025 at 09:00 AM in Topeka Courtroom 401 (TC) before District Judge Toby Crouse to address any remaining claims surviving the anticipated summary judgment ruling. (ta) (Entered: 08/21/2025) |
| 10/14/2025 | 133 | NOTICE OF RESCHEDULED HEARING: THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Status Conference rescheduled for 11/19/2025 at 09:00 AM in Topeka Courtroom 401 (TC) before District Judge Tob Crouse. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ta) (Entered: 10/14/2025) |
| 11/18/2025 | 134 | NOTICE OF TELEPHONE CONFERENCE: Telephone Conference set for 11/19/2025 at 12:00 PM. Particip are directed to call into the CONFERENCE LINE: 785–337–8299; ACCESS CODE: 890 312 185. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.)(ta) (Entered: 11/18/2025) |
| 11/18/2025 | 135 | NOTICE OF CANCELLED IN–PERSON STATUS CONFERENCE previously set for 11/19/25 at 9:00 a.m. Telephone Conference has been set on 11/19/25 at 12:00 PM. See DE 134. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ta) (Entered: 11/18/2025) |
| 11/19/2025 | 136 | MEMORANDUM AND ORDER granting in part and denying in part 104 & 106 Motions for Summary Judgment; denying 97 & 98 Motions to Exclude Expert Testimony. Signed by District Judge Toby Crouse on 11/19/2025. (msb) (Entered: 11/19/2025) |
| 11/19/2025 | 137 | NOTICE OF CANCELLED HEARING. The telephone conference scheduled for November 19, 2025, at 12:0 PM is cancelled. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ta) (Entered: 11/19/2025) |

| | | |
|---|---|---|
| 12/03/2025 | 138 | MOTION for Attorney Fees *and Costs* by Plaintiffs Cozy Inn, Incorporated, Stephen Howard (MacRoberts, Samuel) (Entered: 12/03/2025) |
| 12/18/2025 | 139 | NOTICE OF APPEAL as to 136 Order on Motion to Exclude Expert Testimony,, Order on Motion for Summa Judgment, by Defendant Salina, Kansas, City of. Filing fee $ 605, Internet Payment Receipt Number AKSDC–6854931. (Martin, Aaron) (Entered: 12/18/2025) |
| 12/18/2025 | 140 | Joint MOTION to Stay Case re 136 Order on Motion to Exclude Expert Testimony,, Order on Motion for Summary Judgment, by Defendant Salina, Kansas, City of (Attachments: # 1 Exhibit Stipulation During Pendency of Appeal)(Martin, Aaron) (Entered: 12/18/2025) |
| 12/19/2025 | 141 | NOTICE OF TELEPHONE CONFERENCE:  THIS IS AN OFFICIAL NOTICE FOR THIS HEARING. Telephone Conference set for 12/23/2025 at 10:00 AM. Participants are directed to call into the Conference Li 785–337–8299; ACCESS CODE 890 312 185. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ta) (Entered: 12/19/2025) |

In the United States District Court
for the District of Kansas

———————————

Case No. 24-cv-01027-TC

———————————

Cozy Inn, Incorporated, et al.,

*Plaintiffs*

v.

City of Salina, Kansas,

*Defendant*

———————————

## MEMORANDUM AND ORDER

Plaintiffs Cozy Inn, Incorporated and its owner Stephen Howard sued the City of Salina, Kansas for constitutional violations after the City stopped Howard from painting a display on the side of the building that housed his restaurant. Doc. 16; *see also* 42 U.S.C. § 1983. All parties moved for summary judgment, Docs. 104 & 106, and to exclude the other's expert testimony, Docs. 97 & 98. For the following reasons, each party's motion for summary judgment is granted in part and denied in part, and each party's motion to exclude expert testimony is denied.

## I

## A

Each motion has a different standard that governs resolution. The following describes each applicable standard.

**1.** As noted, the parties challenge the admissibility of each other's experts. The admissibility of expert testimony is guided by Federal Rule of Evidence 702. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). To fulfill its gatekeeping role, a trial court must ensure that the expert is qualified and that his or her testimony is both reliable and

1

relevant. *Id.* at 1180–81. "Rule 702 requires an expert witness to be qualified by 'knowledge, skill, experience, training, or education.'" *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). Testimony is reliable if "it is based on sufficient data, sound methods, and the facts of the case." *See Roe*, 42 F.4th at 1181 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). It is relevant if it helps the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020).

**2.** Both parties contend that they are entitled to summary judgment. Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

The facts are not in dispute and, as a result, are not construed in either party's favor. In particular, the parties either agree completely as to the material facts or, to the extent there is a disagreement, the purported dispute is unsupported by the cited record. *See Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 758 n.5 (10th Cir. 2021) (noting that the facts are construed in the light most favorable to the non-movant only "insofar as there are material disputes of fact").

**1.** Plaintiff Stephen Howard owns Cozy Inn, Inc., a local and storied hamburger restaurant in downtown Salina, Kansas. Doc. 105 at ¶ 1; *see also* KWCH Staff, *Salina's Cozy Inn Celebrating 100 Years in Business*, 12News (Mar. 11, 2022, 9:33 PM), https://www.kwch.com/2022/03/12/salinas-cozy-inn-celebrating-100-years-business/.[1] Howard hired an artist to paint a display on the exterior wall of the building he owns that houses Cozy Inn. Doc. 105 at ¶¶ 9–12. That wall was previously plain white. *Id.* at ¶ 9. Howard intends for the display, once completed, to "include whimsical hamburger-esque flying saucers piloted by aliens attacking The Cozy with blasts of ketchup and mustard." *Id.* at ¶ 14. It will read: "Don't Fear the Smell!! The Fun is Inside!!" *Id.* And a painted arrow will point to the building's entrance and the ordering window on the exterior wall. *Id.* at ¶ 15; Doc. 108 at ¶ 27.

Howard wanted Cozy Inn's display to be part of the "proliferation of mural art" in Salina. Doc. 105 at ¶ 6 (quoting Doc. 105-5 at 23). He described the various murals throughout the city and said he "wanted to participate in this 'part of Salina culture.'" *Id.* at ¶ 10. Many of the murals Howard describes are seemingly similar to the one Howard wants to complete at Cozy Inn. *See id.* at ¶ 129. For example, an abandoned grain elevator in Salina features a mural that "depicts children playing ring-around-the-rosie." *Id.* at ¶ 122. A baseball training facility features a large mural on one of its exterior walls that shows baseball players during a baseball game with phrases like "Outta the Park!" and "Good Game!" Doc. 105-6 at 5. And a music-related business has a mural on its exterior walls called "Symphony of Sunflowers" that

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

covers the exterior walls with paintings of music notes and sunflowers. Doc. 105 at ¶ 149.

The artist Howard hired, Colin Benson, began painting the display on Friday, November 3, 2023. Doc. 105 at ¶ 26. Three days later, however, Salina officials informed him that they believed the display was too large to be permitted under the City's sign code. Doc. 107 at 10, ¶ 20. Then, because the officials determined that the display was a sign subject to the sign code's regulations, they told Howard that the display would be too large to qualify for a sign permit and directed him to pause work on the display. *Id.* The display is a sign, according to Salina, because it "pertains to or references the goods or services for sale." Doc. 105 at ¶ 100. In particular, Salina's position is that the display "advertises hamburger, chopped onions, pickles, ketchup, and mustard" by depicting those images as part of the display. Doc. 107 at 13–14, ¶ 40. The parties' subsequent interactions are detailed more fully below, but it is first necessary to understand the relevant portions of the Salina sign code.

**2.** Salina's written sign code and the way city officials interpret it demonstrate that outdoor displays in Salina fall into one of two categories: murals (or art) and signs. Doc. 105 at ¶ 37 (noting that murals are not regulated); *id.* at ¶ 154 (noting that Salina uses the word "art" as "an imprecise short-hand for 'not sign'"). Murals are a type of art, so they are not regulated by Salina's sign code. *Id.* at ¶ 37. That means there are no restrictions on their size or how many may be displayed on a given property, and it is not necessary to obtain a permit before painting a mural on the exterior wall of a building. *See id.* Signs, however, are subject to regulation. Doc. 107 at 6, ¶ 1. If an outdoor display is deemed a sign as that term is defined by the sign code, it must comply with the restrictions set forth in the code. *Id.*

The sign code expressly defines what constitutes a sign. Doc. 107 at 6, ¶ 3; Salina, Kan., Code of Ordinances ch. 42, art. X, § 42-502 (2023) [hereinafter Salina Code]. It provides:

> *Sign* is any writing (including letters, words or numerals), pictorial representation (including illustrations or decorations), emblem (including devices, symbols, or trademarks), flag, banner, streamer, pennant, string of lights, or display calculated to attract the attention of the public, or any other figure of similar character which:

(1) Is a structure or any part thereof, or a portable display, or is attached to, painted on, or in any other manner represented on a building or other structure on the ground;

(2) Is used to announce, direct attention to, or advertise; and

(3) Is not located inside a building.

The sign code also defines specific types of signs. Relevant here is the definition of wall sign: "a sign fastened to or painted on a wall of a building or structure in such a manner that the wall becomes merely the supporting structure or forms the background surface, and which does not project more than twelve (12) inches from such building." Doc. 107 at 7–8, ¶ 5; Salina Code § 42-781.

In addition, the sign code expressly sets forth its purposes. Doc. 107 at 6–7, ¶ 4; Salina Code § 42-500. Among others, those purposes include improving pedestrian and traffic safety, protecting the city's aesthetic appearance, preventing property damage, and protecting property values. Doc. 107 at 6–7, ¶ 4; Salina Code § 42-500(3)–(5).

An individual or business that wants to paint or otherwise construct a sign must first obtain a permit. Doc. 107 at 8, ¶ 6; Salina Code § 42-501. Specifically, the sign code provides:

No sign . . . shall be painted, constructed, erected, remodeled, relocated or expanded until a zoning certificate (sign permit) for such sign has been obtained pursuant to the procedure set forth in this article . . . . A zoning certificate (sign permit) shall be either issued or refused by the zoning administrator within ten (10) days after the receipt of an application therefore or within such further period as may be agreed to by the applicant. No zoning certificate for any sign shall be issued unless the sign complies with the regulations of this article.

Doc. 107 at 8, ¶¶ 6–7; Salina Code § 42-501. But, as noted, no permit need be sought or obtained to construct a mural. Doc. 105 at ¶ 37. The permit requirement applies only to displays that Salina deems as signs. *Id.*

5

Displays that meet the definition of sign must comply with certain size limits, too. Doc. 107 at 8–9, ¶ 9; Salina Code § 42-521(4)(b). The sign code allows for a certain amount of a property's surface area to be devoted to signage, depending on which zone of the city the property is located. Doc. 107 at 8–9, ¶ 9; Salina Code § 42-521(4)(b). Salina will not issue a permit for a sign to be painted or otherwise erected if the sign would be larger than the amount of surface area the property is authorized to use for signage, whether that be on its own or in combination with the signs that are already on the property. Doc. 107 at 8, ¶ 7.

**3.** The aforementioned portions of Salina's sign code provide the context for what happened once city officials noticed the display. Benson had started painting the display on a Friday, and by the end of the weekend, Brad Anderson, a Salina employee, noticed it both on social media and in person. Doc. 105 at ¶ 28; Doc. 109 at 7, ¶ 28; Doc. 109-6 at 3–5. He texted two other city officials about the display, informing them that it was being painted and doubting that it had been approved through the sign-permit process. Doc. 109-6 at 3–5. It remained "up in the air" on Sunday whether city officials would consider the display a regulated sign or an unregulated mural. Doc. 105-13 at 10.

The next day, four city officials met to answer that question. Doc. 105 at ¶ 29. Those individuals included Lauren Driscoll, Salina's Director of Community and Development Services, Dean Andrew, the city's Planning and Zoning Administrator, and two city planners, Dustin Herrs and Dustin Michelson. Doc. 105-14 at 10; Doc. 107-5 at 2–3. They looked at a photograph of Benson's efforts, compared it to the sign code's definition, and determined collectively that the display was a sign that was subject to regulation under the code. Doc. 105 at ¶ 30; Doc. 105-14 at 10–11. They also concluded that the size of the display likely exceeded the surface area that Cozy Inn had remaining for signage by nine times the allowed amount, according to calculations Herrs made using a digital software. Doc. 105 at ¶ 32; Doc. 107-12 at 11–12.

City officials explained their decision to Howard at two separate meetings in November 2023. Doc. 107 at 10, ¶ 20; *id.* at 12, ¶ 29. They reasoned that the display was a sign subject to regulation because "the hamburgers are basically the same thing [Howard] sells, and therefore, it would be signage." Doc. 105 at ¶ 54 (quoting Doc. 105-10 at 10).

6

Over the following days and weeks, Salina's officials provided more insight into how they determined that the display was a sign. They provided this information through written memoranda and public remarks to the city commissioners, as well as statements to the media. Doc. 105 at ¶¶ 43, 55, 60, 72. In each remark, the officials focused on the fact that the display depicted the same food products sold at Cozy Inn. For example, City Manager Michael Schrage explained in a memo: "While [the display] might look similar to murals in the downtown and elsewhere, it contains a commercial message promoting a business and its product which makes it a wall sign . . . ." Doc. 105-18 at 2; Doc. 105 at ¶ 45; *see also* Doc. 105-5 at 11 ("And I would reiterate, it's all on the basis of a commercial message."). Director of Community and Development Services, Lauren Driscoll, further elaborated on Schrage's explanation. Doc. 105 at ¶ 63. In particular, she explained that the distinction between murals and signs turns on whether the display depicts images that are "part of a commercial transaction that would take place in that building or draw you to that building for a commercial transaction." Doc. 105-5 at 24. Driscoll illustrated her point with an example. Doc. 105 at ¶ 65. She said that if a coffee house painted a display depicting a dove with an olive branch and the word "peace," then the display would not be a sign because it would not depict anything sold inside of the coffee house. Doc. 105-5 at 24; Doc. 105 at ¶¶ 64–66. In contrast, a display at the same coffee house would be a sign if it depicted "a steaming cup of coffee and a coffee pot on the side" because "that illustration can suggest that commercial transaction." Doc. 105-5 at 24–25; Doc. 105 at ¶¶ 64–66.

There is a dispute as to whether this distinction between murals and signs derives from the text of the sign code. The plaintiffs state that it is an extratextual requirement unsupported by the text of Salina's sign code. Doc. 108 at 7–8. In contrast, Salina asserts that it is an interpretation of the word "advertise," which appears in the definition of sign. *Id.* At the time that Driscoll and Schrage made their comments to the city commissioners and the public, they did not indicate that the mural-sign distinction is connected to the word "advertise." Later, however, Salina produced deposition testimony from various officials and answers to interrogatories asserting that its determination relied on the text of the sign code—specifically, the sub-section of the definition of sign noting that signs "announce, direct attention to, or *advertise*." Doc. 107 at 11, 13–14, at ¶¶ 27, 40 (emphasis added). So, according to Salina, a display is used to advertise if it "is meant to attract customers, encourage a commercial transaction . . . [or] call attention

to a brand, products, or services in order to encourage the purchase of products or services, in that it pertains to or references the goods or services for sale." Doc. 105-24 at 7.

Salina also stated that it concluded the display was a sign because it "contains a tag line *announcing* the infamous smells of the Cozy" and because "it has an arrow *directing attention to* the building entrance and ordering window." Doc. 107 at 11, ¶ 27 (emphasis added). Howard and Cozy Inn deny that this is how Salina enforced its sign code against their display. Doc. 108 at 7–8, ¶ 26. They claim that Salina considered their display a sign solely "because it perceived the . . . content as a commercial message pertaining to goods sold by The Cozy" contrary to the sign code's text. *Id.*

**4.** Because city officials determined the display was a sign, they told Howard to submit a sign-permit application. Doc. 105 at ¶ 103; Doc. 105-14 at 17. Howard submitted an application on November 13, 2023. Doc. 105 at ¶ 104 (citing Doc. 105-25); Doc. 105-14 at 19. Salina neither granted nor denied Howard's application. Doc. 106 at ¶ 106. Instead, it put the application on hold. *Id.* City Planner Dustin Herrs believed that city officials had a common understanding with Howard that a decision would not be made regarding his permit application until the officials conducted "a comprehensive review of the sign regulations to see if there were any appropriate text amendments that could be made to accommodate The Cozy Inn sign." Doc. 109-16 at 36–37. But Howard did not share this understanding. Doc. 108 at 6, ¶ 23 (citing Doc. 108-20 at ¶ 26). Howard agrees that city officials informed him of his application's on-hold status, but he disputes that he agreed to that decision. *Id.*

In February 2024, three months after submitting his permit application, Howard received a letter regarding the application from another city planner, Dustin Michelson. Doc. 105-27. The parties did not identify any other discussions between Howard and Salina during those three months. Michelson's letter stated, in relevant part:

> This letter is to inform you that the City is engaging in a comprehensive review of the City's sign regulations, which will include a review of the regulations pertaining to painted wall signs. As a result of this, and due to the unique nature of the existing signs at The Cozy Inn, our office will be placing your . . . sign permit application on-hold until our review of the sign regulations is

8

> complete. Once we have completed that code review process, Staff will then be able to . . . review your sign permit application in the context of any sign regulations that may be revised during our code review.

Doc. 105-27 at 2. Two weeks after receiving Michelson's letter, Howard and Cozy Inn filed this federal lawsuit against the City of Salina. Doc. 1.

**C**

Broadly speaking, Howard and Cozy Inn allege two constitutional violations.[2] Doc. 101 at ¶ 4.a. First, they allege that Salina's sign code, along with the unwritten practices Salina uses to enforce it, violates the First Amendment's Free Speech Clause on its face and as applied to the plaintiffs' display. *Id.* at ¶ 4.a.i. That claim has two facets. In one, the plaintiffs assert that Salina's differentiation between regulated signs and unregulated murals is a content-based distinction that cannot survive strict scrutiny. *Id.* In the other, they allege that Salina's sign code and the way Salina applies it created an unconstitutional prior restraint on their speech. *Id.* Second, Howard and Cozy Inn allege that Salina's sign code is impermissibly vague in violation of the Fourteenth Amendment's Due Process Clause. *Id.* at ¶ 4.a.ii.

Howard and Cozy Inn seek two types of relief. Doc. 101 at ¶ 5. They first seek a declaratory judgment that Salina's written sign code, its unwritten policies and practices, its sign-permit requirement, and its enforcement mechanisms are an impermissible content-based restriction on speech, an unlawful prior restraint on speech, and that they are unconstitutionally vague. *Id.* at ¶ 5.a. The plaintiffs alternatively seek a declaration that the sign policies fail to satisfy intermediate scrutiny, assuming they are found to be content-neutral restrictions on

---

[2] Howard and Cozy Inn initially challenged an additional portion of Salina's sign regulations. Doc. 92 at 8–9. Specifically, they claimed that Salina's Business Improvement District Code, which required downtown businesses to obtain approval before making exterior aesthetic changes to their buildings, was unconstitutional. *Id.*; Doc. 16 at ¶ 59. While this lawsuit was pending, however, Salina amended the Business Improvement District Code and determined that, as amended, it did not apply to Howard and Cozy Inn's proposed display. Doc. 101 at 1. As a result, the parties agreed that the plaintiffs' claims involving the Business Improvement District Code were rendered moot by the subsequent amendments to that code. Doc. 101 at ¶ 2.a.xv.

9

speech. *Id.* at ¶ 5.a.iii. And the plaintiffs seek permanent injunctive relief enjoining Salina and its officials from enforcing the entire sign code and any associated practices against them if they complete their unfinished display.[3] *Id.* at ¶ 5.a.b–c.

There are four pending motions. Docs. 97, 98, 104, 106. Each party moves to exclude expert testimony. Docs. 97 & 98. Each party also seeks judgment in their favor on both claims. Docs. 105 & 107. Finally, Salina argues that Howard and Cozy Inn lack standing to bring their claims. Doc. 107 at 18–20.

**II**

Both parties seek summary judgment. As noted below, each motion for summary judgment is granted in part and denied in part. Specifically, Howard and Cozy Inn have standing, and they have shown that they are entitled to judgment as a matter of law on their First Amendment content-discrimination and prior-restraint claims. But Salina has shown that its sign ordinance is not impermissibly vague, warranting summary judgment in Salina's favor on the plaintiffs' Fourteenth Amendment claim.

**A**

Salina's motion for summary judgment relies on its expert witness, Mark White. Howard and Cozy Inn have filed a motion to exclude White's expert testimony.[4] Doc. 97.

White seeks to offer seven opinions. Doc. 97-3 at 3. First, White states that Salina's sign code "establishes time, place and manner metrics that are not content-based." *Id.* His second opinion is that Salina's

---

[3] Howard and Cozy Inn initially sought a permanent injunction that would enjoin Salina and its officials from enforcing the sign code against not only the two plaintiffs, but those similarly situated to them. Doc. 101 at ¶ 5.b. They voluntarily withdrew that request, claiming *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), precludes injunctions that would apply to entities that are not parties to this suit. Doc. 102 at 1.

[4] Howard and Cozy Inn identified a rebuttal expert, Dr. Charles Taylor. Salina moved to exclude his testimony. Doc. 98. Because Taylor's expert report was not necessary to resolve the parties' summary judgment motions, Salina's motion is denied as moot.

sign code "is supported by substantial and compelling interests in the area of urban planning and code administration." *Id.* Next, White asserts that the sign code "directly and materially furthers its recited purposes," "is not vague," and "has numerous procedural safeguards." *Id.* He then opines that the sign code "is reasonable in scope in that it targets issues related to wall signs, without unnecessarily expanding its reach to artistic murals." *Id.* And finally, White says that the restrictions in Salina's sign code "are reasonable, generally accepted regulations of the size, shape, placement, and design of signs." *Id.*

Howard and Cozy Inn move to exclude White as an expert at trial. Doc. 97. First, they argue that White's opinions invade the province of the factfinder by applying the law to the facts and making impermissible legal conclusions. *Id.* at 3–7. Second, they argue that White's opinions are unreliable because they "are based on inappropriate speculation and conjecture" and because they contradict a treatise that White authored. *Id.* at 7–14. Salina, as the proponent of White's testimony, bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). It has done so here, and, as a result, the plaintiffs' motion to exclude is denied.

**1.** Howard and Cozy Inn first challenge White's seven opinions as impermissible legal opinions. Doc. 97 at 3–7. Specifically, they rely on the principle that an "expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342–43 (10th Cir. 2017) (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)).

It is true that White's opinions largely mirror the legal standards that the issues in this lawsuit turn on. But it is unnecessary to entirely exclude White as an expert witness because the parties requested a bench trial. Doc. 101 at 20–21. The concern that the plaintiffs raise typically arises in cases that will be tried by a jury because it is important to ensure that experts do not "go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014). That concern is absent when the trial judge is the finder of facts: Courts are able to identify and ignore an expert's testimony if and when the expert opines on what the law is or attempts to apply the law to the facts of the specific case. *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 780

(10th Cir. 2009) (noting that "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation").

The plaintiffs have not identified any authority excluding testimony as an impermissible legal conclusion in a bench trial. As a result, exclusion is not necessary because, to the extent White's testimony states impermissible legal conclusions, it can be ignored. *See id.*

**2.** So, too, with the plaintiffs' reliability challenge. In essence, Howard and Cozy Inn argue that White's opinions are unreliable because they are not based on sufficient facts and data, and they contradict conclusions White made in a treatise he authored. Doc. 97 at 7–14. Not so.

First, White's opinions are based on reliable facts and data. Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."). White bases his opinions on the knowledge and experience he has gained as "a planner and attorney recognized as an expert in zoning and subdivision law, form-based zoning and New Urbanism, land use and takings litigation, housing, development of comprehensive growth management plans, and implementation systems." Doc. 97-3 at 39. That is sufficiently reliable. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2005) (holding that a fire investigator's expert opinion on the cause of a fire was reliable when it was based on his experience and knowledge). White also explained how he formed his opinions. He reviewed Salina's sign code, its comprehensive plan, its purported interests, and other municipalities' sign codes. *See generally* Doc. 97-3. This gave White sufficient facts and data on which he could rely to opine on the connection between Salina's sign code and its proffered justification for its speech restrictions. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243–44 (10th Cir. 2000) (finding the district court did not abuse its discretion in admitting expert's testimony where expert testified based on review of case-specific data like depositions and discovery material).

Second, White used reliable methods to evaluate the data he gathered through his experience and reach conclusions based on it. He applied what he knows about urban planning and zoning regulations to arrive at conclusions that logically follow from that knowledge and experience. For example, White examined Salina's sign code and comprehensive plan to explain the city's purported justifications for its sign

regulations are traffic safety, aesthetics, and public health. Doc. 97-3 at 5–9. Then, he reviewed several studies and reports regarding the impact that signs and public art can have on those interests. *Id.* And he concluded, relying on that data and his expertise, that Salina's sign regulations serve the purposes they are intended to serve. *Id.* That is what experts do. Fed. R. Evid. 702 advisory committee's note (2023); *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1030–31 (10th Cir. 2021) (explaining that an expert may testify about opinions that rely on subjective opinions supported by general standards in the expert's field). And, more importantly, it is sufficient to establish reliability. *Bitler*, 400 F.3d at 1235 (finding expert conclusions based on experience and knowledge reliable).

Salina's contention that White's opinions in this case differ from what he has previously said does not compel a different result. *Contra* Doc. 97 at 2. That his views may be seen as evolving or inconsistent goes to the weight, not the admissibility, of his testimony. *Ingersoll-Rand*, 214 F.3d at 1244. And, like the plaintiffs' challenge to White's opinions as impermissible legal conclusions, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Att'y Gen. of Okla.*, 565 F.3d at 779. As a result, exclusion is unnecessary.

## B

The next issue is Salina's contention that Howard and Cozy Inn lack standing to bring this suit. Doc. 107 at 18–20. It fails because the plaintiffs have shown that they suffered an injury-in-fact that is fairly traceable to Salina's actions and likely to be redressed by a favorable decision.

### 1

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2, cl. 1.); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "For there to be a case or controversy under Article III, the plaintiff must have . . . standing." *TransUnion*, 594 U.S. at 423. "Regardless of the stage of litigation at which [federal courts evaluate] standing, the standing inquiry remains focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Plaintiffs "must demonstrate standing

13

separately for each form of relief sought." *WildEarth Guardians v. Pub/Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000)) (internal quotation marks omitted).

Standing requires a plaintiff to have "suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant" and is likely to be "redressed by a favorable decision." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These requirements ensure that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Looper*, 22 F.4th at 876 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

The injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). For an injury to be concrete, it must be "real" rather than "abstract," but not necessarily "tangible." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190–91 (10th Cir. 2021). In other words, "it must actually exist." *Spokeo*, 578 U.S. at 340. And "[a] statutory violation does not necessarily establish injury in fact." *Looper*, 22 F.4th at 876 (explaining that *Spokeo* and *TransUnion* recently clarified that fact). "For an injury to be particularized, it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1); *see also Spokeo*, 578 U.S. at 339. "[A]ctual or imminent [means] that the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). And "[a]n alleged future injury is sufficiently imminent 'if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Looper*, 22 F.4th at 876 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

As to causation, the plaintiff must show that "its injury is 'fairly traceable to the challenged action'" of the defendant. *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1152 (10th Cir. 2022) (quoting *Friends of the Earth*, 528 U.S. at 180). For Article III purposes, that means "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). To make that showing, "plaintiffs bear the burden of pleading and proving concrete facts showing that the defendant's *actual action* has caused the [harm or a]

substantial risk of harm." *Rocky Mountain Peace & Just. Ctr.*, 40 F.4th at 1152 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)) (quotation marks omitted).

Regarding redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1325 (10th Cir. 2022) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). In other words, "a party must show that a favorable court judgment is likely to relieve the party's injury." *WildEarth*, 690 F.3d at 1182 (quoting *City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011)). "The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury." *WildEarth*, 690 F.3d at 1182 (quoting *Nova Health Sys.*, 416 F.3d at 1158).

And finally, when assessing standing, federal courts are not to "open the door to merits considerations at the jurisdictional stage." *Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (internal quotation marks omitted). Thus, "[f]or purposes of standing, [courts] must assume the Plaintiffs' claim has legal validity." *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1220 (10th Cir. 2016) (quoting *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1092–93 (10th Cir. 2006) (en banc)). In other words, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

### 2

Salina makes two standing arguments. Doc. 107 at 18–20. One applies only to the plaintiffs' prior-restraint claim: Salina argues that Howard agreed his permit application could be held in abeyance, so neither he nor Cozy Inn was injured. *Id.* at 20. The other focuses on redressability, asserting there is no relationship between the injury suffered and the judicial relief that the plaintiffs request. *Id.* at 18–20. Neither has merit.

### a

Salina's argument that the plaintiffs consented to the prior restraint fails. The plaintiffs want to finish painting the display on the exterior wall of the building housing Cozy Inn. Doc. 105 at ¶ 223. They cannot do that because Salina placed Howard's permit application on hold

instead of issuing a permit or formally denying his application. Doc. 106 at ¶ 106. As a result, the plaintiffs have suffered—and continue to suffer—an injury-in-fact traceable to Salina's indefinite hold of Howard's permit application. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (explaining that receiving a permit application decision later than the timeframe that the applicant was entitled to is sufficient for Article III standing).

This result does not change simply because Salina officials believe Howard agreed to the open-ended delay. For one, Salina has not supported its assertion that a permit applicant may consent to an indefinite delay in the processing of his or her permit application such that he or she foregoes standing to challenge a prior restraint on expression. *See Rios v. Ziglar*, 398 F.3d 1201, 1209 (10th Cir. 2005) (rejecting a novel factual theory that was not supported by legal authority). But even if that theory is viable, it fails for lack of factual support. The record is devoid of any evidence suggesting that Howard consented to an indefinite delay of his permit application. *Contra* Doc. 107 at 20.

To support its position, Salina points to deposition testimony from various city officials who talked to Howard about his permit application. *Id.* (citing Doc. 107 at ¶¶ 20, 22, 23, 29). Yet no portion of Salina's cited testimony suggests that Howard agreed to the processing delay. For example, the testimony provides that Howard "was informed . . . that the sign . . . is not something the staff had the authority to permit," Doc. 107-12 at 16, that "Howard had knowledge that [Salina was] not able to approve his sign permit application," Doc. 107-5 at 17, and that a city official told Howard "face-to-face that [Salina was] unable to issue a sign permit for the sign as currently proposed under the current sign code," *id.* This evidence does not indicate that Howard *consented* to the open-ended hold. *Sanchez v. Guzman*, 105 F.4th 1285, 1296–97 (10th Cir. 2024) (explaining that a party must support its version of the facts with evidence in the record that supports those facts). Nor has Salina established that Howard's knowledge that his permit application would be denied could deprive him of standing to challenge the permit requirement on its face or as applied to him. *See Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (finding plaintiffs had standing to challenge a licensing requirement because the city indicated its intent to enforce the requirement even though the plaintiffs did not actually apply for a license).

**b**

16

Salina next argues the plaintiffs lack standing because it believes that a judgment in the plaintiffs' favor will not redress the plaintiffs' asserted injuries. Doc. 107 at 18–20. In particular, it claims that an unchallenged provision of the sign code—specifically, Salina's regulations on how much signage a business may display—will preclude the plaintiffs from completing their display even if Salina's current construction of the word "sign" is unconstitutional. *Id.* at 19 ("What remains will be unchallenged, objective numerical size limits that are clearly constitutional.").

Salina's argument fails because a judgment in Howard and Cozy Inn's favor will meaningfully redress their injuries. When Salina stopped the plaintiffs from completing their display, it relied on three separate but interconnected parts of its sign code and/or its unwritten construction of the code. The first is the unwritten distinction that Salina applies between unregulated murals and regulated signs based on whether a given display pertains to the goods or services sold on site. Doc. 105 at ¶ 100; Doc. 107 at 13–14, ¶ 40. The second is the sign code's permit requirement, which only requires a permit to be issued for displays that qualify as a sign. Doc. 107 at 10, ¶ 20. And the third is the sign code's restriction on how much outdoor signage a particular business or entity may display on its premises, which again, applies to signs but not murals. Doc. 105 at ¶ 32; Doc. 107-12 at 11–12. According to the plaintiffs, those regulations are unconstitutional. If the plaintiffs prevail, Salina will be enjoined from enforcing any of these regulations. *See Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005) (finding that the plaintiffs had standing to challenge an ordinance requiring them to submit to fingerprinting and a bond requirement because they faced "a credible threat of prosecution or other consequences following from the statute's enforcement"); *Initiative & Referendum Inst.*, 450 F.3d at 1092–93 (noting that the legal validity of a plaintiff's claim must be accepted at the standing phase). That is sufficient for Article III standing. *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 978 (10th Cir. 2020) (explaining that enjoining a government entity from enforcing an unconstitutional ordinance redresses injuries caused by the ordinance).

In essence, Salina argues that it could subsequently choose to expand its interpretation of the word "sign" to encompass *both* murals and signs, which would remove the allegedly unlawful mural-sign distinction that the plaintiffs oppose, while still precluding the plaintiffs' display. Doc. 107 at 19–20. This argument misses the mark. Salina

17

cannot avoid the plaintiffs' constitutional challenge by stating that it could, hypothetically, redefine "sign" to encompass more displays than it does now. The plaintiffs are challenging Salina's current definition of sign, which is the very definition stopping them from finishing their display. As a result, declaratory or injunctive relief precluding Salina from enforcing that interpretation would redress the plaintiffs' injury. *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253, 1257 (10th Cir. 2024) ("The critical question, then, is whether our present grant of relief would have some real-world, not theoretical, effect."); *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012) (explaining that even if the injured party "would not be out of the woods, a favorable decision would relieve their problem 'to some extent,' which is all the law requires").

The authority Salina cited fails to support its position. Salina relies on three cases in which a plaintiff alleged that a portion of a local government's sign ordinance violated the First and/or Fourteenth Amendments. Doc. 107 at 19 (citing *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 800–01 (8th Cir. 2006), then citing *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892–93 (9th Cir. 2007), and then citing *Harp Advert. Ill., Inc. v. Vill. of Chi. Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993)). In each, the plaintiff challenged a discrete provision of the sign code that could be severed from the code if it were held to be unconstitutional. *Advantage Media, L.L.C.*, 456 F.3d at 800–01 (explaining that the plaintiff challenged multiple provisions of a sign ordinance that could easily be severed from the others); *Get Outdoors II, LLC*, 506 F.3d at 892 (same); *Harp Advert.*, 9 F.3d at 1292 (explaining that other provisions of the sign code were constitutionally valid even if the one challenged was not). Moreover, each of those sign codes included a separate and valid provision that the plaintiff did not challenge, which would prevent the plaintiffs from displaying the signs they wanted to erect or otherwise display regardless of whether the challenged provisions were constitutional or not. *See, e.g., Harp Advert.*, 9 F.3d at 1292. As a result, a favorable judgment for the plaintiffs in those cases would not have put them any closer to erecting their displays. *Advantage Media, L.L.C.*, 456 F.3d at 802 ("[E]ven in victory it would be 'no closer' to erecting its billboards or obtaining damages than when litigation began."). They would simply be subject to regulation under a different and concededly valid provision of the code. *See id.*

That is not the case here. Howard and Cozy Inn's challenge includes the sign code's size restrictions, which is the same portion of the sign code that Salina says is a separate and unchallenged provision precluding the plaintiffs from completing their display. *See* Doc. 107 at 19. As a result, unlike the cases Salina cited, there is no scenario under the summary judgment record in which the sign code's size restrictions could be enforced against the plaintiffs' display without referencing the way Salina interprets and applies its definition of sign. *See Bishop v. Smith*, 760 F.3d 1070, 1077–78 (10th Cir. 2014) (holding that a statute the plaintiff did not challenge could not defeat redressability where there was no scenario in which the statute could be enforced if the challenged state constitutional amendment were found unconstitutional).

That the plaintiffs have standing to challenge specific provisions of the sign code does not mean they have standing to challenge the entirety of the code. Howard and Cozy Inn are challenging "the written sign code, the unwritten policies and practices, the permit requirement, the size restrictions, and the concomitant enforcement penalties." Doc. 106 at 6 n.2. The record, however, does not support such a broad challenge to Salina's sign regulations. *See Essence, Inc. v. City of Fed. Heights*, 285 F.3d 1272, 1281–82 (10th Cir. 2002) (holding that a plaintiff lacked standing to challenge portions of an ordinance where there were no facts suggesting that portion would be applied to the plaintiff). As a result, the plaintiffs' claims are construed as to only challenge the parts of the sign code that Salina enforced or expressed an intent to enforce against them: the distinction between regulated signs and unregulated murals, the size restrictions applicable to signs, and the permit requirement. Doc. 109 at ¶ 3; Doc. 105 at ¶ 32.

## C

Howard and Cozy Inn's primary argument is that Salina's sign code violates the First Amendment's Free Speech Clause. Doc. 105 at 26–39. That clause prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. Outdoor displays, including signs, "are a form of expression protected by the Free Speech Clause." *City of Ladue v. Gilleo*, 512 U.S. 43, 48–49 (1994). Yet municipalities "have regulated outdoor advertisements for well over a century." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 65 (2022). Municipalities both enact sign regulations that carry penalties for non-compliance, and they often require individuals or entities to obtain a permit before they may display certain types of signs. *See id.* at 64–66. These types of regulation

make sense: "Unlike oral speech, signs take up space and may obstruct views, distract motorists . . . and pose other problems that legitimately call for regulation." *City of Ladue*, 512 U.S. at 48. The need for regulation, however, does not authorize local governments "to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Nor does it allow local governments to create permit-approval schemes giving unbridled discretion to government officials regarding which messages may be displayed, when and how a permit decision may be reviewed, and how long government officials may take to issue a decision regarding a permit application. *Dr. John's*, 465 F.3d at 1161; *Utah Animal Rights Coal.*, 371 F.3d at 1258.

These principles set the stage for the plaintiffs' free-speech arguments. They bring two types of First Amendment claims. Doc. 101 at ¶ 4.a.i. In one, they assert that Salina engages in content discrimination by applying its sign code to speech based on the topic or subject matter of the speech in a way that cannot survive strict scrutiny. *Id.* The other claim asserts that Salina's permit requirement is an impermissible prior restraint on the plaintiffs' speech. *Id.*

The plaintiffs' First Amendment claims are facial and as-applied challenges. Doc. 101 at ¶ 4.a.i. A successful facial challenge requires a plaintiff to "establish that no set of circumstances exists under which the ordinance would be valid," "that the ordinance lacks any plainly legitimate sweep," "or that it is overbroad because a substantial number of its applications are unconstitutional, judged in relation to its plainly legitimate sweep." *Harmon v. City of Norman*, 61 F.4th 779, 795 (10th Cir. 2023) (alterations omitted). In contrast, "an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." *iMatter Utah v. Njord*, 774 F.3d 1258, 1264 (10th Cir. 2014) (quoting *Colo. Right to Life Comm. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007)). But "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012) (quoting *Citizens United v. FEC*, 558 U.S. 310 (2010)). The label a plaintiff places on his or her challenge does not control which standard must be satisfied, rather the distinction "goes to the breadth of the remedy employed." *Id.*

**1**

First, Howard and Cozy Inn contend that Salina imposes an impermissible content-based restriction on expression—both on its face and as applied to their display. Doc. 101 at ¶ 4.a.i. The crux of the plaintiffs' argument is Salina's alleged distinction between murals and signs based on the notion that a display is a sign if it pertains to a good or service sold on the same premises.

That distinction—between a mural and a sign—is facially unconstitutional, according to the plaintiffs, because it turns on the subject matter of the display. Doc. 105 at 26–30. And they state that Salina unconstitutionally applied the distinction to their display because Salina has seemingly allowed other businesses to erect displays pertaining to the goods or services they sell—such as a baseball training facility's mural reflecting baseball games and a music store's mural promoting music—without requiring those displays to meet the regulations set forth in the city's sign code by claiming they were murals. Doc. 105 at 28–30; *see Wells v. City and County of Denver*, 257 F.3d 1132, 1151 (10th Cir. 2001) (noting that an as-applied content-discrimination challenge may consider evidence regarding whether the policy is or has been "enforced in a uniform, non-discriminatory manner, without regard to content or viewpoint"); *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984) ("To create an exception for appellees' political speech and not these other types of speech might create a risk of engaging in constitutionally forbidden content discrimination.").

The plaintiffs' claim can be taken in two steps. The first requires categorizing the type of regulation that the plaintiffs challenge. Based on that categorization, the second step is evaluating whether Salina's regulations survive the applicable level of scrutiny.

**a**

There are three potential categories of speech regulation that could describe Salina's mural-sign distinction. Those are content-neutral regulations, content-based regulations, and one unique type of content-based regulations—ones that distinguish only between commercial and non-commercial speech. The constitutional framework differs depending on which type of regulation is at issue.

21

For example, Salina argues that the framework governing content-neutral regulations applies. Doc. 107 at 20. A regulation is content neutral and subject to intermediate scrutiny if it "does not draw content-based distinctions on its face" and "is 'justified without reference to the content of the regulated speech.'" *Evans v. Sandy City*, 944 F.3d 847, 854 (10th Cir. 2019) (quoting *McCullen v. Coakley*, 573 U.S. 464, 479 (2014), and then quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The plaintiffs, however, argue that the framework governing content-based regulations applies. Doc. 105 at 26. Content-based regulations—regulations that apply "because of the topic discussed or the idea or message expressed"—are presumptively unconstitutional and must survive strict scrutiny to be lawful. *Reed*, 576 U.S. at 163; *Street-MediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1249 (10th Cir. 2023). And both parties make alternative arguments under the commercial-speech framework. Doc. 105 at 30–35; Doc. 107 at 35–38. Regulations that impose more stringent restrictions on commercial speech than they do on non-commercial speech are content-based regulations, but they are subject to "a form of intermediate standard of review" instead of strict scrutiny. *Aptive Env't*, 959 F.3d at 987 (internal quotation marks omitted); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1236–37 (10th Cir. 2004).

The parties vigorously dispute which category encompasses the challenged sign regulations. But it is not necessary to determine whether Salina's regulations are content based or content neutral. That is because Salina's regulations fail even accepting that intermediate scrutiny applies because the regulations are content-neutral

regulations.[5] *See McCraw v. City of Okla. City*, 973 F.3d 1057, 1070–71 (10th Cir. 2020) (taking this approach).

**b**

Salina's mural-sign distinction does not survive intermediate scrutiny. The intermediate-scrutiny standard turns on whether a restriction on speech "is narrowly tailored to achieving significant government

---

[5] Legal and factual uncertainty support this approach. For one, the facts of this case fall between two Supreme Court cases that reached opposite conclusions. *Compare Reed v. Town of Gilbert*, 576 U.S. 155, 164–65 (2015) (finding that a sign regulation was content based because it regulated signs differently based on their subject matter by imposing heightened restrictions on signs that directed individuals to events while treating signs that communicated other messages more favorably), *with City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71–72 (2022) (noting that a sign regulation that only regulated off-premises billboards was content neutral because it was "based solely on whether it is located on the same premises as the thing being discussed or not"); *see also StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1250 (10th Cir. 2023) (grappling with the "arguable tension" between *Reed* and *City of Austin* before finding that an ordinance regulating billboards based on whether they were paid for was content neutral under *City of Austin*). Adding to this uncertainty, the Tenth Circuit has not indicated in what situations evidence of arbitrary or discriminatory enforcement suggests a content-based regulation. *Wells v. City and County of Denver*, 257 F.3d 1132, 1156 (Briscoe, J., dissenting) (identifying evidence that the city arbitrarily enforced an exception to its speech restrictions but noting that the majority did not find the evidence presented sufficient to consider the city's policy one that regulated based on content).

For another, the parties agree only that Salina regulated the plaintiffs' display because it pertains to the food products Cozy Inn sells. Doc. 105 at ¶ 100. They dispute whether the policy is rooted in the text of Salina's sign code, whether Salina has consistently applied the policy, and whether the other language in the sign code defining signs as displays that "announce" or "direct attention to" are independent reasons Salina relied on to regulate the plaintiffs' display. *See* Doc. 108 at 7–8, ¶ 26. Although there are clear reasons to believe that Salina's alleged distinction between a mural and a sign lacks a textual basis, that its application of this alleged distinction has been inconsistently applied, and that the proffered concern about commercial direction was not the motivating factor for the action, those conclusions need not be reached to resolve this case. The reason is because, even assuming that it imposed a content-neutral restriction on the plaintiffs' display, Salina's regulation cannot survive intermediate scrutiny.

23

interests, and that [it] leaves open ample alternative channels of communication." *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1220 (10th Cir. 2021); *StreetMediaGroup*, 79 F.4th at 1252. In this context, "narrow tailoring requires that the chosen means do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *StreetMediaGroup*, 79 F.4th at 1252 (quoting *Ward*, 491 U.S. at 799. The government carries the burden to show that its regulation is narrowly tailored to serve significant interests. *Doe*, 667 F.3d at 1133; *VoteAmerica v. Schwab*, 121 F.4th 822, 852 (10th Cir. 2024) ("The government has the burden of persuasion in this inquiry.").

Salina proffers four governmental interests for its sign regulations. They include aesthetics, traffic and pedestrian safety, and property values. Doc. 107 at 27. According to Salina, its sign regulations are narrowly tailored to those four interests because the regulations serve to limit the size, number, height, and location of signs. *Id.* at 28. Assuming without deciding that Salina has set forth substantial interests, Salina has not met its burden to demonstrate that its distinction between signs and murals is narrowly tailored to promoting the city's aesthetics, safety, or property values. *See StreetMediaGroup*, 79 F.4th at 1252 (describing this requirement); *Reed*, 576 U.S. at 171 (assuming interests were compelling because they were not properly tailored under the applicable standard).

### i

As an initial matter, the parties dispute what evidence would suffice for a governmental entity like Salina to meet its burden to show that a sign regulation is narrowly tailored to the interests of aesthetics, property values, and traffic or pedestrian safety. *Compare* Doc. 107 at 29–30, *with* Doc. 108 at 28–35. Specifically, they disagree as to whether the government must present evidence to show that a government restriction of displays on private property is narrowly tailored to its aesthetic and safety interests, or whether *any* restriction of such displays is narrowly tailored as a matter of law. *Id.* The Tenth Circuit's most recent articulation of the intermediate-scrutiny standard in the context of a speech regulation restricting displays on private property states: "In this context, narrow tailoring requires that the chosen means do not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *StreetMediaGroup*, 79 F.4th at 1252 (quoting *Ward*, 491 U.S. at 799). This standard, regardless of what type of speech restriction is at issue, requires the government to show that

24

its "recited harms are real" or that its regulations "will in fact alleviate these harms in a direct and material way." *McCraw*, 973 F.3d at 1071.

To determine whether a municipality has produced sufficient evidence to meet this burden, it is necessary to "evaluate that evidence 'in light of the cases where those categories of evidence have previously been invoked.'" *McCraw*, 973 F.3d at 1073 (quoting *Aptive Env't'l*, 959 F.3d at 989). In cases involving speech restrictions on private property, evidence like expert testimony, research studies, and the experiences of other cities may suffice so long as the evidence that "the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51 (1986) (relying on testimony, research, and cases analyzing other cities' experiences to hold that the city's restriction on adult theaters was narrowly tailored to its interest in safety); *see also Abilene Retail No. 30, Inc. v. Bd. of Comm'rs of Dickinson Cnty., Kan.*, 492 F.3d 1164, 1167 (10th Cir. 2007) (requiring the county to justify that it reasonably relied on studies analyzing similar problems in surrounding communities to support its zoning ordinance). This standard does not set "a high bar," but it still requires municipalities to produce evidence that "fairly support[s] the municipality's rationale for its ordinance." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002).

Relying on *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), Salina promotes a different standard. Doc. 107 at 29–30. In that case, the Supreme Court applied the commercial-speech test to uphold an ordinance that allowed businesses to erect on-site billboard advertisements but prohibited off-site billboard advertisements. *Metromedia*, 453 U.S. at 500–12. The Supreme Court did not require the city to present evidence showing that off-site advertising was peculiarly dangerous or aesthetically harmful as compared to on-site advertising because the city's judgment to value "one kind of commercial speech—onsite advertising—more than another kind of commercial speech—offsite advertising" reflected a reasonable judgment "by the city that the former interest, but not the latter, is stronger than the city's interests in traffic safety and esthetics." *Id.* at 512. The Tenth Circuit has clarified that the situation in *Metromedia* is a narrow one applicable to commercial-speech cases "where [a court] can defer to the legislature on the basis of precedent which already has established that the legislature's chosen means directly advances the asserted ends." *Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1550 (10th Cir. 1991).

Salina has not shown that the narrow situation presented in *Metromedia* applies here. For one, Salina expressly rejects the notion that this case involves a regulation on commercial speech. Doc. 107 at 35. For another, Salina has not identified an "established line of cases" to support its judgment that displays pertaining to the goods or services sold on the same premises as the display are more detrimental to the city's interests than displays depicting something else. *See Adolph Coors Co.*, 944 F.2d at 1550. As a result, Salina must present evidence showing that its regulations do not "burden substantially more speech than is necessary to further [its] legitimate interests." *Evans*, 944 F.3d at 858.

### ii

In its attempt to show a connection between the regulation and its interests, Salina points to three categories of evidence. Doc. 107 at 30–31. This evidence includes the testimony from city officials, industry-specific publications, and expert testimony. *Id.*; *see Brewer*, 18 F.4th at 1225–26 (noting that a city must present specific evidence that a challenged regulation is narrowly tailored to achieve the interests it asserts).

This evidence actually undermines Salina's position. For example, Salina relies on City Planner Dustin Herr's deposition testimony where he states that the sign regulations are designed to reduce sign clutter and distraction by limiting the size, number, height, and location of signs throughout the city. Doc. 107-6 at 10. Herr did not, however, address or explain why displays that (allegedly) do not pertain to the services or goods a business sells—for example, a commercial baseball training facility promoting engagement in baseball, or a music store promoting the engagement in playing music—would have any different impact on those interests than signs like Cozy's hamburger scheme might. *See McCraw*, 973 F.3d at 1075 (finding a restriction unlawful where there was no evidence that the city considered the correlation between the restriction it imposed and the problems it identified). Instead, his explanation is entirely circular; it depends on his characterization of whether the sign is deemed a mural, which is not regulated, or a sign, which is regulated and must obtain approval.

So, too, with the publications Salina cites. One publication, for example, suggests the general notion that regulating signs promotes safety and community aesthetics. Doc. 107-2 at 7. But again, that information provides no explanation or insight into how Salina differentiates between murals and signs. *See StreetMediaGroup*, 79 F.4th at 1252 (affirming dismissal because the plaintiff's complaint did not

26

sufficiently state a claim but stating it was "skeptical that paid-for signs are more distracting and damaging to aesthetics" under intermediate scrutiny).

The final category of evidence that Salina cites is expert testimony. Unlike the other two categories of evidence, which indicate *no* connection between Salina's interests and its mural-sign distinction, Salina's expert, Mark White, recognizes the needed connection. In particular, White states that the sign code "stops where it needs to, by not sweeping decorative building elements such as murals that display public art into the same regulatory system that applies to signs." Doc. 97-3 at 2. Relying on various studies, White opines that public art may actually improve traffic, aesthetics, and public health—unlike signs, which cause harm in those areas. *Id.* at 7–12. But in reaching this opinion, White's opinion not only accepts Salina's circular definition of art as true but depends on it for support. In other words, White's opinions rely on the assumption that the definition of public art, in all of the studies he relies on, is based on *where* a given display is located. But White's report is devoid of any explanation or opinion indicating how or why a display that references a business's product is any more harmful to safety, aesthetics, or health than a display that references anything else. *See Brewer*, 18 F.4th at 1229 (finding expert testimony insufficient to satisfy the narrow tailoring requirement when the expert's opinions lent "minimal support to the notion that the Ordinance does not burden substantially more speech than necessary, or that it alleviates non-speculative harms in a direct and material way"). Nor does he explain, for example, why a baseball training facility's baseball mural or a music store's mural depicting musical notes avoids such harms. This is insufficient to justify Salina's restrictions on the plaintiffs' speech. *See Edenfield v. Fane*, 507 U.S. 761, 771 (1993) (finding that a local government's ban on commercial solicitation was not narrowly tailored to the government's interest because the only evidence to support it was an affidavit containing "nothing more than a series of conclusory statements").

Other cases that have explored municipal regulations similar to the one Salina imposed have reached a similar result. In *Young v. Town of Conway*, 783 F. Supp. 3d 588 (D.N.H. 2025), for example, the court found that a town's regulation against displays that feature the goods or services sold on the same premises as the display was not sufficiently connected between the town's interests and its enforcement against a bakery because there was no evidence that "a sign depicting baked

goods would have a different effect on safety than a sign depicting mountains (or anything else)." *Young*, 783 F. Supp. 3d at 608. That rule makes sense. It would seem illogical to argue that a hamburger-based display on a building housing a hamburger restaurant implicates interests requiring prohibition whereas that same display across the street on a building housing another business, perhaps a pizza restaurant, implicates none of those concerns.

\* \* \*

This result does not undermine the authority that cities have to implement solutions to the problems that it encounters. As the Supreme Court has long recognized, the "First Amendment does not require a city, before enacting . . . an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities." *City of Renton*, 475 U.S. at 51. Nor does Salina need to wait for actual safety or aesthetic problems to occur before it can justify its regulations. *See Brewer*, 18 F.4th at 1243; *Evans*, 944 F.3d at 858. But the First Amendment requires that a municipality like Salina justify its solution to a given problem with some evidence that its regulations are connected to the interests they purport to serve. *See Brewer*, 18 F.4th at 1227 (finding a city ordinance unconstitutional because there was "little evidence of non-speculative harms or interests that the Ordinance's restrictions alleviate in a direct and material way"). As explained above, the uncontested facts demonstrate that Salina has presented no evidence connecting its solution—distinguishing between signs that pertain to the goods and services sold on-site and murals that do not—to its stated interests. As a result, the plaintiffs' motion for summary judgment on their First Amendment content-discrimination claim is granted, and Salina's motion is denied.

### 2

Second, Howard and Cozy Inn assert that Salina's permit requirement for a sign is a prior restraint that the First Amendment prohibits. Doc. 105 at 37. A prior restraint on speech, which occurs when the government must approve speech before it occurs, bears "a heavy presumption against its constitutional validity." *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000). To be constitutionally valid, prior restraints must encompass certain safeguards. *Essence*, 285 F.3d at 1289–90. In particular, prior restraints, such as permit requirements, cannot give "the decisionmaker unlimited time to decide on matters affecting the license; otherwise, there is the 'risk of indefinitely

suppressing speech.'" *Id.* (citation omitted). Howard and Cozy Inn contend that Salina violated these principles when it placed their permit application on an indefinite hold without formally approving or denying it.[6] *Id.*

Prior restraints must provide a clearly specified and brief time period in which speech may be restricted while government officials process a permit application. *Am. Target*, 199 F.3d at 1253. Salina's permit requirement allows the zoning administrator ten days to issue or refuse a permit "or within such further period as may be agreed to by the applicant." Salina Code § 42-502(b). On its face, this ten-day period satisfies the First Amendment. *See Am. Target*, 199 F.3d at 1253–54 (holding that a ten-day period restricting speech during administrative processing of a permit was constitutional). As applied to the plaintiffs, however, the result is different. *See City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 784 (2004) (reiterating that a facially valid prior restraint that provided a sufficient system of review could be challenged in the future by litigants who were denied licenses to "raise special problems of undue delay in individual cases as the ordinance is applied").

The uncontested facts establish that instead of making a formal determination, Salina set Howard's permit application aside indefinitely. Doc. 105 at ¶ 113. This exact situation, where city officials disregard a facially constitutional timeframe regarding one particular permit application, has not been addressed by binding authority. As a result, it is necessary to turn to the Supreme Court's and the Tenth Circuit's reasoning for striking down ordinances that lacked a prior-restraint deadline even on their face.

---

[6] Howard and Cozy Inn also assert that Salina's permit requirement is an unconstitutional prior restraint because it vests unbridled discretion in the government officials charged with the responsibility of granting or denying the permit. Doc. 105 at 37. That argument focuses on Salina's distinction between regulated signs and unregulated murals. In light of the conclusion that such a distinction is unconstitutional because it fails to survive intermediate scrutiny, *see supra* Section I.C.1, it is not necessary to address the plaintiffs' argument that the same distinction is an unconstitutional prior restraint. *See Am. Target*, 199 F.3d at 1250 n.2 (declining to consider a prior restraint claim that fell outside of the ordinary context of a licensing or zoning scheme after finding that the challenged provision was an unconstitutional burden upon free speech on other grounds).

The Supreme Court has repeatedly struck down ordinances as impermissible prior restraints because the ordinance failed to "place limits on the time within which the decisionmaker must issue the license." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990) (collecting cases). In particular, it reasons that a "scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.; accord Dr. John's*, 465 F.3d at 1163–64 ("[T]he concern evidenced by prior restraint cases is that a party will have to refrain from speaking while it waits for a decision from the licensing authority."). The problem that those prior-restraint cases identify is that "each day of delay in acting on the application was a day in which the speaker was forced to be silent." *Utah Animal Rights Coal.*, 371 F.3d at 1259.

A permitting scheme without a deadline is not always unlawful. The Tenth Circuit has upheld permitting or licensing requirements that did not include a timing safeguard, but it did so because those schemes did not suppress or restrict the applicants' speech while they waited for the government's decision. For example, in *Utah Animal Rights Coalition*, the Tenth Circuit upheld a local government's delay in deciding a permit application because the application covered expression that was set to occur at a future event would not occur until after a decision was issued. *Id.* at 1259; *see also Dr. John's*, 465 F.3d at 1163 (similarly distinguishing a licensing scheme in which a business needed not wait to operate while waiting for a permit application to be decided).

Salina's actions are unconstitutional prior restraints because they forbade additional expressions while awaiting government approval. By putting Howard's application on hold, Salina has indefinitely suppressed his and Cozy Inn's expression. That deep freeze is the exact situation that the prior-restraint doctrine forbids. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 771–72 (1988) (explaining that a policy lacking a time frame for review violates the First Amendment by allowing for indefinite delay of a permit application). Despite the ordinance's ten-day requirement, Howard's permit application has been on hold since November 2023. Doc. 105 at ¶¶ 106, 113. Allowing such indefinite holds—especially when the city's ordinance requires a timely decision—would mean that nothing in the ordinance's application would prevent city officials "from encouraging some views and discouraging others," *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 133 (1992), which is exactly what the plaintiffs argue has happened here.

Salina's sole argument to the contrary—that Howard agreed to the open-ended delay—has already been rejected as factually unsupported. As explained above, the record evidence contradicts Salina's assertion that Howard consented to Salina placing his permit application on hold. *See infra* Section II.A. One deposition is particularly illustrative. Salina's Planning and Zoning Administrator, Dean Andrew, repeatedly stressed in his deposition that Howard agreed to the hold. Doc. 107-5 at 16–17. He was asked how he know that Howard agreed, and each time he emphasized that city officials *informed* Howard that they were placing his application on hold. For example, in one of his responses, he stated: "Mr. Howard was informed on Monday the 6th that we were unable to issue a sign permit, and he was informed that we were going to continue to work with him on coming up with a code-compliant solution that might allow the sign to ultimately be installed." *Id.* at 16. Another time, Andrew was explicitly asked how he defined Howard's consent to the hold. He responded: "Mr. Herrs talked to Mr. Howard face-to-face, handed him information face-to-face and told him face-to-face that we are unable to issue a sign permit for the sign as currently proposed under the current sign code." *Id.* at 17. Salina has not provided any evidence that would lead a reasonable juror to conclude that Howard had any agency in Salina's determination, much less that he voluntarily agreed to an indefinite hold of his permit application. As a result, Salina has not introduced evidence sufficient to rebut the plaintiffs' showing that Salina applied an unconstitutional prior restraint to their expression. And because Salina has not presented evidence that would create a genuine fact issue, the plaintiffs' motion for summary judgment on their prior restraint claim is granted, and Salina's motion on this claim is denied.

### D

Howard and Cozy Inn's final claim is that Salina's sign policies are unconstitutionally vague in violation of the Fourteenth Amendment. Doc. 105 at 39–40. A policy is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1233 (10th Cir. 2023) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). The regulations at issue are not so vague as to offend the Fourteenth Amendment.

The plaintiffs urge that the sign code fails to define key terms, thereby encouraging arbitrary enforcement. Doc. 105 at 40. They point

31

to five phrases or terms: "mural," "art," "pertains to," "commercial speech," and "advertise." *Id.* Of those five terms or phrases, only one actually appears in Salina's sign code. Four of them are not alleged to be in the pertinent policy language—"mural," "art," "pertains to," and "commercial speech." They are merely phrases that Salina officials have used to describe or explain the city's sign regulations. *See, e.g.,* Doc. 105-5 at 29 (distinguishing "art and murals" from "sign[s]" at a Salina City Commission Meeting); Doc. 105-24 at 8 (noting in Salina's interrogatory answers that "the term 'art' may be used from time to time as an imprecise short-hand for 'not sign'"); Doc. 105-12 at 11 (discussing Salina City Manager's comment to a reporter stating that a sign "pertains to" the goods or services for sale); Doc. 105-5 at 6 (stating at a City Commission Meeting that the "important distinction here relates to commercial speech"). That language outside the four corners of the policy—while perhaps indicative of the First Amendment concerns involving arbitrary enforcement—cannot be considered in a vagueness inquiry. *StreetMediaGroup,* 79 F.4th at 1254 (explaining that inconsistent or isolated statements by city officials are not part of the vagueness inquiry).

The word "advertise," however, does appear in the text of the code. But that term is not vague; it can be understood by a person of ordinary intelligence. S*treetMediaGroup,* 79 F.4th at 1254 (finding that the term "advertising devices" is not impermissibly vague); *Students Engaged in Advancing Tex. v. Paxton,* 765 F. Supp. 3d 575, 602–03 (W.D. Tex. 2025) (collecting cases holding that the word "advertise" is commonly understood and not impermissibly vague). And even though it is not defined in the sign code, advertise may be readily defined in a way that provides city officials with sufficient standards to enforce its requirement. *Advertise,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/advertise (last visited Nov. 18, 2025) (defining advertise as "to make the public aware of (something or someone) especially by means of a published or broadcast notice"); *See McCraw,* 973 F.3d at 1081–82 (using dictionary definitions to illustrate that an ordinance was not impermissibly vague because its definition is commonly understood).

The plaintiffs attempt to make a vagueness challenge based on the alleged arbitrary enforcement that has occurred. Doc. 105 at 40. That is insufficient. Just because arbitrary or discriminatory enforcement may have occurred does not mean that the sign code was so vague as to encourage that enforcement. S*treetMediaGroup,* 79 F.4th at 1254. Nor

is it relevant that Salina appears to enforce its sign code against fewer displays than what its plain text could or should cover. *Id.* The proper vehicle for such arguments is a selective enforcement challenge, not a vagueness one. *Id.* The plaintiffs did not make a selective enforcement argument. Again, no factual disputes need resolution to find that the plaintiffs' vagueness claim fails. As a result, Salina's summary judgment motion on the plaintiffs' Fourteenth Amendment claim is granted, and the plaintiffs' motion is denied.

## E

Because Howard and Cozy Inn succeeded on their First Amendment claims, it is necessary to determine whether they are entitled to relief. They ask for declaratory relief finding Salina's sign regulations unconstitutional, and they seek to enjoin Salina and its officials from enforcing the challenged regulations. Doc. 101 at ¶¶ 5.b–5.c. The plaintiffs have justified only their request for a declaratory judgment.

**1.** The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act "is remedial and does not itself confer jurisdiction on federal courts." *Rector v. City and County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003) (citing *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002)). But where the party seeking declaratory relief has satisfied the requirements for a federal court to exercise subject-matter jurisdiction over a case, district courts enjoy "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136–37 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

The plaintiffs have justified their request for declaratory relief. They demonstrated that Salina imposes an unconstitutional distinction between murals and signs. Because the definition of sign is unlawful, Salina cannot make any determination as to whether a display is a mural or sign without violating the First Amendment. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615–16 (2021) (explaining that the application of an unconstitutional distinction is itself a First Amendment injury). As a result, a declaratory judgment that Salina's mural-sign distinction is unconstitutional on its face is appropriate. The plaintiffs have also supported their request for a declaratory judgment finding that Salina imposed an unconstitutional prior restraint as applied to their speech. By applying that restraint, Salina has subjected the plaintiffs to a constitutional harm since it put Howard's permit application

on indefinite hold. Declaratory relief to address that harm is warranted. *See Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (noting that district courts may grant declaratory relief for past constitutional violations "which will in turn affect the parties' current rights or future behavior").

**2.** The same cannot be said about Howard and Cozy Inn's request for a permanent injunction. The plaintiffs request broad relief, which they describe as follows:

> b. A prospective permanent injunction enjoining the City, its officers, agents, employees, attorneys, servants, assigns, and all those in active concert or participation who receive, through personal service or otherwise, actual notice of this Court's order, from enforcing or directing the enforcement of the City's mural-sign code regime on its face and as applied to Plaintiffs . . . .

> * * *

> c. A permanent injunction prohibiting Defendant from taking any enforcement or other action against Plaintiffs for displaying their mural in its current position on The Cozy Inn, or for completing the mural on The Cozy Inn.

Doc. 101 at ¶¶ 5.b–5.c.

Success on the merits is not enough to support a request for injunctive relief. A plaintiff must also show "irreparable harm unless the injunction is issued," that "the threatened injury outweighs the harm that the injunction may cause the opposing party," and that "the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (quoting *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003)). Permanent injunctions "must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Ops., Inc.*, 287 F.3d 955, 961–62 (10th Cir. 2002). Additionally, the Tenth Circuit has cautioned that federal courts "must be cautious about issuing an injunction against a municipality." *Signature Props. Int'l Ltd. P'ship v. City of Edmond*, 310 F.3d 1258, 1269 (10th Cir. 2002). That is because "when a party seeks injunctive relief in federal court against a state or local government or governmental entity, concerns of federalism counsel

34

respect for the 'integrity and function' of those bodies." *Id.* (citations omitted). And where a plaintiff requests both declaratory and injunctive relief regarding an unconstitutional ordinance, declaratory relief is generally sufficient where there is "no proof that [the defendant] would not . . . acquiesce in the decision . . . holding the challenged ordinance unconstitutional." *Poe v. Gerstein*, <u>417 U.S. 281, 281</u> (1974) (quoting *Douglas v. City of Jeannette*, <u>319 U.S. 157, 165</u> (1943)); *accord WildEarth Guardians v. Conner*, <u>920 F.3d 1245, 1261</u> (10th Cir. 2019).

Howard and Cozy Inn have not provided any argument or pointed to any evidence suggesting why a permanent injunction is necessary to ensure that Salina complies with the declaratory judgments issued against it. Accordingly, the plaintiffs' request for a permanent injunction is denied. *See Millard v. Camper*, <u>971 F.3d 1174, 1180</u> n.8 (10th Cir. 2020) (affirming the district court's grant of declaratory judgment but denial of permanent injunctive relief because the plaintiffs did not submit any evidence "to establish the requisite factors other than success on the merits").

### III

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, <u>Doc. 104</u>, and Salina's Motion for Summary Judgment, <u>Doc. 106</u>, are GRANTED in part and DENIED in part, and both Motions to Exclude Expert Testimony, Docs. 97 & 98, are DENIED.


It is so ordered.


Date: November 19, 2025          _s/ Toby Crouse_____
                                 Toby Crouse
                                 United States District Judge

35

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Cozy Inn, Incorporated,<br>d/b/a The Cozy Inn; Stephen Howard, | )<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION<br>) CASE NO.  6:24-cv-01027-TC-ADM |
| v. | )<br>) |
| City of Salina, Kansas, | )<br>) |
| Defendant. | ) |

### NOTICE OF APPEAL

Defendant, City of Salina, Kansas, by and through its attorneys Fairfield and Woods, P.C., and Clark, Mize & Linville, Chartered, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment entered on November 19, 2025.

Respectfully submitted this 18th day of December, 2025.

s/ Aaron O. Martin
Aaron O. Martin
Bar Number:  24170
Attorney for Defendant, City of Salina, Kansas
Clark, Mize & Linville, Chartered
P.O. Box 380
Salina, KS 67402-0380
Tel.: (785) 823-6325
Fax: (785) 823-1868
Email: aomartin@cml-law.com

s/ Todd G. Messenger
Todd G. Messenger
CO Bar Number: 38783
Pro Hac Vice Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: tmessenger@fwlaw.com

s/ Amanda C. Jokerst
Amanda C. Jokerst
CO Bar Number:  47241
Pro Hac Vice Attorney for Defendant, City of Salina, Kansas
Fairfield and Woods, P.C.
1801 California St., Ste. 2600
Denver, CO 80202
Tel.: (303) 830-2400
Fax: (303) 830-1033
Email: ajokerst@fwlaw.com

1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of December, 2025, I caused the foregoing NOTICE OF APPEAL to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record including: Jeffrey Shaw and Samuel G. MacRoberts.

*s/ Aaron O. Martin*
Aaron O. Martin

2